IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FILED**

SEP 1 7 2003

Kenneth J. Murphy, Clerk
Columbus, Ohio

GERALD L. CLEMONS,

      Petitioner,

  vs.

BETTY MITCHELL, Warden,

      Respondent.

Case No. C-1-00-722
JUDGE SMITH
Magistrate Judge King

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court

a habeas corpus action pursuant to 28 U.S.C. §2254. This matter is before the Court upon

respondent's motion to dismiss certain claims on the basis of procedural default, petitioner's

response, and respondent's reply. Also before the Court are the habeas corpus petition and the

amended joint appendix consisting of the state court record.[1]

### I. Factual History

The facts of this case were set forth by the Supreme Court of Ohio in *State v. Clemons*, 82

Ohio St. 3d 438 (1998):

> On the morning of December 15, 1995, defendant-appellant, Gerald L.
> Clemons, went to the main office of his employer, Trans-Continental Systems, Inc.,
> in Evendale, and fatally shot three co-workers. Defendant was subsequently
> convicted of three counts of aggravated murder and sentenced to death.
>
> Defendant had worked at various jobs in both Florida and the Cincinnati area.
> After moving back to Cincinnati in 1988, defendant became an over-the-road truck
> driver and worked for several trucking companies. By November 1995, defendant
> had become a company driver for Trans-Continental. On the evening of December
> 13, 1995, a dispatcher for Trans-Continental phoned defendant at home and asked

---

[1] The joint appendix was supplemented on October 31, 2002, (doc.no. 48), to include documents
pertaining to the successive postconviction action that petitioner recently pursued through the state courts.

him to pick up a load in Ironton, which is a regular run for Trans-Continental. Defendant declined to make the pickup and John Stirsman, chief dispatcher, told defendant that he was putting the company "in a bad spot." The company apparently then made other arrangements for the Ironton run.

The next day, December 14, defendant phoned Stirsman several times hoping to secure a new run. During one conversation, defendant asked Stirsman why another dispatcher, Dave Kreamelmeyer, was "screwing him around." Stirsman replied that Kreamelmeyer was not doing that to him. Stirsman told defendant that he was saving the Ironton run for the defendant again that evening. While defendant thanked Stirsman for assigning him the Ironton run again, defendant never showed up to make the run. Defendant later testified that he did not make the Ironton run because "it wasn't a good run for the mere fact that there is no good roads going that way and all secondary roads instead of interstate highways and it burns up a lot of time."

At 7:45 a.m. on the morning of December 15, 1995, defendant called Trans-Continental, according to an entry made by Kreamelmeyer on the company's telephone log sheet. Evelyn Dinkgrave, who works in accounts payable for Trans-Continental, testified that she overheard Kreamelmeyer have a loud conversation with a driver at 7:45 a.m. that morning, and she observed that Kreamelmeyer "was kind of angry." After Kreamelmeyer hung up the phone, Dinkgrave testified that "he got more vocal about how mad he was that this guy had not been on time to pick up a load" the night before. At trial, defendant testified that during their phone conversation, Kreamelmeyer appeared to be angry and informed defendant that he was not going to give defendant a load to deliver that day.

At approximately 8:15 a.m. that morning, defendant entered the Trans-Continental garage and asked mechanic Elmer Begley whether defendant's truck was ready for work. Both Begley and driver Timothy Stone testified that defendant had a cream-colored bag attached to his waist at that time and he appeared to be in a "normal mood."

Secretary Dana Wilson Jones observed defendant in the administrative offices of Trans-Continental that morning. Defendant waved and smiled at her, then walked away. Moments later, Jones heard Kreamelmeyer say, "I'm going to have this man arrested for felonious assault." Then, Jones heard gunshots and heard Kreamelmeyer say, "What did I do, I didn't do anything." Jones testified that she heard more gunshots and heard someone say, "Oh, my God."

Tonya Hinkle shared an office with Christine Teetzel in the Trans-Continental administrative offices, and both worked on payroll. Hinkle testified that she heard Kreamelmeyer arguing with someone around 8:15 that morning and heard "a punch,

like a bang." Both she and Teetzel stood up and heard Kreamelmeyer say, "Assault, call 911." As Hinkle and Teetzel tried to phone for help, they heard shots and both women hid under their desks. Teetzel pulled her chair underneath her desk in an attempt to hide herself. Hinkle testified that as they hid under their desks, she saw defendant walk up to Teetzel's desk, move her chair out of the way, look under the desk, and shoot her. As defendant turned around, Hinkle thought she was next, but defendant proceeded upstairs.

Laurie McGuire works in accounts receivable for Trans-Continental on the second floor of the administrative office building. On the morning of December 15, she heard some commotion on the first floor around 8:15 a.m. and began walking downstairs. Before she made it to the first floor, she saw defendant shoot Kreamelmeyer in the back. She ran back upstairs, panic-stricken, and could hear defendant climbing the staircase. McGuire then fled into an office and stood up against a concrete wall. Defendant walked up to McGuire and told her that he was not going to hurt her, and that "he was only after the ones who screwed him over." Defendant left the room. McGuire was going downstairs when she heard dispatcher Bob Kinney scream for help from his office. McGuire saw Kreamelmeyer lying on the floor, too, so she ran back upstairs to call 911.

Sandra K. Sears, a Glendale police officer, was working off-duty near the Trans-Continental office at the time of the shootings. Upon hearing a radio dispatch, she responded to the scene and followed an Evendale police officer into the Trans-Continental parking lot. Sears found Teetzel lying wounded on the front lawn of the premises. She heard Teetzel name Gerald Clemons as her assailant. As Sears approached the office building with the Evendale officer, she noticed defendant smiling and walking steadily towards her. At that point, Sears heard Teetzel exclaim again, "That's the bastard that shot me." Sears testified that defendant told her, "I'm the guy you are looking for. I just shot the people," and he motioned his head toward the office building. Sears handcuffed Clemons and turned him over to Evendale police officers.

All three shooting victims, Kreamelmeyer, Kinney, and Teetzel, died of gunshot wounds. Bullets recovered during the autopsies and casings found at the crime scene were determined to have been fired from defendant's gun, which was found lying on top of his car trunk in the Trans-Continental parking lot that morning.

*Clemons*, 82 Ohio St. 3d at 438-440.

II. Procedural History[2]

---

[2]        The claims that petitioner raised through every stage of the state court proceedings are set forth in full in the attached appendix.

3

### A. Trial and Direct Appeal

The Hamilton County Grand Jury returned a capital indictment against petitioner on December 21, 1995. He was charged on three counts of aggravated murder, each of which included a death penalty specification and a firearm specification. The trial court appointed two attorneys, Dale Schmidt and Mark Krumbein, to represent petitioner. Jury selection commenced on September 24,1996 and the jury returned convictions on all counts and specifications on October 2, 1996. The penalty phase commenced two and a half weeks later on October 22, 1996. On October 24, 1996, the jury recommended a death sentence and, on November 1, 1996, the trial court sentenced petitioner to death.

Represented by two new attorneys, A. Norman Aubin and Herbert Freeman, petitioner appealed directly to the Supreme Court of Ohio. In a brief filed on June 17, 1997, counsel for petitioner raised seventeen propositions of law. The Supreme Court of Ohio affirmed the judgment against petitioner on July 29, 1998. *State v. Clemons, supra*, 82 Ohio St. 3d 438.

### B. Postconviction Proceedings

Represented by the Office of the Ohio Public Defender, petitioner filed a postconviction action in the trial court pursuant to R.C. §2953.21 on August 16, 1997. He raised eleven causes of action. On April 28, 1998, the trial court issued findings of fact and conclusions of law dismissing petitioner's postconviction action. Petitioner appealed. The Court of Appeals for the First Appellate District affirmed the trial court's decision on April 30, 1999. The Supreme Court of Ohio declined to accept jurisdiction on September 1, 1999.

### C. "*Murnahan*" Proceedings

On October 27, 1998, again represented by the Office of the Ohio Public Defender, petitioner

filed an application to reopen his direct appeal to the Supreme Court of Ohio on the basis of appellate counsel ineffectiveness. Petitioner sought to raise thirty-two issues that were not included in petitioner's original direct appeal because of the alleged ineffectiveness of petitioner's appellate attorneys. On March 2, 1999, the Supreme Court of Ohio denied petitioner's application for reopening.

### D. Successive Postconviction Proceedings

On May 9, 2001, while this habeas corpus action was pending, petitioner filed a successive postconviction action in the state trial court. Petitioner attempted to raise three claims. On July 2, 2001, the trial court issued a summary entry declining to entertain petitioner's successive postconviction action. On March 6, 2002, the court of appeals issued a decision affirming the trial court's decision. On July 3, 2002, the Supreme Court of Ohio summarily declined to accept jurisdiction over petitioner's appeal.

### III. Habeas Corpus Proceedings

On March 10, 2000, petitioner filed a Notice of Intent to file a habeas corpus petition and a motion for the appointment of counsel.[3] A stay of execution was entered on March 14, 2000 and, on August 2, 2000, this Court appointed counsel. Counsel for petitioner filed a formal habeas corpus petition on August 30, 2000, raising twenty-nine grounds for relief.[4]

**First Ground for Relief**: The trial court erred to the prejudice of Petitioner Clemons when it denied a motion for change of venue where pretrial publicity precluded the

---

[3]    This case originally was filed in the western division and was transferred to this Court on March 17, 2000, pursuant to a *sua sponte* recusal order by Magistrate Judge Merz.

[4]    On March 23, 2001, counsel for petitioner filed a motion for leave to file an amended habeas corpus petition. The amended petition differs from the original petition only in that the issues raised by petitioner in the state courts are contained in an attached appendix and it includes a brief introductory remark setting forth petitioner's background.

accused from receiving a fair trial under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

**Second Ground for Relief**:  The trial court erred to the prejudice of Petitioner Clemons in not granting funds for expert assistance constitutionally required for the preparation of an adequate defense as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the Constitution.

**Third Ground for Relief**:  Petitioner Gerald Clemons was denied his right of due process and assistance of counsel as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the Constitution because the record reflects trial counsel provided ineffective assistance to Petitioner Clemons.[5]

**Fourth Ground for Relief**:  Prosecutorial misconduct occurred in this case, specifically in the opening statement, closing argument, and the penalty phase proceedings which resulted in prejudice to Petitioner Clemons to the extent that he was denied a fair trial under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution.

**Fifth Ground for Relief** :  The trial court erred in sentencing when improperly considering the nature and circumstances of the offense as an aggravating circumstance in imposing the death sentence on Petitioner Clemons, the result being contra the Eighth and Fourteenth Amendments to the Constitution.

**Sixth Ground for Relief** :  The trial court erred to the prejudice of Petitioner Clemons when it denied the pre-trial motion for twelve peremptory challenges contra the Sixth, Eighth, and Fourteenth Amendments to the Constitution.

**Seventh Ground for Relief**:  The death penalty statute in Ohio is unconstitutional under the Fourth, Sixth, Eighth, and Fourteenth Amendments to the Constitution in that it fails to require the appropriate mental state and, as a result, allows the jury to convict on a less than adequate showing of culpability.

**Eighth Ground for Relief**:  Petitioner Clemons was improperly convicted and sentenced because the Ohio beyond a reasonable doubt standard of proof fails to meet the requirement of a higher reliability for guilt determination in a capital case contra

---

[5]    Petitioner raises two instances of trial counsel ineffectiveness in his third ground for relief. First, petitioner argues that his trial attorneys were constitutionally ineffective in connection with their filing of a Not Guilty By Reason of Insanity Plea, because the results of the court-ordered psychiatric evaluation were provided to both the prosecution and the trial court, and because the mental health expert appointed by the trial court to conduct that evaluation would eventually also be appointed by the trial court as petitioner's mitigation specialist. Petitioner also argued that his trial attorneys were constitutionally ineffective for failing to support more thoroughly their motion for a change of venue.

the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

**Ninth Ground for Relief**: The amended Ohio review process is unconstitutional in violation of the Eighth and Fourteenth Amendments to the Constitution in that it removes court of appeals jurisdiction from the direct appeal process.

**Tenth Ground for Relief**: The Ohio death penalty statutes are unconstitutional in that they violate the Eighth Amendment proscription of cruel and unusual punishment and the Fourteenth Amendment to the Constitution which guarantees due process of law and equal protection of the laws.

**Eleventh Ground for Relief**: The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree mitigating circumstances gives the Ohio capital statutes a mandatory nature, thus permitting the execution of an accused even though the mitigating evidence falls just short of equipoise with the aggravating factors. The result is the Ohio statutes renders the capital process arbitrary and capricious contra the Sixth, Eighth, and Fourteenth Amendments to the Constitution.

**Twelfth Ground for Relief**: Under the provisions of Ohio Crim. R. 11(C)(3), permitting the trial court to dismiss specifications upon a guilty plea under the concept of "in the interest of justice" needlessly encourages guilty pleas, thus reintroducing the possibility that the death sentence will be imposed arbitrarily and capriciously contra the Eighth and Fourteenth Amendments to the Constitution.

**Thirteenth Ground for Relief**: The Ohio capital sentencing scheme is unconstitutional in that it provides no standard for sentencing or review at the significant stages of the appellate process and, as a result, the death sentence of Gerald Clemons was imposed and reviewed without sufficient guidance to juries, the trial-sentencing judge and Ohio review courts. This results in the arbitrary and capricious infliction of the death penalty contra the Sixth, Eighth, and Fourteenth Amendments.

**Fourteenth Ground for Relief**: Where the record reveals that the sentencing judge considered and weighed improper aggravating circumstances when imposing the death penalty, the resulting sentence is contra the Sixth, Eighth, and Fourteenth Amendments to the Constitution.

**Fifteenth Ground for Relief**: The trial court erred in permitting the prosecutor to have an expert testify on the effects of Prozac when the defense had not raised, during the course of the jury trial, an insanity defense contra the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

**Sixteenth Ground for Relief**:   Where a conviction is based upon insufficient evidence, on the aggravated murder counts, the result is contra the due process clause of the Fourteenth Amendment to the Constitution and the Sixth and Eighth Amendments to the Constitution.

**Seventeenth Ground for Relief**:  The trial court errs to the prejudice of Petitioner Clemons when the court refers to the jury's decision as a recommendation, thereby diminishing the jury's sense of responsibility for the decision in violation of the Sixth, Eighth, and Fourteenth Amendments.

**Eighteenth Ground for Relief**:  Gerald Clemons' convictions and sentences are constitutionally infirm because trial counsel failed to provide him with reasonably effective assistance of counsel during the trial phase.

> A.  Defense counsel unreasonably failed to present a defense of involuntary intoxication.

> B.  Defense counsel unreasonably failed to investigate the effects of Prozac.

> C.  Defense counsel unreasonably failed to secure an expert to assist in presenting an involuntary intoxication defense.

> D.  Defense counsel failed to reasonably prepare a strategy for presentation of a defense.

> E.  Defense counsel failed to conduct a reasonable investigation regarding their own client in the presentation of the defense.

> F.  Defense counsel failed to conduct a voir dire reasonably calculated to preserve Gerald Clemons' right to a fair and impartial jury.

**Nineteenth Ground for Relief**:  Gerald Clemons' convictions and sentences are constitutionally infirm because trial counsel failed to provide him with reasonably effective assistance during the mitigation phase.

> A.  Defense counsel failed to conduct a reasonable investigation to prepare for mitigation.

> B.  Defense counsel unreasonably failed to obtain Gerald Clemons' military records.

C. Defense counsel unreasonably failed to develop evidence of the effect of Prozac.

D. Defense counsel unreasonably failed to obtain an expert on Prozac.

E. Defense counsel unreasonably failed to obtain the services of an independent psychologist.

**Twentieth Ground for Relief**: Gerald Clemons' death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary and capricious manner.

The Ohio capital punishment scheme allows for imposition of the death penalty in an arbitrary and discriminatory manner. The virtually uncontrolled discretion of prosecutors in indictment decisions allows for arbitrary and indiscriminatory imposition of the death penalty.

Another deficiency is that the statute does not require the State to prove the absence of any mitigating factors and that death is the only appropriate penalty. The statutory scheme is unconstitutionally vague and leads to arbitrary imposition of the death penalty. The statutes have impermissibly devalued the importance of mitigation because no method exists to ensure a proper weighing and consideration is accomplished.

The Ohio statutes also violate the mandate of the constitutional protections by requiring proof of aggravating circumstances in the guilt phase of capital trials. By requiring proof of the aggravating specifications simultaneously with proof of guilt, Ohio has effectively prohibited a sufficient individualized determination in sentencing.

The Ohio scheme is also unconstitutional because it imposes an impermissible risk of death on capital defendants w ho c hoose to exercise their right to a jury trial. A defendant who decides to plead guilty or no contest to an indictment, which contains one or more capital specifications, receives the benefit of having the trial court judge vested with the discretion to dismiss the specifications "in the interest of justice." Ohio R. Crim. P. 11(C)(3).

Adequate appellate review is undercut by the failure of the Ohio statutes to require the jury or three judge panel recommending life

imprisonment to identify the mitigating factors. Without that information, no significant comparison of cases is possible since no written findings exist to serve as a basis for comparison. Without a significant comparison of cases, there can be no meaningful appellate review.

Comparative scrutiny is possible only if sufficient data for comparison exists. There must be as much information regarding as many cases as possible for an accurate and significant comparison -- to provide a relevant basis for distinguishing cases and appropriate penalties. A standardized method is necessary for those comparisons. Yet, Ohio's system provides for procedures that are incompatible with meaningful comparisons of cases. These deficiencies include accelerated review, the requirement that only minimal information be included in written findings at sentencing, an undetermined method of comparison, and incomplete data.

The proportionality system in Ohio is also unconstitutionally flawed because of the method used for case comparisons. By only reviewing cases in which death was imposed, the capital defendant is prevented from receiving a fair proportionality review. No meaningful manner exists in which to distinguish those capital defendants who are deserving of the death penalty from those who are not.

The appropriateness analysis used by the Ohio Courts of Appeals and the Supreme Court of Ohio is also infirm. Ohio Revised Code §2929.05(A) requires the appellate courts of Ohio [to] determine the appropriateness of the death penalty in each capital case they review. The statute directs the court to "affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case." The Supreme Court of Ohio and the Court of Appeals have failed to follow the dictates of the statute. The appropriateness review ultimately conducted in each case is too cursory. It does not "rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not."

(*Amended Petition*, Doc.No. 30, at ¶¶ 290, 293, 294, 295, 297, 298, 299, and 300).

**Twenty-First Ground for Relief**: Petitioner Clemons was denied his right of due process and effective assistance of counsel contra the Fifth, Sixth, Eighth, and

Fourteenth Amendments to the Constitution because of the recent amendments to Ohio's postconviction process.

**Twenty-Second Ground for Relief**: The trial court exhibited bias and prejudice against Petitioner Clemons, thereby denying him a fair trial and reliable sentencing in violation of the guarantees of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

**Twenty-Third Ground for Relief**: Petitioner Clemons' sentence of death is constitutionally infirm because the trial court erroneously instructed the jury that they must unanimously find that the aggravating circumstances d o n ot o utweigh t he mitigating circumstances in order to recommend a life sentence.

**Twenty-Fourth Ground for Relief**: Trial counsel were ineffective for failing to object to the improper instruction that the jury must be unanimous in their recommendation of a life sentence.

**Twenty-Fifth Ground for Relief**: The trial court erred to the prejudice of Petitioner Clemons when it refused to give the jury an instruction on the offense of voluntary manslaughter, denying him a fair trial under the Fifth, Eighth, and Fourteenth Amendments to the Constitution.

**Twenty-Sixth Ground for Relief**: The trial court prejudiced Petitioner Clemons when it erroneously used an improper standard in death qualifying jurors contra the Fifth, Eighth, and Fourteenth Amendments to the Constitution.

**Twenty-Seventh Ground for Relief**: The Ohio death penalty statute violates the Supremacy Clause of the United States Constitution and various international laws including, but not limited to, the Organization of American States Treaty and the American Declaration of the Rights and Duties of Man.

**Twenty-Eighth Ground for Relief**: The process of selecting venire persons and grand jury forepersons to serve on grand juries in Hamilton County is tainted due to consideration of the factor of race in the drawing, selection, and impanelment of grand jurors in violation of the Fifth, Sixth, and Fourteenth Amendments.

**Twenty-Ninth Ground for Relief**: Petitioner Clemons was deprived of his right to the effective assistance of counsel during his direct appeal to the Ohio Supreme Court in violation of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

On November 28, 2000, in accordance with the scheduling order adopted by this Court on

October 17, 2000, respondent filed a motion to dismiss certain claims on the basis of procedural default. Petitioner filed a memorandum in opposition on January 31, 2000, and respondent filed a response to that memorandum in opposition on February 15, 2001.

On May 11, 2001, this Court stayed these proceedings to enable petitioner to complete his factual investigation and pursue additional state court remedies. (Doc.No. 36). The Court lifted the stay on September 30, 2002, and, on October 10, 2002, convened a status conference to devise a new scheduling order. On February 14, 2003, in accordance with the new scheduling order, (Doc.No. 46), respondent filed a renewed motion to dismiss procedurally defaulted claims, (Doc.No. 49). Petitioner filed a memorandum in opposition on February 28, 2003, and respondent filed a reply on March 7, 2003. These procedural issues are now ripe for decision.

### IV. Procedural Default Discussion

It does not appear that every claim petitioner has raised in his habeas corpus petition was presented to the Ohio courts either during the direct appeal or on collateral review. As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction. Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175 (1967). Issues that must be raised in a postconviction action pursuant to R.C. §2953.21 include claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial. *State v. Cole*, 2 Ohio St. 3d 112 (1982). In 1992, a third procedure of review emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to *State v. Murnahan*, 63 Ohio St.

3d 60 (1992) and Ohio R. App. P. 26(B).

In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The judgment of conviction must be appealed directly to the Supreme Court of Ohio, and any adverse decision rendered by the trial court in postconviction must be appealed to both the Ohio Court of Appeals and the Supreme Court of Ohio.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state

procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

Respondent alleges that eleven of petitioner's claims, in their entirety or in part, are subject to one or more state procedural defaults. Respondent asserts that grounds 4, 18D, 18F, 19E, 22, 23, 24, 25, 26, 27, and 28 are barred by procedural default. The Court will address each of these claims individually to determine whether those claims are subject to the procedural defaults alleged by respondent.

A. Ground Four -- Prosecutorial Misconduct During Opening and Closing Statements

In his fourth ground for relief, petitioner raises numerous allegations of prosecutorial misconduct, including allegations that the prosecutor made several improper statements during opening and closing remarks during the trial and mitigation phase. (*Amended Petition*, Doc.No. 30, ¶¶ 91-106). Respondent argues that many of the comments challenged by petitioner are procedurally defaulted because petitioner failed to object to them during trial, in violation of Ohio's contemporaneous objection rule. Aside from suggesting that he preserved his fourth ground for relief by raising it in his Rule 26(B) application for reopening -- the procedure in Ohio for raising claims of appellate counsel ineffectiveness -- petitioner offers no argument in response to the

14

procedural default argument asserted by respondent.

Respondent asserts that the following remarks were not objected to during trial:

Opening Statements during Guilt-Innocence Phase:

- the prosecutor stated that the evidence would show that Petitioner Clemons prepared for a slaughter. (Tr. Vol. XII, at 586).

- Petitioner Clemons had a gun for his "errand for the day." (*Id.* 593).

- "Gerald Clemons with prior calculation and design, and in an incredible act of cowardice purposely killed three innocent people *** and he would have killed more. He would have killed others if he could find out the ones who had screwed him over." (*Id.* 594).

Closing Arguments during Guilt-Innocence Phase:

- "Do you think it might be the breakfast and that he might need a little more courage to letting himself deliver this twisted, cowardly act of vengeance?" (Tr. Vol. XV, 1070).

- Saying that defense counsel had noted that Petitioner Clemons had "every right to sit here and cross his arms and not say a word and I can't comment at all on his failure to testify. But he had to testify. Do you know why he had to testify? He had to testify because otherwise there would have been absolutely no evidence that he went in there that day for work. None. Not a speck of evidence. The defendant had to testify." (*Id.* 1070-71).

- "But Clemons has to testify that he had to go in with these guns because he had to explain why he brought a gun for a check problem or a load problem. But even though he testified with this ridiculous thought he had to work that day, he was proven a liar yesterday and proven a liar today." (*Id.* 1072).

Closing Arguments during Mitigation Phase:

- Prosecutor said of defense counsel's argument, "Basically the message you are receiving is to ignore your orders, don't follow the law, do what you want to do." (Tr. Vol. XVII, 1327).

As noted above, petitioner does not appear to dispute respondent's assertion that none of these remarks were objected to during trial.

15

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule is applicable to the challenged claim, and, if so, whether petitioner violated the rule. Ohio's contemporaneous objection rule states, "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.***" Ohio R. Crim. P. 30(A); *State v. Williams*, 51 Ohio St. 2d 112, paragraph one of the syllabus (1977). Such errors are reviewed only for plain error, and therefore warrant relief only if the reviewing court determines that the outcome of the trial would clearly have been different but for the error. Ohio R. Crim. 52(B); *see also State v. Waddell*, 75 Ohio St. 3d 163, 166 (1996). Ohio's contemporaneous objection rule, though written with respect to jury instructions, also applies to claimed instances of prosecutorial misconduct during opening statements and closing arguments. *See, e.g., State v. Mason*, 82 Ohio St. 3d 144, 162-3 (1998); *see also State v. Jones*, 114 Ohio App. 3d 306, 315 (Ohio App. 2 Dist. 1996)(citing *State v. Wogenstahl*, 75 Ohio St. 3d 344 (1996); *State v. DeNicola*, 163 Ohio St. 140, syllabus (1955)). In the instant case, review of the transcript confirms respondent's assertion that petitioner failed to object to all but one of the instances of prosecutorial misconduct set forth above. It appears that petitioner did object to the prosecutor's comment during closing arguments at the mitigation phase that, "Basically the message you are receiving is to ignore your orders, don't follow the law, do what you want to do." (Tr. Vol. XVII, 1327-28). That being so, petitioner violated Ohio's contemporaneous objection rule as to all but the comment that the prosecution made during closing arguments at the mitigation phase; the first part of the *Maupin* test has been satisfied as to all but the comment set forth above.

Under the second part of the *Maupin* test, the Court must determine whether the state courts

16

actually enforced the procedural rule at issue. On direct appeal, the Supreme Court of Ohio noted that the six remaining challenges set forth above had been waived, for lack of objection, and that none amounted to outcome-determinative plain error.[6] *State v. Clemons, supra*, 82 Ohio St. 3d at 451-52; J.A. Vol. VI, at 210-11. Thus, the second part of the *Maupin* test has been satisfied as to the six comments petitioner seeks to challenge from the guilt-innocence phase of his trial.

The Court further finds that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to deny relief. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998). Ohio's contemporaneous objection rule is clearly stated and regularly enforced. *See, e.g., State v. Underwood*, 3 Ohio St. 3d 12, syllabus (1983)("The failure to object to a jury instruction constitutes a waiver of any claim of error thereto...."); *State v. Durkin*, 66 Ohio St. 2d 158, 161 (1981)(failure to object to jury instruction misallocating burden of proof constitutes waiver). Ohio's contemporaneous objection rule serves important state interests in

---

[6]        Consistent with the Court's determination that defense counsel did object to the prosecution's mitigation-phase comment, suggesting that defense counsel were asking the jurors to ignore their instructions and the law, the Ohio Supreme Court did not find that petitioner's challenge to the comment had been waived for want of objection, and went on to reject petitioner's challenge on the merits. *Clemons*, 82 Ohio St. 3d at 453; J.A. Vol. VI, at 211.

judicial economy and minimizing reversible error by enabling a trial court to prevent, correct, and minimize the effect of errors at the time they occur. Finally, Ohio's contemporaneous objection rule -- even with the application of plain error review -- does not rely on or otherwise implicate federal law. The Sixth Circuit has consistently ruled that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854, 866-71 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000); *see also Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Engle v. Isaac*, 456 U.S. 107, 124-25 (1982).

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim, absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow fundamental miscarriage of justice exception. Petitioner argues neither expressly.

Rather, petitioner appears to argue that he preserved his fourth ground for relief by including it in his Rule 26(B) application to reopen his direct appeal -- a procedure in Ohio for raising claims of ineffective assistance of appellate counsel. Citing *Buell v. Mitchell*, 274 F.3d 337, 361 (6th Cir. 2001), and *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001), *cert. denied sub nom. Lott v. Bagley*, 534 U.S. 1147 (2000), respondent argues that raising in a Rule 26(B) application for reopening a claim of appellate counsel ineffectiveness for appellate counsel's failure to raise an underlying claim is not the same as raising the underlying claim itself on direct appeal. In response to respondent's position, petitioner raises several arguments, the gravamen of which is that, because the Sixth Circuit has held that a Rule 26(B) application for reopening is related to the direct appeal process in Ohio, *see White*

18

*v. Schotten*, 201 F.3d 743, 752-53 (6ᵗʰ Cir. 2000), *cert. denied sub nom. Bagley v. White*, 531 U.S. 940 (2000), raising an underlying claim as an instance of appellate counsel ineffectiveness in a Rule 26(B) application essentially is no different that raising that underlying claim on direct appeal. Citing *Landrum v. Anderson*, 185 F.Supp. 2d 868 (S.D. Ohio 2002), petitioner goes on to argue that any procedural defaults enforced by the state courts in Rule 26(B) applications filed in capital cases on the ground of untimeliness should not be recognized, since the Ohio Supreme Court has neglected to enforce or even mention the 90-day filing period for 26(B) applications in capital cases. Finally, petitioner disputes respondent's interpretation of *Lott v. Coyle, supra*, as holding that raising an underlying claim as an instance of appellate counsel ineffectiveness in a Rule 26(B) application is not the same as raising the underlying claim on direct appeal.

To the extent that petitioner suggests that any claims were preserved for habeas corpus review by virtue of the fact that he raised them in his Rule 26 application for reopening, the Court rejects that suggestion. Under Ohio law, an application for reopening pursuant to App. R. 26(B) is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping substantive constitutional claims that were not raised on direct appeal. Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles. *Picard v. Connor*, 404 U.S. 270, 276-77 (1971). If petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.

Moreover, petitioner's interpretation of *White v. Schotten, supra*, is untenable. In *White v. Schotten*, the Sixth Circuit held, among other things, that criminal defendants in Ohio have a constitutional right to effective assistance of counsel in pursuing a Rule 26(B) application for

19

reopening of their direct appeals. (Criminal defendants have no such right in pursuing collateral remedies, such as state habeas corpus or post-conviction proceedings.) In so holding, the Sixth Circuit reasoned, "If the application for delayed reconsideration is neither part of a state habeas nor state postconviction proceeding, it must be a continuation of activities related to the direct appeal itself." *White, supra*, 201 F.3d at 752-53. Seizing upon that language, petitioner would have this Court hold that a Rule 26(B) application for reopening is the functional equivalent of a direct appeal, such that raising an underlying claim as an instance of appellate counsel ineffectiveness in a Rule 26(B) application would preserve that underlying claim as if it had been raised on direct appeal. Whatever else *White v. Schotten* stands for, it certainly does not stand for the proposition advanced by petitioner, and this Court is not inclined to so hold.[7]

Having concluded that petitioner did not preserve these claims by merely including them in his Rule 26(B) application for reopening, the Court must determine whether petitioner may nevertheless demonstrate cause and prejudice to excuse the apparent default of the portions of his fourth ground for relief identified above. The only "cause and prejudice" arguments offered by petitioner relate to his Rule 26(B) application to reopen his direct appeal. To the extent that petitioner might seek to assert appellate counsel ineffectiveness as cause for his procedural default, a review of the record reveals that petitioner did not raise his fourth ground for relief in his Rule 26(B) application. The Court is not permitted to consider as "cause" any claim of counsel ineffectiveness that petitioner did not first present to the state courts. *Edwards v. Carpenter*, 529

---

[7]  Notwithstanding petitioner's prolonged discussion of *Lott v. Coyle*, in the end, a claimed trial error that was raised for the first time in the petitioner's *Murnahan*/Rule 26(B) motion for delayed reopening, and only as a basis for a claim of appellate counsel ineffectiveness, was held by the Sixth Circuit to be procedurally defaulted -- in spite of the fact that the appellate court considered and rejected the appellate counsel ineffectiveness claim on the merits. *Lott v. Coyle, supra*, 261 F.3d at 612-13.

U.S. 446 (2000). Thus, the Court is constrained to find that petitioner has not demonstrated cause and prejudice to excuse the default of those portions of his fourth ground for relief to which he did not object at trial.

For the foregoing reasons, the Court concludes that petitioner's challenges to the six comments set forth above are procedurally defaulted, due to petitioner's failure to object to them during trial. Petitioner's fourth ground for relief is procedurally defaulted in part; respondent's motion to dismiss those portions of ground four will be granted as to all but the prosecutor's remark suggesting that defense counsel were asking the jurors to disregard their instructions and ignore the law.

B. Ground Eighteen (D) -- Trial Counsel Ineffectiveness in Developing Defense Strategy

In ground eighteen, sub-part (D), petitioner argues that his trial attorneys provided ineffective assistance by failing to prepare a strategy for the presentation of a defense. ( *Amended Petition,* Doc.No. 30, at ¶¶ 228-235). Specifically, petitioner argues that he was the sole witness presented by defense counsel and that defense counsel gave him only one day's notice that he would be taking the stand and did not otherwise prepare him to testify. Respondent argues that this claim is barred by *res judicata* because petitioner raised it for the first time in his postconviction action instead of raising it on direct appeal. Petitioner argues that *res judicata* is not applicable because he supported this trial counsel ineffectiveness claim with evidence *dehors* the record. Petitioner's argument, for reasons explained more fully below, is well taken.

The first part of the *Maupin* test requires the Court to determine whether a procedural rule is applicable to petitioner's claim and, if so, whether petitioner violated the rule. As noted *supra,* claims appearing on the face of the record must be raised on direct appeal or they will be waived

under Ohio's doctrine of *res judicata. State v. Perry, supra.* Claims that rely on evidence outside

the trial record are properly raised in a postconviction action pursuant to R.C. §2953.21.

Of the eight volumes of exhibits submitted by petitioner in support of his postconviction

action, his own affidavit appears to be the only exhibit relevant to the trial counsel ineffectiveness

claim presented in ground eighteen, sub-part (D). In his affidavit, petitioner averred that his trial

attorneys informed him only one day in advance that he would be taking the stand, and that the

extent of their efforts to prepare him to testify consisted of cautioning him against mentioning

Prozac, since the prosecution "had an expert and they did not have a similar expert," and warning

him to "watch out for [prosecuting attorney] Deters." *Affidavit of Gerald Clemons*, J.A., Vol. VIII,

at 2. The Ohio courts discounted petitioner's affidavit "[b]ecause the submission of a self-serving

affidavit cannot be given weight," and concluded that his claim was barred by *res judicata*. J.A. Vol.

XII, at 318.

After carefully reviewing the state court record, this Court agrees with petitioner that this

claim of trial counsel ineffectiveness was properly raised in his postconviction action because the

facts supporting that claim did not appear in the trial record and the claim relies on evidence *dehors*

the record. In determining whether *res judicata* applies to a constitutional claim, the inquiry is

properly focused on whether the claim genuinely relies on evidence that is outside the trial record

and that was not available at trial. *State v. Cole, supra*, 2 Ohio St. 3d 112. Thus, non-record

evidence submitted during postconviction proceedings to support a constitutional claim cannot be

superfluous or cumulative to evidence presented during trial; rather, that evidence must genuinely

support the claim in a manner that no record evidence could. *Cf. State v. Powell*, 90 Ohio App. 3d

260, 268 (Ohio App. Dist. 1 1993)(holding that additional evidence offered in postconviction to

support claim of trial counsel ineffectiveness during mitigation was merely cumulative to evidence presented at trial). Further, non-record evidence supporting a constitutional claim raised in postconviction proceedings, in addition to being relevant and material, must have been unavailable during trial. *See, e.g., State v. Scudder*, 131 Ohio App. 3d 470, 475 (Ohio App. 10 Dist. 1998); *State v. Lawson*, 103 Ohio App. 3d 307, 315 (Ohio App. 12 Dist. 1995). The affidavit submitted by petitioner during his postconviction proceedings meets all the criteria set forth above. That is, petitioner's affidavit constituted relevant, material evidence outside the record that supported his constitutional claim in a manner that no record evidence could and that was not available to support the constitutional claim at trial or on direct appeal.

The fact that petitioner's affidavit was the only evidence supporting his trial counsel ineffectiveness claim does not mean that the affidavit should have been disregarded as insufficient or marginally significant. In this case, petitioner's affidavit constitutes the type of off-the-record evidence that was significant enough to prevent petitioner from raising this trial counsel ineffectiveness claim on direct appeal. Petitioner's affidavit was not part of the trial record and there was no evidence on the record from which appellate counsel would have been able to argue on appeal that trial counsel failed to inform petitioner more than a day in advance that he would be testifying and failed to prepare him for his testimony. That information was uniquely in the possession of petitioner and his two trial attorneys.[8] Under those circumstances, had the claim been raised on direct appeal, it likely would have failed under the *Strickland* test governing claims of

---

[8] It does not appear that petitioner submitted affidavits from either of his two trial attorneys discussing the circumstances leading up to the decision to have petitioner testify. Nor does it appear that petitioner otherwise documented what efforts, if any, he made to secure affidavits or other documentary evidence from his trial attorneys about this issue.

ineffective assistance of counsel because there was no evidence in the record that would have supported petitioner's allegations about the decision to have him testify or a finding of prejudice. Petitioner's affidavit was specific and not so manifestly implausible as to defy credibility and, further, was not contradictory of anything that appeared on the record. It would appear, therefore, that petitioner's affidavit qualifies as evidence outside the record saving this particular claim of trial counsel ineffectiveness from being barred by *res judicata*.

The Court is mindful that courts tend to discount the worth of self-serving affidavits that are not corroborated by objective evidence. Respondent cites *State v. Kapper*, 5 Ohio St. 3d 36, 37-38 (1983), for the proposition that self-serving affidavits do not, without more, constitute evidence *dehors* the record sufficient to defeat the application of *res judicata*. The Court disagrees. *Kapper* held only, "Defendant's own self-serving declarations or affidavits alleging a coerced plea are insufficient to rebut the record on review which shows that his plea was voluntary." *Id.* at 38. *Kapper* is distinguishable from this case because Petitioner Clemons' affidavit was not submitted to rebut or contradict evidence presented at trial, such as a record colloquy establishing the voluntariness of a guilty plea; rather, petitioner's affidavit supported a claim of trial counsel ineffectiveness about which no record evidence spoke either way. Although it is true that a self-serving affidavit generally is not sufficient to establish and warrant relief on a constitutional violation, *Caudill v. Jago*, 747 F.2d 1046, 1051 (6th Cir. 1984); *Snyder v. Grayson*, 872 F.Supp. 416, 420 (E.D. Mich. 1994), *aff'd*, 57 F.3d 1070 (6th Cir. 1995), *cert. denied*, 516 U.S. 889 (1995), the same self-serving affidavit can, under certain circumstances, be sufficient to state a colorable claim for relief.

The Court is also mindful that this conclusion is at odds with that reached by the state courts.

The last state court to have addressed this issue, *i.e.*, the Ohio Court of Appeals, concluded that this

claim had been waived under Ohio's doctrine of *res judicata*.  As a general rule, this Court does not

sit in judgment of a  state court's i nterpretation o f s tate p rocedural r ules.  I t b ears r eminding,

however, that in the context of determining whether a federal constitutional claim is procedurally

defaulted, due to the petitioner's failure to comply with a state procedural rule, the first part of the

*Maupin* test requires a federal court -- not just to accept the state courts' determination that the

petitioner violated a procedural rule -- but to independently determine for itself whether the

petitioner violated a procedural rule.  This approach finds support in Sixth Circuit case law.  *Greer*

*v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002), the Sixth Circuit

disagreed with the Ohio courts' determination that the petitioner's trial counsel ineffectiveness claim,

raised for the first time in postconviction and supported by numerous affidavits outside the trial

record, could have been raised on direct appeal.  The Sixth Circuit explained:

> Generally, a federal habeas court sitting in review of a state-court judgment should
> not second guess a state court's decision concerning matters of state law.
> Nevertheless, when the record reveals that the state court's reliance upon its own rule
> of procedural default is misplaced, we are reluctant to conclude categorically that
> federal habeas review of the purportedly defaulted claim is precluded.

*Greer, supra*, 264 F.3d at 675 (citation omitted); *see also Cowans v. Bagley*, 236 F.Supp. 2d 841,

862-64 (S.D. Ohio 2002)(discussing *Greer v. Mitchell* and reaching same result).  Thus, without

expressing any opinion as to the cogency of petitioner's affidavit or the merits of this particular

claim, the Court concludes that the claim was properly raised in state postconviction.

Accordingly, the Court concludes that petitioner's affidavit constitutes evidence outside the

record saving this particular claim of trial counsel ineffectiveness from being barred by *res judicata*.

That is, petitioner did not violate Ohio's *res judicata* rule by raising ground eighteen, sub-part (D)

in his postconviction action.  Respondent's motion to dismiss this ground as procedurally defaulted will be denied.

### C.  Ground Eighteen (F) -- Trial Counsel Ineffectiveness During Voir Dire

In ground Eighteen, sub-part (F), petitioner argues that his trial attorneys provided ineffective assistance in connection with voir dire proceedings.  Respondent argues that petitioner waived this ground because he failed to raise it in any state court.  Petitioner insists that he raised this trial counsel ineffectiveness claim in his " *Murnahan*" application to reopen his direct appeal as an instance of appellate counsel ineffectiveness.

Under the first part of the *Maupin* test, the Court must determine whether a procedural rule is applicable to petitioner's claim and, if so, whether petitioner violated that rule.  As noted *supra*, claims appearing on the face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata*.  *State v. Perry, supra*.  Petitioner argues in claim eighteen, sub-part (F), that his trial attorneys provided ineffective assistance during voir dire proceedings for questioning prospective jurors on their familiarity with the effects of Prozac, when counsel subsequently failed to present any evidence on the effects of Prozac; and for mentioning, when explaining that the prosecution was required to prove specific intent, that petitioner did kill the three victims.  Those allegations squarely appear on the face of the record and, accordingly, should have been raised on direct appeal.  Petitioner violated Ohio's doctrine of *res judicata* when he failed to do so.  The first part of the *Maupin* test has been satisfied.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the procedural rule.  The Court deems the second part of the *Maupin* test to have been met because petitioner presented this claim to the Ohio courts in a forum that never afforded

them the opportunity to enforce the procedural rule at issue. The only place that petitioner raised the allegation of trial counsel ineffectiveness during voir dire was in his Rule 26 application to reopen his direct appeal; there, the claim was presented to the Ohio Supreme Court -- not as a substantive, independent claim -- but as one of thirty-two instances of alleged appellate counsel ineffectiveness. The Ohio Supreme Court summarily dismissed petitioner's Rule 26 application because appellate counsel, in that court's opinion, had provided effective assistance. Thus, the Supreme Court of Ohio was precluded from addressing or enforcing the doctrine of *res judicata* against petitioner's claim of trial counsel ineffectiveness during voir dire, due to the manner in which petitioner presented the claim to that court. Accordingly, this Court deems the second part of the *Maupin* test to have been met.

Under the third part of the *Maupin* test, the Court must determine that the state procedural rule is an adequate and independent ground upon which to deny relief. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The determination of whether a state procedural rule is an adequate ground for denying relief necessarily focuses on the procedural rule at issue, namely, the *Perry* rule. The Court of Appeals

for the Sixth Circuit, as well as other courts within this district, have consistently held, and recently reaffirmed, that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998); *see also Zuern v. Tate*, 101 F.Supp.2d 948, 959-960 (S.D. Ohio 2000), *aff'd in part, rev'd in part on other grounds*, -- F.3d -- , 2003 WL 21665159 (6th Cir. Jul. 17, 2003); *Jamison v. Collins*, 100 F.Supp.2d 647, 768 (S.D. Ohio 2000).  The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole*, 2 Ohio St. 3d 112; *State v. Ishmail*, 67 Ohio St. 2d 16.  Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  That Ohio courts may on occasion elect to ignore or forgive non-compliance with its procedural rules has no bearing on the general question of whether the *Perry* rule is adequate.  With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law.  Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief as to ground eighteen, sub-part (F).

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim, absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow fundamental miscarriage of justice exception.  Insisting that he preserved ground eighteen, sub-part (F), merely by including it in his Rule 26 application for reopening, petitioner has not attempted to demonstrated either.  As noted *supra*, a claimed trial error is not preserved for habeas corpus review merely because it was

presented to the state courts in a Rule 26 application. Because petitioner included this claim in his

Rule 26 application for reopening as an instance of appellate counsel ineffectiveness, however, the

Court presumes that petitioner is asserting ineffective assistance of appellate counsel as cause for

the default of ground eighteen, sub-part (F). The Court will accordingly address that argument.

In order to qualify as cause for a procedural default, counsel ineffectiveness must rise to the

level of an independent constitutional violation under the standard established in *Strickland v.*

*Washington*, 466 U.S. 668, 687-89 (1984). "[T]he mere fact that counsel failed to recognize the

factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not

constitute cause for a procedural default. *** So long as a defendant is represented by counsel whose

performance is not constitutionally ineffective under the standard established in *Strickland v.*

*Washington, supra*, we discern no inequity in requiring him to bear the risk of attorney error that

results in a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986).

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987).

Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*,

469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on'

those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective

appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S.

745, 751-52 (1983)). The Court of Appeals for the Sixth Circuit has identified the following

considerations that ought to be taken into account in determining whether counsel on direct appeal

performed reasonably competently:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?

4.     Were the omitted issues objected to at trial?

5.     Were the trial court's rulings subject to deference on appeal?

6.     Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7.     What was appellate counsel's level of experience and expertise?

8.     Did the petitioner and appellate counsel meet and go over possible issues?

9.     Is there evidence that counsel reviewed all the facts?

10.    Were the omitted issues dealt with in other assignments of error?

11.    Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999). The Sixth Circuit has cautioned, however, that this list is not exhaustive and need not produce a certain "score." *Id.* at 428.

Petitioner presumably asserts that his appellate attorneys were constitutionally ineffective for failing to raise on appeal trial counsel's unreasonable and prejudicial deficiencies during voir dire. By rejecting petitioner's Rule 26 application to reopen his direct appeal, the Supreme Court of Ohio found that petitioner's appellate attorneys had provided effective assistance. Respondent correctly asserts that, in order for this Court to conclude that petitioner's appellate attorneys provided ineffective assistance, and therefore conclude that petitioner can demonstrate cause for the default of ground eighteen, sub-part (F), the Court must find that the Ohio Supreme Court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. §2254(d)(1); *Terry Williams v. Taylor*, 529 U.S. 362, 402-402 (2000); *Doan v. Brigano*, 237 F.3d 722, 729-730 (6th Cir. 2001). With respect to claims of ineffective assistance of counsel, *Strickland v. Washington, supra* , squarely constitutes "clearly established Federal law." *Williams*, 529 U.S. at 413. To demonstrate that the Ohio Supreme Court's decision rejecting his claim of appellate counsel ineffectiveness for failing to raise trial counsel's

deficiencies during voir dire was so erroneous as to warrant relief, petitioner must show that the decision was more than just "incorrect" or "erroneous;" he must show that the decision was objectively unreasonable.  *See Williams*, 529 U.S. at 412;  *Doan*, 237 F.3d at 729-730.  This, petitioner cannot do.

Petitioner charges that his appellate attorneys were constitutionally ineffective for failing to raise on appeal, among other issues, the fact that trial counsel provided ineffective assistance during voir dire by asking prospective jurors about their familiarity with the effects of Prozac, when counsel subsequently failed to introduce any testimony about the effects of Prozac.  Petitioner has not demonstrated, and the record does not otherwise show, that this trial counsel ineffectiveness allegation was so significantly and obviously stronger than the issues that were raised on appeal, that appellate counsel's performance could be characterized as objectively unreasonable.  Accordingly, petitioner has not demonstrated that the Ohio Supreme Court's conclusion that appellate counsel provided effective assistance during petitioner's direct appeal was incorrect or erroneous,  *not to mention* unreasonable.  For that reason, this Court concludes that appellate counsel ineffectiveness does not constitute cause for the default of ground eighteen, sup-part (F).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray*, *supra*, 477 U.S. at 496.  If the petitioner alleges that he is actually innocent of the underlying offense, then to qualify for the miscarriage of justice exception, he must demonstrate, based on reliable evidence not presented at trial, that a constitutional error has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 324 (1995)(citing *Murray v. Carrier*, *supra*).  If, however, the nature of petitioner's actual innocence

31

claim is that he is actually innocent of the death sentence, as opposed to the underlying offense, then he must satisfy the more stringent test of demonstrating, by clear and convincing evidence, that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty under applicable state law. *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992). In either case, the Supreme Court has repeatedly emphasized the narrow scope of the fundamental miscarriage of justice exception. *Sawyer*, 505 U.S. at 340; *see also McCleskey v. Zant*, 499 U.S. 467, 502 (1991); *Dugger v. Adams*, 489 U.S. 401, 412 n.6 (1989). Further, to satisfy this narrow fundamental miscarriage of justice exception, petitioner must establish a connection between the procedurally defaulted issue and the verdict. Petitioner has not argued, and it does not otherwise appear, that this is the type of "extraordinary case" contemplated by *Murray*. Furthermore, the trial record is replete with substantial evidence of petitioner's guilt. The Court concludes that the narrow fundamental miscarriage of justice exception has not been satisfied. Sub-part (F) of petitioner's eighteenth ground for relief is barred by procedural default and respondent's motion to dismiss this ground will be granted.

   D. Ground Nineteen (E) -- Trial Counsel Ineffectiveness in Not Obtaining Psychologist

   In sub-part (E) of his nineteenth ground for relief, petitioner argues that his trial attorneys provided ineffective assistance in failing to obtain an independent psychologist to assist them in preparing for the mitigation phase of the trial. Respondent argues that this claim is barred under Ohio's doctrine of *res judicata* because petitioner raised the claim in his postconviction action instead of raising it on direct appeal. Petitioner insists that *res judicata* does not apply to ground nineteen, sub-part (E), because that claim relied on evidence outside the record. Petitioner's argument is well taken.

32

With respect to the first part of the *Maupin* test, the Court concludes that the *res judicata* bar was not applicable to ground nineteen, sub-part (E), because that claim relied on and was supported by evidence outside the record. After carefully reviewing the state court record, the Court agrees that this trial counsel ineffectiveness claim could not have been raised on direct appeal. Petitioner's assertion about the usefulness of the testimony that an independent psychologist could have provided regarding the nature and effect of petitioner's upbringing, employment history, mental state, history of depression and substance abuse, and possible misuse of various medications, convinces the Court that such off-the-record evidence was significant enough that petitioner was prevented from raising this trial counsel ineffectiveness claim on direct appeal. In determining whether *res judicata* applies, the Court focuses its inquiry -- not on how speculative the non-record evidence is -- but only on whether the claim is supported by evidence outside the record. Neither the affidavit and psychological report prepared by Hugh A. Turner, Psy.D., nor the affidavit prepared by mitigation specialist Dorian L. Hall, were part of the trial record and there was no evidence from which appellate counsel could have argued on appeal that the failure to present the testimony of a psychologist as a mitigation expert would have elicited information favorable to petitioner. A review of the record reveals that evidence regarding petitioner's upbringing, employment history, relationships, substance abuse, and medical history was scattered throughout the record and was disjointed. Dr. Turner's affidavit set forth a detailed account of petitioner's mental and emotional development, mental disposition, drug and alcohol abuse dating back to pre-adolescence, significant stressors in the weeks prior to the shootings and undertook to provide a nexus between that background and the commission of the offense. This affidavit constituted evidence that simply was not part of the trial record. Had the claim been raised on direct appeal, it likely would have failed

the prejudice prong of the *Strickland* standard governing claims of ineffective assistance of counsel simply because there was no evidence in the record that would support a finding of prejudice. The Court is satisfied that Dr. Turner's affidavit qualifies as evidence outside the record, thus saving this particular claim of trial counsel ineffectiveness from being barred by *res judicata*. For the foregoing reasons, the Court finds that petitioner was not required to raise this claim on direct appeal. This claim is properly before the Court for a merits review. Respondent's motion to dismiss ground nineteen (E) will be denied.

### E. Ground Twenty-Two -- Trial Court Bias against Petitioner

Petitioner argues in his twenty-second claim for relief that the trial court exhibited bias and prejudice against him. (*Amended Petition*, Doc.No. 30, at ¶¶ 310-318). Specifically, petitioner argues that the trial court engaged in a colloquy with family members of the victims that cast doubt on his impartiality and allowed one person to make disparaging remarks about defense counsel; that the trial court stated during sentencing proceedings that he was sending a message to the community "loud and clear;" and that the trial court, during a hearing on petitioner's motion for a new trial, took personal affront to defense counsel's suggestion that he might have been distracted by his re-election campaign during petitioner's trial and proceeded to berate defense counsel for suggesting as much. Respondent argues that petitioner's claim is procedurally defaulted under Ohio's doctrine of *res judicata*, because he raised it for the first time in his state postconviction action instead of raising it on direct appeal.[9] Petitioner does not dispute respondent's assertion, and appears to argue instead that he preserved ground twenty-two by including it in his Rule 26(B) application for reopening.

---

[9]       In the original motion to dismiss, respondent argued that petitioner's claim was procedurally defaulted because it had never been presented to the state courts.

The allegations of judicial bias set forth in ground twenty-two appear to be procedurally defaulted. Petitioner's allegations are based entirely on the record. The instances of judicial bias that petitioner seeks to challenge, *i.e.*, comments made by the trial court during petitioner's sentencing and during proceedings on petitioner's motion for a new trial, plainly appear on the face of the record. The only exhibit that petitioner submitted during his postconviction proceedings in support of this claim, Exhibit FF to his amended postconviction action, (J.A. Vol. IX, at 211-264), was the very motion for a new trial, with accompanying exhibits, that was submitted to and considered by the trial court. (Transcript, J.A. Vol. III, at 1424-39). Applying the first part of the *Maupin* test, then, the Court concludes that petitioner violated Ohio's *res judicata* rule when he failed to raise these allegations on direct appeal.

Turning to the second part of the *Maupin* test, the state courts clearly enforced the procedural rule against petitioner's claim. Both the trial court and the court of appeals found that petitioner's judicial bias claim was based entirely on the trial record, and concluded that petitioner's claim was barred under Ohio's doctrine of *res judicata*. (J.A. Vol. XI, at 317; J.A. Vol. XII, at 322). As for the third part of the *Maupin* test, the Court has already determined that Ohio's doctrine of *res judicata* is an adequate and independent ground upon which to deny relief.

The Court having determined under the first three parts of the *Maupin* test that petitioner's claim is barred by *res judicata*, it is incumbent upon petitioner under the fourth part of the *Maupin* test to demonstrate cause and prejudice to excuse the default. Petitioner does not expressly offer a cause and prejudice argument. To the extent that petitioner argues that he preserved this claim simply by including it in his Rule 26(B) application to reopen his direct appeal, the Court has already rejected that argument. Part IV.A., *supra*. However, because petitioner included this claim in his