Rule 26(B) application as an instance of ineffective assistance of appellate counsel, the Court is willing to presume that he is asserting appellate counsel ineffectiveness as cause for the default of his twenty-second ground for relief.

For appellate counsel ineffectiveness to satisfy as cause for the default of ground twenty-two, it must appear both that petitioner's appellate attorneys performed deficiently in not raising these allegations of judicial bias on direct appeal, and that petitioner was prejudiced by counsel's deficient performance in that regard. The Court is not persuaded either that petitioner's appellate attorneys performed unreasonably in not raising this issue on appeal, or that petitioner was prejudiced by appellate counsel's failure to raise the issue. Under Ohio law, challenged statements or actions of the trial judge in a criminal case do not warrant reversal of the conviction or death sentence unless the defendant demonstrates prejudice. *See, e.g., State v. Wagner*, 80 Ohio App. 3d 88, 93 (Ohio App. 12 Dist. 1992)(party alleging judicial bias must set forth evidence to overcome presumption of integrity that trial judge enjoys). Thus, a defendant alleging judicial bias or misconduct will not prevail merely on the basis of speculation or possibilities; rather, he must demonstrate actual prejudice or establish that the jury was aware of the alleged bias. Petitioner has made no such showing in this case.

In light of the substantial unlikelihood that petitioner's allegations of judicial bias would have warranted relief under Ohio law, it cannot be said either that his appellate attorneys performed deficiently in not raising the allegations on direct appeal, or that petitioner's appeal was prejudiced by counsel's omission of the issue. Petitioner's appellate attorneys raised seventeen issues on appeal. While some of those consisted of the traditional "boilerplate" issues that are raised in nearly every capital case, most of the issues were strong and well-argued. It certainly cannot be said that

36

the allegations of judicial bias set forth in petitioner's twenty-second ground for relief were more

significant and obvious than the issues that appellate counsel did raise. As noted *supra*, the weight

of authority on the issue of judicial bias/misconduct did not favor petitioner, especially in light of

the fact that the challenged comments were not objected to at trial. In short, the Court is not

persuaded that the decision by appellate counsel to omit the issue, even if it was inadvertent, was an

unreasonable decision that only an incompetent attorney would make. *See Mapes v. Coyle, supra*,

171 F.3d at 427-28. That being so, petitioner has not demonstrated cause to excuse the default of

his twenty-second ground for relief. Respondent's motion to dismiss ground twenty-two as

procedurally defaulted will be granted.

    F. <u>Ground Twenty-Three -- Trial Court's Instruction as to Unanimity in Rejecting Death</u>

       In his twenty-third ground for relief, petitioner argues that the trial court erred in instructing

the jurors that, in order to recommend a life sentence, they had to unanimously find that the

aggravating circumstances did not outweigh the mitigating factors. (*Amended Petition*, Doc.No. 30,

at ¶¶ 319-321). Respondent argues that this claim is procedurally defaulted because petitioner failed

to raise the claim either on direct appeal or in his postconviction action, and instead, raised it for the

first time in his Rule 26(B) application to reopen his direct appeal. Respondent further argues that

ineffective assistance of appellate counsel does not constitute cause for the default of ground twenty-

three, because appellate counsel did not perform unreasonably or to petitioner's prejudice in failing

to raise the issue on direct appeal.

       At first glance, petitioner's claim appears to be procedurally defaulted. Petitioner violated

Ohio's doctrine of *res judicata* when he failed to raise this jury instruction challenge -- a claim

clearly apparent from the face of the record -- on direct appeal. The Court deems the second part of

the *Maupin* test to have been met, insofar as the state courts, by virtue of petitioner's failure to present this claim as anything but an allegation of appellate counsel ineffectiveness, were never given the opportunity to enforce the procedural rule against petitioner's claim. As for the third part of the *Maupin* test, the Court has already determined that Ohio's *res judicata* rule is an adequate and independent state ground upon which to deny relief.

The Court having determined that the first three parts of the *Maupin* test have been satisfied, all that remains to be determined is whether petitioner can demonstrate cause and prejudice to excuse the apparent default of his twenty-third ground for relief. To that end, petitioner asserts ineffective assistance of appellate counsel as cause for the default. Thus, the issue before the Court is whether petitioner's appellate attorneys performed unreasonably in not raising this claim on direct appeal and whether petitioner was prejudiced by their deficient performance in this regard. If the Court answers both questions in the affirmative, then petitioner's twenty-third ground would not be barred by procedural default, and would be entitled to a full review on the merits.

The determination of whether petitioner's appellate attorneys were constitutionally ineffective for failing to raise this jury instruction issue on appeal must be begin with scrutiny of the challenged jury instruction itself. At issue in this case is that portion of the mitigation phase jury instructions during which the trial judge read to the jurors the actual verdict forms:

> The second verdict form in Count 1: State of Ohio versus Gerald L. Clemons and same case number: We, the jury, unanimously find that the aggravating circumstances the defendant was found guilty of committing in Count 1 do not outweigh the mitigating factors, and recommend that the defendant be sentenced to life imprisonment with parole eligibility after thirty full years of imprisonment.

(J.A. Vol. III, Tr. at 1361). Petitioner was charged with three counts of aggravated murder, each of which carried with it three possible sentences: death, life imprisonment with parole eligibility after

38

twenty years of full imprisonment, and life imprisonment with parole eligibility after thirty years of full imprisonment. Because the trial court read the verdict forms as to each aggravated murder charge, the trial court read this particular instruction a total of six times. ( *Id.* at 1361-64). The essence of petitioner's twenty-third ground for relief is that the wording of this particular verdict form would have lead a reasonable juror to conclude that the jurors could consider the life sentence options only if they first unanimously rejected the death penalty. Petitioner's argument is not easily dismissed. It is difficult to construe the jury instruction at issue as conveying any message but that the jury was required to unanimously reject the death sentence before it could consider the life sentence options.

In Ohio, in order for a jury to recommend the death sentence, the jury must unanimously find that the aggravating circumstances outweighed the mitigating factors. O.R.C. § 2929.03(D)(2). At the time that petitioner was tried, §2929.03(D)(2) provided:

> Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. *If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or life imprisonment with parole eligibility after serving thirty full years of imprisonment.*

R.C. §2929.03(D)(2)(1995)(emphasis added). It is not necessary, however for the jury to be unanimous in rejecting the death sentence or in finding the existence of mitigating factors. Requiring

unanimity on those findings is prohibited by the Eighth Amendment.[10]  In *State v. Brooks*, 75 Ohio St. 3d 148, 160-62 (1996), the Supreme Court of Ohio held that the capital defendant in that case had been denied a fair trial by the trial court's penalty phase instruction requiring the jury to unanimously find that the death penalty was inappropriate before it could consider the life imprisonment alternatives.  In so holding, the Ohio Supreme Court emphasized, "[A] solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors.  Jurors from this point forward should be so instructed." *Id.* at 162.

Penalty phase instructions that follow or attempt to follow the language §2929.03(D)(2) have been problematic in Ohio because the jury's ultimate sentencing verdict -- whether it is death or one of the life imprisonment alternatives -- must be unanimous.  As §2929.03(D)(2) is written, a solitary juror can prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors.  Once it becomes clear that the jury cannot issue a unanimous death penalty recommendation, because one or more jurors have found that the aggravating circumstances do not outweigh the mitigating factors, then the jury must proceed to consider life imprisonment, and *that* resulting verdict must be unanimous.  *State v. Jenkins*, 15 Ohio St. 3d 164, 213-4 (1984).  In striving to ensure that a jury's life sentence recommendation is unanimous, trial courts often give instructions suggesting that the jury must first unanimously find that the aggravating circumstances in the case do not outweigh the mitigating factors, which is certainly not the case.  A life sentence recommendation, just like a death sentence recommendation,

---

[10]     *See McKoy v. North Carolina*, 494 U.S. 433, 435 (1990)(holding that the Eighth Amendment prohibited sentencing scheme that allowed jury, in determining whether aggravating circumstances were sufficient to justify imposition of death penalty, to consider only mitigating circumstances found unanimously by jury);*see also Mills v. Maryland*, 486 U.S. 367 (1988)(resentencing required where instruction created substantial probability that the jurors thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance).

must be unanimous. However, that unanimous life sentence recommendation can result from an inability of the part of the jurors to achieve unanimity on whether to recommend a death sentence, and does not require, as a precondition, a unanimous finding by the jury that the aggravating circumstances did not outweigh the mitigating factors. Constitutional error occurs when there is a substantial probability that the jurors would have believed, due to the trial court's instructions, that it could consider the various life sentence alternatives only after unanimously rejecting the death penalty.

Recently, the Sixth Circuit held, "Instructions that leave a jury with the impression that juror unanimity was required to mitigate the punishment from death to life imprisonment clearly violate the Eighth Amendment...." *Davis v. Mitchell*, 318 F.3d 682, 685 (6th Cir. 2003). Of course, the question presently before the Court is -- not whether the jury instruction at issue may be viewed as constitutionally infirm under current law -- but whether petitioner's appellate attorneys may be viewed as constitutionally ineffective in failing to raise this issue at the time of petitioner's direct appeal. The Court is guided in this determination by *Mapes*.

As noted *supra*, the Court of Appeals for the Sixth Circuit has identified the following factors to consider in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?
9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle, supra,* 171 F.3d at 427-28.

Without expressing any opinion as to whether the challenged jury instruction is actually erroneous, the Court is of the view that the jury instruction is at least problematic. With respect to whether a reasonable attorney would have challenged this jury instruction on appeal, the jury instruction at issue is fairly characterized as "significant and obvious." The instruction was given six times, appeared on the verdict forms that the jury had with them during penalty phase deliberations, and *appears* to be contrary to R.C. §2929.03(D)(2), not to mention the Eighth Amendment. It cannot be said that there was contrary authority on this issue. The Ohio Supreme Court's *Brooks* decision lends support to petitioner's argument challenging the propriety of the instruction, and every Ohio decision this Court reviewed in which the issue was raised and rejected did so on the basis that the challenged instruction was somehow distinguishable from the instruction in *Brooks*, requiring the jury to unanimously reject the death sentence before considering the life imprisonment alternatives.[11] The challenged jury instruction was not objected to at trial. Thus, it is difficult to answer the fifth *Mapes* factor, *i.e.,* whether the trial court's rulings were subject to deference on appeal. Since there was no objection to the jury instruction at issue, the trial court did not make any ruling relating specifically to the challenged instruction.

Continuing with the *Mapes* factors, the omitted issue was clearly stronger than most of the

---

[11]    *See, e.g., State v. Goff,* 82 Ohio St. 3d 123, 129 (1998)(finding that trial court was not required to instruct jury that solitary juror could prevent death verdict, since appellant's trial preceded the *Brooks* decision, and finding that instruction prohibited by *Brooks* was not given in appellant's case); *State v. Davis,* 76 Ohio St. 3d 107, 117-8 (1996)(unlike *Brooks,* jury was not instructed that it was required to unanimously determine that death was inappropriate before it could consider life sentence alternatives); *see also State v. Taylor,* 78 Ohio St. 3d 15, 29 (1997)(same); *State v. Lamar,* No. 95 CA 31, 1998 WL 514 548 (Ohio App. 4 Dist. Aug. 13, 1998)(same).

issues that were presented.  Further, the omitted issue was not dealt with in any other assignments of error.  Appellate counsel raised seventeen issues on appeal.  The vast majority of those issues are fairly characterized as "boilerplate" challenges to the constitutionality of Ohio's death penalty statutes, standard jury instructions, and burdens of proof that are prescribed by statute; these challenges are routinely rejected by the Ohio Supreme Court without opinion.  That appellate counsel raised seventeen issues on appeal arguably would suggest that "winnowing out weaker arguments" was not a priority and, to be fair, appellate attorneys in capital cases might reasonably decide to err on the side of inclusion.  In light of the fact that a challenge to jury instruction was clearly stronger than most of the issues that were actually presented, and the fact that appellate counsel essentially abandoned the "winnowing out" strategy in favor of inclusion, the omission by appellate counsel of any challenge to the "unanimity" instruction is questionable under this *Mapes* factor.

Several *Mapes* factors either are not reflected by the record or do not speak one way or the other about appellate counsel's performance.  Appellate counsel has never testified in a collateral proceeding about their strategy on appeal.  The record simply does not reflect whether or to what extent appellate counsel met with petitioner to discuss possible issues to raise on appeal.  Nor does the record reflect the level of counsel's experience and expertise.  As for whether there is evidence demonstrating that appellate counsel reviewed all of the facts, although there is no direct evidence demonstrating as much, a review of the briefs, correspondence, and other pleadings filed by petitioner's appellate attorneys strongly indicate that they thoroughly reviewed the transcript and trial record, and were well versed in the facts of petitioner's case and the trial proceedings themselves.

The final *Mapes* factor directs the Court to consider whether the decision to omit the issue was an unreasonable decision that only an incompetent attorney would make.  The Court is reluctant

to answer that inquiry in the affirmative, and is of the view that it is more likely that appellate counsels' omission of this issue was inadvertent. That said, neglect of an issue of this magnitude is unreasonable. As the Court noted in detail above, the omitted issue was significant and obvious, the omitted issue was clearly stronger than most of the issues that were presented, there arguably was no contrary authority, and the omitted issue was not dealt with in any other assignment of error. The pivotal case on this issue, *State v. Brooks, supra*, 75 Ohio St. 3d 148, which stated in no uncertain terms that a jury was not required to unanimously find that the death penalty was inappropriate before it could consider the life imprisonment alternatives, was issued on March 4, 1996 -- a full year before petitioner's appellate attorneys filed their merit brief in the Ohio Supreme Court; thus, appellate counsel should have been aware of and familiar with      *Brooks*. Even before *Brooks*, however, capital defendants were routinely challenging any penalty phase instruction that was susceptible of being interpreted to require unanimity among jurors in rejecting the death penalty. *See, e.g., State v. Springer*, 63 Ohio St. 3d 167 (1992); *State v. Esparza*, 38 Ohio St. 3d 8, 12 (1988); *State v. Williams*, 23 Ohio St. 3d 16, 22 (1986); *State v. Jenkins*, 15 Ohio St. 3d 164, 213-4 (1984). A reasonable attorney in a capital appeal would not have omitted this issue, inadvertently or deliberately. In so holding, the Court is mindful that capital appeals are complex and demanding, and involve painstaking review of countless volumes of transcripts, pleadings, records, and case law. It may seem somewhat draconian to fault an attorney for missing an issue here or there, for the Sixth Amendment does not entitle criminal defendants to flawless representation. But the Sixth Amendment does entitle criminal defendants to a reasonably effective representation, and the omission of this issue simply cannot be excused as understandable oversight. Accordingly, the Court is constrained to characterize appellate counsel's performance in this regard as deficient under the

first prong of *Strickland*.

The Court further concludes that, under the prejudice prong of       *Strickland*, there is a reasonable probability that the outcome of petitioner's appeal would have been different had appellate counsel raised this issue.  At the time that petitioner's appeal was filed, Ohio case law characterized as reversible error an instruction to a capital jury requiring it to unanimously reject the death sentence before considering life imprisonment.  The jury instruction at issue in this case arguably does just that.[12]  Had appellate counsel raised this issue on appeal, there is a reasonable probability that the outcome of petitioner's appeal would have been different.

Having concluded that appellate counsel ineffectiveness constitutes "cause" for the default of petitioner's twenty-third ground for relief, the Court must determine whether petitioner has met the "prejudice" prong of the cause-and-prejudice test.  To satisfy the prejudice prong, petitioner must show "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension."  (emphasis in original).  *United States v. Frady*, 456 U.S. 152, 170 (1982).  Thus, petitioner does not satisfy the prejudice prong simply by asserting that his claim is meritorious or that the result of his trial or penalty hearing would have been different.  *See Scott v. Mitchell*, 209 F.3d 854, 872 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000).  When reviewing a challenged jury instruction in this context, the relevant inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned."  *Scott*, 209 F.3d at 872 (citing *Frady*, 456

---

[12]       It bears reminding that nothing about the Court's discussion of this issue should be construed, at this time, as a ruling on the merits of petitioner's twenty-third ground for relief.

U.S. at 169). This standard applies to challenges to jury instructions in the penalty phase of a capital trial. *Scott*, 209 F.3d at 872.

After careful review, the Court is satisfied that prejudice has been demonstrated. The Court is persuaded by a number of factors, not the least of which is the fact that the instruction at issue was given six times during the penalty phase jury charge and, further, appeared on six verdict forms available to the jury during their sentencing deliberations. Thus, the presence of the problematic instruction in the penalty phase can only be characterized as pervasive. The Court is also persuaded by the clarity and forcefulness of the ailing language: "We, the jury, *unanimously find that the aggravating circumstances the defendant was found guilty of committing in Count 1 do not outweigh the mitigating factors*, and recommend that the defendant be sentenced to life imprisonment with parole eligibility ***." (emphasis added). No doubt the intent of the language of this verdict form was to ensure that the life imprisonment verdict issued by the jury was unanimous. But the wording of the language clearly tells the jury that it must be unanimous in its rejection of the death sentence and, in fact, is less clear about the importance of the unanimity of the ultimate verdict. Thus, a single juror, convinced that the aggravating circumstances outweighed the mitigating factors, could have prevented the jury as a whole from agreeing to recommend life rather than death. It is impossible to know what actually occurred during the jury's deliberations and it was that very uncertainty that compelled the Ohio Supreme Court to remand for re-sentencing in *Brooks*:

> We cannot know what was going on in the minds of the jurors when they were given the duty of deciding Brooks's fate, and we thus cannot say for certain whether one of the jurors would have been moved enough by the mitigating factors in Brooks's favor *** to have recommended a life sentence. The record reflects that the jury in this case was instructed in a manner completely contrary to law, making it less likely for Brooks to benefit from the opinion of one juror that the death penalty was inappropriate.

*Brooks, supra*, 75 Ohio St. 3d at 162.

For the foregoing reasons, the Court concludes that petitioner has established cause and prejudice to excuse the default of his twenty-third ground for relief. That being so, respondent's motion to dismiss ground twenty-three will be denied.

G. <u>Ground Twenty-Four -- Trial Counsels' Failure to Object to Unanimity Instruction</u>

In a claim related to his twenty-third ground for relief, petitioner argues in his twenty-fourth claim for relief that his trial attorneys were ineffective for failing to object to that portion of the jury charge during which the trial court, by reading the verdict forms, instructed the jurors that they, in order to recommend one of the life sentence options, had to unanimously find that the aggravating circumstances did not outweigh the mitigating factors. Respondent argues that petitioner's twenty-fourth ground for relief is procedurally defaulted because petitioner failed to raise the claim on direct appeal, and raised it for the first time only in his Rule 26(B) application for reopening as a related allegation of appellate counsel ineffectiveness.

The procedural default analysis of petitioner's twenty-fourth ground for relief essentially mirrors that of petitioner's twenty-third ground for relief. Petitioner violated Ohio's doctrine of *res judicata* when he omitted from direct appeal the failure of his trial attorneys to object to the "unanimity" instruction -- an ineffectiveness claim that, like the unanimity instruction itself, clearly appeared on the face of the record. The Court deems the second part of the *Maupin* test to have been met, since the state courts, by virtue of petitioner's failure to present this claim as anything but an allegation of appellate counsel ineffectiveness, were never given the opportunity to enforce the doctrine of *res judicata* against petitioner's ineffectiveness claim. As for the third part of the *Maupin* test, the Court has already determined that Ohio's *res judicata* rule is an adequate and independent

state ground upon which to deny relief.

The Court having determined that the first three parts of the *Maupin* test have been satisfied, all that remains to be determined is whether petitioner can demonstrate cause and prejudice to excuse the apparent default of his twenty-fourth ground for relief. As with his twenty-third ground for relief, petitioner asserts ineffective assistance of appellate counsel as cause for the default. The Court has already determined that petitioner's appellate attorneys performed unreasonably and to petitioner's prejudice in not challenging the unanimity instruction on direct appeal. That is, the Court determined that petitioner's twenty-third ground was not barred by procedural default, and was entitled to a full review on the merits.

For the reasons discussed at length in connection with petitioner's twenty-third ground for relief, and without expressing any opinion as to whether trial counsel were actually ineffective under *Strickland*, the Court concludes that petitioner's appellate attorneys performed unreasonably and to petitioner's prejudice in not challenging on direct appeal the failure of petitioner's trial attorneys to object to the problematic unanimity instruction. Having determined that the unanimity instruction was so problematic, significant, and obvious that appellate counsel were ineffective for failing to challenge the instruction on appeal, it would be disingenuous of the Court to condone the decision of appellate counsel to omit a claim challenging the failure of petitioner's trial attorneys to object to the unanimity instruction. After all, if appellate counsel should have recognized the problematic unanimity instruction, as this Court has concluded, then appellate counsel should have recognized error in trial counsel's failure to object to that instruction. Thus, the Court concludes that petitioner has demonstrated cause and prejudice -- *i.e.*, ineffective assistance of appellate counsel -- sufficient to excuse the procedural default of his twenty-fourth ground for relief. Respondent's motion to

dismiss ground twenty-four as procedurally defaulted will be denied.

H.  Ground Twenty-Five -- Trial Court's Refusal to Give Lesser Included Offense Instruction

In his twenty-fifth ground for relief, petitioner argues that the trial court erred in refusing to instruct the jury on the lesser included offense of voluntary manslaughter. Petitioner's trial counsel had requested an instruction on the lesser included offense of voluntary manslaughter, based on petitioner's own testimony that he had been "chewed out" by David Kreamelmayer, that petitioner was experiencing financial problems, that petitioner had not been paid money that the company owed him, that Mr. Kreamelmayer refused him work that he desperately needed, and that Kreamelmayer had charged petitioner. ( *Amended Petition*, Doc.No. 30, at ¶¶ 324-331).  Thus, according to petitioner, the trial court erred in refusing to give a voluntary manslaughter instruction. Respondent argues that petitioner's claim is procedurally defaulted because petitioner failed to raise it on direct appeal, and raised it instead only in his Rule 26(B) application for reopening as an instance of appellate counsel ineffectiveness.

Under the *Maupin* test, petitioner violated Ohio's doctrine of *res judicata* when he failed to raise on direct appeal this claim that plainly appeared on the face of the record.  The state courts were never given a chance to enforce the procedural default, by virtue of the fact that petitioner only raised the allegation as an instance of appellate counsel ineffectiveness in his Rule 26(B) application to reopen his direct appeal.  The Court has already determined that Ohio's *res judicata* doctrine is an adequate and independent state ground upon which to deny relief.  That leaves only the fourth part of the *Maupin* test, cause and prejudice, to be determined.  To that end, petitioner asserts ineffective assistance of appellate counsel as cause.

Demonstrating cause requires petitioner to show that his appellate attorneys were ineffective

49

for omitting this issue on direct appeal and that he was prejudiced by the omission of this issue from

his direct appeal. Voluntary manslaughter is defined in R.C. § 2903.03:

> No person, while under the influence of sudden passion or in a sudden fit of rage,
> either of which is brought on by serious provocation occasioned by the victim that
> is reasonably sufficient to incite the person into using deadly force, shall knowingly
> cause the death of another.

Under Ohio law, voluntary manslaughter is regarded as a lesser included offense of aggravated

murder because its elements are identical to or contained within the offense of aggravated murder,

except for one or more additional mitigating circumstances. *State v. Franklin*, 97 Ohio St. 3d 1

(2002); *State v. Benge*, 75 Ohio St. 3d 136 (1996). Demonstrating the existence of the mitigating

circumstances set forth in R.C. 2903.03 requires evidence: (1) that the defendant was under the

influence of sudden passion or in a sudden fit of rage; (2) that the passion or fit of rage was brought

on by serious provocation occasioned by the victim; and (3) that the provocation was reasonably

sufficient to incite the defendant into using deadly force. In determining whether a lesser included

offense instruction is warranted, "[t]he persuasiveness of the evidence regarding the [inferior degree]

offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact

to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction

on the lesser [] offense must be given." *State v. Wilkins*, 64 Ohio St. 2d 382, 388 (1980). "Thus, if

a defendant on trial for murder or aggravated murder (or the prosecution in such trial) produces

evidence of one or both of the mitigating circumstances set forth in R.C. 2903.03, that evidence will

be sufficient to entitle a defendant to an instruction on voluntary manslaughter as an inferior degree

of murder if under any reasonable view of the evidence, and when all of the evidence is construed

in a light most favorable to the defendant, a reasonable jury could find that the defendant had

established by a preponderance of the evidence the existence of one or both of the mitigating circumstances." *State v. Rhodes*, 63 Ohio St. 3d 613, 617-18 (1992).

Petitioner asserts that his appellate attorneys were ineffective for failing to challenge on direct appeal the trial court's refusal to instruct the jury on voluntary manslaughter. This Court is not persuaded either that appellate counsel were deficient for omitting this issue on direct appeal or that petitioner was prejudiced by the omission of this issue from his direct appeal. Even assuming that a jury instruction on voluntary manslaughter was warranted and that the trial court erred in refusing to give one -- an assumption this Court is loath to indulge -- the Court is not persuaded that appellate counsel acted unreasonably or to petitioner's prejudice in not challenging the trial court's ruling on appeal. The only evidence of provocation adduced at trial was petitioner's own testimony that David Kreamelmeyer was angry at him and had chastised him, that he was in bad financial straits and was owed money by the company, that David Kreamelmeyer had refused him work that he desperately needed, and that David Kreamelmeyer charged him "like a rhino." ( J.A. Vol. II, Tr. at 918). Several witnesses also testified that they had heard petitioner and David Kreamelmeyer arguing just before petitioner shot Kreamelmeyer. While this may have constituted    *evidence* of the mitigating circumstances set forth in R.C. 2903.03, a *reasonable view* of the evidence, even construed in a light most favorable to petitioner, would not have supported both an acquittal on the aggravated murder charges and a conviction on voluntary manslaughter. The evidence adduced at trial establishes that petitioner appeared at his workplace that morning with the intent to hunt down and kill anyone who had "screwed him over." (*Id.*, at 683, testimony of Laurie McGuire). He spoke calmly and even pleasantly to several co-workers before finding and gunning down David Kreamelmeyer, belying any suggestion that he was under the influence of sudden passion or acting in a sudden fit of rage. Even

51

assuming that David Kreamelmeyer had been angry at petitioner and that the two had argued -- an argument that can only be characterized as a disagreement about the quality and reliability of petitioner's work as a driver -- a reasonable view of the evidence would not permit a reasonable jury to find that David Kreamelmeyer had so provoked petitioner as to reasonably incite him into using deadly force. After gunning down David Kreamelmeyer, petitioner then methodically located and shot Christine Teetzel and Bob Kinney, passing by and leaving unharmed other co-workers en route. It tests the limits of credibility to suggest either that petitioner was acting under the influence of sudden passion or in a fit of rage, or that any of the victims had provoked petitioner sufficiently to incite him into using deadly force.

It is difficult, therefore, to characterize this issue as significant and obvious, or clearly stronger than the issues that appellate counsel did raise on direct appeal. Although the issue was preserved for appeal, the weight of authority would have been against petitioner. Even assuming that the Ohio Supreme Court had found that the evidence warranted an instruction on voluntary manslaughter, it is highly unlikely that the Supreme Court would have found that the evidence reasonably supported an acquittal on the aggravated murder charges and a conviction for voluntary manslaughter. In short, the decision to omit this issue from petitioner's direct appeal, even if inadvertent, was not an unreasonable one that only an incompetent attorney would adopt. Having concluded that petitioner's appellate attorneys were not ineffective for failing to raise this issue on direct appeal, this Court also concludes that petitioner has failed to demonstrate cause and prejudice to excuse the default of his twenty-fifth ground for relief. Respondent's motion to dismiss ground twenty-five will be granted.

I. <u>Ground Twenty-Six -- Trial Court Used Wrong Standard to Death Qualify Jury</u>

Petitioner argues in his twenty-sixth ground for relief that the trial court used an improper standard in "death qualifying" the prospective jurors. Specifically, petitioner asserts that prospective juror Jarrett was hastily excused by the trial court for indicating unequivocally that he would not consider the imposition of the death penalty, when it was apparent from defense counsel's voir dire of Mr. Jarrett that his reservations were *not* related to the issue of the death penalty. (*Amended Petition*, Doc.No. 30, at ¶¶ 332-336). Petitioner argues that defense counsel should have been given the opportunity to voir dire Mr. Jarrett further and that the trial court erred in excusing him during the death qualification process.

Respondent argues that petitioner's claim is barred under Ohio's doctrine of *res judicata* because petitioner failed to raise this issue on direct appeal, and raised it for the first time in his Rule 26(B) application for reopening as an instance of appellate counsel ineffectiveness. Respondent further asserts that ineffective assistance does not constitute cause sufficient to excuse the default of petitioner's twenty-sixth ground for relief.

Under the *Maupin* test, petitioner violated Ohio's doctrine of *res judicata* when he failed to raise this issue, a claim that clearly appeared on the face of the record, on direct appeal. The state courts were never given a chance to enforce the procedural default, by virtue of the fact that petitioner only raised the allegation as an instance of appellate counsel ineffectiveness in his Rule 26(B) application to reopen his direct appeal. Thus, the Court deems the second part of the *Maupin* test to have been met. The Court has already determined that Ohio's *res judicata* doctrine is an adequate and independent state ground upon which to deny relief. That leaves only the fourth part of the *Maupin* test, cause and prejudice, to be determined. Petitioner asserts ineffective assistance of appellate counsel as cause.

Demonstrating cause requires petitioner to show that his appellate attorneys were ineffective for omitting this issue on direct appeal and that he was prejudiced by the omission of this issue from his direct appeal. Petitioner can demonstrate neither. Under Ohio law, a person called as a juror in the trial of a capital offense may be challenged for cause if:

> [H]e unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. A prospective juror's conscientious or religious opposition to the death penalty in and of itself is not grounds for a challenge for cause. All parties should be given wide latitude in voir dire questioning in this regard.

R.C. 2945.25(C). *See also Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968)("sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction"). Further, under Ohio law, the scope of the voir dire of prospective jurors falls within the discretion of the trial court and an error therein warrants reversal only if that error rises to the level of abuse of discretion. *State v. Jenkins*, 15 Ohio St. 3d 164, 286 (1984).

Petitioner asserts that his appellate attorneys were ineffective for failing to challenge on direct appeal the trial court's abrupt dismissal of prospective juror Jarrett. The Court is not persuaded either that appellate counsel were deficient for omitting this issue on direct appeal or that petitioner was prejudiced by the omission of this issue from his direct appeal. The record reveals that, after individual voir dire of the potential jurors had commenced, the trial court posed a question to all the potential jurors as to whether any of them felt, because of religious conviction or some other reason, that they would not be able to make a decision in the case. (J.A. Vol. I, Tr., at 324-5). Prospective Juror Jarrett answered, "In reference to your question, no, I don't have any reason that I could not

render a decision. But I have other things." *Id.* at 325). The trial court stated at that point that they

would explore the matter more fully when and if they came to Mr. Jarrett. After questioning several

more prospective jurors, the trial court came back to Mr. Jarrett and the following exchange ensued.

> THE COURT:    Just briefly tell us what that [problem] is?

> PROSPECTIVE JUROR JARRETT:    Number one, I am a little uncertain and I don't truly feel that the justice system is fair.

> THE COURT:   Are you saying that if you are selected here because of some problem you have had with the justice system or whatever, that you couldn't put all bias, prejudice, and sympathies out of your mind and render fair and impartial verdicts based upon what the evidence is that you hear and the law that this Court instructs you on?

> PROSPECTIVE JUROR JARRETT:    It's not that I could not weigh the evidence and give a fair decision or whatever on that. That is not the problem. I could do that. But I just have a problem with the justice system that I feel is not a fair system.

> THE COURT:    All right. We understand that. So based upon your feelings would you rather not serve in this case?

> PROSPECTIVE JUROR JARRETT:    Right, I would rather not serve.

> THE COURT:    Does either side want to question him or object to him being excused?

> MR. DETERS [on behalf of the state]:    We have no objection, Judge.

> THE COURT:    Let me ask you another question: You have indicated -- let me ask you one question before we get too far: You have heard or if you would be selected to serve here you have heard about the possibility of two proceedings and in the second proceeding, if there is one, you would [be] called upon to make a recommendation as to what the sentence should be and one of those recommendations would be the death penalty. Do you understand that?

> PROSPECTIVE JUROR JARRETT:    Right.

> THE COURT:    My question to you is: If in a proper case where the facts warrant it and the law permits it, could you join in signing a verdict from which you

might recommend to the Court the imposition of the death penalty?

PROSPECTIVE JUROR JARRETT:    No, I would not want to sign that.

THE COURT:    Let me just ask you: So you are -- basically you are conscientiously, religiously, or otherwise opposed to the death penalty; correct?

PROSPECTIVE JUROR JARRETT:    No, not necessarily.

THE COURT:    But you are telling us that in a proper case where the facts warrant it and the law permits it you could not join in signing a verdict form which might recommend to the Court the imposition of the death penalty?

PROSPECTIVE JUROR JARRETT:    That is correct.

THE COURT:    Okay. Now just let me get it straight. You are stating to me unequivocally that under no circumstances will you follow the instructions of the law and will not consider fairly the imposition of the sentence of death in this case?

PROSPECTIVE JUROR JARRETT:    I will not.

THE COURT:    Good. I don't mean good but I mean at least you have answered our question. Just so we get it straight, you are stating to me unequivocally that you will automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of this case?

PROSPECTIVE JUROR JARRETT:    Right, I will not.

THE COURT:    Okay. The State would have a challenge?

MR. DETERS:    Yes, Judge.

THE COURT:    Mr. Krumbein, do you want to question this juror?

(J.A. Vol. I, Tr., at 391-394).

Defense counsel went on to ask a few question of Mr. Jarrett, but Mr. Jarrett did not waver

from his position that he had reasons unrelated to his ability to consider the evidence and follow

instructions, why he was unwilling to serve as a juror. After the prosecution requested a sidebar

conference to request that the trial court prevent Mr. Jarrett from "making this big political speech"

in the presence of the other jurors, the trial court stated that Mr. Jarrett would be excused. The

sidebar discussion continued:

> THE COURT:    No, he told me and has very clearly told me that he will
> unequivocally vote against the imposition of capital punishment without regard to
> any evidence that may be developed at the trial of this case. He has told us that.
> Counsel has not rehabilitated him and the motion is granted. He will be excused.

> MR. KRUMBEIN:    May I be heard?

> THE COURT:    Sure.

> MR. KRUMBEIN:    Your Honor, I clearly asked him if he could consider
> fairly the imposition of death.

> THE COURT:    But he would not. He said he could be he would not.

> MR. KRUMBEIN:    Your Honor, if you please, I asked him the question
> could you consider fairly the imposition of the sentence of death in a particular case.
> Let me start over.

> Your Honor, I asked him specifically if you could consider fairly the
> imposition of a sentence of death in this particular case. His answer was yes.

> THE COURT:    What did he say?

> MR. KRUMBEIN:    There are some other things you should --

> THE COURT:    I will go through it one more time and if he says no, that is
> it.

(*Id.* at 398-9). The trial court went on to ask Mr. Jarrett again whether he was stating unequivocally

that under no circumstances would he fairly consider the imposition of the death penalty, to which

Mr. Jarrett responded he would not. At that point, the trial court excused Mr. Jarrett. (*Id.* at 399-

400).

Even if the trial court's actions may be characterized as hasty in not allowing more latitude

in defense counsel's voir dire of Mr. Jarrett, the trial court's actions cannot be characterized as abuse

of discretion. A review of the examination of Mr. Jarrett, as well as the examination of all of the prospective jurors, reveals that the voir dire process in this case was not unreasonably limited. With respect to the examination of Mr. Jarrett, while it may be argued that the trial court did not allow the wide latitude in questioning contemplated by R.C. 2945.25(C), the voir dire of Mr. Jarrett otherwise mirrored the statutory language of R.C. 2945.25(C). The nature of Mr. Jarrett's reservations may not have been entirely clear or fully explored, but it was absolutely clear that, unequivocally, Mr. Jarrett would not fairly consider the imposition of the death penalty in petitioner's case. Thus, this issue was not more significant or obvious, or clearly stronger than those that appellate counsel did raise. The trial court's rulings were subject to deference on appeal and it does not appear that there was arguably contrary authority on the issue. Thus, it simply cannot be said either that appellate counsel were incompetent in omitting this issue from petitioner's direct appeal or that petitioner was prejudiced by the omission of this issue in his direct appeal. Petitioner has failed to demonstrate cause and prejudice sufficient to excuse the default of his twenty-sixth ground for relief. Respondent's motion to dismiss that ground as procedurally defaulted will be granted.

J. Ground Twenty-Eight -- Racism in Selection of Grand Jury Foreperson and Venire Men

In his twenty-eighth ground for relief, petitioner argues that the method used in Hamilton County for selecting forepersons and venire men to serve on grand juries is tainted by consideration of race. (*Amended Petition*, Doc.No. 30, at ¶¶ 349-361). That method, according to petitioner, begins with the use of a randomly compiled list based on all registered voters in Hamilton County. Those persons are then sent a questionnaire postcard and persons who fail to return the postcards are not considered for jury service. Petitioner complains that African-Americans and other minorities fail in a disproportionate number to return the postcards. With respect to the selection of grand jury

58

forepersons, petitioner's complaint centers around the fact that presiding judges of the common pleas courts are permitted to select grand jury forepersons, and are not limited in their selection to individuals who are already members of the grand jury venire. Petitioner asserts that the presiding judges in Hamilton County have traditionally selected grand jury forepersons who are Caucasian.

Respondent argues that petitioner's claim is procedurally barred because he raised it for the first time only in a successive state postconviction action without satisfying the procedural requirements for filing such an action. Applying the *Maupin* test, respondent's argument is well taken. In Ohio, successive postconviction actions may be entertained under only the most extraordinary circumstances. Section 2953.23 of the Ohio Revised Code provides in relevant part:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration or the period prescribed in division (A) of that section or a second petition or successive petition for similar relief on behalf of a petitioner unless both of the following apply:

(1) Either of the following applies:

(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. §2953.23(A). A review of petitioner's successive postconviction action reveals that he failed to meet the requirements set forth in §2953.23(A). Assuming that petitioner satisfied sub-part (1)(b)

by asserting that the United States Supreme Court's decision in *Campbell v. Louisiana*, 523 U.S. 392 (1998) recognized a new federal right that applies retroactively to petitioner[13], under no reasonable view of the new evidence can it be said that petitioner satisfied sub-part (2). Thus, petitioner violated state procedural rules, first, in failing to raise this claim in his initial postconviction action and, then, in attempting to raise the claim in a successive postconviction action without satisfying the procedural requirements set forth in §2953.23(A). The Court concludes that the first part of the *Maupin* test has been met.

Under the second part of the *Maupin* test, the Court further concludes that the state courts actually enforced the procedural default. The trial court summarily found that petitioner "failed to meet the conditions set out in R.C. 2953.23(A) for consideration of a successive petition to vacate." (Supplemental J.A. Vol. I, at 59). The court of appeals explained in more detail that petitioner had failed to satisfy the conditions sufficient to invoke the trial court's jurisdiction to entertain his successive postconviction petition because, even assuming that he had "met the first prong under R.C. 2953.23(A), he did not demonstrate by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found him guilty of aggravated murder." (Supplemental J.A. Vol. I, at 191).

The Court further concludes, under the third part of the *Maupin* test, that the procedural rule is an adequate and independent state ground upon which to deny relief. The limitations on successive and untimely postconviction actions in Ohio, which became effective on September 21, 1995, are stated in unmistakable terms in R.C. 2953.23(A) and there is an emerging body of case law

---

[13] In *Campbell v. Louisiana*, 523 U.S. 392 (1998), the United States Supreme Court held that a white criminal defendant has third-party standing to raise an equal protection challenge on the basis of alleged discrimination against black persons in the selection of grand jurors.

attempting to clarify the circumstances under which jurisdiction will lie for an untimely or successive postconviction action. *See, e.g., State v. Byrd*, 145 Ohio App. 3d 318 (Ohio App. 1 Sit. 2001); *State v. Beuke*, 130 Ohio App. 3d 633 (Ohio App. 1 Dist. 1998). The limitations set forth in R.C. 2953.23(A) further important state interests in finality of criminal judgments and efficient use of judicial resources.[14] Finally, R.C. 2953.23(A) does not rely on or otherwise implicate federal law.

The Court having determined that petitioner's claim is procedurally defaulted, and that this procedural default is an adequate and independent ground upon which to deny relief, it is incumbent upon petitioner to demonstrate cause to excuse the procedural default and actual prejudice from the alleged constitutional error. Petitioner concedes that the state courts declined to reach the merits of his successive postconviction action due to his failure to raise the claim in his first postconviction action or to satisfy the procedural requirements for a successive postconviction action. Petitioner argues, however, that because the error he alleges, *i.e.*, racial discrimination in the selection of the grand jury process, is "structural" in nature, it can never be waived. Petitioner's specific argument finds little support in the authority he cites. In any event, the Court need not decide this procedural default issue because petitioner is not entitled to relief on this claim.

Petitioner's argument, without more, is insufficient on its face. Nothing about the use of voter registration lists, or the questionnaires described by petitioner, strikes this Court as improper, unfair, or unfounded. *See Bryant v. Wainwright*, 686 F.2d 1373, 1378 (11th Cir. 1982), *cert. denied*, 461 U.S. 932 (1983). With respect to the selection of grand jury forepersons, petitioner's complaint concerns the fact that presiding judges are permitted to select grand jury forepersons and are not

---

[14]    Prior the enactment of R.C. 2953.23(A), there were virtually no limitations on the number or timeliness of postconviction actions that a prisoner could file.

limited to individuals who are already members of the grand jury venire. Petitioner asserts that the presiding judges in Hamilton County have traditionally selected grand jury forepersons who are white. Petitioner has failed to make even a *prima facie* showing of discriminatory purpose under controlling constitutional principles sufficient to undermine the constitutionality of his convictions or death sentence. *See Rose v. Mitchell*, 443 U.S. 545, 566-69 (1979)(setting forth criteria necessary to make *prima facie* showing of discrimination in selection of grand jury foreperson); *Castaneda v. Partida*, 430 U.S. 492, 494-95 (1977)(setting forth the criteria necessary to make a *prima facie* showing of discrimination in grand jury selection process); *see also Ramseur v. Beyer*, 983 F.2d 1215, 1237-38 (3rd Cir. 1991)(rejecting claim of intentional discrimination in selection of grand jury foreperson based on survey of only half of the sixty-four persons who served over a three-year period), *cert. denied*, 508 U.S. 947 (1993); *Johnson v. Puckett*, 929 F.2d 1067, 1072-73 (5th Cir.)(granting relief where, between 1959 and 1979, 32 grand jury forepersons had been appointed and none was black), *cert. denied*, 502 U.S. 898 (1991); *Bryant v. Wainwright*, 686 F.2d 1373, 1378-79 (11th Cir. 1982)(rejecting a claim of intentional discrimination in selection of grand jury forepersons where petitioner presented statistics relating to selection of only ten grand jury forepersons), *cert. denied*, 461 U.S. 932 (1983).

In short, the Court concludes that petitioner's twenty-eighth ground for relief is procedurally defaulted, and that petitioner has failed to demonstrate cause and prejudice sufficient to excuse the procedural default. Respondent's motion to dismiss ground twenty-eight as procedurally defaulted will be granted.

V.  Conclusion

For the foregoing reasons, respondent's motion to dismiss procedurally defaulted claims is GRANTED as to grounds 4 (in part)[15], 18 (F), 22, 25, 26, and 28; and DENIED as to grounds 18 (D), 19 (E), 23, and 24.

The parties are DIRECTED to contact the Magistrate Judge within ten (10) days of the date of this order to schedule a status conference.

/s/ George C. Smith
**GEORGE C. SMITH**
**United States District Judge**

---

[15]     Preserved for review is the prosecutor's remark suggesting that defense counsel urged the jurors to ignore the law and disregard the trial court's instructions.

## APPENDIX

On direct appeal to the Supreme Court of Ohio, petitioner raised the following seventeen propositions of law:

First Proposition of Law:  The trial court erred to the prejudice of Defendant-Appellant by failing to transfer this case to another venue due to adverse pretrial publicity.

Second Proposition of Law: The Defendant-Appellant was prejudiced by a lack of funds to adequately defend himself in this litigation.

Third Proposition of Law: Defendant-Appellant was denied his rights of due process and assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution because his trial counsel provided ineffective assistance.

Fourth Proposition of Law:  Egregious misconduct by the prosecutor in opening statement, closing argument, and argument in the penalty phase of the proceedings was so prejudicial as to deny Defendant a fair trial.

Fifth Proposition of Law:  Where, in a capital case, the sentencing court considers and weighs invalid or improper aggravating factors in imposing the death sentence, that sentence offends the Eighth Amendment to the Constitution of the United States, and the right to Due Process under the Fourteenth Amendment, and their counterparts in the Ohio Constitution, and must be reversed.

Sixth Proposition of Law:  The trial court committed prejudicial error in refusing the Defendant-Appellant's motion for twelve (12) peremptory jury challenges.

Seventh Proposition of Law:  The Ohio death penalty statute is unconstitutional in failing to require the appropriate mental state in order for a jury to properly convict for such a crime.

Eighth Proposition of Law: The Ohio "beyond a reasonable doubt" standard of proof fails to meet the requirements of higher reliability for the guilt determination phase of a capital case.

Ninth Proposition of Law: The Ohio death penalty review process is unconstitutional in removing Court of Appeals jurisdiction from the appeal process.

Tenth Proposition of Law :  The Ohio death penalty statutes are unconstitutional,

violating the Eighth Amendment proscription of cruel and unusual punishment, the Fourteenth Amendment of the United States Constitution guarantees to Due Process of law and to the equal protection of the laws, and also violates the commitment provisions of the Ohio Constitution.

Eleventh Proposition of Law:  The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree the mitigating circumstances renders the Ohio capital statutes quasi-mandatory and permits the execution of an offender even though the mitigating evidence falls just short of equipoise with the aggravating factors, with the result that the risk of putting someone to death when it is practically as likely as not that he deserves to live, renders the Ohio capital process arbitrary and capricious, and in the absence of a requirement that, before death may be imposed, aggravating factors must *substantially* outweigh mitigating factors, unconstitutional.

Twelfth Proposition of Law:  The provisions of Crim. R. 11(C)(3) permitting a trial court to dismiss specifications upon a guilty plea only under the nebulous and undefined concept "in the interest of justice" needlessly encourages guilty pleas and the concomitant waiver of the right to a jury, to compulsory process and to confrontation and reintroduces the possibility that the death sentence will be imposed arbitrarily and capriciously.

Thirteenth Proposition of Law :  The Ohio capital sentencing scheme is unconstitutional in that it provides no standard for sentencing or review at several significant stages of the process and consequently death sentences are imposed and reviewed, without sufficient statutory guidance to juries, trial courts, and reviewing courts to prevent the unconstitutional, arbitrary, and capricious infliction of the death penalty.

Fourteenth Proposition of Law:  Where, in a capital case, the sentencing court considers and weighs invalid or improper aggravating factors in imposing the death sentence, that sentence violates the Eighth Amendment to the Constitution of the United States and the right to Due Process under the Fourteenth Amendment of the United States Constitution.

Fifteenth Proposition of Law:  The trial court's allowing the prosecution to have an expert t estify on the affects of Prozac when the defense did not raise either an insanity defense or allege that Prozac caused this crime, was prejudicial error.

Sixteenth Proposition of Law:  The judgment of conviction on the aggravated murder counts is contrary to the manifest weight of the evidence.

Seventeenth Proposition of Law:  The trial court erred to the prejudice of Appellant

by referring to the jury's life or death decision as a "recommendation," thus diminishing the jury's sense of responsibility for their decision, in violation of Appellant's right under the Eighth and Fourteenth Amendments of the United States Constitution and Art. I, Sec. 9 of the Ohio Constitution.

-------------------------------------------

In a postconviction action filed on August 16, 1997, petitioner raised the following causes

of action:

First Cause of Action: The judgment and sentence against Gerald Clemons are void or voidable because the recent amendments to the Ohio post-conviction process violate his constitutional rights to procedural due process which the Ohio and United States Constitutions afford him.

Second Cause of Action: The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial. Counsel fell far below a minimum standard of reasonable legal representation in their presentation of the testimony of Mr. Clemons in the trial phase of his case. As a result he was prejudiced at the penalty phase of his trial.

Third Cause of Action: The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial. Counsel fell far below a minimum standard of reasonable legal representation in their failed attempt to present a defense of involuntary intoxication.

Fourth Cause of Action: The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during the penalty phase of his trial. Counsel fell far below a minimum standard of reasonable legal representation by numerous actions and failures to act in violation of his constitutional rights as guaranteed by the United States Constitution and the Ohio Constitution.

Fifth Cause of Action: The judgment and sentence against Gerald Clemons are void or voidable because of the errors of the trial court and the ineffective assistance of his court-appointed counsel during the penalty phase of this trial. Counsel fell far below a minimum standard of reasonable legal representation by numerous actions and failures to act in violation of his constitutional rights as guaranteed by the United States Constitution and the Ohio Constitution.

66

<u>Sixth Cause of Action</u>:  The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during the mitigation phase of his capital trial.  Counsel fell far below a minimum standard of reasonable legal representation in their failure to conduct an adequate background search for a competent expert psychologist.  Because of counsel's error, no psychological evidence was presented by the defense at the mitigation phase.

<u>Seventh Cause of Action</u>:  The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during the mitigation phase of his trial.  Counsel fell far below a minimum standard of reasonable legal representation in conducting the mitigation phase.

<u>Eighth Cause of Action</u>:  The judgment and sentence against Gerald Clemons are void or voidable because, based on evidence *dehors* the record, he did not receive the effective assistance of counsel during the trial phase of his capital trial.

<u>Ninth Cause of Action</u>:  The judgment and sentence against Gerald Clemons are void or voidable because he was prejudiced by errors committed by the trial court during the course of the mitigation phase of his capital trial.  The trial court erroneously permitted rebuttal testimony from an expert and made prejudicial comments about the defendant before sentencing him to death.  These errors resulted in a violation of Gerald's right to a fair trial pursuant to the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

<u>Tenth Cause of Action</u>:  The imposition and planned execution of the death penalty sentence under Ohio law and practice upon Gerald Clemons is void and/or voidable because the death penalty is administered and applied arbitrarily, capriciously, and whimsically in the State of Ohio and Petitioner was sentenced to die and will be executed, pursuant to a pattern and practice of wholly arbitrary and capricious infliction of that penalty.  The theoretical justifications for capital punishment are groundless and irrational in fact; and death is thus an excessive penalty which fails factually to serve any rational and legitimate social interest that can justify its unique harshness.

<u>Eleventh Cause of Action</u>:  The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial.  Counsel fell far below a minimum standard of reasonable legal representation.  The cumulative impact of the litany of errors that occurred during Gerald Clemons' trial, rendered his capital proceedings unconstitutional.

----------------------------------------

67

On October 27, 1998, petitioner filed an application to reopen his direct appeal to the Supreme Court of Ohio to challenge the effectiveness of his appellate counsel's representation. Petitioner charged that his appellate counsel rendered ineffective assistance for failing to raise the following issues on appeal:

First Assignment of Error:  Appellant's trial counsel failed to protect his right to a fair and impartial jury as to his Prozac defense.

Second Assignment of Error:  Appellant's trial counsel failed to remove jurors from the petit jury who did not afford Appellant a presumption of innocence.

Third Assignment of Error:  Appellant's trial counsel erred during voir dire by conceding Appellant's guilt to the potential jurors.

Fourth Assignment of Error:  The trial court erred by impaneling a petit jury that did not afford Appellant a presumption of innocence.

Fifth Assignment of Error:  Appellant was denied the effective assistance of counsel because trial and appellate counsel failed to ensure that all of the proceedings were transcribed and made part of the record.

Sixth Assignment of Error:  Appellant's trial counsel erred by failing to request an expert psychiatrist or a mental health professional who had the power to prescribe medication and could have enlightened the jury as to the true effects that Prozac had on Appellant.

Seventh Assignment of Error:  The trial court erred by failing to remove for cause those jurors who indicated that they could not be objective.

Eighth Assignment of Error:  Trial counsel were ineffective by failing to move to excuse those jurors who indicated that they could not be objective.

Ninth Assignment of Error:  The trial court erred by "death qualifying" the potential jurors using the wrong standard.

Tenth Assignment of Error:  The trial court erred by admitting evidence in the form of Dr. Keck's and Dr. Day's testimony which was not relevant and highly prejudicial.

Eleventh Assignment of Error:  The trial court erred by refusing to issue an instruction for voluntary manslaughter.

Twelfth Assignment of Error:  The prosecution engaged in misconduct by arguing non-statutory aggravating circumstances.

Thirteenth Assignment of Error:  Appellant's trial counsel erred by allowing the State to exercise peremptory challenges in a racially discriminatory manner.

Fourteenth Assignment of Error:  The trial court erred by allowing the State to exercise its peremptory challenges in a racially discriminatory manner.

Fifteenth Assignment of Error:  Appellant's trial counsel failed to adequately prepare him for his testimony during the trial phase of his capital proceedings.

Sixteenth Assignment of Error  Appellant's trial counsel failed to present the defense of involuntary intoxication.

Seventeenth Assignment of Error:  Appellant's trial counsel failed to obtain his military records and to present them to the jury during the sentencing phase.

Eighteenth Assignment of Error:  Appellant's trial counsel failed to inform the jury that Mr. Clemons' "flat effect" was caused by the medication he was taking during the trial.

Nineteenth Assignment of Error:  The trial court made several prejudicial comments which cast doubt on its impartiality.

Twentieth Assignment of Error:  The death penalty violates international law.

Twenty-First Assignment of Error:  The statute under which Appellant has been sentenced to die is unconstitutional.

Twenty-Second Assignment of Error:  The instructions given to the jury were improper, unconstitutional, inadequate, and incomprehensible.

Twenty-Third Assignment of Error:  The jury's instructions as given instructed and precluded the jury from the consideration of mitigating evidence.

Twenty-Fourth Assignment of Error:  Appellant's trial counsel were ineffective in failing to even try to rehabilitate members of the jury venire who had expressed anti-death penalty views.

Twenty-Fifth Assignment of Error:  The trial court erred in permitting the jury to consider gruesome and inflammatory photos.

69

Twenty-Sixth Assignment of Error : The trial court erred when it found that Appellant had acted with prior calculation and design.

Twenty-Seventh Assignment of Error: The evidence adduced by the State was insufficient to establish that Appellant committed aggravated murder.

Twenty-Eighth Assignment of Error: Appellant's trial counsel were ineffective in failing to correct sentencing errors.

Twenty-Ninth Assignment of Error: The trial court erred when it sentenced Appellant under the wrong statutory provisions.

Thirtieth Assignment of Error: Appellant's sentence of death is not appropriate and it is disproportionate to sentences imposed for other similar crimes.

Thirty-First Assignment of Error: The trial court erroneously instructed the jury that its recommendation of death *or* life had to be unanimous.

Thirty-Second Assignment of Error: Appellant's trial counsel were ineffective for failing to object to the trial court's instruction that the jury's recommendation of death *or* life had to be unanimous.

---------------------------------------------

Petitioner raised the following causes of action in his successor postconviction action, filed

in the state trial court on May 9, 2001:

First Cause of Action: Petitioner Clemons' conviction and sentence are void or voidable because the methods of selecting a grand jury foreperson in Ohio and Hamilton County violate the due process, equal protection, and fair cross-section guarantees of the Ohio and U.S. Constitutions. (¶ 20)

Second Cause of Action: Petitioner Clemons' conviction and sentence are void or voidable because trial counsel failed to challenge the methods of selecting a grand jury foreperson in Hamilton County and in Ohio. (¶ 32)

Third Cause of Action: Petitioner Clemons' conviction and/or sentence are void or voidable because the imposition of the death penalty since the enactment of Senate Bill 2 violates the equal protection clause or the *ex post facto* clause of the United States and Ohio Constitutions, and the particular statutory scheme violates the Eighth and Fourteenth Amendments to the Constitution, and Article I, Section 9 of the Ohio Constitution. (¶ 45)

70