IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD L. CLEMONS, | : | |
| Petitioner, | : | |
| vs. | : | Case No. C1-00-722 |
| BETTY MITCHELL, WARDEN, | : | JUDGE GEORGE C. SMITH |
| Respondent. | : | MAGISTRATE JUDGE KING |

NOTICE OF FILING OF SUPPORT TO CLAIM FOUR

The fourth claim for relief in the amended petition concerns prosecutorial misconduct.

In an Opinion journalized on September 17, 2003, regarding procedural default of comments made by the prosecutor, this Court stated at page 15 that certain statements of the prosecutor were not objected to at the time by defense counsel.

Then, at page 21 of the decision, this Court concluded that petitioner's challenges to the specific six comments set forth above are procedurally defaulted, due to petitioner's failure to object to them during trial.

This Court then stated that "the prosecutor's remark suggesting that defense counsel were asking the jurors to disregard their instructions and ignore the law", was preserved. This comment is found at page 15 of the decision, and also at (Tr. Vol. XVII, 1327).

At the conference conducted on October 9, 2003, it was agreed,

and also pursuant to this Court's order, that counsel for petitioner would re-state the other instances of alleged prosecutorial misconduct made during the stages of the trial.

Additionally, at page four of Respondent's renewed motion to dismiss, they correctly state that the comments Clemons objected to at trial and raised on direct appeal are preserved for habeas review.

In addition to the State prosecutor's comment noted just above (T - 1327), and found in the amended petition at page 22, paragraph 102, there are additional comments made by the prosecutor, which are part of the amended petition. All of these comments were under objection by defense counsel at the time of the prosecutor's statements. (Closing mitigation).

They are found in the amended petition beginning at paragraph 101, and specifically, are the following: "I issue a challenge to the defense attorneys who in a few minutes are going to come up here. I issue a challenge to them to come up to this podium, stand here, look at each and every one of you in the face, look at each and every one of you in the eye and tell you and convince you that any of the mitigating factors that they tried to present yesterday even begins to come close to being more important than the lives of those three people". (Vol. XVII - T. - 1289) [Objection].

"You have been subjected to a whole variety of issues that were simply presented to you for sympathy purposes". (T - 1330)

[Objection].

The prosecutor asked the question, "Did you hear at any time during the course of the guilt phase of this trial or the penalty phase of this trial anyone, any expert come before this jury and specifically diagnosis this defendant as being depressed ever? They have subpoena power, they have access to the Court Clinic". (T - 1331) [Objection].

"I suspect I will continually be interrupted throughout this closing argument. It's kind of a tactic defense attorneys are taught". (T - 1335) [Objection].

"Finally, they only put on three witnesses. This is the sum total of their mitigation". (T - 1338) [Objection].

In addition to the above comments just noted, the "I know the defense attorneys are just doing their job" statement occurred in closing in the first phase and was reviewed on the merits by the Ohio Supreme Court in State v. Clemons (1998) 82 Ohio St. 3d 438, at 452. [Vol. VI - 210]. [Tr. - 1077].

The Clemons decision from the Ohio Supreme Court also reviews on the merits comments made in opening statement. In his amended petition, at page 20, paragraph 96, petitioner includes that the prosecutor states the victims were shot in a "cowardly fashion", followed by the question of the prosecutor: "Could you even imagine the abject terror of those women who have just witnessed it and heard those gunshots?" (T - 590) [Objection].

The above, as stated, is part of the amended petition, and was reviewed on the merits by the Ohio Supreme Court at page 451.

In addition to the above statement by the prosecutor in his opening, and which was not included in the amended petition, is the statement by the prosecutor that one of the victims was seated at his desk, sitting down at his desk defenseless, helpless and just sitting there. "Seated at his desk, sitting down at his desk defenseless, helpless and just sitting there." (T - 588).

This comment also was reviewed by the Ohio Supreme Court, again at page 451.

In conclusion, all of the comments noted above by the prosecutor were objected to by defense counsel, and are part of the trial transcript record.

In sequential order, petitioner intends to argue in his merit brief the following in claim four:

Opening: The comments numbered 2 and 3 by Justice Stratton in the decision at page 451.

Closing First Phase: Comment numbered 4 by Justice Stratton at 451-452.

Closing Mitigation: At page 453, the comments Justice Stratton labels first, second and third; a fourth involving the "failure to call an expert"; a fifth "rhetorical question, asking why defendant never called any of his former bosses to testify"; and finally a sixth, her last review of a comment, at 453-54, regarding being

continually interrupted, and tactics defense attorneys are taught.

All the above as noted were subject to objection.

Respectfully submitted,

DAVID J. GRAEFF (0020647)
P.O. Box 1948
Westerville, Ohio 43086
(614) 226-5991

RICHARD S. KETCHAM (0023380)
755 South High Street
Columbus, Ohio 43206
(614) 444-3900

COUNSEL FOR PETITIONER CLEMONS

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this Notice of Filing of Additional Support to Claim Four upon Tara L. Berrien, Assistant Attorney General, Capital Crimes Section, 30 East Broad Street, 23rd Floor, Columbus, Ohio 43215-3428 this 14th day of October, 2003.

DAVID J. GRAEFF (0018907)

COUNSEL FOR PETITIONER CLEMONS

er report, de- ubmit her report prosecution con- dtgoessling as a gation hearing, it

assertions under nothing more than could not reason- tion report would naging to defen- ittle choice but to ation expert's re- ng not to use the able to keep the from the jury. gard did not fall d of reasonable prejudice arise. of the syllabus.

ent that it was e the trial judge ce is also merit- esumed to have aterial, and com- at a judgment, ly indicates oth- (1987), 32 Ohio 759; *State v.* 44, 48, 584 in the record or ng opinion indi- lied on matters pport a claim of nsel. See *State* d 482, 489-491,

ends that coun- to remove the record does not counsel moved he motion was ending comple- At the close of in asserted the was then de- rary to defen- el did attempt cannot be inef- ause the trial on. We have

already found that pretrial publicity in this case did not warrant a change of venue. Therefore, we overrule proposition III.

## PROSECUTORIAL MISCONDUCT

[16] In proposition IV, defendant claims that he was denied a fair trial due to prosecutorial misconduct during the opening and closing arguments at the guilt phase, and closing argument at the penalty phase. The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15, 14 OBR 317, 319, 470 N.E.2d 883, 885.

The first group of comments defendant cites occurred during opening statement: (1) that defendant came to work "prepared for a slaughter"; (2) that defendant looked at Kinney, who was at his desk "defenseless, helpless and just sitting there"; (3) that defendant shot Kreamelmeyer "in such a cowardly fashion" in the back while he lay there dying, and "Could you even imagine the abject terror of those women who have just witnessed it and heard these gunshots[?]"; (4) that defendant had done his "errand for the day"; and (5) that defendant "in an incredible act of cowardness [*sic* ] purposely killed three innocent helpless people * * * [a]nd he would have killed more. He would have killed others if he could find out the ones who screwed him over."

[17] Comments two and three were objected to, but the remaining three are waived. *Slagle*, 65 Ohio St.3d at 604, 605 N.E.2d at 924-925. The terms "cowardly" or "cowardness" are no worse than characterizations we have found permissible in other cases. See, *e.g.*, *State v. Brown* (1988), 38 Ohio St.3d 305, 316-317, 528 N.E.2d 523, 538 ("monster"); *State v. Wickline* (1990), 50 Ohio St.3d 114, 121, 552 N.E.2d 913, 921 ("Nazi"). Moreover, shooting someone in the back, as defendant did Kreamelmeyer, is an almost universally recognized act of cowardice. We find that comments two and three were within the bounds of opening statement and were a fair commentary on the facts. Further, none of the remaining comments constitutes outcome-determinative plain error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

[18] In closing argument at the guilt phase, defendant complains of four improper comments: (1) "[T]his twisted, cowardly act of vengeance"; (2) "[The defendant] had to testify. Do you know why he had to testify? He had to testify because otherwise there would have been absolutely no evidence that he went in there that day for work. None. Not a speck of evidence. The defendant has to testify."; (3) "But even though he testified with this ridiculous thought he had to work that day, he was proven a liar yesterday and proven a liar today."; (4) "I know the defense attorneys are just doing their job, but if there is any hope at all that they could produce any type of expert to say this defendant blacked out and could not form the requisite intent of purposely killing these people, you would have heard it."

The first three comments are waived for lack of an objection. *Slagle*. Plain error is also absent. *Long*. Terms such as "coward" and "liar" may be harsh, but fall short of being "purely abusive." *Brown*, 38 Ohio St.3d at 317, 528 N.E.2d at 538. Referring to defendant as a "liar" was improper, in that it conveyed to the jury the prosecutor's personal belief. *State v. Watson* (1991), 61 Ohio St.3d 1, 10, 572 N.E.2d 97, 106. However, here, the prosecutor's characterization was marginally permissible, since the opinion was based on the evidence presented at trial. *State v. Tyler* (1990), 50 Ohio St.3d 24, 40-41, 553 N.E.2d 576, 595-596. Since the state was trying to prove that defendant went to work with the intent to kill, the prosecutor's comment underscores the state's theory of the case that defendant's version of what happened was contradicted by the evidence.

[19-21] Although it is error for a prosecutor to comment on a defendant's failure to testify, see *State v. Thompson* (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407, 411, the comment that defendant had to testify appears to be fair comment based on the evidence and within the latitude accorded the prosecution during closing argument. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 589, 23 O.O.3d 489,

493, 433 N.E.2d 561, 566. The comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper, *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. *State v. Williams* (1986), 23 Ohio St.3d 16, 19–20, 23 OBR 13, 16–17, 490 N.E.2d 906, 910–911; *State v. Bies* (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754, 760.

[22, 23] Nevertheless, the prosecutor's prefacing statement that "I know the defense attorneys are just doing their job" was improper, since it imputed insincerity to defense counsel by suggesting that they believed that defendant was guilty. *Keenan, supra*, 66 Ohio St.3d at 405–406, 613 N.E.2d at 206–207. While defense counsel conceded at the outset of trial that their client was guilty, they still maintained that prior calculation and design, necessary to support a capital offense conviction, was not proven. Thus, the prosecutor's prefacing comment was improper. See *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321. However, given the abundant evidence of defendant's guilt of aggravated murder with prior calculation and design, this error was harmless in that it was not outcome-determinative.

[24, 25] ⊥458 Defendant next contends that he was prejudiced by the prosecutor's comments during closing argument at the penalty phase. First, defendant cites the prosecutor's "challenge" to defense counsel to look at each juror in the face and convince them that the mitigating factors the defense presented "come close to outweigh or be more important than the lives of those three people." While this comment was highly theatrical and, when viewed in isolation, improper, it did not materially prejudice defendant. See *State v. Campbell* (1994), 69 Ohio St.3d 38, 41, 630 N.E.2d 339, 345. Prosecutors can urge the merits of their cause and legitimately argue that defense mitigation evidence is worthy of little or no weight. *State v. Wilson* (1996), 74 Ohio St.3d 381, 399, 659 N.E.2d 292, 309. In any event, defense counsel specifically and effectively answered the prosecutor's challenge by stating that he was accepting it, and asking the jury to spare defendant's life.

[26] Next, defendant essentially complains that the prosecutor denigrated defense counsel by arguing that the basic message of the defense to the jury is "to ignore your orders, don't follow the law, do what you want to do." This overly embellished comment borders on impropriety, but was neither outcome-determinative nor unduly prejudicial. The fact that defense counsel told the jury that they could "make up your own minds" on the death sentence, even if the aggravating circumstance outweighed the mitigation beyond a reasonable doubt, suggests that the prosecutor's comment was truthful.

[27] The third penalty phase closing argument comment cited by defendant was that the prosecutor told the jury, "[Y]ou have been subjected to a whole variety of issues that were simply presented to you for sympathy purposes." This comment, which could be regarded as an expression of personal belief by the prosecutor, or even a slight denigration of defense counsel, was permissible, since it was based on the evidence presented during the penalty phase. See *State v. Durr* (1991), 58 Ohio St.3d 86, 96, 568 N.E.2d 674, 684. Further, it was proper to point out to the jurors that their sympathy is irrelevant to their duty as jurors. *State v. Lorraine* (1993), 66 Ohio St.3d 414, 418, 613 N.E.2d 212, 217.

Defendant next cites two comments that the prosecutor made concerning the defense's failing to call certain witnesses to testify. One involved the failure to call an expert to testify that defendant suffered from depression. The other was a rhetorical question, asking why defendant never called any of his former bosses to testify on his behalf at the mitigation hearing. As mentioned earlier, comments that a witness other than the accused did not testify are not improper.

[28, 29] Defendant also claims error where the prosecutor commented, "You remember the evidence you heard and I suspect I will be continually interrupted throughout this closing argument. It's kind of a tactic defense attorneys are taught." This comment improperly denigrated defense counsel and has no place in a trial. In [454] our view, such prosecutorial comments potentially infringe on the defendant's right to counsel and penalize him for attempting to enforce procedural rights. *Keenan*, 66 Ohio St.3d at 406, 613 N.E.2d at 207. However, the improper comment appears to be harmless in light of all the evidence, and did not prevent defendant from obtaining a fair sentencing, as it was not outcome-determinative.

In sum, defense counsel objected to most of the comments defendant complains of, but the trial court issued curative instructions that the arguments of counsel do not constitute the law or evidence in the case. While many of these prosecutorial comments were embellished, and some were improper, they fall short of the excessiveness we found prevalent in *Keenan*, and were not outcome-determinative. Nevertheless, prosecutors should be on notice to avoid the comments highlighted here. Cf. *Keenan*, 66 Ohio St.3d at 410–411, 613 N.E.2d at 210. Proposition IV is overruled.

## CONSTITUTIONALITY

In proposition IX, defendant asserts that the Ohio death penalty review process is unconstitutional in removing courts of appeals from the appeal process. However, we rejected these arguments in *Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, syllabus.

In propositions VII, X, XI, XII, and XIII, defendant raises other constitutional challenges to the death penalty statutes. But we have rejected these same arguments in numerous cases. See, *e.g.*, *Jenkins*, 15 Ohio St.3d at 168, 15 OBR at 314–315, 473 N.E.2d at 273; *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, syllabus; *State v. Coleman* (1989), 45 Ohio St.3d 298, 308, 544 N.E.2d 622, 633–634; *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; *State v. Buell* (1986), 22 Ohio St.3d 124, 138, 22 OBR 203, 215, 489 N.E.2d 795, 808; *State v. Evans* (1992), 63 Ohio St.3d 231, 253–254, 586 N.E.2d 1042, 1059. See, also, *Blystone v. Pennsylvania* (1990), 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255. Accordingly, all of defendant's constitutional challenges are overruled.

## INDEPENDENT SENTENCE EVALUATION

After independent assessment, we find that the evidence supports beyond a reasonable doubt the aggravating circumstance that defendant murdered Kreamelmeyer, Kinney, and Teetzel as part of a course of conduct involving the purposeful killing of two or more persons. R.C. 2929.04(A)(5).

[30] The nature and circumstances of the offense provide nothing in mitigation. On the morning of December 15, 1995, defendant phoned his employer and got into a heated conversation with dispatcher Kreamelmeyer. Shortly thereafter, defendant [455] armed himself with several firearms, drank a beer and two shots of tequila, and went to the offices of Trans-Continental in Evendale.

Upon encountering Kreamelmeyer, defendant punched him, took out a gun, and fired two shots at both him and another dispatcher, Kinney. Defendant then sought out Teetzel, whom he found hiding under her desk. He pulled out her desk chair and shot her once but did not shoot her co-worker. Defendant then proceeded to the second floor offices, apparently looking for the office manager. When he encountered an office worker who feared that she would be the next shooting victim, defendant told her he would not harm her. He declared that he "was only after the ones who screwed him over." In addition, defendant testified that when the shootings were over, he walked out to the front of the building. He testified that he chose the female officer to surrender to in order to avoid getting slammed to the ground.

Defendant's version of the events that he came in for work that day looking to get a load to deliver and pick up his paycheck, and then went into a "fog" after Kreamelmeyer supposedly charged at him, totally lacks