**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**GERALD L. CLEMONS,**

        **Petitioner,**

   **vs.**                          **Case No. C-1-00-722
JUDGE SMITH**

**BETTY MITCHELL, Warden,**        **Magistrate Judge King**

        **Respondent.**

**<u>OPINION AND ORDER</u>**

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254. This matter is before the Court upon respondent's motion for clarification of this Court's *Opinion and Order* of September 17, 2003.

That *Opinion and Order* dismissed several of petitioner's claims as procedurally defaulted. Specifically, the Court granted respondent's motion to dismiss claims 4 (in part)[1], 18 (F), 22, 25, 26, and 28; the Court denied respondent's motion to dismiss claims 18 (D), 19 (E), 23, and 24 on procedural grounds. In so holding, the Court inadvertently neglected to address respondent's motion to dismiss claim 27 as procedurally defaulted. The Court will do so now.

Petitioner argues in his twenty-seventh claim for relief that his death sentence is unconstitutional because Ohio's death penalty statutes, on their face and as applied to him, violate the Supremacy Clause of the United States Constitution because they also violate several international treaties to which the United States is a signatory party. Respondent argues that this claim is barred by procedural default because petitioner failed to raise this challenge on direct

---

[1]     Preserved for review is the prosecutor's remark suggesting that defense counsel urged the jurors to ignore the law and disregard the trial court's instructions.

appeal, and instead, raised it only in his Rule 26(B) application to reopen his direct appeal as a basis for an allegation of ineffective assistance of appellate counsel.

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

The first part of the *Maupin* test requires the Court to determine whether a procedural rule is applicable to petitioner's claim and, if so, whether petitioner violated the rule. Claims appearing on the face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175 (1967). Petitioner argues that his death sentence violates the Supremacy Clause of the United States Constitution because Ohio's death penalty statutes contravene several international treaties to which the United States is a signatory party. Claims challenging the constitutionality of Ohio's death penalty statutes, including those

arguing that Ohio's death penalty statutes violate the Supremacy Clause of the United States Constitution, are routinely raised and considered on direct appeal. *See, e.g., State v. Phillips*, 74 Ohio St. 3d 72, 104 (1995); *see also State v. Issa*, 93 Ohio St. 3d 49, 69-70 (2001); *cf. Jamison v. Collins*, 100 F.Supp. 2d 521, 595-96 (S.D. Ohio 1998)(petitioner committed procedural default for failing to raise on direct appeal claim that Ohio's death penalty statutes violate international laws and treaties). Thus, petitioner's allegations appear on the face of the record and, accordingly, should have been raised on direct appeal. Petitioner violated Ohio's doctrine of *res judicata* when he failed to do so. The first part of the *Maupin* test has been satisfied.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the procedural rule. The Court deems the second part of the *Maupin* test to have been met because petitioner presented this claim to the Ohio courts in a forum that never afforded those courts the opportunity to enforce the procedural rule at issue. The only place that petitioner raised the claim that Ohio's death penalty statutes violate the Supremacy Clause of the United States Constitution was in his Rule 26 application to reopen his direct appeal; there, the claim was presented to the Ohio Supreme Court -- not as a substantive, independent claim -- but as one of thirty-two instances of alleged appellate counsel ineffectiveness. The Ohio Supreme Court summarily dismissed petitioner's Rule 26 application because appellate counsel, in that court's opinion, had provided effective assistance. Thus, the Supreme Court of Ohio was precluded from addressing or enforcing the doctrine of *res judicata* against petitioner's claim that Ohio's death penalty statutes violate the Supremacy Clause of the United States Constitution, due to the manner in which petitioner presented the claim to that court. Accordingly, this Court deems the second part of the *Maupin* test to have been met.

Under the third part of the *Maupin* test, the Court must determine whether the state procedural rule is an adequate and independent ground upon which to deny relief. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The determination of whether a state procedural rule is an adequate ground for denying relief necessarily focuses on the procedural rule at issue, namely, the *Perry* rule. The Court of Appeals for the Sixth Circuit, as well as other courts within this district, have consistently held, and recently reaffirmed, that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998); *see also Zuern v. Tate*, 101 F.Supp.2d 948, 959-960 (S.D. Ohio 2000), *aff'd in part, rev'd in part on other grounds*, 336 F.3d 478 (6th Cir. 2003); *Jamison v. Collins*, 100 F.Supp.2d 647, 768 (S.D. Ohio 2000). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole*, 2 Ohio St. 3d 112; *State v. Ishmail*, 67 Ohio St. 2d 16. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. That Ohio courts may on occasion elect to ignore

4

or forgive non-compliance with its procedural rules has no bearing on the general question of whether the *Perry* rule is adequate. *Scott v. Mitchell*, 209 F.3d 854, 868-69 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000); *see also Smith v. Anderson*, 104 F.Supp. 2d 773, 793 (S.D. Ohio 2000)("While the Ohio Courts of Appeals are not always consistent in their rulings on [the *Perry* rule], nonetheless, they do not ignore or arbitrarily deny Ohio's procedural rules, including the *Perry* rule, on a regular basis."). With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief as to ground twenty-seven.

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow fundamental miscarriage of justice exception. Insisting that he preserved ground twenty-seven merely by including it in his Rule 26 application for reopening, petitioner has not attempted to demonstrated either.

Petitioner suggests that he preserved his twenty-seventh ground for relief by including it in his Rule 26(B) application to reopen his direct appeal -- a procedure in Ohio for raising claims of ineffective assistance of appellate counsel. Citing *Buell v. Mitchell*, 274 F.3d 337, 361 (6th Cir. 2001), and *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001), *cert. denied sub nom. Lott v. Bagley*, 534 U.S. 1147 (2000), respondent argues that raising in a Rule 26(B) application for reopening a claim of appellate counsel ineffectiveness for appellate counsel's failure to raise an underlying claim is not the same as raising the underlying claim itself on direct appeal. In response to respondent's position, petitioner raises several arguments, the gravamen of which is that, because the Sixth

5

Circuit has held that a Rule 26(B) application for reopening is related to the direct appeal process in Ohio, *see White v. Schotten*, 201 F.3d 743, 752-53 (6th Cir. 2000), *cert. denied sub nom. Bagley v. White*, 531 U.S. 940 (2000), raising an underlying claim as an instance of appellate counsel ineffectiveness in a Rule 26(B) application essentially is no different than raising that underlying claim on direct appeal.  Citing *Landrum v. Anderson*, 185 F.Supp. 2d 868 (S.D. Ohio 2002), petitioner goes on to argue that any procedural defaults enforced by the state courts in Rule 26(B) applications filed in capital cases on the ground of untimeliness should not be recognized, since the Ohio Supreme Court has neglected to enforce or even mention the 90-day filing period for 26(B) applications in capital cases.  Finally, petitioner disputes respondent's interpretation of *Lott v. Coyle, supra*, as holding that raising an underlying claim as an instance of appellate counsel ineffectiveness in a Rule 26(B) application is not the same as raising the underlying claim on direct appeal.

To the extent that petitioner suggests that this claim was preserved for habeas corpus review by virtue of the fact that he raised it in his Rule 26 application for reopening, the Court rejects that suggestion.  Under Ohio law, an application for reopening pursuant to App. R. 26(B) is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping substantive constitutional claims that were not raised on direct appeal.  The requirement that habeas corpus claims have been fairly presented to the state courts requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles.  *Picard v. Connor*, 404 U.S. 270, 276-77 (1971).  If petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.

Moreover, petitioner's interpretation of *White v. Schotten, supra*, is untenable.  In *White v.*

6

*Schotten*, the Sixth Circuit held, among other things, that criminal defendants in Ohio have a constitutional right to effective assistance of counsel in pursuing a Rule 26(B) application for reopening of their direct appeals.  (Criminal defendants have no such right in pursuing collateral remedies, such as state habeas corpus or post-conviction proceedings.)  In so holding, the Sixth Circuit reasoned, "If the application for delayed reconsideration is neither part of a state habeas nor state postconviction proceeding, it must be a continuation of activities related to the direct appeal itself."  *White, supra*, 201 F.3d at 752-53.  Seizing upon that language, petitioner would have this Court hold that a Rule 26(B) application for reopening is the functional equivalent of a direct appeal, such that raising an underlying claim as an instance of appellate counsel ineffectiveness in a Rule 26(B) application would preserve that underlying claim as if it had been raised on direct appeal. Whatever else *White v. Schotten* stands for, it certainly does not stand for the proposition advanced by petitioner, and this Court is not inclined to so hold.[2]

Having concluded that petitioner did not preserve this claim by merely including it in his Rule 26(B) application for reopening, the Court must determine whether petitioner may nevertheless demonstrate cause and prejudice to excuse the apparent default of his twenty-seventh ground for relief.  Because petitioner included this claim as the twentieth assignment of error in his Rule 26 application for reopening as an instance of appellate counsel ineffectiveness, the Court presumes that petitioner is asserting ineffective assistance of appellate counsel as cause for the default of ground twenty-seven.  The Court will accordingly address that argument.

---

[2]     Notwithstanding petitioner's prolonged discussion of *Lott v. Coyle*, in the end, a claimed trial error that was raised for the first time in the petitioner's *Murnahan*/Rule 26(B) motion for delayed reopening, and only as a basis for a claim of appellate counsel ineffectiveness, was held by the Sixth Circuit to be procedurally defaulted -- in spite of the fact that the appellate court considered and rejected the appellate counsel ineffectiveness claim on the merits.  *Lott v. Coyle, supra*, 261 F.3d at 612-13.

In order to qualify as cause for a procedural default, counsel ineffectiveness must rise to the level of an independent constitutional violation under the standard established in *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. ... So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986).

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in pursuing the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?
9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent

attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999).  The Sixth

Circuit has cautioned, however, that this list is not exhaustive and need not produce a certain

"score."  *Id.* at 428.

Petitioner apparently takes the position that his appellate attorneys were constitutionally

ineffective for failing to raise on appeal a claim alleging that Ohio's death penalty statutes violate

the Supremacy Clause of the United States Constitution.   In rejecting petitioner's Rule 26

application to reopen his direct appeal, the Supreme Court of Ohio concluded that petitioner's

appellate attorneys had provided effective assistance.  Respondent correctly asserts that, in order for

this Court to conclude that petitioner's appellate attorneys provided ineffective assistance, and

therefore conclude that petitioner can demonstrate cause for the default of ground twenty-seven, the

Court must conclude that the Ohio Supreme Court's decision was contrary to or involved an

unreasonable application of clearly established federal law as determined by the Supreme Court.

*See* 28 U.S.C. §2254(d)(1); *Terry Williams v. Taylor*, 529 U.S. 362, 402-402 (2000); *Doan v.

Brigano*, 237 F.3d 722, 729-730 (6th Cir. 2001).  With respect to claims of ineffective assistance of

counsel, *Strickland v. Washington, supra*, squarely constitutes "clearly established Federal law."

*Williams*, 529 U.S. at 413.  To demonstrate that the Ohio Supreme Court's decision rejecting his

claim of appellate counsel ineffectiveness for failing to argue that Ohio's death penalty statutes

violate the Supremacy Clause was so erroneous as to warrant relief, petitioner must show that the

Ohio Supreme Court's decision was more than just "incorrect" or "erroneous;" he must show that

the decision was objectively unreasonable.  *See Williams*, 529 U.S. at 412; *Doan*, 237 F.3d at 729-

730.  This, petitioner cannot do.

Petitioner charges that his appellate attorneys were constitutionally ineffective for failing to raise on appeal, among other issues, the claim that the Ohio death penalty statutes violate the Supremacy Clause of the United States Constitution, thereby rendering petitioner's death sentence constitutionally infirm. Petitioner has not demonstrated, and the record does not otherwise show, that this claim was so significantly and obviously stronger than the issues that were raised on appeal, that appellate counsel's performance could be characterized as objectively unreasonable. Accordingly, petitioner has not demonstrated that the Ohio Supreme Court's conclusion that appellate counsel provided effective assistance during petitioner's direct appeal was incorrect, or erroneous, or unreasonable. For that reason, this Court concludes that appellate counsel ineffectiveness does not constitute cause for the default of ground twenty-seven.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray*, *supra*, 477 U.S. at 496. If the petitioner alleges that he is actually innocent of the underlying offense, then to qualify for the miscarriage of justice exception, he must demonstrate, based on reliable evidence not presented at trial, that a constitutional error has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 324 (1995)(citing *Murray v. Carrier*, *supra*). If, however, the nature of petitioner's actual innocence claim is that he should not have been sentenced to death, as opposed to a claim of innocence of the underlying offense, then he must satisfy the more stringent test of demonstrating by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty under applicable state law. *See Sawyer v. Whitley*, 505 U.S. 333, 348 (1992). In either case, the Supreme Court has repeatedly emphasized the narrow scope of the

10

fundamental miscarriage of justice exception. *Sawyer*, 505 U.S. at 340; *see also McCleskey v. Zant*, 499 U.S. 467, 502 (1991); *Dugger v. Adams*, 489 U.S. 401, 412 n.6 (1989). Further, to satisfy this narrow fundamental miscarriage of justice exception, petitioner must establish a connection between the procedurally defaulted issue and the verdict. Petitioner has not argued, and it does not otherwise appear, that this is the type of "extraordinary case" contemplated by *Murray*. Furthermore, the trial record is replete with substantial evidence of petitioner's guilt. The Court concludes that the narrow fundamental miscarriage of justice exception has not been satisfied. Petitioner's twenty-seventh ground for relief is barred by procedural default and respondent's motion to dismiss this ground will be granted.[3]

For the foregoing reasons, respondent's motion to dismiss ground twenty-seven is GRANTED.

/s/ George C. Smith
**GEORGE C. SMITH**
**United States District Judge**

---

[3]    In any event, the Court of Appeals for the Sixth Circuit has squarely rejected the claim that Ohio's death penalty statutes, and any death sentence imposed thereunder, contravene international law or the Supremacy Clause of the United States Constitution. *Buell v. Mitchell*, 274 F.3d 337, 370-76 (6th Cir. 2001).