# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EATERN DIVISION

| | | |
|---|---|---|
| GERALD L. CLEMONS | : | |
| Petitioner | : | Case No. C-1-00-722 |
| vs. | : | JUDGE SMITH |
| BETTY MITCHELL, Warden | : | MAGISTRATE JUDGE KING |
| Respondent | : | |

## RESPONDENT MITCHELL'S RETURN OF WRIT

Respectfully submitted,

**JIM PETRO**
**ATTORNEY GENERAL**

**Richard S. Ketcham**
755 South High Street
Columbus, Ohio 43026
(614) 444-3900

**TARA L. BERRIEN (0074314)**
Assistant Attorney General

**David J. Graeff**
P.O. Box 1948
Westerville, Ohio 43086
(614) 226-5991

**CHARLES L. WILLE (0056444)**
Assistant Attorney General
Capital Crimes Section, 26th Floor
30 East Broad Street
Columbus, Ohio 43215-3428
(614) 728-7055; Fax (614) 728-8600

**COUNSEL FOR PETITIONER**

**COUNSEL FOR RESPONDENT**

# TABLE OF CONTENTS

Certification Of Custody And General Denial................................................................. 1

Statement Of The Case ................................................................................................. 2

AEDPA - Standard Of Review ..................................................................................... 16

Exhaustion.................................................................................................................... 19

Procedural Default ....................................................................................................... 21

Argument ..................................................................................................................... 27

    Third, Eighteenth, Nineteenth, Twenty-Four and Twenty-Ninth Grounds for Relief –
    Counsel Were Effective............................................................................................. 27

    First Ground for Relief – No Change of Venue Was Required................................. 65

    Second Ground for Relief – No Ake Violation Occurred During Clemons' Trial.................... 74

    Fourth Ground for Relief – The Prosecutor Acted Properly. .................................... 78

    Fifth Ground for Relief – The Trial Judge Properly Considered the Nature and
    Circumstances As Mitigating Factors........................................................................ 86

    Sixth Ground for Relief – Twelve Preemptory Challenges Are Not Constitutionally
    Required.................................................................................................................... 89

    Seventh Ground for Relief – Ohio Requires The Appropriate Mental State.............................. 91

    Eighth Ground for Relief – Ohio's Beyond a Reasonable Doubt Standard is
    Constitutional............................................................................................................ 93

    Ninth Ground for Relief – Ohio Review Process Is Constitutional. ......................... 95

    Tenth & Twentieth Grounds for Relief – Ohio's Death Penalty Statutory Scheme is
    Constitutional............................................................................................................ 97

    Eleventh Ground for Relief – Determination as to Sentence is Constitutional ...................... 104

    Twelfth Ground for Relief – Judge's Power to Dismiss Specifications is Proper ................. 106

    Thirteenth Ground for Relief – Standard for Appellate Review is Sufficient....................... 108

    Fourteenth Ground for Relief – The Trial Judge Only Considered Proper Evidence. ............ 110

Fifteenth Ground for Relief – Expert Testimony was Proper ................................................. 113

Sixteenth Ground for Relief – The Evidence Proved Beyond A Reasonable Doubt that Clemons Acted With Prior Calculation and Design. ................................................. 116

Seventeenth Ground for Relief – The Jury Instruction Was Constitutional. ........................... 120

Twenty-Third Ground for Relief – Jury Instructions in the Penalty Phase Were Constitutional. ................................................................................................. 123

Conclusion ......................................................................................................... 127

Certificate Of Service ......................................................................................... 127

# TABLE OF AUTHORITIES

## **CASES**

Abdullah v. Groose,
    75 F.3d 408 (8th Cir. 1996) ................................................... 24

Ake v. Oklahoma,
    470 U.S. 68 (1985) ................................................... 32, 75, 76

Allen v. Morris,
    845 F.2d 610 (6th Cir. 1988), cert denied 488 U.S. 1011 (1989)........................................... 114

Amos v. Scott,
    61 F.3d 333 (5th Cir.), cert. denied, 516 U.S. 1005 (1995)......................................... 21

Angel v. Overberg,
    682 F.2d 605 (6th Cir. 1982) ................................................... 82

Bagby v. Sowders,
    894 F. 2d 792 (6th Cir. 1990) ................................................... 119

Bedford v. Tolbert,
    (Apr. 9, 1998), Cuyahoga App. No. 72439, unreported, appeal dismissed
    (1998), 83 Ohio St.3d 1416, 698 N.E.2d 1006 [Case No. 98-1160] ....................................... 90

Bell v. Cone,
    122 S.Ct. 1843 (2002)................................................... 28

Blystone v. Pennsylvania,
    494 U.S. 299 (1990) ................................................... 100, 104, 105

Booth v. Maryland,
    482 U.S. 496, 107 S. Ct. 2529 (1987) ................................................... 111

Boyde v. California,
    494 U.S. 370 (1990) ................................................... 104, 105

Brecheen v. Reynolds,
    41 F.3d 1343 (10th Cir. 1994) ................................................... 57

Brofford v. Marshall,
    751 F.2d 845 (6th Cir. 1985) ................................................... 72

Brown v. Morris,
    872 F. 2d 1024 (6th Cir. 1989) ................................................... 119

Bryant v. Maryland,
   848 F.2d 492 (4th Cir. 1988) ............................................................................. 61

Buell v. Mitchell,
   274 F.3d 337 (6th Cir. 2001) ........................................................................... 103

Byrd v. Collins,
   209 F.3d 486 (6th Cir. 2000) ...................................................................... passim

Calderon v. Thompson,
   523 U.S. 538, 118 S.Ct. 1489 (1998) ................................................................ 26

Caldwell v. Johnson,
   226 F.3d 367 (5th Cir. 2000) ........................................................ 32, 76, 121, 122

Campbell v. Coyle,
   260 F.3d 531 (6th Cir. 2001) ............................................................................ 22

Case v. Nebraska,
   381 U.S. 336 (1965) .......................................................................................... 23

Castille v. Peoples,
   489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) ................................... 24

Chandler v. Jones,
   813 F.2d 773 (6th Cir. 1987) ............................................................................ 29

Coe v. Bell,
   161 F.3d 320 (6th Cir. 1998) ................................................................... 103, 125

Coleman v. Mitchell,
   244 F.3d 533 (6th Cir. 2001) ..................................................................... 23, 114

Coleman v. Mitchell,
   268 F.3d 417 (6th Cir. 2001) ....................................................................... 92, 94

Coleman v. Thompson,
   501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ....................... 24, 25, 26

Darden v. Wainwright,
   477 U.S. 168 (1986) .......................................................................................... 81

Davis v. Mitchell,
   318 F.3d 682 (6th Cir. 2003) .................................................... 124, 125, 126

Dennis v. Mitchell,
   68 F.Supp.2d 863 (N.D. Ohio 1999) ......................................................... 20, 107

Deputy v. Taylor,
   19 F.3d 1485 (3rd Cir.) cert. denied, 512 U.S. 1230 (1994)..................................... 92

Devier v. Zant,
   3 F.3d 1445 (11th 1993) ................................................................................... 57

Dobbert v. Florida,
   432 U.S. 282 (1977) ................................................................................... 67, 68

Donnelly v. DeChristoforo,
   416 U.S. 637 (1974) ................................................................................... 81, 82

Dugger v. Adams,
   489 U.S. 401 (1989) ......................................................................................... 121

Edmund v. Florida,
   458 U.S. 782 (1982) ................................................................................... 91, 98

Edwards v. Carpenter,
   120 S.Ct. 1587 (2000)......................................................................................... 25

Engle v. Isaac,
   456 U.S. 107 (1982) ........................................................................................... 22

Estelle v McGuire,
   502 U.S. 62 (1991) ........................................................................................... 114

Ex Parte Hawk,
   321 U.S. 114 (1944) ........................................................................................... 19

Fairchild v. Norris,
   51 F.3d 129 (8th Cir.), cert. denied, 515 U.S. 1182 (1995)............................... 26

Gardner v. Florida,
   430 U.S. 349 (1977) ........................................................................................... 89

Glenn v. Tate,
   71 F.3d 1204 (6th Cir. 1995) ............................................................................. 29

Godfrey v. Georgia,
   446 U.S. 420, 100 S. Ct. 1759 (1980) .............................................................. 109

Granberry v. Greer,
   481 U.S. 129 (1987) ..................................................................................... 19, 20

Gray v. Netherland,
   518 U.S. 152 (1996) ........................................................................................... 19

Greer v. Mitchell,
    264 F.3d 663 (6th Cir. 2001) ...................................................... 61, 90, 92

Gregg v. Georgia,
    428 U.S. 153 (1976) ................................................... 89, 98, 100, 109

Groseclose v. Bell,
    130 F.3d 1161 (6th Cir. 1997) ...................................................... 53

Hafley v. Sowders,
    902 F.2d 480 (6th Cir. 1990) ...................................................... 19

Harpster v. Ohio,
    128 F.3d 322 (6th Cir. 1997) ...................................................... 18

Harris v. French,
    1999 U.S. App. LEXIS 15794, *13 (4th Cir. July 14, 1999) ...................................................... 23

Harris v. Lee,
    528 U.S. 1091 (2000) ...................................................... 23

Harris v. Reed,
    489 U.S. 255, 103 L. Ed. 2d 308, 109 S.Ct. 1038 (1989) ...................................................... 24

Harris v. Stovall,
    212 F.3d 940 (6th Cir. 2000) ...................................................... 16, 18

Hoxie v. Kerby,
    108 F.3d 1239 (10th Cir.) ...................................................... 20

Irvin v. Dowd,
    366 U.S. 717 (1961) ...................................................... 66, 70, 73

Jackson v. Virginia,
    443 U.S. 307 (1979) ...................................................... 118, 119

Jones v. Jones,
    163 F.3d 285 (5th Cir. 1998) ...................................................... 19

Jones v. United States,
    527 U.S. 373 (1999) ...................................................... 124

Jurek v. Texas,
    428 U.S. 262 (1976) ...................................................... 100

Kirby v. Dutton,
    794 F.2d 245 (6th Cir. 1986) ...................................................... 60

Kordenbrock v. Scroggy,
    919 F.2d 1091 (6th Cir. 1990) (en banc), cert. denied, 499 U.S. 970 (1991) ............................ 121

Kordenbrook v. Scroggy,
    919 F.2d 1091 (6th Cir. 1991) ............................................................................................. 72

Krist v. Foltz,
    804 F.2d 944 (6th Cir. 1986) ............................................................................................. 29

Leroy v. Marshall,
    757 F.2d 94 (6th Cir. 1983), cert. denied, 474 U.S. 831 (1985).................................................. 21

Lorraine v. Coyle,
    291 F.3d 416 (6th Cir. 2002) ............................................................................................. 53

Lott v. Coyle,
    261 F.3d 594 (6th Cir. 2001) ............................................................................................. 22, 26

Lowenfield v. Phelps,
    484 U.S. 231 (1988) ........................................................................................................ 101

Madrigal v. Bagley,
    276 F. Supp.2d 744 (N.D. Ohio 2003) ........................................................................... 107, 125

Manning v. Alexander,
    912 F.2d 878 (6th Cir. 1990) ............................................................................................. 19

Mapes v. Coyle,
    171 F.3d 408 (6th Cir. 1999) ............................................................................................. 121

Mapes v. Coyle,
    171 F.3d 408 (6th Cir. 1999), cert. denied, Coyle v. Mapes, 528 U.S. 946
    (1999) ......................................................................................................................... 23, 25

Martin v. Mitchell,
    280 F.3d 594 (6th Cir. 2002) ............................................................................................. 53

Matthews v. Evatt,
    105 F.3d 907 (4th Cir. 1997) ............................................................................................. 24

Maupin v. Smith,
    785 F.2d 135 (6th Cir. 1986) ............................................................................................. 21

McCleskey v. Kemp,
    481 U.S. 279 (1987) ........................................................................................................ 99

McCleskey v. Zant,
    499 U.S. 467 (1991) ........................................................................................................ 25

McKoy v. North Carolina,
   494 U.S. 433 (1990) ............................................................... 124

McQueen v. Scroggy,
   99 F.3d 1302 (6th Cir. 1996) ............................................... 102

Meeks v. Bergen,
   749 F.2d 322 (6th Cir. 1984) ............................................. 28, 29

Mills v. Maryland,
   486 U.S. 367 (1998) ............................................................... 124

Murphy v. Florida,
   421 U.S. 794 (1975) ........................................................ 66, 68, 69

Murray v. Carrier,
   477 U.S. 478 (1986) ........................................................... 25, 26

Neal v. Gramley,
   99 F.3d 841 (7th Cir. 1996), cert. denied, 118 S.Ct. 104 (1997) .................................. 19

Nevers v. Killinger,
   169 F.3d 352 (6th Cir. 1999) ............................................. 18, 68

Nobles v. Johnson,
   127 F.3d 409 (5th Cir. 1997) (same), cert. denied, 118 S.Ct. 1845 (1998) ............................... 20

Norris v. Schotten,
   146 F.3d 314 (6th Cir. 1998) ............................................. 23, 25

O'Guinn v. Dutton,
   88 F.3d 1409 (6th Cir. 1996) (en banc), cert. denied, 519 U.S. 1084 (1997) .............................. 19

O'Sullivan v. Boerckel,
   526 U.S. 838, 119 S.Ct. 1728 (1999) ................................. 19

Paprocki v. Foltz,
   869 F.2d 281 (6th Cir. 1989) ............................................... 21

Parker v. Norris,
   64 F.3d 1178 (8th Cir. 1995) ........................................... 32, 76

Patton v. Yount,
   467 U.S. 1025 (1984) ............................................................... 68

Payne v. Tennessee,
   501 U.S. 808, 111 S. Ct. 2597 (1991) ............................... 111

Pennsylvania v. Finley,
    481 U.S. 551 (1987) ....................................................................................... 23

Pillete v. Foltz,
    824 F.2d 494 (6th Cir. 1987) ......................................................................... 22

Prather v. Rees,
    822 F.2d 1418 (6th Cir. 1987)................................................................... 19, 22

Prichett ....................................................................................................................... 82

Pritchett v. Pitcher,
    117 F.3d 959 (6th Cir. 1997), cert. denied, 522 U.S. 1001 ...................... 82

Proffitt v. Florida,
    428 U.S. 242 (1976) ..................................................................................... 109

Pulley v. Harris,
    465 U.S. 37 (1984) ............................................................................... 102, 103

Resnover v. Pearson,
    965 F.2d 1453 (7th Cir. 1992)....................................................................... 24

Rideau v. Louisiana,
    373 U.S. 723 (1963) ................................................................................. 67, 73

Ritchie v. Rogers,
    313 F.3d 948 (6th Cir. 2002) ......................................................................... 68

Roe v. Baker,
    316 F.3d 557 (6th Cir. 2002) ................................................................. 60, 121

Rose v. Lundy,
    455 U.S. 509 (1982) ........................................................................................ 19

Rust v. Zent,
    17 F.3d 155 (6th Cir. 1994) ........................................................................... 23

Salmi v. Sec'y of Health and Human Services,
    774 F.2d 685 (6th Cir. 1985) ....................................................................... 126

Schlup v. Delo,
    513 U.S. 298 (1995) ........................................................................................ 26

Scott v. Mitchell,
    209 F.3d 854 (6th Cir. 2000) ..................................................... 22, 94, 97, 125

Seymour v. Walker,
    224 F.3d 542 (6th Cir. 2000) ......................................................................... 21

Smith v. Anderson,
    104 F. Supp.2d 773 (S.D. Ohio 2000) ............................................................. 61

Smith v. Farley,
    59 F.3d 659 (7th Cir. 1995), cert. denied, 516 U.S. 1123 (1996)................................ 92

Smith v. Mitchell,
    2003 U.S. App. LEXIS 21974 (6th Cir. 2003) .......................................................... 56

Starr v. Lockhart,
    23 F.3d 1280 (8th Cir.), cert. denied, 115 S. Ct. 499 (1994)................................ 32, 76

State v. Buell,
    22 Ohio St. 3d 123 (1986) ............................................................. 107, 121

State v. Buell,
    489 N.E.2d 795 (Ohio 1986) ............................................................. 102

State v. Carter,
    72 Ohio St.3d 545 (1995) ............................................................. 90

State v. Clemons,
    1999 WL 252655 (Ohio App. 1 Dist)............................................................. passim

State v. Clemons,
    696 N.E.2d at 1014; J.A. Vol. VI, pgs. 203-204. ........................................ 66, 91, 93

State v. Clemons,
    82 Ohio St. 3d 438 (1998) ............................................................. passim

State v. Clemons,
    86 Ohio St. 3d 1463 (1999) ............................................................. 10

State v. Durr,
    58 Ohio St.3d 86 (1991) ............................................................. 121

State v. Durr,
    58 Ohio St.3d 86, 568 N.E.2d 674 (1991)............................................................. 82

State v. Goff,
    82 Ohio St.3d 123 (1998) ............................................................. 64, 123

State v. Greer,
    39 Ohio St.3d 236, cert. denied, 490 U.S. 1028 ............................................... 90

State v. Jenkins,
    15 Ohio St.3d 164, 189 (1984), cert. denied, 472 U.S. 1032 (1985)............................. 100, 109

State v. Keenan,
   81 Ohio St. 3d 133 (1998) ................................................................... 121

State v. Mills,
   62 Ohio St.3d 357(1992) ............................................................... 90, 124

State v. Perry,
   10 Ohio St.2d 175 (1967) ................................................................ 22, 23

State v. Rogers,
   28 Ohio St.3d 427 (1986) .................................................................. 121

State v. Scott,
   26 Ohio St.3d 92 (1986) .................................................................... 121

State v. Smith,
   80 Ohio St. 3d 89 (1997) ................................................................ 95, 96

State v. Steffen,
   31 Ohio St.3d 111 (1987) .................................................................. 121

State v. Stephens,
   24 Ohio St.3d 76, 263 N.E.2d 773 (1970) ............................................. 82

State v. Tate,
   59 Ohio St.2d 50 (1979) .................................................................... 90

State v. Taylor,
   78 Ohio St.3d 15 (1997) ............................................................... 64, 123

State v. Woodard,
   68 Ohio St.3d 70 (1993) .................................................................... 121

Strickland v. Washington,
   466 U.S. 668 (1984) ................................................................... passim

Sumner v. Shuman,
   483 U.S. 66 (1987) .................................................................. 100, 119

Taylor v. Bagley,
   2003 U.S. Dist. LEXIS 4383, (N.D. Ohio 2003)..................................... 125

Teague v. Lane,
   489 U.S. 288, 103 L. Ed. 2d 334, 109 S.Ct. 1060 (1989) ...................... 18, 24

Thomas v. Arn,
   704 F.2d 865 (6th Cir. 1983) .............................................................. 94

Timmer v. Mich. Dep't of Corr.,
    104 F.3d 833 (6th Cir. 1997) ................................................................ 126

Tison v. Arizona,
    481 U.S. 137 (1987) ................................................................ 92, 98

Tran v. Lindsey,
    212 F.3d 1143 (9th Cir. 2000) ................................................................ 17

United States v. Carter,
    236 F.3d 777 (6th Cir. 2001) ................................................................ 82

United States v. Collins,
    78 F.3d 1021 (6th Cir. 1996) ................................................................ 82

United States v. Frady,
    456 U.S. 152 (1982) ................................................................ 25

United States v. Riddle,
    249 F.3d 529 (6th Cir. 2001) ................................................................ 126

United States v. Singleton,
    107 F.3d 1091 (4th Cir. 1996) ................................................................ 32, 77

United States v. Smith,
    73 F 3d 1414 (6th Cir. 1996) ................................................................ 126

Victor v. Hopkins,
    90 F.3d 276 (8th Cir. 1996) ................................................................ 19

Waldrop v. Jones,
    77 F.3d 1308 (11th Cir. 1996) ................................................................ 24

Walker v. Russell,
    57 F.3d 472 (6th Cir. 1995) ................................................................ 119

Walton v. Arizona,
    497 U.S. 639 (1990) ................................................................ 100, 105

Williams v. Coyle,
    167 F.3d 1036 (6th Cir. 1999) ................................................................ 16

Williams v. Coyle,
    260 F.3d 684 (6th Cir. 2001) ................................................................ 53

Williams v. Taylor,
    529 U.S. 362 (2000) ................................................................ 16, 17

Williams-Bey v. Trickey,
    864 F.2d 314 (8th Cir. 1990) ................................................................ 61

Wilson v. Moore,
    178 F.3d 266 (4th Cir. 1999) ................................................................ 23

Wong v. Money,
    142 F.3d 313 (6th Cir. 1998) ...................................................... 22, 23, 25

Woodson v. North Carolina,
    428 U.S. 280 (1976) ..............................................................................109

Zant v. Stephens,
    462 U.S. 862 (1983) ............................................................................ 101

## STATUTES

28 U.S.C. §2254(b)(2) ..........................................................................19, 20

28 U.S.C. §2254(b)(3) ............................................................................... 20

28 U.S.C. §2254(d) ..............................................................................16, 18

28 U.S.C. §2254(d)(1) ............................................................................... 28

O.R.C. §2901.05 .......................................................................................93

O.R.C. §2903.01 .........................................................................................5

O.R.C. §2929.03(D)(2) ............................................................................122

O.R.C. §2929.03(D)(3) ............................................................................122

O.R.C. §2929.04 ......................................................................................109

O.R.C. §2929.04(A) .................................................................................101

O.R.C. §2929.04(B) ...........................................................................87, 101

O.R.C. §2929.04(B)(7) ............................................................................100

O.R.C. §2929.04(C) ..........................................................................100, 101

O.R.C. §2929.05(A) .................................................................................102

O.R.C. §2939.02 .......................................................................................90

O.R.C. §2939.20 .......................................................................................90

O.R.C. §2945.21(A)(2) .....................................................................................89, 90

O.R.C. §2953.21 ..............................................................................................8

## OTHER AUTHORITIES

Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214............16, 18, 19

## RULES

Crim. R. 11(C)(3)..................................................................................101, 107

Crim. R. 24.................................................................................................89

Crim. R. 24(C)............................................................................................90

Crim. R. 45(A)............................................................................................90

Crim. R. 6(A)..............................................................................................90

Habeas Rule 5............................................................................................20

## <u>CERTIFICATION OF CUSTODY AND GENERAL DENIAL</u>

Respondent Mitchell denies each and every allegation contained in the instant petition for writ of habeas corpus, except as may be expressly admitted in this return and any attachments hereto.  Respondent declares that, as Warden of the Mansfield Correctional Institution, she has custody of Gerald L. Clemons (hereinafter Clemons) by virtue of a journal entry of sentence issued by the Hamilton County Court of Common Pleas, in <u>State v. Clemons</u>, Case No. B-951119.

**STATEMENT OF THE CASE**

The facts of this case were set forth by the Ohio Supreme Court on direct appeal. These binding factual findings "shall be presumed correct." Clemons has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). The Ohio Supreme Court's statement of the facts is reproduced below:

> On the morning of December 15, 1995, defendant-appellant, Gerald L. Clemons, went to the main office of his employer, Trans-Continental Systems, Inc., in Evendale, and fatally shot three co-workers. Defendant was subsequently convicted of three counts of aggravated murder and sentenced to death.
>
> Defendant had worked at various jobs in both Florida and the Cincinnati area. After moving back to Cincinnati in 1988, defendant became an over-the-road truck driver and worked for several trucking companies. By November 1995, defendant had become a company driver for Trans-Continental. On the evening of December 13, 1995, a dispatcher for Trans-Continental phoned defendant at home and asked him to pick up a load in Ironton, which is a regular run for Trans-Continental. Defendant declined to make the pickup and John Stirsman, chief dispatcher, told defendant that he was putting the company "in a bad spot." The company apparently then made other arrangements for the Ironton run.
>
> The next day, December 14, defendant phoned Stirsman several times hoping to secure a new run. During one conversation, defendant asked Stirsman why another dispatcher, Dave Kreamelmeyer, was "screwing him around." Stirsman replied that Kreamelmeyer was not doing that to him. Stirsman told defendant that he was saving the Ironton run for the defendant again that evening. While defendant thanked Stirsman for assigning him the Ironton run again, defendant never showed up to make the run. Defendant later testified that he did not make the Ironton run because "it wasn't a good run for the mere fact that there is no good roads going that way and all secondary roads instead of interstate highways and it burns up a lot of time."
>
> At 7:45 a.m. on the morning of December 15, 1995, defendant called Trans-Continental, according to an entry made by Kreamelmeyer on the company's telephone log sheet. Evelyn Dinkgrave, who works in accounts payable for Trans-Continental, testified that she overheard Kreamelmeyer have a loud conversation with a driver at 7:45 a.m. that morning, and she observed that Kreamelmeyer "was kind of angry." After Kreamelmeyer hung up the phone, Dinkgrave testified that "he got more vocal about how mad he was that this guy had not been on time to pick up a load" the night before. At trial, defendant testified that during their phone conversation, Kreamelmeyer appeared to be angry and informed defendant that he was not going to give defendant a load to deliver that day.
>
> At approximately 8:15 a.m. that morning, defendant entered the Trans-Continental garage and asked mechanic Elmer Begley whether defendant's truck

was ready for work. Both Begley and driver Timothy Stone testified that defendant had a cream-colored bag attached to his waist at that time and he appeared to be in a "normal mood."

Secretary Dana Wilson Jones observed defendant in the administrative offices of Trans-Continental that morning. Defendant waved and smiled at her, then walked away. Moments later, Jones heard Kreamelmeyer say, "I'm going to have this man arrested for felonious assault." Then, Jones heard gunshots and heard Kreamelmeyer say, "What did I do, I didn't do anything." Jones testified that she heard more gunshots and heard someone say, "Oh, my God."

Tonya Hinkle shared an office with Christine Teetzel in the Trans-Continental administrative offices, and both worked on payroll. Hinkle testified that she heard Kreamelmeyer arguing with someone around 8:15 that morning and heard "a punch, like a bang." Both she and Teetzel stood up and heard Kreamelmeyer say, "Assault, call 911." As Hinkle and Teetzel tried to phone for help, they heard shots and both women hid under their desks. Teetzel pulled her chair underneath her desk in an attempt to hide herself. Hinkle testified that as they hid under their desks, she saw defendant walk up to Teetzel's desk, move her chair out of the way, look under the desk, and shoot her. As defendant turned around, Hinkle thought she was next, but defendant proceeded upstairs.

Laurie McGuire works in accounts receivable for Trans-Continental on the second floor of the administrative office building. On the morning of December 15, she heard some commotion on the first floor around 8:15 a.m. and began walking downstairs. Before she made it to the first floor, she saw defendant shoot Kreamelmeyer in the back. She ran back upstairs, panic- stricken, and could hear defendant climbing the staircase. McGuire then fled into an office and stood up against a concrete wall. Defendant walked up to McGuire and told her that he was not going to hurt her, and that "he was only after the ones who screwed him over." Defendant left the room. McGuire was going downstairs when she heard dispatcher Bob Kinney scream for help from his office. McGuire found Kinney in the dispatcher's office, shot twice, holding his chest, and asking for help. McGuire saw Kreamelmeyer lying on the floor, too, so she ran back upstairs to call 911.

Sandra K. Sears, a Glendale police officer, was working off-duty near the Trans-Continental office at the time of the shootings. Upon hearing a radio dispatch, she responded to the scene and followed an Evendale police officer into the Trans-Continental parking lot. Sears found Teetzel lying wounded on the front lawn of the premises. She heard Teetzel name Gerald Clemons as her assailant. As Sears approached the office building with the Evendale officer, she noticed defendant smiling and walking steadily towards her. At that point, Sears heard Teetzel exclaim again, "That's the bastard that shot me." Sears testified that defendant told her, "I'm the guy you are looking for. I just shot the people," and he motioned his head toward the office building. Sears handcuffed Clemons and turned him over to Evendale police officers.

All three shooting victims, Kreamelmeyer, Kinney, and Teetzel, died of gunshot wounds.

Bullets recovered during the autopsies and casings found at the crime scene were determined to have been fired from defendant's gun, which was found lying on top of his car trunk in the Trans-Continental parking lot that morning.

The grand jury indicted defendant on three counts of aggravated murder, with prior calculation and design. Each count included a firearms specification, and a death penalty specification that murder was committed as a course of conduct involving the killing of two or more persons. (R.C. 2929.04[A][5].)

Defense counsel conceded at the outset of trial that defendant killed the three murder victims, but disputed that they were murdered with prior calculation and design. Defendant testified on his own behalf, and acknowledged having a discussion with Kreamelmeyer on the morning in question, in which defendant was told he was not getting a load to deliver. Defendant claimed that Kreamelmeyer started "charging at me like a rhino," but defendant testified that he then went "into a fog," and did not recall shooting anyone or his gun going off. Defendant testified that he believed that his taking of Prozac caused him to black out. The next thing defendant claims to remember was walking out to his car and seeing a crowd and police gather outside the building. Defendant testified that he "went to that woman cop because I didn't think she would slam me [to the ground]." Defendant also expressed regret and remorse for his actions.

After deliberation, the jury found defendant guilty as charged.

At the mitigation hearing, defendant's physician testified that he treated defendant's depression by prescribing Prozac. Defendant's mother, Alice McMichen, also testified and recounted his life story. She described defendant as a caring and helpful son, and asked the jury to spare his life.

Defendant gave an unsworn statement expressing his sorrow and shame for what he had done.

On rebuttal, the prosecution called a professor of psychiatry who testified that studies of Prozac indicate that it decreases aggressive or violent behavior in both humans and animals. The expert opined that Prozac reduces suicidal thoughts in those who take the drug.

The jury recommended death on all three counts, and the trial court imposed the death sentence on defendant. The court also imposed consecutive prison sentences on the three firearms specifications.

State v. Clemons, 82 Ohio St. 3d 438, 438-441 (1998).

**Trial**

The Hamilton County Grand Jury indicted Clemons on December 21, 1995, on three

counts:

Count One:    Aggravated Murder of David Kreamelmeyer
              in violation of O.R.C. § 2903.01

Count Two:     Aggravated Murder of Robert Kinney
in violation of O.R.C. § 2903.01

Count Three:   Aggravated Murder of Christina Teetzel
in violation of O.R.C. § 2903.01

Each count contained a death penalty specification that the aggravated murder was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons by Gerald Clemons, in violation of O.R.C. § 2903.01.

On December 22, 1995, Clemons plead not guilty on all counts. On January 5, 1996, Clemons changed his pleas to not guilty by reason of insanity. This plea was later withdrawn on April 29, 1996. The jury commenced on September 24, 1996. On October 2, 1996, the jury found Clemons guilty on all counts and specifications. On October 22, 1996, the mitigation hearing began. On October 24, 1996 the jury recommended a sentence of death as to all three victims [Counts 1, 2, and 3.] On November 1, 1996, the trial court imposed a death sentence as to each count.

**Direct Appeal**

Clemons filed a timely Notice of Appeal in the Ohio Supreme Court on December 19, 1996. He filed his brief on June 17, 1997, raising the following 17 claims:

1.  The trial court erred to the prejudice of the defendant-appellant by failing to transfer this case to another venue due to adverse pretrial publicity.

2.  The defendant-appellant was prejudiced by a lack of funds to adequately defend himself in this litigation.

3.  Defendant-Appellant was denied his rights of due process and assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United

5

States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution because his trial counsel provided ineffective assistance.

4. Egregious misconduct by the prosecutor in opening statement, closing argument and argument in the penalty phase of the proceedings was so prejudicial as to deny the defendant a fair trial.

5. Where in a capital case, the sentencing court considers and weighs invalid or improper aggravating factors in imposing the death sentence, that sentence offends the Eighth Amendment to the Constitution of the United States, and the right to due process under the Fourteenth Amendment, and their counterparts in the Ohio Constitution, and must be reversed.

6. The trial court committed prejudicial error in refusing the defendant-appellant's motion for twelve (12) peremptory jury challenges.

7. The Ohio Death Penalty is unconstitutional in failing to require for the appropriate mental state in order for a jury to properly convict for such a crime.

8. The Ohio "Beyond a Reasonable Doubt" standard of proof fails to meet the requirement of higher reliability for the guilt determination phase of a capital case.

9. The Ohio Death Penalty review process is unconstitutional in removing Court of Appeals jurisdiction from the appeal process.

10. The Ohio Death Penalty statues are unconstitutional, violating the Eighth Amendment proscription of cruel and unusual punishment, the Fourteenth Amendment of the United States Constitution guarantees due process of law and to the equal protection of the laws, and also violates the commitment provisions of the Ohio Constitution.

11. The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree the mitigating circumstances renders the Ohio capital statutes quasi-mandatory and permits the execution of an offender even through the mitigating evidence falls just short of equipoise with the aggravating factors, with the result that the risk of putting someone to death when it is practically as likely that he deserves to live renders the Ohio capital process arbitrarily and capricious, and, in the absence of a requirement that, before death may be imposed, aggravating factors must *substantially* outweigh mitigating factors, unconstitutional.

12. The provisions of Crim. R. 11 (C)(3) permitting a trial court to dismiss specifications upon a guilty plea only under the nebulous and undefined

concept "In the interest of justice," needlessly encourages guilty pleas for the concomitant waiver of the right to a jury, to compulsory process and to confrontation and introduces the possibility that the death sentence will be imposed arbitrarily and capriciously.

13. The Ohio capital sentencing scheme is unconstitutional in that it provides no standard for sentencing or review at several significant stages of the process and consequently death sentences are imposed and reviewed, without courts and reviewing courts to prevent the unconstitutional, arbitrary, and capricious infliction of the death penalty.

14. Where, in a capital case, the sentencing court considers and weighs invalid or improper aggravating factors in imposing the death sentence, that sentence violates the Eighth Amendment to the Constitution of the United States and the right to due process under the Fourteenth Amendment of the United States Constitution.

15. The trial court's allowing the prosecution to have an expert testify on the effects of Prozac when the defense did not raise either an insanity defense or allege that Prozac caused this crime, was a prejudicial error.

16. The judgment of conviction on the aggravated murder counts is contrary to the manifest weight of the evidence (argued together.)

17. The trial court erred to the prejudice of appellant by referring to the jury's life or death decision as a "recommendation," thus diminishing the jury's sense of responsibility for their decision, in violation of appellant's right under the Eighth and Fourteenth Amendment of the United States Constitution and Art. I., Sec. 9 of the Ohio Constitution.

The State filed a reply brief on August 13, 1997. On July 29, 1998, the Ohio Supreme Court found no merit to Clemons' assignments of error, and affirmed the judgment of the trial court.

Clemons petitioned for writ of certiorari in the United States Supreme Court on November 2, 1998. The United States Supreme Court denied Clemons' petition on January 19, 1999.

**Post-Conviction**

Clemons filed a post- conviction petition pursuant to O.R.C. §2953.21 on August 16, 1997, in the Court of Common Pleas, Hamilton County.  On August 22, 1997 Clemons filed an amended post-conviction petition in which he raised the following eleven (11) grounds for relief:

1. The judgment and sentence against Gerald Clemons are void or voidable because the recent amendments to the Ohio post-conviction process violate his constitutional rights to procedural due process which the Ohio and United States Constitutions afford him.

2. The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial.  Counsel fell far below a minimum standard of reasonable legal representation in their presentation of the testimony of Mr. Clemons in the trial phase of his case.  As a result he was prejudiced at the penalty phase of his trial.

3. The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial.  Counsel fell far below a minimum standard of reasonable legal representation in their failed attempt to present a defense of involuntary intoxication.

4. The judgment and sentence against Gerald Clemons are void or voidable because he did not receive effective assistance of counsel during the penalty phase of his trial.  Counsel fell far below a minimum standard of reasonable legal representation by numerous actions and failures to act in violation of his constitutional rights as guaranteed by the United States Constitution and the Ohio Constitution.

5. The judgment and sentence against Gerald Clemons are void or voidable because of the errors of the trial court and the ineffective assistance of his court-appointed counsel during the penalty phase of his trial.  Counsel fell far below a minimum standard of reasonable legal representation by numerous actions and failures to act in violation of his constitutional rights as guaranteed by the United States Constitution and the Ohio Constitution.

6. The judgment and sentence against Gerald Clemons are void or voidable because he did no receive the effective assistance of counsel during the mitigation phase of his capital trial.  Counsel fell far below a minimum standard of reasonable legal representation in their failure to conduct an adequate background search for a competent expert psychologist.  Because of

counsel's error, no psychological evidence was presented by the defense at the mitigation phase.

7. The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during the mitigation phase of his trial. Counsel fell far below a minimum standard of reasonable legal representation in conducting the mitigation phase.

8. The judgment and sentence against Gerald Clemons are void or voidable because, based on evidence *de hors* the record, he did not receive the effective assistance of counsel during the trial phase of his capital trial.

9. The judgment and sentence against Gerald Clemons are void or voidable because he was prejudiced by errors committed by the trial Court during the course of the mitigation phase of his capital trial. The trial court erroneously permitted rebuttal testimony from an expert and made prejudicial comments about the defendant before sentencing him to death. These errors resulted in a violation of Gerald's right to a fair trial pursuant to the Sixth Amendment of the United States Constitution, and Article I, Section 10 to the Ohio Constitution

10. The imposition and planned execution of the death sentence under Ohio law and practice upon Gerald Clemons is void and/or voidable because the death penalty is administered and applied arbitrarily, capriciously and whimsically in the State of Ohio and Petitioner was sentenced to die and still be executed, pursuant to a pattern and practice of wholly arbitrary and capricious infliction of that penalty. The theoretical justifications for capital punishment are groundless and irrational in fact; and death is thus an excessive penalty which fails factually to serve any rational and legitimate social interests that can justify its unique harshness.

11. The judgment and sentence against Gerald Clemons are void or voidable because he did not receive the effective assistance of counsel during all phases of his capital trial. Counsel fell far below a minimum standard of reasonable legal representation. The cumulative impact of the litany of errors that occurred during Gerald Clemons' trial, rendered his capital proceedings unconstitutional.

The State filed a motion to dismiss Clemons' petition on December 18, 1997. The Court of Common Pleas granted the State's motion on February 4th, 1998. The order was not served upon counsel for the parties, and the findings/conclusions were vacated on April 28, 1998. However, that same day, the Court reentered its findings/conclusions.

On May 26, 1998, Clemons filed a notice of appeal in the First District Court of Appeals.

He filed a brief on November 2, 1998 asserting one assignment of error:

1.  The trial court erred in granting the state's motion to dismiss appellant's post-conviction petition in violation of appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The State filed its response on January 15, 1999.  On April 30, 1999, the Court of

Appeals affirmed the judgment of the trial court's dismissal of Clemons' post-conviction

petition.  State v. Clemons, 1999 WL 252655 (Ohio App. 1 Dist).

On June 14, 1999, Clemons filed a notice of appeal and a memorandum in support in the

Ohio Supreme Court.  He raised the following three propositions of law:

1.  The trial court erred in dismissing appellant Clemons' post-conviction claims by concluding he failed to show prejudice, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

2.  The trial court erroneously granted summary judgment to the State, in violation of Mr. Clemons' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.  The trial court erroneously dismissed Mr. Clemons' post-conviction claims on the basis of res judicata, violating his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The State filed a memorandum in response on July 9, 1999.  The Ohio Supreme Court

declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial

constitutional question on September 1, 1999.  State v. Clemons, 86 Ohio St. 3d 1463 (1999).

**Murnahan**

Clemons filed an Application for Reopening in the First District Court of Appeals on

January 13, 1997.  On April 21, 1997, the Court of Appeals dismissed the appeal sua sponte

because proper jurisdiction lay in the Ohio Supreme Court.

On October 27, 1998, Clemons filed his application to reopen in the Supreme Court of Ohio. The State filed a memorandum in opposition on November 13, 1998. The Supreme Court of Ohio denied Clemons' application for reopening on March 3, 1999.

**Federal Habeas Corpus**

Clemons is now before this Court upon the filing of an application for writ of habeas corpus in which alleged the following twenty-nine (29) grounds for relief:

1. The trial court erred to the prejudice of Petitioner Clemons when it denied a motion for change of venue where pretrial publicity precluded the accused from receiving a fair trial under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

2. The trial court erred to the prejudice of Petitioner Clemons in not granting funds for expert assistance constitutionally required for the preparation of an adequate defense as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the Constitution.

3. Petitioner Gerald Clemons was denied his right of due process and assistance of counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the Constitution because the record reflects trial counsel provided ineffective assistance to petitioner Clemons.

4. Prosecutorial misconduct occurred in this case, specifically in the opening statement, closing argument and the penalty phase proceedings which resulted in prejudice to Petitioner Clemons to the extent that he was denied a fair trial under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

5. The trial court erred in sentencing when improperly considering the nature and circumstances of the offense in imposing the death sentence on Petitioner Clemons, the result being contra the Eighth and Fourteenth Amendments to the Constitution.

6. The trial court erred to the prejudice of Petitioner Clemons when it denied the pre-trial motion for twelve preemptory challenges contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

7.      The death penalty statute in Ohio is unconstitutional under the Fourth, Sixth, Eighth and Fourteenth Amendments to the Constitution in that it fails to require the appropriate mental state and, as a result, allows the jury to convict on a less than adequate showing of culpability.

8.      Petitioner Clemons was improperly convicted and sentenced because of the Ohio beyond a reasonable doubt standard of plea fails to meet the requirement of a higher reliability for guilt determination in a capital case contra that Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

9.      The amended Ohio review process is unconstitutional in violation of the Eighth and Fourteenth Amendments to the Constitution in that it removes Court of Appeals jurisdiction from the direct appeal process.

10.     The Ohio death penalty statutes are unconstitutional in that they violate the Eighth Amendment proscription of cruel and unusual punishment and the fourteenth amendment to the Constitution which guarantees due process of law and equal protection of law.

11.     The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances weigh only to the slightest degree when mitigating circumstances gives the Ohio capitol statutes a mandatory nature, thus permitting the execution of an accused even though the mitigating evidence falls just short of equipoise with the aggravating factors.  The result is the Ohio statute renders the capital process arbitrary and capricious contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

12.     Under the provisions of Ohio Crim. R. 11(c)(3), permitting the trial court to dismiss specifications upon a guilty plea under the concept of "in the interest of justice" needlessly encourages guilty pleas, thus reintroducing the possibility that the death sentence will be imposed arbitrarily and capriciously contra the Eighth and Fourteenth Amendments to the Constitution.

13.     The Ohio capital sentencing scheme is unconstitutional in that it provides no standard for sentencing or review at the significant stages of the appellate process and, as a result, the death sentence of Gerald Clemons was imposed and reviewed without sufficient guidance to juries, the trial-sentencing judge and Ohio review in courts.  This results in the arbitrary and capricious infliction of the death penalty contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

14.     Where the record reveals that the sentencing judge considered and weighed improper aggravating circumstances when imposing the death penalty, the resulting sentence is contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

15. The trial court erred in permitting the prosecutor to have an expert testify on the affects of Prozac when the defense had not raised, during the course of the jury trial, an insanity defense contra the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

16. Where a conviction is based upon insufficient evidence, on the aggravated murder counts, the result is contra the due process clause of the Fourteenth Amendment to the Constitution and the Sixth and Eighth Amendments to the Constitution.

17. The trial court errs to the prejudice of petitioner Clemons when the court refers to the jury's decision as recommendation, thereby diminishing the jury's sense of responsibility for the decision in violation of the Sixth, Eighth and Fourteenth Amendments to the Constitution.

18. Gerald Clemons' convictions and sentences are constitutionally infirm because trial counsel failed to provide him with reasonable effective assistance of counsel during the trial phase.

    A. Defense counsel unreasonably failed to present a defense of involuntary intoxication.

    B. Defense counsel unreasonably failed to investigate the effects of Prozac.

    C. Defense counsel unreasonably failed to secure an expert to assist in presenting an involuntary intoxication defense.

    D. Defense counsel failed to reasonably prepare a strategy for presentation of a defense.

    E. Defense counsel failed to conduct a reasonable investigation regarding their own client in the presentation of the defense.

    F. Defense counsel failed to conduct a voir dire reasonably calculated to preserve Gerald Clemons' right to a fair and impartial jury.

19. Gerald Clemons' convictions and sentences are constitutionally infirm because trial counsel failed to provide him with reasonably effective assistance during the mitigation phase.

    A. Defense counsel failed to conduct a reasonable investigation to prepare for mitigation.

    B. Defense counsel unreasonably failed to obtain Gerald Clemons' military records.

  C.  Defense counsel unreasonably failed to develop evidence of the effect of Prozac.

  D.  Defense counsel failed to obtain an expert on Prozac.

  E.  Defense counsel unreasonably failed to obtain the services of an independent psychologist.

20. Gerald Clemons' death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary and capricious manner.

21. Petitioner Clemons was denied his right of due process and effective assistance of counsel contra the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution because of the recent amendments to Ohio's post-conviction process.

22. The trial court exhibited bias and prejudice against Petitioner Clemons, thereby denying him a fair trial and reliable sentencing in violation of the guarantees of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

23. Petitioner Clemons' sentence of death is constitutionally infirm because the trial court erroneously instructed the jury that they must unanimously find that the aggravating circumstances do not outweigh the mitigating circumstances in order to recommend a life sentence.

24. Trial counsel were ineffective for failing to object to the improper instruction that the jury must be unanimous in their recommendation of a life sentence.

25. The trial court erred to he prejudice of Petitioner Clemons when it refused to give the jury an instruction on the lesser offense of voluntary manslaughter, denying him a fair trial under the Fifth, Eighth and Fourteenth Amendments to the Constitution.

26. The trial court prejudiced Petitioner Clemons when it erroneously used an improper standard in death qualifying jurors contra the Fifth, Eighth and Fourteenth Amendments to the Constitution.

27. The Ohio death penalty statute violates the Supremacy Clause of the United States Constitution and various international laws including, but not limited to, the organization of American States Treaty and the American Declaration of the Rights and Duties of Man.

28. The process of selecting venire persons and grand jury forepersons to serve on grand juries in Hamilton county is tainted due to consideration of the factor of race in the drawing, selection and impanelment of grand jurors in violation of the Fifth, Sixth and Fourteenth Amendments.

29.     Petitioner Clemons was deprived of his right to the effective assistance of counsel during his direct appeal to the Ohio Supreme Court in violation of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.

On May 11, 2001, this Court stayed the federal habeas corpus proceedings to allow Clemons to complete factual investigation and purse additional State court remedies in post-conviction.  On September 30, 2002, Clemons returned to this Court.  In accordance with the scheduling order, on February 14, 2003, Respondent moved to dismiss the claims that were procedurally defaulted, and Clemons filed an opposition on February 28, 2003.  Doc. Nos. 49, 50.  The Court granted Respondent's motion, in part, and dismissed the following claims from habeas review:

1.     Fourth Ground for Relief (in part)

2.     Eighteenth Ground for Relief, Sub-claim F

3.     Twenty-Second Ground for Relief

4.     Twenty-Fifth Ground for Relief

5.     Twenty-Sixth Ground for Relief

6.     Twenty-Eighth Ground for Relief.

Doc. No. 52.  Accordingly, Respondent will address the merits of the remaining grounds for relief in this Return.

## AEDPA - STANDARD OF REVIEW

### I.    Introduction

On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214, (hereinafter "AEDPA") into law. The AEDPA made significant changes in habeas law including a one-year statute of limitations, restrictions on issues that can be appealed, vastly heightened respect for state court factual and legal determinations, restrictions on the ability to file successive petitions and timetables for federal courts to act on capital habeas actions when certain prerequisites have been met.

Specifically, Section 104 of the AEDPA modified the standard of review this Court must employ by modifying 28 U.S.C. §2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Since Carter filed his federal habeas petition on January 6, 2003, after the AEDPA was signed into law, his case is governed by the AEDPA. Williams v. Coyle, 167 F.3d 1036 (6th Cir. 1999).

In Williams v. Taylor, 529 U.S. 362 (2000), the Court explained how courts should employ the dual-standards of subsections one and two of §2254 (d). And in Harris v. Stovall, 212 F.3d 940 (6th Cir. 2000), the Sixth Circuit further refined some of the contours of this inquiry.

II.     §2254 (d)(1) -- **How does a federal court determine when a state court "decision []
was contrary to, or involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United States"?**

Subsection one contains two separate tests.  The first asks whether a state decision was
contrary to clearly established federal law.  The second test asks whether the state decision involved
an unreasonable application of clearly established federal law.

(A)     *"Contrary to"*

There are two ways in which a state court decision can be "contrary to" federal law: (1) if it
fails to apply the correct Supreme Court authority; or (2) it if applies the correct Supreme Court
authority to a case involving facts "materially indistinguishable" from the facts involved in the
controlling Supreme Court case, but the state court reached a different result.  Williams v. Taylor,
529 U.S. at 406.

(B)     *"Unreasonable Application"*

A state court decision will be an "unreasonable application" of federal law when "the state
court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably
applies that principle to the facts of the prisoner's case."  Williams v. Taylor, 529 U.S. at 413.
When viewing the objective reasonableness of the state decision, federal courts may not find an
unreasonable application merely because it finds that state-court decision to be erroneous or
incorrect.  Id. at 411; Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000) (finding state-court decision
on probable cause issue to be incorrect but nevertheless not clearly erroneous and thus not an
unreasonable application).

(C)     *Clearly Established Federal Law*

The Supreme Court reiterated that habeas courts may only use Supreme Court cases in
defining what is clearly established federal law.  Williams v. Taylor, 529 U.S. at 412.  Moreover,

within that scope of decisions, a habeas court may only rely on that class of Supreme Court precedent that would qualify as an old rule under the Supreme Court's <u>Teague</u> jurisprudence.  <u>Id</u>. Thus, the rule the petitioner relies upon must be "dictated or compelled" by the Supreme Court decision at issue.  <u>Harris v. Stovall</u>, 212 F.3d at 944.

III.    <u>§2254(d)(2)</u> – **When is a Decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"?**

The Supreme Court did not further explicate the meaning of subsection two, so the Sixth Circuit's holding that this section applies only to state-court findings of fact remains in force. <u>Harpster v. Ohio</u>, 128 F.3d 322, 326 (6th Cir. 1997); <u>Nevers v. Killinger</u>, 169 F.3d 352, 368 (6th Cir. 1999).

IV.    **This Court Must Employ the AEDPA Standard of Review even if the State Court Did Not Articulate Its Reasons for Rejecting the Claim on the Merits.**

The AEDPA standard of review set forth in §2254 (d) applies even where there is no state court decision on the merits to evaluate.  <u>Harris v. Stovall</u>, 212 F.3d at 943.  Thus, even when the state court does not explain its decision, the independent review by a federal court in such a situation is "**not a full, de novo review of the claims, but remains deferential** because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA."  <u>Id</u>. at 943.  Instead, the court is "obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented."  <u>Id</u>. at 943 (citations omitted).

## EXHAUSTION

Federal habeas is not a <u>de novo</u> appeal where new claims are brought freely for the first time.  A federal habeas petitioner must first fairly present his federal constitutional claims to the highest state court for resolution before turning to the federal courts for relief.  <u>Ex Parte Hawk</u>, 321 U.S. 114, 116-17 (1944); <u>Hafley v. Sowders</u>, 902 F.2d 480, 483 (6th Cir. 1990); <u>Manning v. Alexander</u>, 912 F.2d 878, 881 (6th Cir. 1990).

The process of presenting a constitutional claim to the state's highest court is called exhaustion.  Exhaustion is a quasi-jurisdictional requirement that promotes the appropriate exercise of federal power.  <u>See</u> <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987); <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984).  Exhaustion is required if a state supreme court provides an opportunity to review the claim on the merits.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 119 S.Ct. 1728, 1733 (1999).

The exhaustion requirement is satisfied if it is clear that claims are procedurally barred under state law.  <u>Gray v. Netherland</u>, 518 U.S. 152, 160-161 (1996).  Before the AEDPA, a petition containing unexhausted claims had to be dismissed by the District Court absent exceptional or unusual circumstances.  <u>O'Guinn v. Dutton</u>, 88 F.3d 1409, 1412-13 (6th Cir. 1996) (en banc), <u>cert. denied</u>, 519 U.S. 1084 (1997); <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982);  <u>Neal v. Gramley</u>, 99 F.3d 841, 846 (7th Cir. 1996), <u>cert. denied</u>, 118 S.Ct. 104 (1997); <u>Victor v. Hopkins</u>, 90 F.3d 276, 282 (8th Cir. 1996).  A petitioner bears the burden of showing that he has exhausted his claims.  <u>Prather v. Rees,</u> 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

Under the AEDPA, if a court finds that a claim is unexhausted, it cannot grant relief.  28 U.S.C. §2254(b)(2).  <u>See also,</u> <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998) ("Because, as explained <u>infra</u>, we conclude that Jones does not prevail on the merits, we may, pursuant to §2254 (b)(2), deny relief, notwithstanding Jones' failure to exhaust state remedies"), <u>cert. denied</u>, 120 S.Ct. 224 (1999); <u>Nobles v. Johnson</u>, 127 F.3d 409, 423 (5th Cir. 1997) (same), <u>cert. denied</u>, 118 S.Ct.

1845 (1998); Hoxie v. Kerby, 108 F.3d 1239, 1242-42 (10th Cir.) ("Because §2254(b)(2), standing alone, does not contain the standard for determining when a court should dismiss a petition on the merits instead of insisting on complete exhaustion, we read §2254(b)(2) in conjunction with Granberry.  The Supreme Court in Granberry reasoned that 'if the court of appeals is convinced that the petition has no merit, a belated application of the exhaustion rule might simply require useless litigation in the state courts."), cert. denied, 118 S.Ct. 126 (1997).

Respondent observes that all of Carter's claims are exhausted.  The claims are exhausted because they were either raised properly on direct appeal to the Ohio Supreme Court, raised in post-conviction and barred from review on the basis of res judicata, raised and considered or barred in an application for reopening proceeding, or there is no remaining avenue by which Carter can now fairly present these claims to the state courts.

By pointing out that Carter's claims have been exhausted because there are no remaining state court remedies, Respondent expressly **does not** waive the exhaustion requirement.  28 U.S.C. §2254(b)(3); compare Dennis v. Mitchell, 68 F.Supp.2d 863, 879 (N.D. Ohio 1999) (finding Respondent waived exhaustion requirement by stating that claims in petition were exhausted) with Habeas Rule 5 (Respondent's answer shall state whether petitioner has exhausted remedies).  Respondent wishes it to be clear that by stating his view that Carter has exhausted all claims, he **does not** intend to waive the exhaustion requirement.

# PROCEDURAL DEFAULT

When a federal habeas petitioner fails to fairly present a constitutional claim to the state courts, he procedurally defaults his claim on federal habeas corpus.

## I.   STANDARD FOR DETERMINING PROCEDURAL DEFAULT

In the Sixth Circuit, procedural default is generally analyzed under a four-part test, known as the <u>Maupin</u> test.  The test asks the following: (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the procedural sanction; (3) whether the state procedural bar is an adequate and independent state ground on which the state can foreclose federal review; and (4) whether the petitioner can demonstrate cause for, and actual prejudice resulting from, the procedural default.  <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1986).

## II.   TYPES OF PROCEDURAL DEFAULT IN OHIO CASES

### A.   Claims Must Be Raised in Ohio Supreme Court

In the Sixth Circuit, the failure to fairly present issues on direct appeal to the Ohio Supreme Court bars habeas consideration of the claim absent a showing of cause and prejudice.  <u>Leroy v. Marshall</u>, 757 F.2d 94, 97-99 (6th Cir. 1983), <u>cert. denied</u>, 474 U.S. 831 (1985).

### B.   Plain Error Review is a Procedural Default

In the Sixth Circuit, plain error review by a state appellate court does not open a claim to consideration on federal habeas when the state court rests its decision on a procedural bar.  <u>Seymour v. Walker</u>, 224 F.3d 542, 557 (6th Cir. 2000); <u>Paprocki v. Foltz</u>, 869 F.2d 281, 284-5 (6th Cir. 1989); <u>see also</u>, <u>Amos v. Scott</u>, 61 F.3d 333, 342 (5th Cir.), <u>cert. denied</u>, 516 U.S. 1005 (1995) ("an occasional act of grace by a state court in excusing or disregarding a state procedural rule does not

render the rule inadequate; after all, "regularly" is not synonymous with "always" and "strictly" is not synonymous with "unanimously"); Scott v. Mitchell, 209 F.3d 854, 867-870 (6th Cir. 2000); Campbell v. Coyle, 260 F.3d 531, 557 (6th Cir. 2001).

### C.    Petitioners Must Object at Trial

The failure to make contemporaneous objections at trial also precludes habeas review. Engle v. Isaac, 456 U.S. 107, 124-25 (1982); Scott v. Mitchell, 209 F.3d at 869.

### D.    Petitioner Must Raise Same Theory to Ohio Courts

In the Sixth Circuit, a constitutional claim presented to the federal courts that does not rest on the same theory as was presented to the state courts is procedurally defaulted. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998) (rejecting ineffective assistance of counsel claim on theory that counsel ineffective for failing to investigate and find third expert because claim raised in state court alleged counsel ineffective for failing to present insanity defense - "This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court"); Lott v. Coyle, 261 F.3d 594, 607, 611, 617, 619 (6th Cir. 2001); Pillete v. Foltz, 824 F.2d 494, 497 (6th Cir. 1987); Prather v. Rees, 822 F.2d 1418, 1421 (6th Cir. 1987).

### E.    Claims of Record Raised for the First Time in Post-Conviction and Held to be *Res Judicata* are Procedurally Defaulted.

Ohio Courts have long relied upon the doctrine of *res judicata* to dismiss constitutional claims based upon the record that are raised for the first time in state post-conviction. State v. Perry, 10 Ohio St.2d 175 (1967). The United States Supreme Court has observed that Ohio's post-conviction statute does not allow petitioners to raise claims that could have been litigated before judgment or on direct appeal - such issues raised in post-conviction are procedurally defaulted on habeas corpus. Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982).

In Ohio, capital petitioners frequently claim that the "Perry rule" is an insufficient reason for a procedural default by asserting that post-conviction in Ohio seldom affords relief, is applied freakishly, is inadequate, and rarely grants discovery, citing Case v. Nebraska, 381 U.S. 336 (1965). However, the Sixth Circuit has explicitly rejected this argument numerous times and recognized that the "Perry rule" is an independent and adequate ground upon which to procedurally bar consideration of habeas claims. Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir. 2001); Byrd v. Collins, 209 F.3d 486, 521 (6th Cir. 2000); Mapes v. Coyle, 171 F.3d 408, 421 (6th Cir. 1999), cert. denied, Coyle v. Mapes, 528 U.S. 946 (1999); Norris v. Schotten, 146 F.3d 314 (6th Cir. 1998); Wong v. Money, 142 F.3d at 322; Rust v. Zent, 17 F.3d 155, 161 (6th Cir. 1994). Further, state post-conviction is not constitutionally required and such contentions are irrelevant to the procedural default analysis. Pennsylvania v. Finley, 481 U.S. 551, 557 (1987).

**F.      Petitioners Must Support Post-Conviction Claims with Evidence Dehors the Record.**

Ohio petitioners also waive their right to federal review by failing to support their state post-conviction claims with available evidence outside the record. Byrd v. Collins, 209 F.3d 486, 512 (6th Cir. 2000) (recognizing that Ohio post-conviction petitioners have a duty to submit evidentiary documents containing sufficient operative facts to demonstrate substantive grounds for relief in order to earn an evidentiary hearing); Mapes v. Coyle, 171 F.3d at 421-422 (Mapes' failure to produce affidavits in support of trial court bias claim in state post-conviction proceeding was a "forfeiture" of the claim in federal habeas); see also, Harris v. French, 1999 U.S. App. LEXIS 15794, *13 (4th Cir. July 14, 1999) (citing Wilson v. Moore, 178 F.3d 266 (4th Cir. 1999) and holding that petitioner's failure to support a claim with documents outside the record was a procedural default of the right to have the federal court consider the affidavits presented in federal court for the first time), cert. denied, Harris v. Lee, 528 U.S. 1091 (2000).

23

### G.    Claims Never Raised in State Court Are Procedurally Barred.

A petitioner's failure to raise a claim in state court is a procedural default, and there can be no requirement of a "plain statement" of default by the state courts because the bypass deprives the state courts of the opportunity.  Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991) ("This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.  In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims. See Harris v. Reed, 489 U.S. 255, 269-270, 103 L. Ed. 2d 308, 109 S.Ct. 1038 (1989) (O'Connor, J., concurring); Teague v. Lane, 489 U.S. 288, 297-298, 103 L. Ed. 2d 334, 109 S.Ct. 1060 (1989)"); Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992) (following Coleman and Teague to find that claims never raised in the state courts were defaulted because no current remedy for raising them); Abdullah v. Groose, 75 F.3d 408, 412-13 (8th Cir. 1996) (finding that failure to present claims to state court resulted in default because no available non-futile remedy -- the only forum would have been foreclosed by untimeliness); Waldrop v. Jones, 77 F.3d 1308, 1314-15 (11th Cir. 1996) (finding jury instruction claim not presented in Alabama state court defaulted because return to file post-conviction proceeding would have been barred under state *res judicata* rule that precluded claims that could have been raised on direct appeal); Matthews v. Evatt, 105 F.3d 907, 914-916 (4th Cir. 1997) (analyzing South Carolina law to determine if the petitioner would be able to meet an exception under South Carolina law to raise the claim and finding that he would not); Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (if it is clear that claim if presented in state court would be procedurally barred, then federal court can find it to be defaulted).

III.    A PROCEDURAL DEFAULT MAY BE EXCUSED IN LIMITED CIRCUMSTANCES

A.    Cause and Prejudice

To circumvent a procedural default, a petitioner may show cause and prejudice for his default. Mapes v. Coyle, 171 F.3d at 421; Norris v. Schotten, 146 F.3d 314 (6th Cir. 1998); Wong v. Money, 142 F.3d at 322.

Demonstrating "cause" requires showing that an objective factor external to the defense impeded counsel's efforts to comply with the State procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). Demonstrating "prejudice" requires showing a disadvantage "infecting" the trial with constitutional error. United States v. Frady, 456 U.S. 152, 168 (1982).

Without a finding of an independent constitutional violation on this limited basis, Carter cannot establish cause for any of his defaults. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

If the petitioner intends to rely on ineffective assistance of counsel as cause for a default, that claim must itself be presented to the state courts as an independent constitutional violation: "[A] claim of ineffective assistance" generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 489 (1986). And the petitioner may not procedurally default that claim or it may not be used as cause for a default. Edwards v. Carpenter, 120 S.Ct. 1587, 1591-92 (2000). The petitioner may not use ineffective assistance of post-conviction counsel as cause to excuse a default because there is no constitutional right to the effective assistance of post-conviction counsel. Byrd v. Collins, 209 F.3d 486, 514-16 (6th Cir. 2000) (Petitioner's failure to take advantage of prompt public records request and discovery allowed by trial court were not sufficient "cause" to excuse his failure to develop the record; negligence of post-conviction counsel cannot constitute cause (citing Coleman v. Thompson, 501 U.S. 722, 755-57 (1991)).

### B.    Miscarriage of Justice

In extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his conviction is the result of a fundamental miscarriage of justice.  A fundamental miscarriage of justice is the conviction of one who is "actually innocent."  See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray v. Carrier, 477 U.S. at 496.  The Supreme Court requires the petitioner to demonstrate not merely a reasonable doubt in light of new evidence, but rather that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence."  Schlup v. Delo, 513 U.S. 298, 327 (1995); Lott v. Coyle, 261 F.3d 594, 602 (6th Cir. 2001) (petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial") (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995).  It is not what this Court thinks, but the Court's "probabilistic determination" about what reasonable, properly instructed jurors would do. Schlup, 513 U.S. at 329.  The reviewing standard is an objective one.  Calderon v. Thompson, 523 U.S. 538, 558, 118 S.Ct. 1489, 1502 (1998).  Stated another way, the petitioner fails to meet his burden if "at least one juror, acting reasonably and properly instructed would have found" him guilty.  Fairchild v. Norris, 51 F.3d 129, 130-131 (8th Cir.), cert. denied, 515 U.S. 1182 (1995); Schlup v. Delo, 513 U.S. at 329.

## <u>ARGUMENT</u>

**Third, Eighteenth, Nineteenth, Twenty-Four and Twenty-Ninth Grounds for Relief –
Counsel Were Effective**.

> Petitioner Gerald Clemons was denied his right of due process and assistance of
> counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the
> Constitution because the record reflects trial counsel provided ineffective
> assistance to Petitioner Clemons.  Doc., 28, Amended Petition, pgs. 17-19.

> Gerald Clemons' conviction and sentence are constitutionally infirm because trial
> counsel failed to provide with reasonable effective assistance of counsel during
> the trial phase.  Doc. No. 28, Amended Petition, pgs. 43-52.

> Gerald Clemons' convictions and sentences are constitutionally infirm because
> trial counsel failed to provide him with reasonably effective assistance during the
> mitigation phase.  Doc., 28, Amended Petition, pgs. 52-57.

> Trial counsel were ineffective for failing to object to the improper instruction that
> the jury must be unanimous in their recommendation of a life sentence.  Doc. No.
> 28, Amended Petition, pgs. 65-66.

> Petitioner Clemons was deprived of his right to the effective assistance of counsel
> during his direct appeal to the Ohio Supreme Court in violation of his rights as
> guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.  Doc. No. 28,
> Amended Petition, pgs. 74-75.

Clemons raises numerous claims that his trial counsel and appellate counsel were

ineffective.  For consistency sake, Respondent will address these claims together.

## I.    United States Supreme Court precedent

In <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984), the United States Supreme Court

held that in order to show that counsel was ineffective, a habeas petitioner must first demonstrate

that counsel's performance was deficient, and second that such performance prejudiced the

defense.  In order to amount to prejudice, an error must be such that there is "a reasonable

probability that … the result of the proceeding would have been different."  <u>Id.</u> at 694.  A habeas

court need not determine whether there was deficient performance by counsel before considering

the prejudice issue.  Id. at 697.  Therefore, if a federal habeas corpus court fails to find *either*

prong of the Strickland test, a writ will not issue.

The Court further held that "the benchmark for judging any claim of ineffectiveness must

be whether counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." Id. at 686.  Thus, a habeas

corpus claim of ineffective assistance of counsel must clearly establish the following:

> A convicted defendant's claim that counsel's assistance was so defective as to
> require reversal of a conviction or death sentence has two components.  First, the
> defendant must show that counsel's performance was deficient.  This requires
> showing that counsel made errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction or death sentence resulted from a
> breakdown in the adversary process that renders the result unreliable.

Id. at 687.  (Emphasis added).

In performing this analysis, "judicial scrutiny of a counsel's performance must be highly

deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." Id. at 689.  "Thus, even when a court is presented with an

ineffective-assistance claim not subject to 28 U.S.C. §2254(d)(1) deference, a defendant must

overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy."  Bell v. Cone, 122 S.Ct. 1843, 1852 (2002) (quotation and

punctuation omitted).

The Sixth Circuit has applied Strickland to reject habeas corpus claims regarding

strategic defense counsel decisions.  In Meeks v. Bergen, 749 F.2d 322 (6th Cir. 1984), the Sixth

Circuit held:

> In <u>Strickland</u>, supra, the Supreme Court stated that where there is more than one possible defense, and counsel conducts a substantial investigation into the possible defenses, the strategic choice made as a result of the investigation is "virtually unchallengeable," the Court noted additionally that, even should counsel fail to conduct a substantial investigation into each of several plausible lines of defense, the representation might nonetheless be effective.

<u>Meeks</u>, 749 F.2d at 328.  <u>See also</u> <u>Chandler v. Jones</u>, 813 F.2d 773 (6th Cir. 1987); <u>Krist v. Foltz</u>, 804 F.2d 944 (6th Cir. 1986).

Under the <u>Strickland</u> test, the petitioner must show a "reasonable probability" that, but for his counsel's unprofessional errors, the result would have been different.  <u>Glenn v. Tate</u>, 71 F.3d 1204, 1210-11 (6th Cir. 1995).  "The question, in other words, is whether counsel's errors were serious enough to deprive the petitioner of a proceeding the result of which was reliable, whether counsel's conduct so undermined the proper functioning of the adversarial system that the trial [a term that includes capital sentencing proceedings] cannot be relied on as having produced a just result." <u>Id.</u>  (citations and internal punctuation omitted, brackets in original).

## II.    The decisions from the Ohio courts were consistent with and reasonable application of <u>Strickland</u>.

Clemons fails to demonstrate ineffective assistance of counsel in any of his claims. When the claims were reviewed during Clemons' State court appeals, the Ohio courts reasonably and correctly applied the principles of <u>Strickland</u> and found no instances of ineffective assistance of counsel.  These reasonable State determinations must be given deference in federal habeas corpus.  Furthermore, depositions taken of Clemons' own trial counsel destroy most of his claims.  The remaining claims involve second-guessing, which is prohibited by <u>Strickland</u>. Clemons is not entitled to habeas relief.

III.    **Counsel Were Effective During the Guilt Phase Without the Assistance of Independent Experts.**

Petitioner Gerald Clemons was denied his right of due process and assistance of counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the Constitution because the record reflects trial counsel provided ineffective assistance to petitioner Clemons.

A.    **Procedural Posture**

This claim was raised as Proposition of Law No. 3 in Clemons' direct appeal to the Ohio

Supreme Court.  J.A. Vol. VI, pgs. 84-88

B.    **Merits Analysis**

In rejecting this claim on direct the Ohio Supreme Court held:

Defendant asserts in proposition III that trial counsel were ineffective in permitting him to be examined by the court psychiatric center. He alleges that counsel also erred in allowing a report of the center's findings to be submitted to the trial court. While defendant concedes that the defense's mitigation expert never testified, he contends that the trial judge heard a summary of such "incredibly damning evidence" pursuant to the judge's ruling on a discovery motion. Defendant suggests that this report contributed to the trial judge's decision to sentence him to death.

Reversal of a conviction on the grounds of ineffective assistance requires "[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial * * *." Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. However, defense counsel's performance was not deficient. Moreover, defendant has not demonstrated prejudice, "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

After his indictment, defendant entered a plea of not guilty by reason of insanity. Dr. Nancy Schmidtgoessling of the Community Diagnostic and Treatment Center was appointed as defendant's mitigation specialist. Subsequently, upon assessing the doctor's report, defense counsel determined that the insanity plea was not viable in this case, although counsel indicated that they were still actively pursuing a "Prozac defense." Due to the unfavorable findings Dr. Schmidtgoessling made in her report, defense counsel chose not to submit her

report to the jury. Although the prosecution considered calling Dr. Schmidtgoessling as a rebuttal witness at the mitigation hearing, it did not do so.

In our view, defendant's assertions under this proposition of law are nothing more than a second guess. Counsel could not reasonably foresee that the mitigation report would produce information so damaging to defendant that they would have little choice but to forgo presenting the mitigation expert's report to the jury. In deciding not to use the report, defense counsel were able to keep the damaging information away from the jury. Counsel's actions in this regard did not fall below an objective standard of reasonable representation, nor did prejudice arise. Bradley, at paragraph two of the syllabus.

Defendant's argument that it was ineffective assistance because the trial judge heard the damaging evidence is also meritless. A trial judge is presumed to have considered only relevant, material, and competent evidence in arriving at a judgment, unless the record affirmatively indicates otherwise. See State v. Post (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759; State v. Davis (1992), 63 Ohio St.3d 44, 48, 584 N.E.2d 1192, 1196. Nothing in the record or in the trial court's sentencing opinion indicates that the trial judge relied on matters not in evidence so as to support a claim of ineffective assistance of counsel. See State v. Allard (1996), 75 Ohio St.3d 482, 489-491, 663 N.E.2d 1277, 1285-1287.

Last, defendant contends that counsel were ineffective in failing to remove the cause to another venue. The record does not support this claim. Initially, counsel moved for a change in venue, but the motion was properly held in abeyance pending completion of voir dire of the jury. At the close of voir dire, defense counsel again asserted the venue motion, and the motion was then denied by the trial court. Contrary to defendant's intimations, trial counsel did attempt to get venue changed. It cannot be ineffective assistance merely because the trial judge did not grant the motion. We have already found that pretrial publicity in this case did not warrant a change of venue. Therefore, we overrule proposition III.

State v. Clemons, 82 Ohio St. 3d 438, 450-451 (1998). Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable application of or contrary to the United States Supreme Court precedent in Strickland.

Clemons alleges that counsel were ineffective for allowing him to be examined by Court Psychiatric Center which enabled the prosecution and the trial court to have the evaluation of the defense's own mitigation specialist, Nancy Schmidtgoessling. Clemons asserts that he was prejudiced by this situation because he was left "basically without any type of substantive mitigation evidence." Doc. No. 28, Amended Petition at 18.

Defense counsel pursued a not guilty by reason of insanity defense, and the court appointed Dr. Schmidtgoessling, who was one of Clemons' mitigation specialist, to examine Clemons. J.A. Vol. I, pgs. 20-25. During depositions of trial counsel, counsel explained how he considered the pros and cons of a court-appointment, instead of an independent psychological evaluation, and decided to go with Dr. Schmidtgoessling:

> One of the things we had considered, I had experience with Nancy Schmidtgoessling before and I did consider that she was very good at what she did. She had gone over all over the state and testified and I liked her and her husband's work in past cases I did. I would be the first to admit that I would rather have had an independent so the other side wouldn't have had access to anything unless there was a written report. But I wasn't – I did feel strongly that she would do a good job. She's well thought of by the courts and comes across well with jurors. So there was some positives. But again, we knew that there would be no – we would just have to pick someone who would not be paid through the state and that was a problem.

Deposition of Mark Krumbein, pgs. 11-12. Dr. Schmidtgoessling determined that Clemons was not insane at the time he murdered three people. Thereafter, defense counsel made an informed decision not to pursue such a defense. J.A. Vol. I, pgs. 35-36.

Second, as noted in the response to the Second Ground for Relief, a defendant is not entitled to the expert of his choosing. Ake v. Oklahoma, 470 U.S. 68, 83 (1985); Starr v. Lockhart, 23 F.3d 1280, 1289-90 (8th Cir.), cert. denied, 115 S. Ct. 499 (1994) (recognizing that, under Ake, due process does not give defendants the right to assistance from their experts of choice"); Parker v. Norris, 64 F.3d 1178, 1185 (8th Cir. 1995); see generally Caldwell v. Johnson, 226 F.3d 367, 373 (5th Cir. 2000) (because Ake disavows a right to assistance of choice, petitioner could not use Ake principles to claim he was entitled to medical assistance of his choosing in a Ford hearing for competency to be executed); United States v. Singleton, 107 F.3d 1091, n. 10 (4th Cir. 1996). Had Schmidtgoessling's report been favorable, then defense counsel

would have had mitigating evidence to present.  The fact that she gave a candid, truthful report that was not favorable to their client, however, is not the fault of defense counsel.

Clemons further claims "the trial-sentencing judge was given a detailed evaluation of these findings before he sentenced Petitioner Clemons."  Doc. No. 28, Amended Petition at 18. During the penalty phase, the court held a sidebar with counsel for both sides, out of the hearing of the jury.   The prosecution proffered the testimony of Gail Hellman, a psychiatrist who evaluated Clemons to determine his mental status at the time of the murders and to gather mitigating evidence.   Some of the information that was revealed during this proffer was that Clemons abused substances, such as cocaine and heroin; that he showed no signs of any psychotic disorder; that he was possibly malingering his symptoms; that he was easily angered, that he did not like people who exerted authority over him; that he denied having blackouts; and that he expressed no remorse for his actions.   J.A. Vol. III, pgs. 1241-1243.   The jury did not hear any of this information, yet it returned a unanimous recommendation for a death sentence.

As noted by the Ohio Supreme Court, the trial judge is presumed to only have considered relevant evidence, and nothing in the sentencing opinion indicates that, in reaching its decision, the trial court relied on information from the evaluation.   If there were any improper considerations by the trial court, they were corrected and any prejudice cured by the Ohio Supreme Court's independent sentencing review.

Finally, Clemons attacks counsel for being ineffective for not successfully having the venue changed.  Counsel moved for a change of venue before voir dire and again after the jury was seated.  Counsel also filed a motion for a new trial based on the fact that there should have been a change of venue.  However, Clemons now wishes to challenge the strength of counsels' argument and second-guess their strategy during voir dire.   Such second-guessing does not

amount to ineffective assistance.  Moreover, Respondent shows that a change of venue was not required in this case (See Return, First Ground for Relief).  Defense counsel used a reasonable strategy to ensure that only fair, impartial jurors sat on Clemons' trial and to not emphasize the media accounts of the case.  Prospective jurors in this case were brought in the courtroom as a group and were examined, collectively and individually, with the entire panel present.  When prospective members indicated that they had heard about the case or circumstances indicated that they might not be fair, counsel asked penetrating questions to ensure their impartiality.  J.A. Vol. I, pgs. 185-198; 295-296; J.A. Vol. II, pg. 457.

Clemons argues that reasonable counsel would have questioned jurors about their bias. However, because voir dire was conducted in a group setting, such a strategy would have ran the risk of eliciting responses that inflamed other prospective jurors, jarred memories or sparked curiosities about the case and media coverage.  Clemons fails to show that counsel were not ineffective in any of the alleged instances.

For the foregoing reasons, the **Third Ground for Relief** does not merit relief in federal habeas corpus.

**IV.    Counsel Were Effective At Both Phases of His Trial.**

Gerald Clemons' conviction and sentences are constitutionally infirm because trial counsel failed to provide him with reasonable effective assistance of counsel during the trial phase.

Gerald Clemons' convictions and sentences are constitutionally infirm because trial counsel failed to provide him with reasonably effective assistance during the mitigation phase.

**A.    Counsel effectively handled the Prozac issue.**

**1.    Procedural Posture**

18-A.    Defense counsel unreasonably failed to present a defense of involuntary intoxication.

18-B.    Defense counsel unreasonably failed to investigate the effects of Prozac.

18-C.    Defense counsel unreasonably failed to secure an expert to assist in presenting an involuntary intoxication defense.

19-C.    Defense counsel unreasonably failed to develop evidence of the effect of Prozac.

19-D.    Defense counsel unreasonably failed to obtain an expert on Prozac.

Clemons argued Sub-claims A, B and C of his Eighteenth Ground for Relief together as his Third Ground for Relief in his post-conviction petition.  J.A. Vol. XI, pgs. 68-70; J.A. Vol. XII, pgs. 70-71.  Sub-Claims C and D of his Nineteenth Ground for Relief were raised as his Fourth Ground for Relief in his post-conviction petition.  J.A. Vol. XI, pgs. 71-73.  Collectively, these claims argue that counsel were ineffective for not investigating Clemons' use of Prozac, for not obtaining an expert on Prozac, and for not presenting the issue as an involuntary intoxication defense in the guilt phase or as a mental disease or defect for mitigation in the penalty phase.

The trial court, in post-conviction made the following findings of law to rule that counsel were not ineffective:

(C) Defendant's third claim of relief is a claim of ineffective assistance of counsel.  Defendant argues that trial counsel failed to investigate and pursue a

"prozac defense" at trial or an involuntary intoxication defense.  With regard to this claim the Court makes the following <u>Findings of Fact</u>:

    (1)    The record reflects that trial counsel did investigate the possibility of a prozac defense.  [T p. 21, 22-23, 25, 30, 36, 71-83]

    (2)    The record reflects that trial counsel investigated the possibility of an N.G.R.I. plea, but found it not to be viable.  [T p. 35] Defense exhibit <u>BB</u>.

    (3)    Defendant's exhibit BB, the report of the Court Clinic gives no indication that prozac had an impact on defendant other than a beneficial one, and that defendant did not suffer from serious mental problems.

    (4)    The testimony of Dr. Paul Keck, an expert witness at trial, was that Prozac does not cause suicidal or violent behavior.  [T p. 1221-1222]

    (5)    The testimony adduced at trial overwhelmingly established that Clemons acted with a pre-planned specific intent to commit the offenses charged.

The Court makes the following Conclusions of Law:

    (1)    Trial counsel were not ineffective.  <u>State v. Bradley</u>, 42 Ohio St.3d 136 (1989).  Counsel competently investigated the possibility of a prozac defense and an insanity defense

    (2)    Counsel may rely on conclusions reached by mental health experts who examine their client.  <u>State v. McGuire</u>, 80 Ohio St.3d 390 (1997); <u>State v. Steffen</u>, C-900596 (1st Dist. C/A 8/7/91), unreported.

    (3)    Ohio does not recognize defenses based on diminished capacity. <u>State v. Wilcox</u>, 70 Ohio St.2d 182 (1982).

    (4)    Each element of the offenses defendant was convicted of was proven beyond a reasonable doubt.

(D)    Defendant's fourth ground for relief is an allegation of ineffective assistance of counsel at mitigation.  As to this claim, the Court makes the following Findings of Fact:

    (1)    The Court adopts here all the Findings of Fact from its review of defendant's third ground for relief.

> (2)  Dr. Day, a defense witness, was not presented as an expert on prozac, but for other reasons.

The Court makes the following <u>Conclusions of Law</u>:

> (1)  The Court adopts here its first and second Conclusions of Law from its review of defendant's third ground for relief.

> (2)  Defense counsel performed competently at mitigation by presenting a life-history approach. Proposing an alternative theory of mitigation does not demonstrate or establish ineffective assistance of counsel at mitigation. <u>State v. Post</u>, 32 Ohio St.3d 380 (1987).

J.A. Vol. XI, pg. 311-313.

The First District Court of Appeals rendered the last reasoned opinion because the Ohio Supreme Court declined jurisdiction to hear the case. J.A. Vol. XII, pg. 450. In rejecting Clemons' allegation of ineffective counsel, the Court of Appeals found:

> Clemons's third, fourth, and fifth claims for relief assert that trial counsel were ineffective for failing to reasonably investigate a "Prozac defense" or obtain an expert to present testimony on Prozac in each phase of the trial. In order to obtain a postconviction hearing on a claim of ineffective assistance of counsel, a petitioner must proffer evidence that contains sufficient operative facts to demonstrate a lack of effective assistance of counsel and resulting prejudice to the petitioner. Cole, supra; <u>State v. Jackson</u> (1980), 64 Ohio St. 2d 107, 413 N.E.2d 819. Not only must a petitioner show that trial counsel's performance fell below a standard of reasonable representation, but he must also show that he was prejudiced by trial counsel's performance. <u>State v. Bradley</u> (1989), 42 Ohio St. 3d 136, 538 N.E.2d 373.

> On direct appeal of this case, the Supreme Court of Ohio commented upon the "Prozac defense" issue in its rejection of Clemons's claim that the trial court erred in allowing the state to present expert rebuttal testimony on the effects of Prozac. The Supreme Court of Ohio noted that "[trial] counsel indicated that they were still actively pursuing a 'Prozac defense.' Due to the unfavorable findings [the psychologist] made in her report, defense counsel chose not to submit her report to the jury." <u>Clemons</u>, 82 Ohio St. 3d at 450, 696 N.E.2d at 1020. Differing trial counsel strategies are not grounds for claims of ineffective assistance of counsel. <u>State v. Williams</u> (1991), 74 Ohio App. 3d686, 600 N.E.2d 298; <u>State v. Esparza</u> (1988), 39 Ohio St. 3d 8, 529 N.E.2d 192; <u>Strickland v. Washington</u> (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674. In this case, where the psychologist

concluded that Prozac was not a factor in this case, counsel reasonably deferred to the psychologist's professional judgment.  State v. McGuire (1997), 80 Ohio St. 3d 390, 686 N.E.2d 1112.

Clemons goes so far as to claim that trial counsel should have pursued a defense of "involuntary intoxication" in relation to Clemons's ingestion of Prozac. Even though Clemons abandoned his defense of not guilty by reason of insanity, Clemons now claims that he was incapable of forming the requisite *mens rea* due to his "involuntary intoxication." However, because Ohio does not recognize a defense of diminished capacity, a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that he lacked the mental capacity to form the specific mental state required for the crime.  State v. Wilcox (1982), 70 Ohio St. 2d 182; 436 N.E.2d 523. Moreover, the Supreme Court on the direct appeal of this case, found overwhelming evidence of Clemons's "murderous intent with prior calculation and design":

> Defendant's claims of a Prozac-induced blackout or "fog" that prevented him from recalling the murders is simply not believable in light of all the evidence. Defendant claimed to have blacked out when Kreamelmeyer allegedly charged him and claims not to have come out of his blackout until he was outside the building with the gun in his hand. However, his cognitive ability to separate those who he believed had wronged him from those he believed had not defies his claim.

Clemons, supra. Thus, the ineffective assistance of counsel claims three through five were properly rejected by the trial court.

State v. Clemons, 1999 WL 252655 at *3-4 (Ohio App. 1 Dist. 1999); J.A. Vol. XII, pgs.324-325.  Clemons cannot show that this decision was contrary to, or an unreasonable application of, United States Supreme Court precedent.  In fact, even after deposing trial counsel, Clemons fails to provide facts that counsel were ineffective in handling the Prozac issue.

## 2.    Merit Analysis

Clemons attacks counsel for failing to investigate, secure an expert, and present a defense or mitigation strategy based on Clemons' use of Prozac.  By agreement, Clemons' habeas counsel and counsel for Respondent deposed Clemons' trial counsel, Dale Schmidt and Mark Krumbein on January 10, 2003.  The sworn testimonies of Mr. Schmidt and Mr. Krumbein destroy Clemons' allegations of ineffective assistance of counsel.

Identify was not an issue in this case; Clemons was the gunman who shot and killed three people.  Clemons' co-workers saw him, before, during and after he shot Mr. Kreamelmeyer, Mr. Kinney and Ms. Teetzel.  Before she died, Ms. Teetzel twice identified Clemons as the man who shot her.  J.A. Vol. II, pg. 757, 762.  Most importantly, Clemons identified himself as the gunman when he surrendered to police and said, "I'm the guy you are looking for.  I just shot the people."  J.A. Vol. II, pg. 761.  Because the facts of this case did not allow for a "who-dunnit" defense, counsel realized that issues disputing Clemons' ability to form the specific mental state of prior calculation and design were the only viable, credible defenses.  (Deposition of Mark Schmidt, pg. 8; Deposition of Mark Krumbein, pg. 8).

Trial counsel knew right away that Prozac was a possible issue to dispute that Clemons lacked the requisite state of mind.  (Deposition of Dale Schmidt, pg. 8).  Clemons told counsel that he was prescribed Prozac, but he also admitted that he had taken a pill in a few days.  Attorney Krumbein also recalls:

> There actually was a blood test made where there was blood showing that there was a very slight amount of Prozac in his system, so right away we knew.  And he told us, of course, that he had been using Prozac and so that's how we originally looked into that.

(Krumbein Deposition, pgs. 12-13).

This is what counsel knew about the Prozac issue: (1) the amount of Prozac in Clemons' system "had dropped to almost nothing," and (2) there was conflicting evidence about when Clemons last took the medicine.  (Krumbein Deposition, pgs. 14-15).  These facts posed an obstacle for counsel to use Prozac as a viable or credible tactic to dispute Clemons' state of mind.  However, counsel still investigated the effects of Prozac.

While investigating the effects of Prozac, counsel talked to people besides Clemons, including representatives at Eli Lilly who manufactured medication; Dr. Keck who firmly

believed that Prozac had no adverse effects; Dr. Schmidtgoessling who believed that Prozac played no role in Clemons' case; and Dr. Day who, as Clemons' physician, prescribed Prozac to Clemons for his depression.  (Schmidt Deposition, pgs. 10-13, 27 and Krumbein, pg. 17). Counsel also read and knew of studies, indicating that Prozac could have adverse effects or induce mania and aggressive reactions in some people.  (Schmidt Deposition, pg. 12; Krumbein Deposition, pg. 17).  Despite being aware of the differing opinions on Prozac, counsel did not obtain an expert to dispute Dr. Keck's findings.  Attorney Schmidt explained,  "I couldn't find anybody, if I recall, or I would have called them."  (Schmidt Deposition, pg. 14).

Attorney Krumbein also explained counsel's investigation of Prozac and how their defense strategy evolved:

Q:     When you found out he was on Prozac, both from his telling you and from the blood, did you then investigate the drug Prozac and the effects it has on people?

A:     Yes, I did.

Q:     And what did you do to investigate them?

A:     I got as many materials as I could and I had never used that defense before.  I did some research.  **I remember at the time it had been used about 85 times in the United States and every time unsuccessfully**. That was what I was able to find, at that time.  And I have not kept track of it since.  But I went through the same process I did on a battered wife syndrome case that I handled successfully.   I looked into it very thoroughly, as did Dale.  And I also consulted with Dr. Schmidtgoessling on that.  And just by good luck she had been in the seminar at Cleveland where the expert that the state was dealing with had been at the same time.

Q;     Dr. Keck?

A:     I think that was it.  And apparently he was talking all about it to this group, I'm sure a little suspecting that Dr. Schmidtgoessling was involved with the case.  And had made a lot of statements at the time what he was going to do and things of that nature.  But Dr. Schmidtgoessling told us, and the reason, we ultimately, **we tried to use it sort of as a red-herring, but ultimately we didn't feel we could be successful with it because**

**what was happening in our understanding, is that his level of Prozac in his system had dropped to almost nothing**. There was just a trace amount. So in effect, at the time that the shooting took place he wasn't –

Q:    There was some conflicting testimony as to when he had took the Prozac, wasn't there?

A:    **He told us that he had run out of - - one of the problems that occurred is because they weren't paying him, he had run out of money and could not purchase any more Prozac**.

Q:    Let me ask you this. In some of your pretrial conferences the judge more or less indicated he would favor Prozac expert if you wanted one, didn't he?

A:    I actually don't remember anymore.

Q:    Do you remember, did you ever request funds for a Prozac expert?

A:    I don't remember.

Q:    This Dr. Keck that you talked about, that Dr. Schmidtgoessling talked to, are you aware that he had testified on behalf of Eli Lilly, which is the manufacturer of Prozac?

A:    Yes.

Q:    So realistically you wouldn't expect him to say anything bad about Prozac, would you?

A:    No, I knew they probably had an unlimited amount of money they would try to put into opposing it. **And that wasn't so much an issue as the bigger problem is, from my standpoint was the he really – with the trace amount that that's what I was aware of at the time we were concerned that that might not be a realistic defense**.

Krumbein Deposition, pgs. 13-15 (emphasis added).

Assuming counsel found an expert who would testify that Prozac caused violent behavior, the expert likely would not find that it was a cause in Clemons' case due to the amount, or lack of, Prozac in his system. Such an expert finding would not only be suspect because of

the trace amount, but it would have been contradicted by Dr. Keck and other opinions that Prozac did not cause violent behavior.

Counsel knew that the amount of, or lack of, Prozac in Clemons' system would prejudice damage the viability and credibility of a Prozac defense or mitigation strategy. Therefore, counsel made a well-reasoned decision not to introduce the blood test or any medical evidence:

> We saw the evidence but I don't know that it ever came into - - it wasn't put into evidence. That for us, would have been a negative because we tried to sort of throw that in unofficially. We had the doctor come in and testify he had taken Prozac. He had prescribed Prozac to him and, give the reasons. **But we were afraid that it would damage our - - the credibility of our defense.**

Krumbein Deposition, pg. 16. Presenting expert testimony that Prozac caused Clemons' violent behavior likely would have been unattainable and unbelievable as a defense or mitigating factor because of the trace amount in Clemons' system.

Counsel made a wise choice to stir clear of a so-called Prozac defense and forgo expert testimony on the drug. The amount of Prozac in Clemons' system had dropped to "almost nothing" because Clemons last took the medication days before the shooting. That fact was the biggest obstacle to presenting credible expert testimony or advancing a viable, nonetheless successful, defense or mitigation strategy. (Krumbein, pgs. 20-22). The reported adverse effects of Prozac did not eliminate the fact that Prozac likely had little to no effect on Clemons' murderous actions or intent because almost no Prozac was found in his system. Furthermore, counsel also did their own research and discovered that all 85 cases in the United States that raised a Prozac defense had been unsuccessful. Krumbein, pg. 20. Considering that this was a capital case, counsel "didn't want to risk a very unsuccessful defense especially in a county as conservative as Hamilton County." (Krumbein, pg. 20). Instead of presenting expert testimony or a full-fledged defense, counsel made a reasonable decision to sporadically refer to Clemons'

42

Prozac use, during both phases of trial, as a red-herring and in an attempt to create the "illusion" that Prozac could have been partially responsible for Clemons' actions.  (Schmidt, pg. 17; Krumbein, pg. 19).

Counsel investigated the effect of Prozac.  However, the lack of Prozac in Clemons' system prevented them from needing an expert on Prozac or from advancing a full-blown defense or mitigation strategy on this issue.

**For the foregoing reasons, Sub-claims A, B and C of the Eighteenth Ground for Relief and Sub-claims C and D of the Nineteenth Ground for Relief must fail.**

**V.    Defense counsel effectively prepared for trial.**

**A.    Procedural Posture**

18-D.  Defense counsel failed to reasonably prepare a strategy for presentation of a defense.

Clemons raised Sub-claim D of his Eighteenth Ground for Relief in his post-conviction petition as the Second Ground for Relief.  J.A. Vol. XI, pgs. 65-67.  The trial court ruled that the claim was barred from review by the doctrine of res judicata.  J.A. Vol. XI, pg. 311.  The Court of Appeals also bared the claim under res judicata:

> Clemons's second claim for relief asserts ineffective assistance of counsel where counsel called Clemons as the only defense witness. Clemons claims that counsel should never have allowed him to testify because the state was able to attack his credibility with prior inconsistencies from a statement Clemons made to police. To support his claim for relief, Clemons attached to the petition his own affidavit claiming counsel inadequately prepared him to testify. Clemons now claims that, because he submitted evidence outside the record, the trial court erred in finding the claim was barred by *res judicata*. We disagree.

> The doctrine of *res judicata* applies to exempt a court from conducting a hearing on a postconviction petition where the claims raised in the petition were raised, or could have been raised, at trial or on direct appeal. State v. Perry (1967), 10 Ohio St. 2d 175, 226 N.E.2d 104. A petitioner may defeat the application of the doctrine by submitting evidence outside the record in support of his claim.  State v. Carter, 1997 Ohio App. LEXIS 5084 (Nov. 14, 1997), Hamilton App. No. C960718, unreported.

> However, the mere submission of outside evidence will not, in and of itself, preclude the application of the doctrine of *res judicata*.  Carter, supra. A petition must present competent, relevant, and material evidence outside the record, which was not in existence or available for use at the time of the trial.  State v. Gipson, 1997 Ohio App. LEXIS 4404 (Sept. 26, 1997), Hamilton App. Nos. C-960867, C-960881, unreported, citing State v. Smith (1985), 17 Ohio St. 3d 98, 477 N.E.2d 1128. The outside evidence must meet some threshold standard of cogency. Otherwise a petitioner could defeat the holding of *Perry* by simply attaching exhibits of marginal significance, which do little to establish a petitioner's claim "beyond mere hypothesis and a desire for further discovery." State v. Hawkins, 1996 Ohio App. LEXIS 2631 (June 26, 1996), Hamilton App. No. C-950130, unreported; State v. Coleman, 1993 Ohio App. LEXIS 1486 (Mar. 17, 1993), Hamilton App. No. C-910083, unreported. Because the submission of a self-serving affidavit cannot be given weight, State v. Kapper (1983), 5 Ohio St. 3d

36, 448 N.E.2d 823, we agree with the trial court that Clemons's second claim for relief is barred by the doctrine of *res judicata*. State v. Cole (1982), 2 Ohio St. 3d 112, 443 N.E.2d 169.

J.A. Vol. XII, pgs. 317-318.[1]

Not only did counsel thoroughly investigate the effects of Prozac, they investigated other avenues to dispute Clemons' state of mind. Counsel pursed a defense of not guilty by reason of insanity, which later had to be abandoned when Dr. Schmidtgoessling reported that Clemons was not insane at the time of the murders. J.A. Vol. I, pgs. 35-36. Clemons told his counsel that he carried a gun with him on the road. Counsel used what Clemons told them as a strategy to show that Clemons, like other truck drivers, routinely carried a gun to work, so he did not have it with him, on the day of the murders, for the specific purpose of shooting anyone. (Krumbein, pg. 8). Who could explain that Clemons always carried a gun and did not arm himself that day to shoot three people? Clemons.

Counsel also tried to dispute Clemons' state of mind by using what Clemons, himself, told them –he blacked out right before and throughout the three shootings. Who could best explain what was going through, or not going through, Clemons' mind when he selectively shot the three people who he thought screwed him over? Clemons. Dr. Schmidtgoessling had already determined that Clemons was sane at the time. Therefore, any defense expert determining otherwise would have been rebutted and impeached by her findings. Counsel had to put Clemons on the stand.

Clemons maintains that counsel did not prepare him to testify and that counsel erroneously believed that Clemons' suppressed statement could not be used as impeachment. Amended Petition, pgs. 47-48. Although, seven years later, they no longer specifically

---

[1] Respondent moved to dismiss Sub-Claim D of the Eighteenth Ground for Relief because it is procedurally defaulted. This Court denied Respondent's motion.

remember prepping Clemons, counsel are sure that Clemons was prepped.  Attorney Schmidt explains, "I never put a client on the stand unless I cross-examine him at the same time." (Schmidt, pg. 16).  Attorney Krumbein also explained that going over a client's testimony is something he always does.  (Krumbein, pg. 23).  Furthermore, counsel were aware that Clemons' suppressed statement could be used as impeachment, although neither could recall specifically advising Clemons of this.  (Schmidt, pg. 16; Krumbein, pg. 23).

Counsel had to prepare a strategy on what they had.  They had no involuntary intoxication or Prozac defense because Clemons had almost no Prozac in his system. They had no insanity defense because the expert psychiatrist ruled that out.  They only had "state of mind" issues, and the most credible way to show that Clemons did not plan the three murders was to put Clemons on the stand.  Counsel knew the consequences of having Clemons testify, but after weighing their options, putting Clemons on the stand was necessary:

> ....There had to be an explanation.  He brought two guns and over 100 rounds of ammunition, and he was part of a target club and he did shoot.  And he told us he did take it with him when he was on the road and things.  And the fact, I guess, we didn't see that as enough of a barrier not to bring that up.  That's what he told us also.  I mean, it was a truthful defense.  And the fact also that he had checked on - - his truck was-- had some mechanical difficulties.  And he had checked that morning and called to see if he could get a route for some work.  And he was walking over to see if his truck was okay.  So we had an honest belief that the guns were incidental to him coming work that day.  And there was evidence from him and so we thought it was still okay.  I mean, if he didn't always have one that wouldn't bar him from bringing a gun that day for noncriminal intention.

Krumbein, pg. 24.

A promising claim of ineffective assistance of counsel could have been made if counsel had not let Clemons explain why he had two guns and over 100 rounds of ammunition with him that day.  Clemons cannot show that counsel were ineffective in preparing their defense strategy.

For the foregoing reasons, Sub-claim D of the Eighteenth Ground for Relief should be denied.

**VI.    Defense counsel were not ineffective in conducting an investigation of Clemons.**

**A.    Procedural Posture**

18-E.    Defense counsel failed to conduct a reasonable investigation regarding their own client in the presentation of the defense.

Clemons raised Sub-claim E as his Eighteenth Ground for Relief in his post-conviction petition.   J.A. Vol.  XI, pgs. 83-85.   The trial court denied Clemons' claim because it was speculative and failed to demonstrate prejudice.   J.A. Vol. XI, pgs. 316-317.   The Court of Appeals held:

> Clemons's eighth claim for relief asserts trial counsel were ineffective in failing to investigate the type of medication Clemons was on at trial because it may have caused him to appear emotionally unresponsive. This claim is purely speculative and ignores the overwhelming evidence presented by the state as to each element of the crimes charged. Thus, where Clemons cannot demonstrate actual prejudice from this alleged failure on the part of trial counsel, this claim must fail. *Strickland, supra.*

State v. Clemons, 1999 WL 252655 at *5 (Ohio App. 1 Dist. 1999): J.A. Vol. XII, pg. 326.

**B.    Merit Analysis**

Clemons argues that counsel were ineffective for not investigating the effects of the medication he was on during trial, which would have explained his indifferent demeanor at trial. Clemons cannot show prejudice during the guilt phase because the sole issue for the jury was guilt or innocence.  Clemons cannot show prejudice during the mitigation phase either.

The jury already heard testimony about Clemons' behavior before, during and after the murders.  Clemons acted in a normal mood, was kidding around and was more dressed up than his usual attire when he came to work to check on his truck.  J.A. Vol. II, pg. 603, 632.  Dana Wilson remembered seeing Clemons right before he shot his first victim, David Kreamelmeyer:

> …he stopped right at this wall, waited for me to look up and I notice him and he kind of wave and gave a smile at me and then walked down this way.

J.A. Vol. II, pg. 658.

After Clemons shot Mr. Kreamelymeyer in his back, the next victim, Christine Teetzel, and Tonya Hickle were hiding under their desks. J.A. Vol. II, pg. 673. Ms. Teetzel hid under her desk and pulled her chair in behind her. J.A. Vol. II, pgs. 673-674. Ms. Hickle's desk chair was across the room so she could be seen crouched under her desk. J.A. Vol. II, pgs. 673-674. Clemons walked into the room, looked under Ms. Teetzel's desk and shot her. J.A. Vol. II, pg. 674. Clemons then left the room with Ms. Hickle still hiding under her open desk. J.A. Vol. II, pg. 675.

Clemons was seen shooting Mr. Kreamelymer in the back by Laurie McGuire. J.A. Vol. II, pgs. 681-682. As she dashed into a nearby office to escape, a calm Clemons entered the room behind her and told her that he would not hurt her:

> Q:    Did you startle him?
>
> A:    He didn't appear to be.
>
> Q:    What was his demeanor?
>
> A:    **Very calm. He was right in my face. I mean, he walks in and it's right at the doorway and he looks at myself and says, "I am not going to hurt you." And he said that he was only after the ones who screwed him over.**

> The Court:    I'm sorry. He said what?
>
> The Witness:    That he was only after the ones that screwed him over. He walked away from me, went through the hallway.

J.A. Vol. II, pgs. 682-683 (emphasis added).

When Clemons exited the building after shooting Mr. Kreamelymer, Ms. Teetzel and Mr. Kinney, he calmly approached Officer Sandra Sears.  Officer Sears testified about Clemons' jovial demeanor:

> A:    He saw smiling.  He never stopped smiling the entire time he walked towards me.  **His demeanor was almost like he was having a great day.**
>
> Q:    Did he make any statements to you at that point?
>
> A:    Yes, he did.  As he got maybe ten feet away from me he said, "I'm the guy you're looking for."  And my response to that was "What?'  **Basically he continued to smile, he continued to look happy and looked like there was no problem at all.**
>
> Q:    Did he respond after you said "what?"
>
> A:    Yes, he did.  He restated that "I'm the guy you're looking for" and that he had killed the people and motioned towards the building, Trans-Continental with his head.  **He never lost eye contact with me, he never stopped smiling.**

J.A. Vol. II, pg. 760 (emphasis added).  Officer Vonderhaar also saw Clemons smiling as he approached Officer Sears and confessed to the killings.  J.A. Vol. II, pgs. 777-778.  Clemons cooperated with police, by obeying commands to put his hands behind his back and by telling them that the guns were in the trunk of his car.  J.A. Vol. II, pg. 778.  Another police officer at the murder scene described Clemons as "**very cool, very calm, very collected**." J.A. Vol. II, pg. 815.  Clemons' cool, cooperative demeanor did not change at the police station.  He did not cry and was calm enough to request and eat lunch.  J.A. Vol. II, pgs. 816-817.

Testimony about Clemons' demeanor was powerful enough to reasonably infer that Clemons had no remorse and was unemotional about killing three people.  Explaining that Clemons was unemotional at trial because of his new medication does not negate the damaging fact that he was cool, calm, collected and even smiling before, during and after the scene of the triple murders.  During his deposition, Attorney Krumbein remarked that explaining Clemons'

demeanor at trial "might have been a good idea." Krumbein, pg. 26. However, this remark is an example of second-guessing, which is prohibited by <u>Strickland</u>. Clemons cannot show that, but for counsel's failure to explain his indifference at trial, there is a reasonable probability that the jury would not have recommended a death sentence for killing three unarmed people. **For the foregoing reasons, Sub-claim E of the Eighteenth Ground for Relief should be denied.**

## VII.    Counsel were effective in preparing mitigation.

### A.    Procedural Posture

19-A.   Defense counsel failed to conduct a reasonable investigation to prepare for mitigation.

19-B.   Defense counsel unreasonably failed to obtain Gerald Clemons' military records.

Clemons raised Sub-claims A and B of his Nineteenth Ground for Relief as his Seventh Ground for Relief in his post-conviction petition.   J.A. Vol. XI, pgs. 80-82.   The trial court denied Clemons' claim.   J.A. Vol. XI, pg. 315-316.   The Court of Appeals determined:

> Clemons's seventh claim for relief alleges that trial counsel were ineffective during the mitigation phase because counsel failed to conduct a reasonable investigation and failed to introduce Clemons's military records. We disagree because the possibility of presenting alternative forms of mitigation does not lead to the conclusion that Clemons's trial counsel were ineffective. State v. Post (1987), 32 Ohio St. 3d 380, 513 N.E.2d 754.

> Clemons claims that trial counsel's mitigation investigation should have included the presentation of evidence of Clemons's mental disorders, substance abuse history, expert testimony on the effects of Prozac, interviews with friends and family, and military records. n1 This claim has no merit. Furthermore, the defense provided the foregoing life-history information through the testimony of Clemons and his mother. Thus, counsel's performance was not deficient.   State v. Post (1987), 32 Ohio St. 3d 380, 513 N.E.2d 754; State v. Williams (1991), 74 Ohio App. 3d 686, 600 N.E.2d 298. Nor was Clemons prejudiced by the omission of his military record because Clemons testified in detail regarding his military service. Our review of Clemons's military record reveals that introduction of the record would do nothing to bolster Clemons's testimony regarding his service.

> n1

> 1. Clemons also states that counsel should have presented records from the Department of Rehabilitation and Corrections. As we stated in State v. Fautenberry (Dec. 31, 1998), Hamilton App. No. C-971017, unreported, "Obviously it is an absurd argument to make that attorneys are incompetent for failing to produce evidence of post-trial behavior, before such evidence even exists."

State v. Clemons, 1999 WL 252655 at *4 (Ohio App. 1 Dist. 1999); J.A. Vol. XII, pg. 325.

A.    **Merit Analysis**

When a habeas court examines a claim of ineffective assistance of counsel for failure to investigate a petitioner's background and introduce mitigation evidence, "it is best to begin with the evidence petitioner actually presented in mitigation."  Lorraine v. Coyle, 291 F.3d 416, 427 (6th Cir. 2002); see also Martin v. Mitchell, 280 F.3d 594 (6th Cir. 2002) (counsel were not ineffective for failing to present mitigating evidence when they presented some, but not all, evidence in mitigation and petitioner failed to demonstrate prejudice); Williams v. Coyle, 260 F.3d 684 (6th Cir. 2001) (same); Groseclose v. Bell, 130 F.3d 1161, 1169-1171 (6th Cir. 1997) (ineffective assistance when counsel failed to develop "any defense theory whatsoever" and failed to present mitigating evidence).

Here, counsel explained the mitigating factors to the jury:

But we are going to show you what we feel are mitigating factors.  A 54-yeear-old man who has no criminal record to speak of to this point in his life.  He served honorably in the US Army and discharged and he was married and had two children.  He had serious jobs which you heard and we are not going to repeat all that.

J.A. Vol. III, pgs. 1154-1155.  Defense counsel elicited testimony and presented evidence about Clemons' lack of criminal history, his service in the Army as a code man in Korea, his honorable discharged, his familial relationships particularly the absence of a father figure, his bouts with depression and his strong work ethic.  During deposition, Attorney Schmidt confirmed that their mitigation theory was "that here was a guy that just blew his stack."  Schmidt, pg. 18.

In Sub-Claim A of his Nineteenth Ground for Relief, Clemons asserts that counsel should have presented more evidence that Prozac was causing him to be more aggressive.  To collaborate evidence of his aggressiveness, Clemons proffers the post-conviction affidavit of his brother-in-law, Michael Haven, who declared that a furious Clemons punch another driver

because Clemons thought the driver was tailgating him. J.A. Vol. X, pg. 269. First of all, the Court Clinic, who was appointed to gather mitigation, documented their attempts to contact Haven, but he did not respond. The Clinic also documented that Clemons' brother informed them that "Haven had been told unequivocally by the family that Haven was not to respond to any requests for information." J.A. Vol. IX, pg. 11.

Second, Clemons forgets that he described to Dr. Hellman that Prozac "enabled him to *decrease* his usual amount of 'anger, ranting, raving and cussing' ion response to aggravating situations, and decreased his temper." Apx. Vol. IX, pg. 5 (emphasis added). These statements from Clemons, himself, completely contradict a mitigation theory that Prozac was causing him to be more aggressive. Furthermore, Clemons' mother testified about the difference she noticed in Clemons' after he took Prozac:

> He laughed at things and he talked to me on the phone lots of times when he was in other cities and he laughed at just about everything. He laughed at things that I didn't even think was funny, but he laughed at them.

J.A. Vol. III, pg. 1201.

Most importantly, even without the statements that Prozac decreased Clemons' anger and made him laugh "at just about anything," his aggression on that murderous day cannot be attributed to Prozac. The amount of Prozac in Clemons' system had dropped to "almost nothing." Clemons, himself, declared that he had last taken a pill two days before the triple murders. Apx. Vol. IX, pg. 9. According to Dr. Schmidtgoessling, Prozac had no impact on Clemons the day he killed three people. Even if counsel had put on mitigation that Prozac was making Clemons aggressive, they could not reasonably or honestly argue that, on December 15, 1995, it made him aggressive at all, not to mention, enough to kill three, unarmed people.

It was beyond reasonable for counsel to avoid attributing Prozac to Clemons' murderous actions any more than their sporadic references. Counsel made it clear that Prozac, itself, was not a defense or mitigating factor, but a part of the mitigating factor that Clemons was depressed:

> Again, this is not a so-called Prozac defense. The reason Prozac is important here is because it is a mitigating factor only, only in respect that this proves that he was being treated with prescription medication for depression. This is years of treatment of Prozac for depression. That is evidence that he was depressed and that the doctor prescribed medication for him and there's evidence that he asked for help years before he even knew of the three people that he murdered.

J.A. Vol. III, pg. 1310. Also, counsel were more than effective for avoiding testimony about Clemons' aggressive, irate behavior. Such testimony would have conflicted with and hurt the mitigation theory that Clemons acted out of character and "just blew his stack" the day of the murders. Counsel did not need to conduct in-depth interviews or consult experts, such as psychologist, about the effect Prozac had on Clemons. Clemons cannot show either deficient performance or prejudice.

In Sub-claim A of his Nineteenth Ground for Relief, Clemons also accuses counsel of not meeting with his mother until two or three hours before her testimony. Doc. No. 28, Amended Petition, pg. 52. However, Attorney Schmidt remembers speaking to her "many times" before she testified. (Schmidt, pg. 30). Regardless of when or how many times counsel talked to Clemons' mother, counsel elicited, through her testimony, the necessary factual basis for the mitigating factors. Clemons cannot show deficient performance or prejudice. Sub-claim A of the Nineteenth Ground for Relief fails in its entirety.

Finally, in Sub-claim B of his Nineteenth Ground for Relief, Clemons argues that counsel should have obtained his military records and introduced them during the penalty phase. During the guilt phase, Clemons testified about his military service in the States and Korea, his work in army security, his military specialty as a Morse code interceptor and his honorable discharge.

55

J.A. Vol. II, pgs. 883-885.   All testimony and evidence from the guilt phase were re-admitted in the penalty phase.   During the penalty phase, counsel presented more testimony about Clemons' military service and honorable discharge to establish them as mitigating factors.   Clemons' mother testified that Clemons volunteered to go to the Army after high school, he passed army security, he worked as a code man, he served time in Korea and he was honorably discharged. J.A. Vol. III, pgs. 1194-1196.   During closing argument, counsel reminded the jury of Clemons' military service.   J.A. Vol. III, pgs. 1302-1303.   The trial court noted Clemons' military service and honorable discharged in its opinion.   J.A. Vol. V, pg. 455.

During the penalty phase, counsel explained that there was a delay in getting Clemons' military records, but that there was no dispute from the prosecutor or any contradicting evidence about his service.   J.A. Vol. III, pg. 1302.   The record also reveals that mitigation specialist, James Crates, faced problems obtaining the military records because the National Personnel Records office misplaced their request from June 1996.   J.A. Vol. IX, pg. 208; Post-Conviction Exhibit DD.   At least four months before trial, counsel made a diligent effort to obtain Clemons' military records.   The problems that the National Personnel Records office had getting the records to counsel was beyond counsels' control and not their fault so their performance cannot be considered deficient.

During post-conviction, Dr. Hugh Turner reviewed Clemons' service record, and his written conclusion on Clemons' military history reads the same as the trial testimonies of Clemons and his mother.   J.A. Vol. X, pg. 277.   Introducing the military records would have been mere cumulative evidence of what counsel already presented.   Clemons fails to demonstrate ineffective counsel in Sub-claim B of his Nineteenth Ground for Relief.   See Smith v. Mitchell, 2003 U.S. App. LEXIS 21974 (6th Cir. 2003) (finding no ineffective assistance of counsel when

omitted evidence was cumulative of what was actually presented at mitigation); see also Brecheen v. Reynolds, 41 F.3d 1343, 1367, n.20 (10th Cir. 1994) (finding no ineffective counsel for failure to present cumulative evidence); Devier v. Zant, 3 F.3d 1445, 1452 (11th 1993) (same).

The last reasoned decision of Ohio's First District Court of Appeals was consistent with and a reasonable application of Strickland. For the foregoing reasons, **Sub-claims A and B of the Nineteenth Ground for Relief** do not merit relief in federal habeas corpus.

**VIII.   Counsel were not ineffective for not obtaining an independent psychologist.**

**A.    Procedural Posture**

19-E.   Defense counsel unreasonably failed to obtain the services of an independent psychologist.

Clemons raised Sub-claim E of his Nineteenth Ground for Relief as his Sixth Ground for

Relief in his post-conviction petition.  J.A. Vol. XI, pgs. 77-79.  The trial court denied Clemons'

claim:

> The Court makes the following Conclusion of Law:
>
> (1)    Counsel cannot be deemed ineffective when they rely upon the advice of a mental health expert.  Producing an expert who late comes to a contrary conclusion does not demonstrate ineffective assistance.  State v. McGuire, 80 Ohio St.3d 390.  State v. Steffen, C-900596 (1st Dist. C/A 8/7/91).

**J.A. Vol. XI, pg. 315.  The Court of Appeals also denied Clemons' allegation:**

> Clemons's sixth claim for relief asserts that trial counsel were ineffective in failing to obtain an independent psychological expert. In support of this claim, Clemons attached to his petition the report of a newly-found psychiatrist, who asserts that Clemons's taking of Prozac may have contributed to his crime. We note first that the Supreme Court of Ohio found that the psychologist appointed by the trial court in this case was qualified to testify as to issues involving Prozac. *Clemons, supra.* Because this claim was addressed on direct appeal, it is barred by *res judicata. Perry*, *supra.* Furthermore, this court has held that postconviction proceedings are not to be turned into a never-ending battle of experts. State v. Steffen (Aug. 7, 1991), Hamilton App. No. C-900596, unreported. Therefore, we reject Clemons's sixth claim for relief.

State v. Clemons, 1999 WL 252655 at *11 (Ohio App. 1 Dist. 1999); J.A. Vol. XII, pg. 325.

The last reasoned decision from the Ohio's First District Court of Appeals is neither

contrary to or an unreasonable application of Strickland.

**B.    Merits**

Clemons accuses trial counsel of being ineffective for failing to obtain the

services of an independent psychologist, which in turn prevented them from developing the

cohesive mitigation theory that Dr. Turner reported in his post-conviction affidavit.  Dr. Turner

concluded that Clemons was able to control his impulses until he was wrongfully prescribed Prozac and that Prozac, along with alcohol, contributed to Clemons' murderous actions.  J.A. Vol. X, pg. 282.  The amount of Prozac in Clemons' system had dropped to "almost nothing," and Clemons admitted that he last took a pill two days before the murders.  Knowing this information, Dr. Schmidtgoessling, the court appointed psychologist and Clemons' mitigation specialist, determined that the trace amount of Prozac had no impact on Clemons the day of the murders.  Dr. Keck, the Prozac expert, opined that Prozac did not even cause violent behavior. Considering the trace amount of Prozac, counsels' own investigation and the opinions of Dr. Keck and Dr. Schmidtgoessling, who counsel regarded as a respectable psychologist, counsel did not, and likely could not, obtain an independent psychologist to tie Clemons' actions to Prozac. Clemons cannot show that counsel were deficient for not obtaining an independent psychologist or that he was prejudiced.

IX.    **Alleged Errors in Post-Conviction Proceedings Are Not Cognizable in Federal Habeas Corpus.**

Petitioner Clemons was denied his right of due process and effective assistance of counsel contra the Fifth, Sixth Eight and Fourteenth Amendments to the Constitution because of the recent amendments to Ohio's post-conviction process. Doc. No. 28, Amended Petition at 62.

A.    **Procedural Posture**

Clemons raised this claim in post-conviction proceedings as his First Ground for Relief.

J.A. Vol. XII, pgs. 63-64.

B.    **Merits Analysis**

In post-conviction, both the trial court and the Court of Appeals found the claim to be without merit.  In rejecting Clemons' claim, the Court of Appeals held:

> Clemons' first claim for relief is that the three-page limit for postconviction petitions, as set forth in Crim. R. 35, is unconstitutional.  The Supreme Court of Ohio has found that page limitations on capital pleadings are proper.  State v. Bonnell (1991), 61 Ohio St. 3d 179, 573 N.E.2d 1082; State v. Davis (1991), 62 Ohio St. 3d 326, 581 N.E. 2d 1362.  Therefore, we find that Clemons' first claim lacks merit.

State v. Clemons, 1999 WL 252655 at *2 (Ohio App. 1 Dist.)

Clemons argues that he was denied effective counsel and due process rights because of the page limitations for post-conviction petitions.  **Clemons' allegations are not cognizable in federal habeas corpus**.  Federal courts sitting in habeas corpus have refused to recognize or grant relief to habeas petitioners for alleged deficiencies in a State's post-conviction procedures because such claims relate to a State civil matter, not the custody of a defendant.  Kirby v. Dutton, 794 F.2d 245, 246 (6th Cir. 1986) (concluding that habeas corpus is not the proper avenue for prisoners to challenge errors or deficiencies in State post-conviction proceedings); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) (holding "even if Roe can demonstrate that some error occurred during the state post-conviction proceedings, the claim is not cognizable in federal

habeas review"); <u>Greer v. Mitchell</u>, 264 F.3d 663, 681 (6th Cir. 2001) (affirming district court's decision that habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief); <u>Smith v. Anderson</u>, 104 F. Supp.2d 773, 836-837 (S.D. Ohio 2000) (same); <u>see</u> <u>also</u> <u>Williams-Bey v. Trickey</u>, 864 F.2d 314, 317 (8th Cir. 1990); <u>Bryant v. Maryland</u>, 848 F.2d 492, 493 (4th Cir. 1988).

For the foregoing reasons, **Twenty-First Ground for Relief** does not merit relief in federal habeas corpus.

**X.    Trial Counsel Were Effective Despite Not Objecting to Penalty Phase Jury Instructions.**

Trial counsel were ineffective for failing to object to the improper instruction that the jury must be unanimous in their recommendation of a life sentence.  Doc. No. 28, Amended Petition, pg. 65.

**A.    Procedural Posture**

Clemons excluded this claim from the Ohio courts.  Respondent moved to dismiss the claim because it is procedurally defaulted.  This Court did not dismiss the claim because it found that appellate counsel's failure to raise it on direct appeal was cause and prejudice to review the underlying merits of the Twenty-Fourth Ground for Relief.  Doc. No. 52, Order, pgs. 47-49.

**B.    Merit Analysis**

As shown in the response to the Twenty-Third Ground for Relief, the jury instructions during the penalty phase were constitutional.  Therefore, trial counsel cannot be rendered ineffective for not objecting to constitutional instructions.  For the foregoing reasons, the **Twenty-Fourth Ground** for Relief should be denied.

XI.     **Direct Appeal Counsel were Effective.**

Petitioner Clemons was deprived of his right to the effective assistance of counsel during his direct appeal to the Ohio Supreme Court in violation of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.  Doc. No. 28, Amended Petition at 74.

A.     **Procedural Posture**

This claim was raised in Clemons' Murnahan appeal to the Ohio Supreme Court.  J.A. Vol. VII, pg. 451.

B.     **Merits Analysis**

The Ohio Supreme Court denied Clemons' Murnahan.  Clemons fails to demonstrate how the decision of the Ohio Supreme Court is an unreasonable application of United States Supreme Court precedent.

Clemons' Murnahan was based upon thirty-two alleged "meritorious issues" that counsel failed to raise on direct appeal.  However, these thirty-two issues were so lacking in merit that the Ohio Supreme Court issued a one-page opinion denying his application.  Clemons, himself, devotes only one-and-a-half pages to discussion of the "merits" of those thirty-two claims, going no further than simply noting that thirty-two claims were raised.  These two facts support the conclusion that there is no merit to this claim.

Further, as noted by Clemons, "These thirty-two issues are grounded in other claims in this instant petition."  Petition at 75.  Respondent has already shown that the other claims in this petition are without merit.

In deciding Respondent's motion to dismiss, this Court considered appellate counsel's performance to be unreasonable and prejudicial because they failed to raise the instructional claim (Twenty-Third Ground) and claim of ineffective trial counsel for failure to object to the instruction (Twenty-Fourth Ground).  Doc. No. 52, Order, pgs. 37-49.  Thereafter, this Court

found cause and prejudice to address the underlying merits of the Twenty-Third and Twenty-Fourth Grounds.

Respondent respectfully disagrees.  Appellate counsel's decision to forgo raising these claims (Twenty-Third and Twenty-Fourth Grounds) was not unreasonable or prejudicial.  The instructional claim was waived because counsel failed to object at trial.  Appellate counsel can hardly be faulted for choosing to pursue more fruitful, preserved claim when the instructional claim would have been reviewed solely under plain error.  (In the scenario where appellate counsel had raised the claim on direct appeal, the claim would still be procedurally defaulted here).  Even if counsel had raised the instructional claim or the claim of ineffective trial counsel on direct appeal, there is no reasonable probability that the outcome of Clemons' appeal would have been different.  At that time, the Ohio Supreme Court routinely and repeatedly denied similar claims based on the jury instruction, regardless if they were preserved or procedurally defaulted.  See State v. Goff, 82 Ohio St.3d 123, 129 (1998); State v. Taylor, 78 Ohio St.3d 15, 29 (1997).  Appellate counsel cannot be deficient for choosing to forgo a waived claim that has been rejected the Ohio Supreme Court.

In all, Clemons cannot demonstrate cause or prejudice to establish that appellate counsel were ineffective.

For the foregoing reasons, the **Twenty-Ninth Ground for Relief** does not merit relief in federal habeas corpus.

**First Ground for Relief – No Change of Venue Was Required**

The trial court erred to the prejudice of Petitioner Clemons when it denied a motion for change of venue where pretrial publicity precluded the accused from receiving a fair trial under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.  Doc. No. 28, Amended Petition, pgs. 11-14.

**I.      Procedural Posture**

Clemons raised this claim as his Proposition of Law No. 1 in his direct appeal to the Ohio

Supreme Court.  J.A. Vol. 81-83.

**II.     Merits Analysis**

Clemons argues that the trial court abused its discretion by denying his motion for a

change of venue, despite adverse pre-trial publicity.   According to Clemons, the pre-trial

publicity prejudiced him and prevented him from obtaining an impartial jury, in violation of his

right to a fair trial.

On direct appeal, the Ohio Supreme Court found that the trial court did not abuse its

discretion because the pre-trial publicity did not warrant a change of venue:

In proposition I, defendant argues that the trial court erred by failing to change venue due to adverse pretrial publicity. In support, defendant points to newspaper articles appended to his motion for a new trial, as well as his claims of extensive television media coverage.

This court has long held that voir dire examination provides the best test as to whether prejudice exists in the community against a defendant in determining whether to grant a change of venue. State v. Swiger (1966), 5 Ohio St.2d 151, 34 O.O.2d 270, 214 N.E.2d 417, paragraph one of the syllabus; State v. Montgomery (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 170- 171. A review of the voir dire transcript indicates that the court and counsel questioned the members of the venire extensively to detect bias or anything that would prevent them from acting as fair and impartial jurors. At the outset, the prosecution quizzed prospective jurors as to whether they had heard or seen news reports of this case. After several prospective jurors indicated they had seen such reports, these same jurors were adequately interrogated about their ability to be fair to the defendant.

 Defendant cites Brecheen v. Reynolds (C.A.10, 1994), 41 F.3d 1343, 1351, for the proposition that a presumption of prejudice should arise where the totality of circumstances indicates that a defendant's trial was not fundamentally fair. However, as we noted in State v. Lundgren (1995), 73 Ohio St.3d 474, 479,

653 N.E.2d 304, 313, cases where extensive pretrial publicity gives rise to presumed prejudice " 'are relatively rare. * * * [P]retrial publicity--even pervasive, adverse publicity--does not inevitably lead to an unfair trial.' <u>Nebraska Press Assn. v. Stuart</u> (1976), 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683, 694-695."

      A review of the news articles appended to the defendant's motion for a new trial indicates that the pretrial publicity here was no more pervasive than that found in Lundgren, and there we found no abuse of discretion in the denial of a motion for a change of venue. <u>Id.</u>, 73 Ohio St.3d at 479-480, 653 N.E.2d at 313-314. A careful review of the voir dire transcript here reveals no abuse of discretion by the trial court in denying the motion for a change of venue. Therefore, we reject proposition I.

<u>State v. Clemons</u>, 696 N.E.2d at 1014; J.A. Vol. VI, pgs. 203-204.

### A.    United States Supreme Court Precedent

The decision of the Ohio Supreme Court, during Clemons' direct appeal, is consistent with and a reasonable application of United States Supreme Court precedent. A criminal defendant may be deprived of his Constitutional right to a fair trial by pre-trial publicity and a partial jury. The United States Supreme Court has described the circumstances where pre-trial publicity or the "setting of the trial [is] inherently prejudicial." <u>See</u> <u>Murphy v. Florida</u>, 421 U.S. 794, 798 (1975). For example, in <u>Irvin v. Dowd</u>, 366 U.S. 717 (1961), which Clemons relies on, the local media in a rural area carried extensive newscasts on every stage of the defendant's case for six murders, and the media broadcasted opinions about the defendant's guilt and his appropriate punishment. During four weeks of voir dire, almost 90% of the prospective jurors had formed some opinion about the defendant's guilt, and eight of the twelve impaneled jurors admitted that they thought the defendant was guilty. The Supreme Court, in <u>Irvin</u>, concluded that the "pattern of deep and bitter prejudice" shown to be present throughout the community, from the pre-trial publicity, was clearly reflected in the voir dire examination. <u>Irvin</u> 366 U.S. at 759.

Similarly, in <u>Rideau v. Louisiana</u>, 373 U.S. 723 (1963), the Supreme Court held that due process required a change of venue because of pre-trial publicity. In <u>Rideau</u>, the sheriff's interrogation of the defendant, where he confessed to bank robbery, kidnapping and murder, was filmed in jail and repeatedly broadcasted to the community. Three members of the jury, which convicted the defendant and sentenced him to death, admitted during voir dire that they had seen and heard the televised confession at least once, and two members of the jury were deputy sheriffs. <u>Rideau v. Louisiana</u>, 373 U.S. at 724, 725. The Court concluded, "any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." <u>Id</u>.

The Court has identified circumstances where a defendant can receive a fair trial despite pre-trial publicity:

> In <u>Murphy v. Florida</u>, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed. 2d 589 (1975), we reviewed a trial in which many jurors had heard of the defendant through extensive news coverage. Characterizing our previous cases in which we had overturned a state-court on these grounds as involving "a trial atmosphere that had been utterly corrupted by press coverage," <u>Id</u>., at 798, 95 S.Ct., at 2035, we recognized:
>
> "**Qualified jurors need not, however, be totally ignorant of the facts and issues involved.**
>
> "**`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.**'" <u>Id</u>., at 799-800, 95 S.Ct., at 2036, quoting from <u>Irvin v. Dowd</u>, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

<u>Dobbert v. Florida</u>, 432 U.S. 282, 302 (1977) (emphasis added). In <u>Dobbert</u>, the Supreme Court concluded:

Petitioner's argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received. He has directed us to no specific portions of the record, in particular the voir dire examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected. But under <u>Murphy</u>, extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a "trial atmosphere ... utterly corrupted by press coverage," <u>Murphy v. Florida</u>, <u>supra</u>, 421 U.S., at 798, 95 S.Ct., at 2035. One who is reasonably suspected of murdering his children cannot expect to remain anonymous.

<u>Dobbert v. Florida</u>, 432 U.S. at 303.

Absent "utter corruption" of the trial process, a community's prior knowledge of the crime or the suspected criminal -- via extensive media coverage -- is not sufficient to render a trial constitutionally unfair. Rather, the trial record must demonstrate constitutional unfairness "as to the method of jury selection or as to the character of the jurors actually selected." <u>Id</u>; <u>see also</u> <u>Patton v. Yount</u>, 467 U.S. 1025, 1040 (1984) (concluding that "the voir dire testimony and the record of publicity do not reveal the kind of 'wave of public passion' that would have made a fair trial unlikely be the jury that was empanelled as a whole.").

The Sixth Circuit Court of Appeals has recognized:

there is clearly established Supreme Court precedent distinguishing between cases involving presumed prejudice - - when the "setting of the trial [is] inherently prejudicial," - - and actual prejudice - - when review of both the jury voir dire testimony and the extent and nature of the media coverage indicates 'a fair trial [was] impossible.

<u>Nevers v. Killinger</u>, 169 F.3d 352, 364 (6th Cir. 1999) (quoting <u>Murphy v. Florida</u>, 421 U.S. 794, 798 (1975)); <u>Ritchie v. Rogers</u>, 313 F.3d 948 (6th Cir. 2002) (denying habeas relief for trial court's denial of change of venue where massive publicity was not presumptively prejudicial and petitioner failed to show publicity interfered with seating of a fair, impartial jury).

**B.      Pre-trial publicity in Clemons' case was not presumptively prejudicial.**

Clemons argues that pre-trial publicity of his crime was so extensive and overwhelming that he was entitled to a change of venue.  Petition, pg. 14.  To support his argument, Clemons refers to the newspaper clippings attached to his motion for a new trial.  See J.A. Vol. V, pgs. 480-514.  Clemons' argument seems to rely on the volume of the pre-trial publicity.  However, the nature of the publicity, not its volume, and whether it is the kind that could be laid aside by jurors are the crucial factors in considering a change of venue.  See Murphy v. Florida, 421 U.S. 794 (1975).

The *Cincinnati Enquirer* and the *Cincinnati Post* published articles about the triple murders, Clemons' arrest, and various pre-trial issues, such as Clemons' psychological evaluation and possible Prozac defense.  J.A. Vol. V, pgs. 480, 482-484, 490-494.  Most of the newspaper articles were factual reports, rather than inflammatory accounts or editorials that could have prejudiced Clemons.  The media accounts, identifying Clemons as the gunman, had little to no prejudicial effect because Clemons has always conceded that he shot Dave Kreamelmeyer, Bob Kinney and Christine Teetzel.

Even the articles about the victims and their families were considered inflammatory, they were published immediately following the murders, which was approximately nine months before jury selection.  The time period between the publication of these articles and the beginning of Clemons' trial was long enough to dwindle any prejudice to Clemons that might have occurred.

Media coverage of this case was not the type of spectacle that would be inherently prejudicial to Clemons to mandate a change of venue.  See Rideau, supra.  In fact, there is no indication that the newspaper articles are the kind of publicity that cause a juror to form an

opinion or be unable to lay that opinion aside.  Clemons cannot demonstrate that the setting of his trial was inherently prejudicial.  The trial court did not abuse its discretion in denying Clemons' motion.  The Ohio Supreme Court reasonably and correctly found that the media coverage was not "pervasive" enough to corrupt the proceedings.

### C.     Examination of Voir Dire Reveals a Fair and Impartial Jury.

A constitutionally fair trial requires that a defendant have a "panel of impartial, indifferent jurors."  <u>Irvin v. Dowd</u>, 366 U.S. 717, 722.  The record reveals that fair, impartial jurors were impaneled in Clemons' case.  Clemons is unable to point to any specific examples of juror impartiality.  Rather, he would have this Court presume such based on the pre-trial publicity.  As demonstrated above, the pre-trial publicity was not prejudicial to Clemons, and the factual media accounts likely did not influence prospective jurors.  The citizens, who served on Clemons' jury, had not formed an opinion about the case, and each declared that he or she could be fair and unbiased.  Juror impartiality in Clemons' case is evident on the record.

Clemons asserts "there was no attempt on the part of defense counsel or the trial court to question prospective jurors on their knowledge of this case from pre-trial publicity."  Petition, pg. 12.  However, the trial court and counsel took reasonable steps to ensure that the jury could be fair and impartial.  The trial court brought in prospective members, conducted voir dire examinations of the panel collectively and individually with the entire panel present, and replaced those excused as necessary.  Asking detailed or penetrating questions about pre-trial publicity likely would have ran the risk of eliciting inflammatory responses, jarring the memories or sparking the curiosities of other prospective members.  The trial court steered clear of the negative, risky approach of focusing on the media's portrayal of Clemons.  Instead, the court

took the positive approach in voir dire by emphasizing the need for a fair, impartial body to judge Clemons based only on the evidence presented at trial.

Voir dire in this case enabled the judge, defense counsel and the prosecutor to be aware of any prior knowledge, opinion or prejudice formed by prospective jurors.  In fact, when a prospective juror questioned his own impartiality and stated, "I have knowledge of what happened and I don't know if what I have heard is going to influence me," the trial judge excused him from the panel.  J.A. Vol. I, pgs. 162-163, 276-280.

All of the jurors in this case expressed that he or she could be fair, impartial and unbiased while judging Clemons based only on the evidence submitted at trial.  None of the jurors impaneled in the case had formed any opinion about Clemons' guilt or innocence.  Some members did not even remember the case.  J.A. Vol. I, pg. 167 (Juror Sauerbeck:  "I don't remember anything about it at all."); J.A. Vol. I, pg. 201 (Juror Sergent:  "To be perfectly honest with you, until you brought it up today I don't remember the case.  I was getting ready to go out of town and I go out of town Christmas time every year and I don't remember the case.  My mind was focused on getting to Florida."); J.A. Vol. I, p. 249 (Juror Wagner:  "I don't remember anything about it."); J.A. Vol. II, pg. 472-473; J.A. Vol. II, pg. 480 (Juror Hollopeter:  "I really didn't hear anything.").

Only two of the twelve jurors remembered any pre-trial publicity, but each of them expressed that they could still be fair and impartial, which is all that is constitutionally required.  Juror Geers expressed that the pre-trial publicity would have no effect on him:

> Mr. Deters (prosecutor):  I just had a few questions.  I think you indicated that you had heard some reports about this case?

> Prospective Juror Geers:  Yeah, in the newspaper and television.

Mr. Deters:  Sir, would you be able to put those out of your mind and base your verdicts upon what you hear here?

Prospective Juror Geers:  I read the articles and watched but never delved into it.

**Mr. Deters:  You would have no problems being fair and impartial in this case.**

**Prospective Juror Geers:  No problem with that at all.**

J.A. Vol. I, pg. 183 (emphasis added).  Defense counsel further questioned Juror Geers about any impact of the pre-trial publicity, and Geers again stated that he could ignore the media and focus only on the evidence and testimony presented at trial.  J.A. Vol. I, pgs. 185-187.  Juror Palazzolo was the other juror who admitted to hearing about the case, but when asked by defense counsel, she indicated that she could put it out of her mind.  J.A. Vol. II, pg. 457.

Impaneling fair jurors, without any noted difficulty, justified the trial court's decision to deny a change of venue.  Cf. Kordenbrook v. Scroggy, 919 F.2d 1091, 1102 (6th Cir. 1991) (no change of venue required where 80% of the people in four out of five counties had heard about the case and 50% of the people in three out of five counties thought the defendant was guilty of murder.); Brofford v. Marshall, 751 F.2d 845 (6th Cir. 1985) (in prosecution for murder of police officer, no change of venue because of pre-trial publicity when each juror stated that he/she had heard or read about the case and nine jurors stated that they had formed an opinion that defendant was guilty, but stated that they could set that opinion aside).  Here, Clemons has not established the rare case in which prejudice is presumed because of pre-trial publicity, nor has he shown that the pre-trial publicity interfered with the seating of a fair, impartial jury to cause him actual prejudice.

Clemons attempts to demonstrate juror partiality from newspaper articles, which contain alleged quotes from jurors about their beliefs that the death penalty was appropriate.  However,

these quotes hardly support the proposition that the jurors were influenced by pre-trial publicity. One article, contained an alleged quote from one juror that justice was served because they did what the judge instructed.  J.A. Vol. V, pg. 514.  Assuming that jurors actually made any of these statements, they were expressed and published *after*, not before, the panel heard all of the evidence from both phases of Clemons' capital trial and only *after* the juror unanimously recommended a death sentence.  Clemons cannot show that any juror formed an opinion about his sentence *before* hearing all evidence presented at his trial.  The  Ohio  Supreme  Court,  on direct appeal, reasonably and correctly found no demonstrable unfairness in the record to warrant a change of venue.  Clemons points to nothing that would suggest inherent or actual prejudice akin to the circumstances in <u>Irvin</u> or <u>Rideau</u>.

For the foregoing reasons, the **First Ground for Relief** does not merit relief in federal habeas corpus.

**Second Ground for Relief – No <u>Ake</u> Violation Occurred During Clemons' Trial**.

The trial court erred to the prejudice of Petitioner Clemons in not granting funds for expert assistance constitutionally required for the preparation of an adequate defense as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the Constitution.  Doc. No. 28, Amended Petition at 15-17.

## I.      Procedural Posture

This claim was raised as Proposition of Law No. 2 in Clemons' direct appeal to the Ohio Supreme Court.   J.A. Vol. VI, pgs. 83-84.   At trial, Clemons did not object to the court's appointment of clinical psychologist Dr. Nancy Schmidtgoessling, and he did not request expert assistance of private investigator, ballistic expert or independent psychiatrist.  The Ohio Supreme Court noted Clemons' failure to preserve the issue for appeal.   Respondent points out that this claim is procedurally defaulted, although it was not presented in her motion to dismiss.

## II.     Merits Analysis

In rejecting this claim on direct appeal, the Ohio Supreme Court held:

In proposition II, defendant contends that he was prejudiced by a lack of funds necessary to conduct an adequate defense. Specifically, defendant asserts that a lack of funds prevented him from hiring private independent expert witnesses to provide him with the basic tools of an adequate defense. Defendant argues that the trial court should have provided funds to enable him to hire a private independent investigator, an expert on Prozac, and an independent firearms or ballistics expert.

R.C. 2929.024 authorizes trial judges to grant funds in aggravated murder cases for investigative services and experts when "reasonably necessary for the proper representation" of indigent defendants. Such decisions are vested "in the sound discretion of the [trial] court" based upon "(1) the value of the expert assistance to the defendant's proper representation * * * and (2) the availability of alternative devices * * * [to] fulfill the same functions[.]" State v. Jenkins (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph four of the syllabus. This court has recently held that "[d]ue process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert

would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial. (State v. Broom [1988], 40 Ohio St.3d 277, 533 N.E.2d 682, approved and followed.)" State v. Mason (1998), 82 Ohio St.3d 144, 694 N.E.2d 932, syllabus.

In addition, the United States Supreme Court has held that due process requires that an indigent defendant have access to psychiatric assistance "necessary to prepare an effective defense based on his mental condition, when his sanity at the time * * * [was] seriously in question." Ake v. Oklahoma (1985), 470 U.S. 68, 70, 105 S.Ct. 1087, 1090, 84 L.Ed.2d 53, 58.

First, defendant never requested an independent, private investigator. Second, the trial court indicated on several occasions prior to trial that it was willing to consider appointing an expert witness on Prozac. However, the defense never made such a request. When the court appointed clinical psychologist Dr. Nancy Schmidtgoessling of the Community Diagnostic and Treatment Center as the defense mitigation specialist, the defense raised no objection. As a psychologist, Dr. Schmidtgoessling would have been able to testify as to issues involving Prozac. Third, the defense did not request an independent firearms expert when it had an opportunity to do so. Further, such expert testimony would have been irrelevant because the shootings were not in dispute.

Thus, the defendant never preserved the issue. See State v. Williams (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156; State v. Awan (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201, 489 N.E.2d 277, 279. Further, the defendant failed to make the particularized showings required by State v. Mason. Accordingly, we reject this proposition.

State v. Clemons, 82 Ohio St. 3d 438, 442-443; J.A. Vol. VI, pgs. 204-205.

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable application of United States Supreme Court precedent in Ake v. Oklahoma, 470 U.S. 68, 70 (1985). The United States Supreme Court, in Ake, held "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial [and the sentencing phase], the State must, at a minimum, assure the defendant *access* to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. Id. 470 U.S. at 83 (emphasis added).

Clemons asserts that he "required the expert assistance from a physician experienced on the effects of Prozac." Doc. No. 28, Amended Petition at 15. Recognizing that potential need,

the trial judge and defense counsel on several occasions discussed the appointment of such an expert.  J.A. Vol. I, pgs. 13-14, 22, 29, 36-39

However, after a thorough investigation, the defense did not make such a request. Clemons admitted that he last took a Prozac pill two days before the murders.  The trace amount of Prozac in Clemons' blood had dropped to "almost nothing."  Dr. Schmidtgoessling opinioned that Prozac had no impact on Clemons the day he murdered three people, and Dr. Keck believed that Prozac did not even cause violent behavior.  Knowing all this information from their investigation, counsel made a reasonable, well-informed decision to sporadically refer to Clemons' prescription and forgo a Prozac defense or mitigation strategy.

Clemons further claims that he was entitled to the assistance of a private investigator and ballistic expert.  Amended Petition at 15.  However, Clemons never requested a private investigator or a ballistic expert at trial, and he has never shown why either service would aid his defense.

Clemons finally claims he was entitled to the assistance of a psychiatrist.  The trial court appointed Dr. Nancy Schmidtgoessling for this role, with defense counsel's agreement.  J.A. Vol. I, pg. 29.  Clemons' claim that she was "not an independent mental health specialist" is of no moment, as a defendant is not entitled to choose the expert of his liking or to receive funds to hire his own expert.  Doc. No. 28, Amended Petition, pg. 16.  Ake, 470 U.S. at 83; Starr v. Lockhart, 23 F.3d 1280, 1289-90 (8th Cir.), cert. denied, 115 S. Ct. 499 (1994) (recognizing that, under Ake, due process does not give defendants the right to assistance from their experts of choice"); Parker v. Norris, 64 F.3d 1178, 1185 (8th Cir. 1995); see generally Caldwell v. Johnson, 226 F.3d 367, 373 (5th Cir. 2000) (because Ake disavows a right to assistance of choice, petitioner could not use Ake principles to claim he was entitled to medical assistance of his

choosing in a Ford hearing for competency to be executed); United States v. Singleton, 107 F.3d 1091, n. 10 (4th Cir. 1996). The right of an indigent defendant to have experts appointed does not translate into a right to choose those experts. Because Clemons had *access* to a competent psychiatrist, his Ake rights were not violated.

For the foregoing reasons, the **Second Ground for Relief** does not merit relief in federal habeas corpus.

**Fourth Ground for Relief – The Prosecutor Acted Properly**.

> Prosecutorial misconduct occurred in this case, specifically in the opening statement, closing argument and the penalty phase proceedings which resulted in prejudice to Petitioner Clemons to the extent that he was denied a fair trial under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution. Doc. No. 28, Amended Petition at 19-23.

**I        Procedural Posture**

This claim was raised before the Ohio Supreme Court on direct appeal as Clemons' Proposition of Law No. 4. J.A. Vol. VI, pgs. 88-94.  At trial, Clemons did not object to some of the prosecutor's comments that he now alleges to be misconduct.  On appeal, the Ohio Supreme Court reviewed those comments for plain error only.   Accordingly, this Court found that Clemons procedurally defaulted part of this claim and has dismissed habeas review of the comments that were not objected to at trial.  Doc. No. 52.  The remaining comments that were objected to at trial are preserved for habeas review and detailed below.

**II.      Merits Analysis**

On direct appeal, the Ohio Supreme Court found that none of the prosecutor's remark denied Clemons' right to a fair trial:

> In proposition IV, defendant claims that he was denied a fair trial due to prosecutorial misconduct during the opening and closing arguments at the guilt phase, and closing argument at the penalty phase. The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14-15, 14 OBR 317, 319, 470 N.E.2d 883, 885.
> The first group of comments defendant cites occurred during opening statement: (1) that defendant came to work "prepared for a slaughter"; (2) that defendant looked at Kinney, who was at his desk "defenseless, helpless and just sitting there"; (3) that defendant shot Kreamelmeyer "in such a cowardly fashion" in the back while he lay there dying, and "Could you even imagine the abject terror of those women who have just witnessed it and heard these gunshots[?]"; (4) that defendant had done his "errand for the day"; and (5) that defendant "in an incredible act of cowardness [sic ] purposely killed three innocent helpless people * * * [a]nd he would have killed more. He would have killed others if he could find out the ones who screwed him over."

Comments two and three were objected to, but the remaining three are waived. Slagle, 65 Ohio St.3d at 604, 605 N.E.2d at 924-925. The terms "cowardly" or "cowardness" are no worse than characterizations we have found permissible in other cases. See, e.g., State v. Brown (1988), 38 Ohio St.3d 305, 316-317, 528 N.E.2d 523, 538 ("monster"); State v. Wickline (1990), 50 Ohio St.3d 114, 121, 552 N.E.2d 913, 921 ("Nazi"). Moreover, shooting someone in the back, as defendant did Kreamelmeyer, is an almost universally recognized act of cowardice. We find that comments two and three were within the bounds of opening statement and were a fair commentary on the facts. Further, none of the remaining comments constitutes outcome- determinative plain error. State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

In closing argument at the guilt phase, defendant complains of four improper comments: (1) "[T]his twisted, cowardly act of vengeance"; (2) "[The defendant] had to testify. Do you know why he had to testify? He had to testify because otherwise there would have been absolutely no evidence that he went in there that day for work. None. Not a speck of evidence. The defendant has to testify."; (3) "But even though he testified with this ridiculous thought he had to work that day, he was proven a liar yesterday and proven a liar today."; (4) "I know the defense attorneys are just doing their job, but if there is any hope at all that they could produce any type of expert to say this defendant blacked out and could not form the requisite intent of purposely killing these people, you would have heard it."

The first three comments are waived for lack of an objection. Slagle. Plain error is also absent. Long. Terms such as "coward" and "liar" may be harsh, but fall short of being "purely abusive." Brown, 38 Ohio St.3d at 317, 528 N.E.2d at 538. Referring to defendant as a "liar" was improper, in that it conveyed to the jury the prosecutor's personal belief. State v. Watson (1991), 61 Ohio St.3d 1, 10, 572 N.E.2d 97, 106. However, here, the prosecutor's characterization was marginally permissible, since the opinion was based on the evidence presented at trial. State v. Tyler (1990), 50 Ohio St.3d 24, 40-41, 553 N.E.2d 576, 595-596. Since the state was trying to prove that defendant went to work with the intent to kill, the prosecutor's comment underscores the state's theory of the case that defendant's version of what happened was contradicted by the evidence.

Although it is error for a prosecutor to comment on a defendant's failure to testify, see State v. Thompson (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407, 411, the comment that defendant had to testify appears to be fair comment based on the evidence and within the latitude accorded the prosecution during closing argument. State v. Liberatore (1982), 69 Ohio St.2d 583, 589, 23 O.O.3d 489, 493, 433 N.E.2d 561, 566. The comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper, State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. State v. Williams (1986), 23 Ohio St.3d 16, 19-20, 23 OBR 13, 16-17, 490 N.E.2d 906, 910-911; State v. Bies (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754, 760.

Nevertheless, the prosecutor's prefacing statement that "I know the defense attorneys are just doing their job" was improper, since it imputed insincerity to defense counsel by suggesting that they believed that defendant was guilty. Keenan, supra, 66 Ohio St.3d at 405-406, 613 N.E.2d at 206-207. While defense counsel conceded at the outset of trial that their client was guilty, they still maintained that prior calculation and design, necessary to support a capital offense conviction, was not proven. Thus, the prosecutor's prefacing comment was improper. See Berger v. United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321. However, given the abundant evidence of defendant's guilt of aggravated murder with prior calculation and design, this error was harmless in that it was not outcome-determinative.

Defendant next contends that he was prejudiced by the prosecutor's comments during closing argument at the penalty phase. First, defendant cites the prosecutor's "challenge" to defense counsel to look at each juror in the face and convince them that the mitigating factors the defense presented "come close to outweigh or be more important than the lives of those three people." While this comment was highly theatrical and, when viewed in isolation, improper, it did not materially prejudice defendant. See State v. Campbell (1994), 69 Ohio St.3d 38, 41, 630 N.E.2d 339, 345. Prosecutors can urge the merits of their cause and legitimately argue that defense mitigation evidence is worthy of little or no weight. State v. Wilson (1996), 74 Ohio St.3d 381, 399, 659 N.E.2d 292, 309. In any event, defense counsel specifically and effectively answered the prosecutor's challenge by stating that he was accepting it, and asking the jury to spare defendant's life.

Next, defendant essentially complains that the prosecutor denigrated defense counsel by arguing that the basic message of the defense to the jury is "to ignore your orders, don't follow the law, do what you want to do." This overly embellished comment borders on impropriety, but was neither outcome-determinative nor unduly prejudicial. The fact that defense counsel told the jury that they could "make up your own minds" on the death sentence, even if the aggravating circumstance outweighed the mitigation beyond a reasonable doubt, suggests that the prosecutor's comment was truthful.

The third penalty phase closing argument comment cited by defendant was that the prosecutor told the jury, "[Y]ou have been subjected to a whole variety of issues that were simply presented to you for sympathy purposes." This comment, which could be regarded as an expression of personal belief by the prosecutor, or even a slight denigration of defense counsel, was permissible, since it was based on the evidence presented during the penalty phase. See State v. Durr (1991), 58 Ohio St.3d 86, 96, 568 N.E.2d 674, 684. Further, it was proper to point out to the jurors that their sympathy is irrelevant to their duty as jurors. State v. Lorraine (1993), 66 Ohio St.3d 414, 418, 613 N.E.2d 212, 217.

Defendant next cites two comments that the prosecutor made concerning the defense's failing to call certain witnesses to testify. One involved the failure to call an expert to testify that defendant suffered from depression. The other was a rhetorical question, asking why defendant never called any of his former bosses to

testify on his behalf at the mitigation hearing. As mentioned earlier, comments that a witness other than the accused did not testify are not improper.

Defendant also claims error where the prosecutor commented, "You remember the evidence you heard and I suspect I will be continually interrupted throughout this closing argument. It's kind of a tactic defense attorneys are taught." This comment improperly denigrated defense counsel and has no place in a trial. In our view, such prosecutorial comments potentially infringe on the defendant's right to counsel and penalize him for attempting to enforce procedural rights. Keenan, 66 Ohio St.3d at 406, 613 N.E.2d at 207. However, the improper comment appears to be harmless in light of all the evidence, and did not prevent defendant from obtaining a fair sentencing, as it was not outcome-determinative.

In sum, defense counsel objected to most of the comments defendant complains of, but the trial court issued curative instructions that the arguments of counsel do not constitute the law or evidence in the case. While many of these prosecutorial comments were embellished, and some were improper, they fall short of the excessiveness we found prevalent in Keenan, and were not outcome-determinative. Nevertheless, prosecutors should be on notice to avoid the comments highlighted here. Cf. Keenan, 66 Ohio St.3d at 410-411, 613 N.E.2d at 210. Proposition IV is overruled.

State v. Clemons, 82 Ohio St. 3d 438, 451-454 (1998).

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable application of United States Supreme Court precedent.

### A.     United States Supreme Court precedent

A petitioner's burden on a prosecutorial misconduct claim is "quite a substantial one" because habeas review is limited to the narrow standard of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000). Habeas relief based on such a claim is only proper when the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)). The Sixth Circuit employs a two-part analysis to determine whether the prosecutor violated a defendant's due process rights:  was the conduct or remark improper, and if so, was the impropriety flagrant? United

States v. Carter, 236 F.3d 777, 783 (6th Cir. 2001).  In order for the conduct or remarks to be

flagrant, the following must be considered:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant;
>
> (2) whether the conduct or remarks were isolated or extensive;
>
> (3) whether the remarks were deliberately or accidentally made; and
>
> (4) whether the evidence against the defendant was strong.

United States v. Carter, 236 F.3d at 783.

No due process violation occurs unless the prosecutor's comments or conduct deprived

the defendant of his right to a fair trial.  Even if it was "undesirable or even universally

condemned," the prosecutor's conduct does not constitute a due process violation unless it was

"so egregious so as to render the entire trial fundamentally unfair."  Donnelly v. DeChristoforo,

416 U.S. 637, 642 (1974); Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), cert. denied,

522 U.S. 1001.

Prosecutors must be given leeway to argue reasonable inferences from the evidence.

United States v. Collins, 78 F.3d 1021, 140 (6th Cir. 1996); see also State v. Durr, 58 Ohio St.3d

86, 96, 568 N.E.2d 674 (1991); State v. Stephens, 24 Ohio St.3d 76, 83, 263 N.E.2d 773, 777

(1970).  In accord with the limited habeas review of prosecutorial misconduct claims, the Sixth

Circuit recognizes that habeas relief will not be granted unless "the prosecutor's statements

likely had a bearing on the outcome of the trial in light of the strength of the competent proof of

guilt."  Prichett, 117 F.3d at 964 (citing Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982).

Clemons cannot show that the prosecutor's comments, individually or cumulatively, amounted to

a constitutional violation.

**B.    The Ohio Supreme Court's decision is a reasonable application of United States Supreme Court precedent.**

Clemons fails to meet his substantial burden of showing that the prosecutor's comments were egregious enough to merit habeas relief.  The comments before this Court to consider in the limited context of due process are as follows:

Opening Statement in Guilt Phase

1.    "Clemons then looks at Robert Kinney who is seated at his desk defenseless, helpless and just sitting there."  J.A. Vol. II, pg. 588.

2.    "After he's now in such a cowardly fashion shot Dave in the back while he lay there dying, he walks into this office.  Could you even image the abject terror of those women who have just witnessed it and heard these gunshots?"  J.A. Vol. II, pg. 590.

Closing Argument in Guilt Phase

3.    "If there is any hope at all, and I know the defense attorneys are just doing their job, but if there is any hope at all that they could produce any type of expert to say this defendant blacked out and could not form the requisite intent of purposely killing these people, you would have heard it.  They would have been lined up."  J.A. Vol. III, pgs. 1077-1078.

Closing Argument in Penalty Phase

4.    "I issue a challenge to the defense attorneys who in a few minutes are going to come up here.  I issue a challenge to them to come up to this podium, stand here, look at each and everyone of you in the face and tell you and convince you that any of the mitigating factors that they tried to present yesterday even begins to come close to outweigh or being more important than the lives of those three people."  J.A. Vol. III, pgs. 1289.

Rebuttal Closing Argument in Penalty Phase

5.    "You were given a lot of things here in closing to consider by defense counsel and I appreciate the difficult job they have in defending Mr. Clemons.  But I could tell you basically the message you are receiving is to ignore your orders, don't follow the law, do what you want to do.  That is just wrong.  You all raised your right had to God and swore that you will follow the oath and instructions of law that Judge Nadel is going to give to you.  How much time Clemons may spend in jail, of if the

governor is going to pardon him, if the appeals process takes twenty years, that is not your job." J.A. Vol. III, pgs. 1327-1328.

6.   "We were very cautious in voir dire to ask each and every one of you to sign verdict form because we wanted jurors to follow the law as the Judge instructs you and not be swayed by sympathy. And you have been subjected to a whole variety of issues that were simply presented to you for sympathy purposes." J.A. Vol. III, pg. 1330.

7.   "The fact he claimed he was depressed. His claim. Did you hear at any time during the course of the guilt phase of this trial or the penalty phase of this trial anyone, any expert come before this jury and specifically diagnose this defendant as being depressed ever?" J.A. Vol. III, pg. 1331.

8.   "You remember the evidence you heard and I suspect I will be continually interrupted throughout this closing argument. It's kind of a tactic defense attorneys are taught." J.A. Vol. III, pg. 1335.

9.   "Finally, they only put on three witnesses. This is the sum total of the mitigation. We heard from defense attorneys about what a great life he has led. Certainly he has come in contact with people who lived a great life. I asked you in the first session - - and we readmitted all the evidence in this session - - how many of you have had in excess of twenty jobs? He lived such a great hard working life. Where are the bosses that he worked for?" J.A. Vol. III, pg. 1338.

As the Ohio Supreme Court noted, the prosecutor's comments either were reasonable arguments based on the facts or they were improper but did not deprive Clemons of a fair trial due to the overwhelming evidence that Clemons murdered Mr. Kreamelmeyer, Mr. Kinney and Ms. Teetzel with prior calculation and design.

Any prejudice that might have resulted from the prosecutor's comments was diminished and cured by the court's instructions to the jury. Defense counsel objected to each of the above comments at trial. Every time, the trial court immediately issued a curative instruction that informed the jury the prosecutor's statements were not evidence or law. J.A. Vol. II, pgs. 588-589; J.A. Vol. II, pg. 590; J.A. Vol. III, pg. 1078; J.A. Vol. III, pg. 1290; J.A. Vol. III, pg. 1328; J.A. Vol. III, pg. 1335; J.A. Vol. III, pgs. 1338-1339. At other stages throughout trial, the jury

was again reminded that statements from counsel were not evidence.  J.A. Vol. III, pg. 995 (instruction before closing arguments in guilt phase); J.A. Vol. III, pg. 1086 (instruction after closing arguments in guilt phase); J.A. Vol. III, pgs. 1352-1354 (instruction after closing arguments in penalty phase).  Furthermore, the prosecutor started his opening statement in the guilt phase by explaining to the jury that "[w]hat I say is not evidence and it's just a tool to assist you in understanding what I think the evidence will be and what the State believes the evidence will be in this case."  J.A. Vol. II, pg. 581.  Defense counsel reiterated this fact by telling the jury "the evidence comes from that witness stand and not from us."  J.A. Vol. II, pg. 594.

In addition to knowing that the prosecutor's statements were not evidence, the jury was also instructed to apply the law as given to them.  Any possible prejudiced from the fifth comment above was cured when the judge specifically warned the jury "you are not permitted to change the law, nor to apply your own conception of what you think the law should be, nor are you to disregard the law in order to avoid an unpleasant duty."  J.A. Vol. III, pg. 1350.  Finally, no prejudice likely resulted from the sixth comment above; it was an accurate statement of law that neither sympathy nor prejudice should influence the jury's deliberations.  A full review of the record reveals that no constitutional violation took place at Clemons' trial.

For the foregoing reasons, the **Fourth Ground for Relief** does not merit relief in federal habeas corpus.

**Fifth Ground for Relief – The Trial Judge Properly Considered the Nature and Circumstances As Mitigating Factors**.

The trial court erred in sentencing when improperly considering the nature and circumstances of the offense in imposing the death sentence on Petitioner Clemons, the result being contra the Eighth and Fourteenth Amendments to the Constitution.  Amended Petition at 24-26.

**I.    Procedural Posture**

Clemons raised this claim as Proposition of Law #5 in his direct appeal to the Ohio

Supreme Court.  J.A. Vol. VI, pgs.  94-97.

**II.    Merits Analysis**

The Ohio Supreme Court found that the trial court's sentencing opinion defeated

Clemons' allegation:

Under proposition V, defendant cites several errors in the trial court's sentencing opinion, which, he asserts, compel a reversal of his death sentence. First, defendant argues that the trial judge considered the nature and circumstances of the offense as an aggravating circumstance. Defendant contends that the court did not merely cite the nature and circumstances of the offense as reasons why the aggravating circumstance outweighed the mitigating factors, as permitted under State v. Stumpf (1987), 32 Ohio St.3d 95, 512 N.E.2d 598. Defendant claims that the court actually weighed the nature and circumstances of the offense against the mitigating factors.

In State v. Wogenstahl (1996), 75 Ohio St.3d 344, 356, 662 N.E.2d 311, 322, we reiterated that when it comes to the actual weighing of the aggravating circumstances against the mitigating factors, the nature and circumstances of the offense may enter into the statutory weighing process only on the side of mitigation. See R.C. 2929.04(B). A review of the court's sentencing opinion reveals that it correctly identified the "course of conduct" specification to each murder count as the "aggravating circumstance." The trial court then listed all of the statutory mitigating factors set forth in R.C. 2929.04(B), including the nature and circumstances of the offense. The court summarized the nature and circumstances of the offense and concluded that "the proven facts of Aggravating Circumstances [sic] reveal a calculated, cruel, willful, and cold-blooded disregard for human life and values." The court then reviewed the mitigating evidence presented at trial, and concluded that the aggravating circumstance outweighed the factors in mitigation, and imposed the death sentence.

Defendant argues that the foregoing language from the court's sentencing opinion indicates that the court converted the nature and circumstances of the offense into aggravating circumstances. We disagree. The court's opinion clearly

indicates that the trial court understood the difference between statutory aggravating circumstances and facts describing the nature and circumstances of the offense. See State v. Sowell (1988), 39 Ohio St.3d 322, 328, 530 N.E.2d 1294, 1302; State v. Wiles (1991), 59 Ohio St.3d 71, 90, 571 N.E.2d 97, 120; State v. Rojas (1992), 64 Ohio St.3d 131, 142, 592 N.E.2d 1376, 1386.

When a court correctly identifies the aggravating circumstances in its sentencing opinion, we will presume that the court relied only on those circumstances and not on nonstatutory aggravating circumstances. See State v. Hill (1995), 73 Ohio St.3d 433, 441, 653 N.E.2d 271, 279. Since the trial court correctly identified the course of conduct specification to each murder as "the aggravating circumstances [sic]," it is clear that the court in this case understood this distinction.

Defendant next argues that the trial court's opinion considered the heinousness of the crimes as an "aggravating factor." However, we find no basis for such a conclusion. Moreover, even assuming that the defendant's argument has any legitimacy, our independent review will readily cure any such alleged error. State v. Lott (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304. Therefore, we overrule proposition V.

State v. Clemons, 82 Ohio St. 3d 438, 446-447 (1998); J.A. Vol. VI, pg. 207.

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts.

Under Ohio's statutory scheme, the nature and circumstances of the offense can only be considered as mitigation. See Ohio Revised Code §2929.04(B). The trial court's discussion of the nature and circumstances of Clemons' crimes does not mean that they were considered as aggravating factors. Rather, the trial court discussed the nature and circumstances of the offense as a necessary way to show why the court was *rejecting it as a mitigation factor*. Under Clemons' argument, the only way to ensure that the nature and circumstances of the offense were not considered as an aggravating circumstance would be for trial courts to never even mention that mitigating factor. The problem with this approach, however, is that if trial courts failed mention the nature and circumstances, petitioners would argue that the trial court failed to take all mitigating factors into account and conduct the proper weighing process.

Here, the sentencing opinion correctly identifies and analyzes the nature and circumstances of the offense as a possible mitigating factor.  J.A. Vol. V, pgs. 447, 451-455.  Under the section entitled "Aggravating Circumstances," the trial court only listed the "course of conduct" as the aggravating circumstance.  J.A. Vol. V, pgs. 447-449.  The language that Clemons takes issue with, regarding the "nature and circumstances of this offense," and where the trial court actually uses the words "nature and circumstances," does not appear until *the section entitled "Mitigating Factors."*  J.A. Vol. V, pgs. 451-455.  The record supports not only the Ohio Supreme Court's reasonable decision but also the argument, that the trial court discussed the nature and circumstances of the offense to show why it was *rejecting the nature and circumstances of the offense as a mitigating factor*.

For the foregoing reasons, the **Fifth Ground for Relief** does not merit relief in federal habeas corpus.

**Sixth Ground for Relief – Twelve Preemptory Challenges Are Not Constitutionally Required.**

The trial court erred to the prejudice of Petitioner Clemons when it denied the pre-trial motion for twelve preemptory challenges contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.  Doc. No. 28, <u>Amended Petition</u> at 26-27.

## I.    Procedural Posture

Clemons raised this claim as Proposition of Law No. 6 in his direct appeal before the

Ohio Supreme Court.  J.A. Vol. VI, pgs. 97-98.

## II.    Merits

The Ohio Supreme Court summarily dismissed Clemons' claim:

In proposition VI, defendant argues that the trial court erred in overruling his motion for twelve peremptory challenges. We have ruled on this issue in the past and therefore summarily reject this proposition of law. See Crim. R. 24(C); <u>State v. Greer</u> (1988), 39 Ohio St.3d 236, 530 N.E.2d 382, paragraph two of the syllabus; <u>State v. Carter</u> (1995), 72 Ohio St.3d 545, 555-556, 651 N.E.2d 965, 975.

<u>State v. Clemons</u>, 82 Ohio St. 3d 438, 443-444 (1998); J.A. Vol. VI, pg. 205.

The United States Supreme Court has recognized that "death as a punishment is unique in its

severity and irrevocability."   <u>Gregg v. Georgia</u>, 428 U.S. 153, 187 (1976).  But despite this

difference between capital punishment and other forms of punishment, the Supreme Court has not

held capital cases to a higher standard of due process.  In <u>Gardner v. Florida</u>, 430 U.S. 349, 358

(1977), the Court stated that "the sentencing process, as well as the trial [in a capital case] must

satisfy the requirements of the Due Process Clause [of the Fourteenth Amendment]."  However, the

Court has made no mention of a higher standard of due process or of a greater number of

peremptory challenges in a capital case.

Clemons argues that in a capital case "Ohio's statutory scheme had specifically allowed

for twelve preemptory challenges under R.C. §2945.21(A)(2)," and that Crim. R. 24, which only

calls for six preemptories in a capital case, does not control because it was only "enacted to procedurally implement Ohio's criminal judicial process." Doc. No. 28, Amended Petition at 27. However, in State v. Greer, 39 Ohio St.3d 236 (1988 (paragraph 2 of syllabus), cert. denied, 490 U.S. 1028, the Ohio Supreme Court held that O.R.C. §2945.21(A)(2) is of no further force or effect because it is a law in conflict with Crim. R. 24(C). See also, State v. Carter, 72 Ohio St.3d 545, 555 (1995) (no error in denying defendant's request for twelve peremptory challenges); State v. Mills, 62 Ohio St.3d 357, 365 (1992) (no need to allow more than six peremptory challenges).  The holding of Greer, which Clemons himself recognizes as controlling, comports with several other Ohio Supreme Court decisions which hold that Rules of Criminal Procedure do supersede other statutory provisions regulating procedural matters. See, e.g., State v. Brown (1988), 38 Ohio St.3d 305, paragraph 1 of the syllabus (Crim. R.6(A)) controls the number of grand jurors needed to issue an indictment and supersedes R.C. §2939.02 and §2939.20). See also Bedford v. Tolbert (Apr. 9, 1998), Cuyahoga App. No. 72439, unreported, appeal dismissed (1998), 83 Ohio St.3d 1416, 698 N.E.2d 1006 [Case No. 98-1160] (Crim. R.45(A)) controls the method of computing time and supersedes R.C. 1.14; citing State v. Tate, 59 Ohio St.2d 50) (1979).

Clemons cites no case law to contradict the holding of Greer, that Crim. R. 24(C) controls, and that an Ohio capital defendant is only entitled to six preemptory challenges.  Further, Clemons cannot show that the "lack of additional peremptories affected [him] in his attempt to obtain an impartial jury."  Doc. No. 28, Amended Petition, pg. 27.  The record indicates that a fair, impartial jury was impaneled at Clemons' trial.  (See response to First Ground for Relief).

For the foregoing reasons, the **Sixth Ground for Relief** does not merit relief in federal habeas corpus.

**Seventh Ground for Relief – Ohio Requires The Appropriate Mental State**

The death penalty statute in Ohio is unconstitutional under the Fourth, Sixth, Eighth, and Fourteenth Amendments to the Constitution in that it fails to require the appropriate mental state and, as a result, allows the jury to convict on a less than adequate showing of culpability.

**AI    Procedural Posture**

Clemons raised this claim on direct appeal before the Ohio Supreme Court as his Proposition of Law No. 7.  J.A. Vol. VI, pgs. 99-100.

**II.    Merits Analysis**

The Ohio Supreme Court summarily rejected this claim:

In propositions VII, X, XI, XII, and XIII, defendant raises other constitutional challenges to the death penalty statutes. But we have rejected these same arguments in numerous cases.  See, e.g., Jenkins, 15 Ohio St. 3d at 168, 15 Ohio B. Rep. at 314-315, 473 N.E.2d at 273; State v. Zuern (1987), 32 Ohio St. 3d 56, 512 N.E.2d 585; State v. Henderson (1988), 39 Ohio St. 3d 24, 528 N.E.2d 1237, syllabus; State v. Coleman (1989), 45 Ohio St. 3d 298, 308, 544 N.E.2d 622, 633-634; State v. Mills (1992), 62 Ohio St. 3d 357, 582 N.E.2d 972; State v. Buell (1986), 22 Ohio St. 3d 124, 138, 22 Ohio B. Rep. 203, 215, 489 N.E.2d 795, 808; State v. Evans (1992), 63 Ohio St. 3d 231, 253-254, 586 N.E.2d 1042, 1059. See, also, Blystone v. Pennsylvania (1990), 494 U.S. 299, 110 S. Ct. 1078, 108 L. Ed. 2d 255. Accordingly, all of defendant's constitutional challenges are overruled.

State v. Clemons, 696 N.E.2d at 1023, 82 Ohio St.3d at 454; J.A. Vol. VI, pg. 212.

Clemons cannot show that the decision from the Ohio Supreme Court is contrary to or an unreasonable application of clearly established United States Supreme Court precedent.

Clemons argues that the Ohio Supreme Court has continually misconstrued the element of the aggravated murder statutes by holding that a finding by a jury that an accused unlawfully and purposefully caused the death of another is sufficient to withstand a challenge under Edmund v. Florida, 458 U.S. 872 (1982).  Doc. No. 28, Amended Petition, pgs. 28-29.  However, the Constitution does not require proof of an intent to kill as a prerequisite to the imposition of a

capital sentence – reckless disregard for human life and a major role in the crime is sufficient. Tison v. Arizona, 481 U.S. 137, 157-158 (1987); Greer v. Mitchell, 264 F.3d 663, 690-691 (6th Cir. 2001); Coleman v. Mitchell, 268 F.3d 417, 442 (6th Cir. 2001); Deputy v. Taylor, 19 F.3d 1485, 1497-1498 (3rd Cir.) cert. denied, 512 U.S. 1230 (1994); United States v. Tipton, 90 F.3d 861, 890 (4th Cir. 1996); Smith v. Farley, 59 F.3d 659, 663 (7th Cir. 1995), cert. denied, 516 U.S. 1123 (1996).

For the foregoing reasons, the **Seventh Ground for Relief** has no merit and should be denied.

**Eighth Ground for Relief – Ohio's Beyond a Reasonable Doubt Standard is Constitutional.**

Petitioner Clemons was improperly convicted and sentenced because of the Ohio beyond a reasonable doubt standard of plea fails to meet the requirement of a higher reliability for guilt determination in a capital case contra that Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

## I.    Procedural Posture

Clemons raised this challenge in his Proposition of Law No. 8 before the Ohio Supreme Court on direct appeal.  J.A. Vol. VI, pgs. 100-106.

## II.    Merits Review

The Ohio Supreme Court summarily rejected this claim:

In propositions VII, X, XI, XII, and XIII, defendant raises other constitutional challenges to the death penalty statutes. But we have rejected these same arguments in numerous cases.  See, e.g., Jenkins, 15 Ohio St. 3d at 168, 15 Ohio B. Rep. at 314-315, 473 N.E.2d at 273; State v. Zuern (1987), 32 Ohio St. 3d 56, 512 N.E.2d 585; State v. Henderson (1988), 39 Ohio St. 3d 24, 528 N.E.2d 1237, syllabus; State v. Coleman (1989), 45 Ohio St. 3d 298, 308, 544 N.E.2d 622, 633-634; State v. Mills (1992), 62 Ohio St. 3d 357, 582 N.E.2d 972; State v. Buell (1986), 22 Ohio St. 3d 124, 138, 22 Ohio B. Rep. 203, 215, 489 N.E.2d 795, 808; State v. Evans (1992), 63 Ohio St. 3d 231, 253-254, 586 N.E.2d 1042, 1059. See, also, Blystone v. Pennsylvania (1990), 494 U.S. 299, 110 S. Ct. 1078, 108 L. Ed. 2d 255. Accordingly, all of defendant's constitutional challenges are overruled.

State v. Clemons, 696 N.E.2d at 1023, 82 Ohio St.3d at 454; J.A. Vol. VI, pg. 212.

The decision of the United States Supreme Court is consistent with and unreasonable application of United States Supreme Court precedent.

Clemons argues that Ohio Revised Code §2901.05, which gives the definition for proof beyond a reasonable doubt, is constitutionally unreliable in capital cases.  Doc. No. 28, Amended Petition, pgs. 30-31.  The Sixth Circuit has repeatedly held that Ohio's statutory definition of reasonable doubt comports with due process.  Thomas v. Arn, 704 F.2d 865, 867-869 (6th Cir.

1983); <u>Byrd v. Collins</u>, 209 F.3d 486, 527 (6th Cir. 2000); <u>Scott v. Mitchell</u>, 209 F.3d 854, 883-884 (6th Cir. 2000); <u>Coleman v. Mitchell</u>, 268 F.3d 417, 436 (6th Cir. 2000).

For the foregoing reasons, the **Eighth Ground for Relief** does not merit relief in federal habeas corpus.

**Ninth Ground for Relief – Ohio Review Process Is Constitutional.**

The amended Ohio review process is unconstitutional in violation of the Eighth and Fourteenth Amendments to the Constitution in that it removes Court of Appeals jurisdiction from the direct appeal process.  Doc. No. 28, Amended Petition at 30-32.

**Procedural Posture**

This claim was raised as Proposition of Law No. 9 in Clemons' direct appeal to the Ohio

Supreme Court.  J.A. Vol. VI, pgs. 107-113.

**Merits Analysis**

The Ohio Supreme Court summarily rejected this claim, holding:

In proposition IX, defendant asserts that the Ohio death penalty review process is unconstitutional in removing courts of appeals from the appeal process.  However, we rejected these arguments in Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, syllabus.

State v. Clemons, 82 Ohio St. 3d 438, 454 (1998), J.A. Vol. VI, pg. 212.

Clemons claims that Ohio's appellate review process is unconstitutional because the Ohio

Supreme Court is the only appellate court to review capital cases on direct appeal.  Clemons

asserts that before the constitutional amendment which removed the Court of Appeals, the "court

of appeals was legally and constitutionally required to review each issue and respond in its

written opinion to each one."  Doc. No. 28, Amended Petition at 32 (emphasis in original).

However, Clemons fails to recognize that the Court of Appeals review was required by the *Ohio*

Constitution, not the *United States* Constitution.  In fact, in State v. Smith, 80 Ohio St. 3d 89

(1997), *the case which Clemons himself recognizes as controlling,* the Ohio Supreme Court

upheld the Ohio Amendment based on the fact that the United States Supreme Court has never

held that appellate review is necessary.  Instead, the high Court has given the States wide

discretion to set up their systems of review for capital cases.  As the Ohio Supreme Court noted in Smith:

> Initially, all parties concede that there is no constitutional right to an appellate review of a criminal sentence. The United States Supreme Court in Estelle v. Dorrough (1975), 420 U.S. 534, 536, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377, 380, held, "[T]here is no federal constitutional right to state appellate review of state criminal convictions." . . . Moreover, "[t]he state has a wide discretion in respect to establishing its systems of courts and distributing their jurisdiction." Bryant, 281 U.S. at 81, 50 S.Ct. at 231, 74 L.Ed. at 716. Accord Missouri v. Lewis (1880), 101 U.S. 22, 30, 25 L.Ed. 989, 992. The United States Supreme Court has consistently been "unwilling to say that there is any one right way for a State to set up its capital sentencing scheme." Spaziano v. Florida (1984), 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340, 355; Cabana v. Bullock (1986), 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704.  Smith at 95-98.

Smith found that Ohio's review system is constitutional, under an Eighth Amendment analysis, equal protection analysis, and a due process analysis.  Clemons cannot point to any United States Supreme Court case law to the contrary, that Ohio's capital cases must be reviewed both by the Court of Appeals and the Ohio Supreme Court.

Further, Clemons' claim that "the Ohio Supreme Court does not constitutionally weigh the evidence . . ." is incorrect in this case.  Doc. No. 28, Amended Petition at 32.  On direct appeal to the Ohio Supreme Court, Clemons raised a "sufficiency of evidence" claim as Proposition of Law No. 16.  After a lengthy and thorough analysis, the Court rejected the claim and found that " . . . the quantum of evidence supporting [Clemons'] convictions is overwhelming."  State v. Clemons, 82 Ohio St. 3d at 444-446.  (See Response to Sixteenth Ground for Relief).

For the foregoing reasons, the **Ninth Ground for Relief** does not merit relief in federal habeas corpus.

**Tenth & Twentieth Grounds for Relief – Ohio's Death Penalty Statutory Scheme is Constitutional.**

The Ohio death penalty statute are unconstitutional in that they violate the Eighth Amendment proscription of cruel and unusual punishment and the Fourteenth Amendment to the Constitution which guarantees due process of law and equal protection of law.

Gerald Clemons' death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary and capricious manner.

## I.    Procedural Posture

On direct appeal before the Ohio Supreme Court, Clemons raised the Tenth and Twentieth Ground for Relief as Propositions of Law No. 10, 12 and 13.  J.A. Vol. VI, pgs. 113-117, 120-124.

## II.    Merits Analysis

The Ohio Supreme Court summarily rejected Clemons' general challenges:

In propositions VII, X, XI, XII, and XIII, defendant raises other constitutional challenges to the death penalty statutes. But we have rejected these same arguments in numerous cases. See, e.g., Jenkins, 15 Ohio St.3d at 168, 15 OBR at 314-315, 473 N.E.2d at 273; State v. Zuern (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; State v. Henderson (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, syllabus; State v. Coleman (1989), 45 Ohio St.3d 298, 308, 544 N.E.2d 622, 633-634; State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; State v. Buell (1986), 22 Ohio St.3d 124, 138, 22 OBR 203, 215, 489 N.E.2d 795, 808; State v. Evans (1992), 63 Ohio St.3d 231, 253-254, 586 N.E.2d 1042, 1059. See, also, Blystone v. Pennsylvania (1990), 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255. Accordingly, all of defendant's constitutional challenges are overruled.

State v. Clemons, 82 Ohio St. 3d 438, 454 (1998).

Clemons raises numerous allegations as to why Ohio's statutory scheme is unconstitutional.  The Sixth Circuit has routinely rejected these miscellaneous challenges to Ohio's scheme.  See Byrd v. Collins, 209 F.3d 486, 539 (6th Cir. 2000); Scott v. Mitchell, 209 F.3d 845, 884 (6th Cir. 2000).

1.      **Cruel and Unusual Punishment**

Clemons argues that the death penalty denies due process because it is not the least restrictive means of achieving the compelling State interests of deterrence, incapacitation and retribution.  The United States Supreme Court has resolved this issue in Gregg v. Georgia, 428 U.S. 153 (1976).  In that case, the Supreme Court specifically addressed the argument that the death penalty was not the least severe penalty possible.  Gregg, 428 U.S. at 175.  The Court concluded that the death penalty does serve the purposes of retribution and deterrence and that the death penalty is not "invariably disproportionate to the crime" of murder.  Gregg, 428 U.S. at 183-187.  Since Gregg, the Supreme Court has repeatedly affirmed that retribution and deterrence are valid purposes advanced by the death penalty.  See e.g. Edmund v. Florida, 458 U.S. 782 (1982); Tison v. Arizona, 481 U.S. 137 (1987).

2.      **Prosecutorial Discretion**

Clemons argues that Ohio's capital scheme is unconstitutionally arbitrary and discriminatory because it allows for prosecutorial discretion to determine whether to seek a capital indictment.  Doc. No. 28, Amended Petition, pgs. 57-58.  In Gregg v. Georgia, 428 U.S. 153 (1976), the United States Supreme Court rejected this argument under a similar death penalty statute, condoning the discretionary system.  Specifically, the Supreme Court concluded

> [a]bsent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts.

Gregg, 428 U.S. at 225.  The Court characterized the defendant's arguments as "simply asserting that since prosecutors have the power not to charge capital felonies they exercise that power in a standardless fashion."  Id.  Here, Clemons makes a similar blanket assertion that prosecutorial

discretion creates an arbitrary and discriminatory system.  Consistent with <u>Gregg</u>, Clemons'

argument equally has no merit.  Likely, the heinous nature of Clemons' actions in killing three

unarmed people and the strength of the evidence that he acted with prior calculation and design

persuaded the prosecutor to seek a capital sentence.

> ### 3.    Alleged Discrimination

Clemons argues that Ohio's capital system is applied discriminatorily because African-

Americans and those who kill Caucasians are more likely to get the death penalty and because

about 55% of the people in Ohio's death row are minorities.  Amended Petition, pg. 58.  The

United States Supreme Court has rejected such arguments.  In <u>McCleskey v. Kemp</u>, 481 U.S.

279, 292 (1987), the Court held that an inmate challenging his capital sentence must show that

the jury in his case was motivated by a discriminatory purpose.  As proof of discrimination,

McCleskey offered a scientific study that showed that "persons who murder whites are more

likely to be sentenced to death than persons who murder blacks, and black murderers ware more

likely to be sentenced to death than white murderers."  <u>Id.</u> 481 U.S. at 291.  The Court rejected

McCleskey's argument, finding that the study was "clearly insufficient to support an inference

that any of the decision makers in McCleskey's case acted with discriminatory purpose."  <u>Id.</u> 481

U.S. at 297.

In regards to his own case, Clemons offers no supporting evidence that the prosecutor,

the trial court or the jury acted with a discriminatory purpose.

> ### 4.    No Proof of Absence of Mitigation or That Death is Appropriate

Clemons asserts that the Ohio's statute is constitutionally deficient because it does not

require the State to prove the absence of any mitigating factors or to prove that death is the only

appropriate penalty.  Amended Petition, pg. 58.  The Constitution cannot require the State to

prove the absence of mitigation because it sanctions the allocation of the burden of proving mitigation on the defense.  Walton v. Arizona, 497 U.S. 639, 650-51 (1990).

Clemons seems to be arguing that, unless the State proves that death is "appropriate," Ohio's scheme creates a mandatory death sentence.  The United States Supreme Court has already found that a scheme, like Ohio's, is constitutional if a capital sentence is imposed only after a determination that the aggravating circumstances outweigh the mitigating circumstances in that particular case or that there are no such mitigating circumstances.  Blystone v. Pennsylvania, 494 U.S. 299, 305 (1990).  Further, the Supreme Court has found that "it is constitutionally required that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to imposition of a death sentence."  Sumner v. Shuman, 483 U.S. 66, 72 (1987) (quoting Gregg, 428 U.S. at 189, n. 38); see also Jurek v. Texas, 428 U.S. 262, 270-271 (1976).  So long as the sentencing scheme satisfies these standards, it is constitutional.  Ohio's statute, specifically O.R.C. §2929.04(B)(7) and (C), gives capital defendants great latitude to present, for the fact-finders' consideration, any relevant mitigating factor.  State v. Jenkins, 15 Ohio St.3d 164, 189 (1984), cert. denied, 472 U.S. 1032 (1985).  Thus, Ohio's capital system is constitutional.

**5.      Proper Weighing and Consideration**

Clemons calls Ohio's statutory scheme unconstitutionally vague because it contains no method to ensure a proper weighing and consideration of evidence during the penalty phase. Amended Petition, pg. 58.  The United States Supreme Court has specifically determined that States are not required to give such guidance.  Buchanan v. Angelone, 522 U.S. 269 (1998).

### 6.        Proof of Aggravating Circumstance(s) in Guilt Phase

Clemons argues that Ohio has effectively prohibited a sufficient individualized determination in sentencing by requiring proof of the aggravating specification simultaneously with proof of guilt.  Doc. No. 28, Amended Petition, pg. 58.  The United States Supreme Court has held that any death penalty statute must narrow the class of death-eligible defendants from those not death eligible.  <u>Zant v. Stephens</u>, 462 U.S. 862, 877 (1983).  One manner in which a State can constitutionally narrowing the class of persons eligible for the death penalty is by having "the legislature, itself, narrow the definition of capital offenses so that the jury finding at the guilt phase responds to this concern."  <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 246 (1988).  As such, the duplicative nature of the statutory aggravating circumstances does not render Clemons' sentence or Ohio's scheme infirm, insomuch as the constitutionally mandated narrowing function is performed at guilt phases.  <u>Lowenfield</u>, 484 U.S. at 232.

Consistent with the dictates of <u>Lowenfield</u>, the State of Ohio has met the constitutional requisite of narrowing the class of death-eligible defendants.  Ohio's statutory scheme satisfies the constitutional requirements in <u>Zant</u> by demanding that the fact-finder find the existence of at least one aggravating circumstance set forth in O.R.C. §2929.04(A).  Furthermore, Ohio Revised Code §2929.04(B) and (C) allow the defendant to present, and the fact-finder to consider, any and all relevant mitigating factors to weigh against the aggravating circumstances presented and proven.  Clemons fails to demonstrate that consideration of an aggravating circumstance during the guilt phase is constitutionally impermissible.

### 7.        Alleged Risk of Death On Defendants Who Exercise Right to Jury Trial

Clemons argues that Ohio's scheme is unconstitutional because it imposes an impermissible risk of death on capital defendants who exercise their right to a jury trial.  Doc.

No. 28, Amended Petition, pgs. 58-59.  In Ohio, "a sentence of death is possible whether a defendant pleads to the offense or is found guilty after a trial."  State v. Buell, 489 N.E.2d 795, 808 (Ohio 1986).  Ohio Rule of Criminal Procedure 11(C)(3) does not guarantee that the judge will dismiss the specifications that provide for the aggravating circumstances.  The rule merely gives the judge the same latitude that she or he would possess after a jury recommends a death recommendation, which is to either accept the recommendation or impose a life sentence.  The claim that capital defendants run an increased "risk" of death by exercising their right to a jury trial has no merit.  Ohio's scheme comports with constitutional mandates.

### 8.    Proportionality Review

Clemons argues that the Ohio's proportionality review is constitutionally flawed because the courts exclude cases in their review in which the State sought the death penalty but did not obtain such a verdict.  Clemons further argues that without a significant comparison of cases where life sentences were imposed, there can be no meaningful appellate review.  Doc. No. 28, Amended Petition, pgs. 59-60.  Ohio Revised Code §2929.05(A) requires the appellate courts to engage in proportionality review:

> In determining whether the sentence of death is appropriate, the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, and the supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases.  They shall also review all the facts and other evidence to determine if the evidence supports the finding of aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors.

Proportionality review is not constitutionally required.  Pulley v. Harris, 465 U.S. 37, 50-51 (1984).  Accordingly, the Sixth Circuit soundly rejected proportionality review as a cognizable habeas claim.  In McQueen v. Scroggy, 99 F.3d 1302 (6th Cir. 1996) the Circuit

relied on <u>Pulley</u> to conclude "[t]here is no federal constitutional requirement that a state appellate court conduct a comparative proportionality review." <u>Id</u>. 99 F.3d 1302, 1333-1334 (6th Cir. 1996), <u>cert</u>. <u>denied</u>, 520 U.S. 1257 (1997). Thus, claims similar to Clemons have been rejected because the Sixth Circuit recognizes that since "proportionality review is not required by the Constitution, states have great latitude in defining the pool of cases used for comparison." <u>Buell v. Mitchell</u>, 274 F.3d 337, 369 (6th Cir. 2001); <u>see</u> <u>also</u> <u>Byrd v. Collins</u>, 209 F.3d 486, 539 (6th Cir. 2000); <u>Coe v. Bell</u>, 161 F.3d 320, 351-352 (6th Cir. 1998).

For the foregoing reasons, the **Tenth and Twentieth Grounds** for Relief should be denied.

**Eleventh Ground for Relief – Determination as to Sentence is Constitutional.**

The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances weigh only to the slightest degree when mitigating circumstances gives the Ohio capitol statutes a mandatory nature, thus permitting the execution of an accused even though the mitigating evidence falls just short of equipoise with the aggravating factors. The result is the Ohio statute renders the capital process arbitrary and capricious contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

## I.    Procedural Posture

Clemons raised this claim as Proposition of Law No. 11 on direct appeal to the Ohio

Supreme Court. J.A. Vol. VI, pg. 117-119.

## II.    Merits Analysis

The Ohio Supreme Court summarily rejected this claim:

In propositions VII, X, XI, XII, and XIII, defendant raises other constitutional challenges to the death penalty statutes. But we have rejected these same arguments in numerous cases. See, e.g., Jenkins, 15 Ohio St.3d at 168, 15 OBR at 314-315, 473 N.E.2d at 273; State v. Zuern (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; State v. Henderson (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, syllabus; State v. Coleman (1989), 45 Ohio St.3d 298, 308, 544 N.E.2d 622, 633-634; State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; State v. Buell (1986), 22 Ohio St.3d 124, 138, 22 OBR 203, 215, 489 N.E.2d 795, 808; State v. Evans (1992), 63 Ohio St.3d 231, 253-254, 586 N.E.2d 1042, 1059. See, also, Blystone v. Pennsylvania (1990), 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255. Accordingly, all of defendant's constitutional challenges are overruled.

State v. Clemons, 82 Ohio St. 3d 438, 454 (1998).

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable

application of, or contrary to, United States Supreme Court precedent. In Blystone v.

Pennsylvania, 494 U.S. 299, 307 (1990), the United States Supreme Court rejected a challenge to

a jury instruction based on a Pennsylvania statute which required imposition of the death penalty

if aggravating circumstances outweighed the mitigating factors. Similarly, in Boyde v.

California, 494 U.S. 370, 374 (1990), the Court upheld a pattern jury instruction that stated that

"[I]f you conclude that the aggravating circumstances outweigh the mitigating circumstances, you shall impose a sentence of death."  In so ruling, the Court held:

> there is no * * * constitutional requirement of unfettered sentencing discretion in the jury, and states are free to structure and shape consideration of mitigating evidence in an effort to achieve a more rational and equitable administration of the death penalty.

Id.

In <u>Walton v. Arizona</u>, 497 U.S. 639, 652 (1990), the Court again referred to <u>Blystone</u> and <u>Boyde</u> in upholding a jury instruction, premised on an Arizona statute, that provided that the court "shall" impose the death penalty if one or more aggravating circumstances are found and mitigating circumstances are held insufficient to call for leniency.

Together, these Supreme Court cases demonstrate that Ohio's capital punishment statute is not unconstitutional because it requires imposition of death when the aggravating circumstances outweigh the mitigating factors, even if by the slightest amount.

For the foregoing reasons, the **Eleventh Ground for Relief** does not merit relief in federal habeas corpus.

**Twelfth Ground for Relief – Judge's Power to Dismiss Specifications is Proper.**

Under the provisions of Ohio Crim. R. 11(c)(3), permitting the trial court to dismiss specifications upon a guilty plea under the concept of "in the interest of justice" needlessly encourages guilty pleas, thus reintroducing the possibility that the death sentence will be imposed arbitrarily and capriciously contra the Eighth and Fourteenth Amendments to the Constitution. <u>Petition</u> at 35.

## I.    Procedural Posture

This claim was raised as Proposition of Law No. 12 in Clemons' direct appeal to the

Ohio Supreme Court. J.A. Vol. VI, pgs. 119-121.

## II.    Merits Analysis

The Ohio Supreme Court summarily rejected this claim:

In propositions VII, X, XI, XII, and XIII, defendant raises other constitutional challenges to the death penalty statutes. But we have rejected these same arguments in numerous cases. <u>See</u>, <u>e.g.</u>, <u>Jenkins</u>, 15 Ohio St.3d at 168, 15 OBR at 314-315, 473 N.E.2d at 273; <u>State v. Zuern</u> (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; <u>State v. Henderson</u> (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, syllabus; <u>State v. Coleman</u> (1989), 45 Ohio St.3d 298, 308, 544 N.E.2d 622, 633-634; <u>State v. Mills</u> (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; <u>State v. Buell</u> (1986), 22 Ohio St.3d 124, 138, 22 OBR 203, 215, 489 N.E.2d 795, 808; <u>State v. Evans</u> (1992), 63 Ohio St.3d 231, 253-254, 586 N.E.2d 1042, 1059. <u>See</u>, <u>also</u>, <u>Blystone v. Pennsylvania</u> (1990), 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255. Accordingly, all of defendant's constitutional challenges are overruled.

<u>State v. Clemons</u>, 82 Ohio St. 3d 438, 454 (1998).

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable application of, or contrary to, United States Supreme Court precedent. Clemons attacks the constitutionality of the trial judge's ability to dismiss specifications upon a guilty plea and claims that the system encourages such pleas. Doc. No. 28, Amended Petition, pg. 35—36. Respondent also addresses this issue in her response to the Twentieth Ground for Relief. Somewhat different from his Twentieth Ground for Relief, here, Clemons asserts that he was directly prejudiced by this particular statutory scheme. However, Clemons did not *plead* guilty.

A jury found Clemons guilty.  Clemons cannot now attack a process in which he took no part.

See State v. Buell, 22 Ohio St. 3d 123,137 (1986) ("Likewise, we reject appellant's contention that Crim. R. 11(C)(3) may encourage guilty pleas, and thereby a waiver of fundamental rights. Crim. R. 11(C)(3) is applicable only in cases where there has been an accepted plea to the charge and specifications. In this case, there was no plea offered or accepted.")

Similar claims have already been rejected.  Madrigal v. Bagley, 276 F. Supp.2d 744, 806 (N.D. Ohio 2003); see also Dennis v. Mitchell, 68 F. Supp. 2d 863, 903-904 (N.D. Ohio 1999).

For the foregoing reasons, the **Twelfth Ground for Relief** does not merit relief in federal habeas corpus.

**Thirteenth Ground for Relief – Standard for Appellate Review is Sufficient.**

The Ohio capital sentencing scheme is unconstitutional in that it provides no standard for sentencing or review at the significant stages of the appellate process and, as a result, the death sentence of Gerald Clemons was imposed and reviewed without sufficient guidance to juries, the trial-sentencing judge and Ohio review in courts. This results in the arbitrary and capricious infliction of the death penalty contra the Sixth, Eighth and Fourteenth Amendments to the Constitution. Doc. No. 28, Amended Petition at 36.

## I.    Procedural Posture

Clemons raised this claim as Proposition of Law No. 13 in his direct appeal to the Ohio

Supreme Court. J.A. Vol. VI, pgs. 121-124.

## II.    Merits Analysis

The Ohio Supreme Court summarily rejected this claim:

In propositions VII, X, XI, XII, and XIII, defendant raises other constitutional challenges to the death penalty statutes. But we have rejected these same arguments in numerous cases. See, e.g., Jenkins, 15 Ohio St.3d at 168, 15 OBR at 314-315, 473 N.E.2d at 273; State v. Zuern (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; State v. Henderson (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, syllabus; State v. Coleman (1989), 45 Ohio St.3d 298, 308, 544 N.E.2d 622, 633-634; State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; State v. Buell (1986), 22 Ohio St.3d 124, 138, 22 OBR 203, 215, 489 N.E.2d 795, 808; State v. Evans (1992), 63 Ohio St.3d 231, 253-254, 586 N.E.2d 1042, 1059. See, also, Blystone v. Pennsylvania (1990), 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255. Accordingly, all of defendant's constitutional challenges are overruled.

State v. Clemons, 82 Ohio St. 3d 438, 454 (1998).

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable

application of, or contrary to, United States Supreme Court precedent. Clemons attacks the

constitutionality of Ohio's death penalty scheme because it does not provide for the following:

1.    require the jury to set forth in writing those aggravating factors proved to them beyond a reasonable doubt, the mitigating factors established and how the jury weighed each factor in its determination;

2.    require the judge to state in specific detail why the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt;

3.     provide specific guidelines for use by the appellate courts in Ohio in its determination of whether the sentence of death is appropriate.

Doc. No. 28, Amended Petition, pg. 37.  Clemons' attack is unfounded.

The United States Supreme Court has held that in a capital case, the state "must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'"  Godfrey v. Georgia, 446 U.S. 420, 100 S. Ct. 1759, 1764-1765 (1980); see also Gregg v. Georgia (1976), 428 U.S. 153, at 198; Proffitt v. Florida, 428 U.S. 242, at 253 (1976); Woodson v. North Carolina, 428 U.S. 280 (1976).  The Ohio Supreme Court has found that Ohio's present system for implementing the death penalty provides constitutionally adequate safeguards for judicial review.  State v. Jenkins (1984), 15 Ohio St. 3d 164; cert. denied, (1985), 105 S. Ct. 3514.

The Ohio Revised Code §2929.04 lists specific aggravating factors and mitigating circumstances, which a jury may take into account when deciding to impose the death penalty.  These aggravating factors and mitigating circumstances are "clear and objective standards" that provide specific and detailed guidance for a jury to follow when deciding the issue of death.  As such, they fulfill the constitutional requirements that the Supreme Court set forth in Gregg, Proffitt, and Woodson.  Clemons fails to cite any case, or for that matter explain, why the three examples he cites are fatal to the Ohio death penalty scheme.

For the foregoing reasons, the **Thirteenth Ground for Relief** does not merit relief in federal habeas corpus.

**Fourteenth Ground for Relief – The Trial Judge Only Considered Proper Evidence.**

Where the record reveals that the sentencing judge considered and weighed improper aggravating circumstances when imposing the death penalty, the resulting sentence is contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.  Doc. No. 28, Amended Petition at 37.

**I.      Procedural Posture**

Clemons raised this claim as Proposition of Law No. 14 in his direct appeal to the Ohio

Supreme Court.  J.A. Vol. VI, pgs. 124-125.

**II.     Merits Analysis**

The Ohio Supreme Court rejected Clemons' claim because there was no suggestion that

the trial judge considered the victim impact testimony:

> In proposition XIV, defendant asserts that the trial court considered and weighed victim impact testimony at the sentencing hearing as an improper aggravating circumstance. Defendant contends that such testimony contributed to a "lynch mob mentality in the Courtroom."
>
> The testimony defendant complains of took place at the sentencing hearing, after the jury was discharged, but before the trial court rendered its sentence. The prosecutor asked the court whether two of the victims' family members could address the court, and stated, "I understand it can't be part of your verdict or findings, but I think it would be helpful to them." The court then permitted the brothers of both Kinney and Kreamelmeyer to testify. The testimony of Kinney's brother presented nothing out of the ordinary, but Kreamelmeyer's brother passionately urged the court to sentence defendant to death, going so far as to say that "[Clemons] should be tried and executed within four weeks of this murder and rampage." At the end of this testimony, the trial court stated that "the law does not permit the Court in making this particular finding to consider the statements made by families of the victims."
>
> Given the trial judge's affirmative declaration that he would not consider this testimony, we are guided by the presumption that the trial judge considered only relevant, material, and competent evidence in arriving at his judgment to impose the death sentence on defendant. <u>State v. Dennis</u> (1997), 79 Ohio St.3d 421, 433, 683 N.E.2d 1096, 1107. As in Dennis, a careful review of both the transcript and sentencing opinion reveals no inference or suggestion that the trial judge considered victim impact testimony. Accordingly, we overrule proposition XIV.

<u>State v. Clemons</u>, 82 Ohio St. 3d 438, 448 (1998).

110

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable application of United States Supreme Court precedent.

### A.    United States Supreme Court precedent

Clemons seems to be relying on <u>Booth v. Maryland</u>, 482 U.S. 496, 107 S. Ct. 2529 (1987), where the United States Supreme Court held that a victim's impact statement may be inflammatory and is generally inadmissible in the sentencing phase of a capital case.  <u>Id.</u> (1987), 107 S. Ct. 2529. However, the Supreme Court has overruled <u>Booth</u> and found victim impact testimony to be permissible:

> The Eighth Amendment erects no per se bar prohibiting a capital sentencing jury from considering "victim impact" evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family, or precluding a prosecutor from arguing such evidence at a capital sentencing hearing.

<u>Payne v. Tennessee</u>, 501 U.S. 808, syllabus, 111 S. Ct. 2597 (1991).    Victim impact evidence relating to the characterizations and opinions about the crime, the defendant and the appropriate punishment was not at issue in <u>Payne</u>.  However, <u>Booth</u> based its entire prohibition of victim impact evidence on an Eighth Amendment rationale.  Based on *stare decisis*, it appears that because the Eighth Amendment rationale supporting the prohibition of some victim impact evidence was specifically overruled in <u>Payne</u>, prohibiting evidence about the crime, defendant, and punishment was also overruled, insofar as it had its roots in the Eighth Amendment.

### B.    The Ohio Supreme Court's decision was not unreasonable or contrary to clearly established federal law.

The Ohio Supreme Court made a factual finding that the trial judge did not considered the testimony given at the sentencing hearing.  Thus, whether the testimony was permissible under <u>Payne</u> is hardly relevant when none of it was considered before the judge imposed the capital sentence.

The jury, in this case, had unanimously recommended a capital sentence and was discharged from their duty on October 24, 1996. Subsequently, on November 1, 1996, the family members of Clemons' victims gave statements in the courtroom before Clemons, counsel for both sides and the trial judge. Before their testimonies, the prosecutor addressed the court:

> Judge, I realize that the Court cannot consider that in your ultimate verdict. We have two of the victims' family members who wish to be addressed and if they could have the opportunity to speak. I understand it can't be part of your verdict or findings, but I think it would be helpful to them.

J.A. Vol. III, pgs. 1399-1400.

When the family members were finished, the trial court judge explicitly stated on the record, "And as Mr. Deters pointed out, the law does not permit the Court in making this particular finding to consider the statements made by the families of the victims." J.A. Vol. III, pg. 1417. Immediately afterwards, the judge imposed a capital sentence, by finding, by proof beyond a reasonable doubt, that the aggravating circumstances Clemons was found guilty of committing "do far outweigh" any mitigating factors. J.A. Vol. III, pg. 1417. Additionally, the Court's written sentencing opinion does not even mention the testimony by the victims' family. J.A. Vol. V, pg. 442. The record establishes that the testimony played no part in the trial court's sentencing of Clemons, and Clemons does not show otherwise.

For the foregoing reasons, the **Fourteenth Ground for Relief** does not merit relief in federal habeas corpus.

**Fifteenth Ground for Relief – Expert Testimony was Proper.**

The trial court erred in permitting the prosecutor to have an expert testify on the affects of Prozac when the defense had not raised, during the course of the jury trial, an insanity defense contra the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

**I.      Procedural Posture**

This claim was raised as Proposition of Law No. 15 in Clemons' direct appeal to the

Ohio Supreme Court.  J.A. Vol. VI, pgs. 125-126.

**II.     Merits Analysis**

The Ohio Supreme Court rejected Clemons' argument because the rebuttal testimony was

appropriate:

In proposition XV, defendant claims error in permitting the state to present expert rebuttal evidence on the effects of Prozac. Defendant asserts that he was prejudiced, since the defense neither raised an insanity defense nor alleged that Prozac caused the murders.

During his trial phase testimony, defendant stated his belief that his taking of Prozac caused him to black out before the murders. At the mitigation hearing, defendant's mother testified that there was a difference in defendant's behavior after he started taking Prozac: "He laughed at things that I didn't even think was funny, but he laughed at them." Defendant's physician testified that he had treated defendant's depression with Prozac.

Prior to having defendant read his unsworn statement at the mitigation hearing, the defense moved to readmit all of the defense testimony from the trial phase. In State v. Gumm (1995), 73 Ohio St.3d 413, 653 N.E.2d 253, syllabus, we held that "counsel for the state at the penalty stage of a capital trial may introduce * * * (1) any evidence raised at trial that is relevant to the aggravating circumstances specified in the indictment of which the defendant was found guilty, (2) any other testimony or evidence relevant to the nature and circumstances of the aggravating circumstances specified in the indictment of which the defendant was found guilty, (3) evidence rebutting the existence of any statutorily defined or other mitigating factors first asserted by the defendant * * *." See, also, State v. DePew (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, paragraph one of the syllabus.

The expert rebuttal testimony offered by the prosecution on the effects of Prozac was introduced to rebut defendant's trial testimony that he believed that the drug made him black out at the time of the murders. The expert testified in rebuttal that Prozac is an antidepressant that reduces aggressive behavior and suicidal thoughts in people. The defense strategy apparently was to introduce the

> Prozac issue frequently to keep it in the jury's consciousness. The rebuttal testimony was relevant to rebut this inference. Accordingly, we reject proposition XV.

State v. Clemons, 82 Ohio St. 3d 438, 448-449 (1998).

Clemons fails to show how the decision of the Ohio Supreme Court is contrary to, or an unreasonable application of, United States Supreme Court precedent. There is no constitutional right to the enforcement of State evidentiary rules. See Estelle v McGuire, 502 U.S. 62, 67-68 (1991); Coleman v. Mitchell, 244 F.3d 533, 542 (6th Cir. 2001). Claimed errors on the admissibility of evidence may only be addressed on habeas review if the admission violates a petitioner's Fourteenth Amendment due process rights. Absent such a violation, a federal habeas court must defer to the State court's interpretation of its own rules of evidence and procedure. Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988), cert denied 488 U.S. 1011 (1989).

Clemons argues that there was no basis for the State's expert because Prozac was not an issue at trial. Doc. No. 28, Amended Petition at 39. However, as the Ohio Supreme Court noted, there was testimony about Prozac during the guilt phase. Clemons testified that he was taking Prozac and that right before the shootings he went ". . . into a fog" and didn't remember anything that happened after that. J.A. Vol. II, pgs. 896, 919. This testimony was re-introduced into the mitigation phase when defense counsel moved to have all defense testimony from the guilt phase presented to the jury to consider. J.A. Vol. III, pg. 1205. Furthermore, testimony about Prozac continued during the mitigation/penalty phase. Clemons' doctor, Dr. James Day, testified that he treated Clemons' depression with Prozac, the antidepressant medicine. J.A. Vol. III, pg. 1164. Also, in mitigation when asked, "Did you notice any difference after he took the Prozac?," Clemons' mother testified that " . . . he laughed at just about everything. He laughed at things that I didn't even think was funny, but he laughed at them." J.A. Vol. III, pg. 1201.

And as Clemons' own defense attorneys stated when objecting to the expert testimony, ". . . we were specifically only testifying as to the effects of Prozac on Gerald Clemons . . ." J.A. Vol. III, pg. 1213.  Clemons mentioned the Prozac issue in the guilt phase as though it could have had an affect on him the day of the murders.  In the penalty phase, the Prozac issue was used as a part of the mitigating factor that he was depressed.  Thus, allowing the State to call an expert, in rebuttal, to discuss the effects of Prozac was entirely appropriate.

However, even assuming, arguendo, that this was error, Clemons cannot show that the result of the trial would have been different had the expert not been permitted to testify or that his due process rights were violated by the expert's testimony.  Through cross examination, defense counsel brought to the jury's attention that Dr. Keck could only discuss the effects of Prozac in general, that the drug affects every person differently and that Dr. Keck did not know how Prozac affected Clemons because Dr. Keck never examined him.  J.A. Vol. III, pgs. 1224, 1232-1236.

For the foregoing reasons, the **Fifteenth Ground for Relief** does not merit relief in federal habeas corpus.

**Sixteenth Ground for Relief – The Evidence Proved Beyond A Reasonable Doubt that Clemons Acted With Prior Calculation and Design.**

Where a conviction is based upon insufficient evidence, on the aggravated murder counts, the result is contra the due process clause of the Fourteenth Amendment to the Constitution and the Sixth and Eighth Amendments to the Constitution.  Doc. No. 28, Amended Petition at 40-41.

## I.    Procedural Posture

This claim appeared as Proposition of Law No. 16 in Clemons' direct appeal before the

Ohio Supreme Court.  J.A. Vol. VI, pgs. 126-128.

## II.    Merits Analysis

In rejecting this claim, the Ohio Supreme Court held that the manifest weight of the

evidence supported Clemons' aggravated murder convictions:

In proposition XVI, defendant asserts that the evidence is insufficient to sustain his convictions and, further, that his convictions are against the manifest weight of the evidence. Defendant fails to articulate anything to support his assertions beyond the legal standards applicable to such analysis.

As we noted in State v. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668, 691, "[S]ufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict, State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546." The "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " (Emphasis sic.) Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d at 546.

When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, supra, 61 Ohio St.3d at 273, 574 N.E.2d at 503.

The evidence supporting defendant's murder convictions was overwhelming, and defense counsel conceded during opening statement that defendant killed all three victims. The only disputed issue was whether prior calculation and design was proven. We find that it was.

As to Kreamelmeyer, one Trans-Continental office worker testified that Kreamelmeyer had a heated conversation on the phone at the time defendant called Trans-Continental on December 15, and defendant acknowledged that Kreamelmeyer was angry with him and was not going to give him any work that day. The night before, defendant asked the chief dispatcher why Kreamelmeyer was "screwing him around." Prior to his confrontation with Kreamelmeyer, defendant went into the garage area and was told that his truck was ready, thus eliminating the lack of an available truck as a possible reason why Kreamelmeyer told him on the phone he was not going to give him a run that day. Defendant's claim that Kreamelmeyer "charged him" is not supported by any witness. In fact, before the shooting began, several witnesses heard Kreamelmeyer yell for help, claiming he was being assaulted.

After shooting Kreamelmeyer, the defendant sought out Kinney, another dispatcher at Trans-Continental who the defendant apparently believed had wronged him. Defendant shot Kinney twice in the chest and left him in the dispatcher's office to die.

After firing two shots at both Kreamelmeyer and Kinney, defendant sought out Teetzel. Teetzel had pulled her chair in to make it appear she was not there as she hid under her desk. Looking under the desk and finding Teetzel, he moved her desk chair out of the way and fired a shot at her. He then left that part of the office, even though he saw Teetzel's office mate hiding under her own desk.

Defendant admitted that he was upset over Trans-Continental's policy of delaying his pay if his paperwork was late. Moreover, defendant knew that Teetzel was the one who determined whether his paperwork was late, although he had never talked to her about it. Defendant asserts that there were no paychecks ready for him that morning, and that Kreamelmeyer told him to take the matter up with the office manager. Several witnesses stated that there were two checks ready for the defendant that morning, but there was no evidence that the defendant was aware of that fact.

In addition, before going to the office that morning, defendant drank a beer and two shots of tequila and left for the office with a loaded gun in his pouch. While defendant asserted he had a gun with him that morning because he always carried one on him as "[a] lot of truck drivers do," rebuttal witness Lt. Jerome Gadzala of the Evendale police testified that defendant told him shortly after the murder that it was "highly, highly unusual for him to carry a gun to work."

Defendant's murderous intent with prior calculation and design is reinforced by his encounter with Laurie McGuire on the second floor of the Trans-Continental office building. McGuire was literally running around in circles as defendant climbed the stairs, fearing she would be the next victim. However, when she came face to face with defendant, he told her, "I am not going to hurt you, [I am] only after the ones who screwed [me] over." This is clear evidence that defendant was selectively choosing his victims and had the presence of mind to distinguish those who had not offended him.

While there is no "bright-line test" emphatically distinguishing the presence or absence of prior calculation and design, State v. Taylor (1997), 78 Ohio St.3d 15, 20, 676 N.E.2d 82, 89, construing the evidence in a light most favorable to the prosecution, all three jury verdicts must stand. The night before the murders, defendant asserted that Kreamelmeyer was "screwing him around." While evidence of prior calculation and design in the murder of Kinney is not as readily apparent as it is with the Kreamelmeyer and Teetzel murders, several facts support this verdict as well. Kinney worked as a dispatcher with Kreamelmeyer. In addition, defendant displayed selectivity in shooting Teetzel, but not her office mate, Tonya Hinkle, nor Dana Jones and Evelyn Dinkgrave, who were close by. As defendant told McGuire, who feared herself as the next victim, he wanted to shoot only those people who "screwed him over." Therefore, the jury could reasonably find that defendant committed all three aggravated murders with prior calculation and design. Jenks, supra.

Defendant's claims of a Prozac-induced blackout or "fog" that prevented him from recalling the murders is simply not believable in light of all the evidence. Defendant claimed to have blacked out when Kreamelmeyer allegedly charged him and claims not to have come out of his blackout until he was outside the building with the gun in his hand. However, his cognitive ability to separate those who he believed had wronged him from those who he believed had not defies his claim.

After reviewing the entire record, weighing the evidence and all reasonable inferences, we find that the manifest weight of the evidence also supports defendant's convictions. Further, the quantum of evidence supporting his convictions is overwhelming. Accordingly, we reject proposition XVI.

State v. Clemons, 82 Ohio St. 3d 438, 444-446 (1998); J.A. Vol. VI, pgs. 205-207.

The Ohio Supreme Court's decision is not contrary to, or an unreasonable application, of United States Supreme Court precedent.

### A.     United States Supreme Court precedent

The United States Supreme Court, in Jackson v. Virginia, 443 U.S. 307 (1979), applied the proof beyond a reasonable doubt requirement to the situation where an appellate court is reviewing the sufficiency of the evidence to determine whether it supports a criminal conviction. The Jackson Court held that the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. See also, Bagby v.

Sowders, 894 F. 2d 792 at 794 (6th Cir. 1990) (en banc).  The United States Supreme Court made it clear this test does not require the federal habeas corpus court to sit as a trier of fact.  See Walker v. Russell, 57 F.3d 472 (6th Cir. 1995).  Rather, the federal district court should give every weight to the jury's ability to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basis facts to ultimate facts.

**B.    The Ohio Supreme Court's decision was reasonable and consistent with federal law.**

Applying the standard set forth in Jackson, the Ohio Supreme Court found that the evidence in this case was overwhelming, and it supported a finding that Clemons committed all three aggravated murders with prior calculation and design.  The factual determinations made by the Ohio Supreme Court in reaching their determination are binding on this Court, unless Clemons has established by clear and convincing evidence that the findings are not fairly supported by the record.  See Brown v. Morris, 872 F. 2d 1024 (6th Cir. 1989), citing Sumner v. Mata, 455 U.S. 591 (1982) (per curiam).  Clemons has not even attempted to explain to this Court why the Ohio Court's findings are not fairly supported by the record.

The only "evidence" that Clemons uses to attack the sufficiency of the evidence is his testimony that he "blacked out" at the time of the killings.  Amended Petition at 41.  However, if such self-serving statements were enough to call into question the sufficiency of evidence in a capital case, then no defendant would be found guilty.  Certainly, this cannot be the case.  Clemons' claim of insufficient evidence merely invites more favorable inferences from the evidence presented and testimony elicited at trial.

Clemons' Sixteenth Ground for Relief does not merit relief in federal habeas corpus.

**Seventeenth Ground for Relief – The Jury Instruction Was Constitutional.**

> The trial court errs to the prejudice of petitioner Clemons when the court refers to the jury's decision as recommendation, thereby diminishing the jury's sense of responsibility for the decision in violation of the Sixth, Eighth and Fourteenth Amendments to the Constitution. Doc. No. 28, Amended Petition at 42-43.

**I.      Procedural Posture**

This claim was raised as claim #17 in Clemons' direct appeal to the Ohio Supreme Court. Although this claim was not presented in Respondent's Motion to Dismiss the Procedurally Defaulted Claims, the claim is defaulted from habeas review. At trial, Clemons failed to object to any reference that the jury's decision at the penalty phase was a recommendation. Recognizing Clemons' failure to preserve this claim for review, the Ohio Supreme Court applied plain error only and rejected the claim.

**II.     Merits Analysis**

In rejecting this claim on direct appeal, the Ohio Supreme Court held:

> Defendant complains in proposition XVII that the court and prosecutors erred during voir dire examination by advising jurors that a death verdict will be treated as a "recommendation" to the court. While no error is committed by the mere use of the word "recommendation," we prefer that courts trying capital cases include in jury instructions a statement similar to that commended in <u>State v. Mills</u> (1992), 62 Ohio St.3d 357, 375, 582 N.E.2d 972, 988, that, " '[s]imply put, you should recommend the appropriate sentence as though your recommendation will, in fact, be carried out.' " <u>Carter</u>, 72 Ohio St.3d at 559, 651 N.E.2d at 978. However, defendant failed to object to this; therefore, any error is waived, save plain error. <u>State v. Slagle</u> (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 925. We find no plain error. Accordingly, we reject proposition XVII.

<u>State v. Clemons</u>, 82 Ohio St. 3d 438, 444 (1998).

Clemons fails to show how the decision of the Ohio Supreme Court is an unreasonable application of United States Supreme Court precedent.

Clemons relies upon Caldwell v. Mississippi, 472 U.S. 320. In Caldwell, the United States Supreme Court held that the jury cannot be led to believe that the responsibility for determining the appropriateness of the death sentence rested elsewhere. Id. at 329-31.

However, the Ohio Supreme Court has repeatedly distinguished Caldwell and held that jury instructions, which explain that the ultimate decision as to the imposition of the death penalty rests with the trial court and not with the jury, are accurate statements of Ohio's capital sentencing law. State v. Keenan, 81 Ohio St. 3d 133, 153 (1998); State v. Durr, 58 Ohio St.3d 86, 93 (1991); State v. Woodard, 68 Ohio St.3d 70, 77 (1993); State v. Roe, 41 Ohio St.3d 18, 24 (per curiam) (1989); State v. Steffen, 31 Ohio St.3d 111, 113-114 (1987); State v. Buell (1986), 22 Ohio St.3d 124, 142-144, certiorari denied (1986), 479 U.S. 871; State v. Scott, 26 Ohio St.3d 92 (1986),. This is because "Caldwell * * * is inapplicable where the statements made to the jury during the mitigation phase of a capital trial were accurate statements of the law and were not made to induce reliance on the appellate process." State v. Rogers, 28 Ohio St.3d 427 (1986). Thus, there is no basis for a Caldwell claim when the role of the jury, under state law, is accurately described by the challenged jury instructions. Dugger v. Adams, 489 U.S. 401, 407 (1989); Mapes v. Coyle, 171 F.3d 408 (6th Cir. 1999); Kordenbrock v. Scroggy, 919 F.2d 1091, 1101 (6th Cir. 1990) (en banc), cert. denied, 499 U.S. 970 (1991).

In Caldwell, the prosecutor "urged the jury not to view itself as determining whether the defendant would die, because a death sentence would be reviewed for correctness by the State Supreme Court." Id. at 323. The Supreme Court made no mention in Caldwell, or in any other case, of prohibiting accurate statements, which explain to the jury the role of the trial judge in the capital sentencing procedure.

Further, the Mississippi statute at issue in <u>Caldwell</u> placed the entire sentencing burden on the jury. The trial judge had no authority under Mississippi's capital sentencing to review the jury's decision. Miss. Code. 1972 Ann. Section 99-19-101(1) and (2) (Supp. 1985). The Court in <u>Caldwell</u> held that it was unconstitutional to lead a jury to believe that it does not bear the entire burden of determining a defendant's fate when, in fact, the state's laws expressly provide that the jury does bear that burden. <u>Id</u>. at 329.

The critical difference between this case and <u>Caldwell</u> is that the prosecutor's statement in <u>Caldwell</u> was "inaccurate, both because it was misleading as to the nature of the appellate court's review and because it depicted the jury's role in a way fundamentally at odds with the role that a capital sentencer must perform." <u>Id</u>. at 336 (plurality opinion). This difference is fatal to Clemons' claim. The Ohio statute provides that "the trial jury *shall recommend* to the court that the sentence of death be imposed on the offender." O.R.C. §2929.03(D)(2) (emphasis added). The Ohio statute continues to provide that "if, after receiving…the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt…that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender." O.R.C. §2929.03(D)(3).

Because Ohio juries do not bear the entire burden of determining a defendant's fate, it is not unconstitutional to instruct them about what portion of that burden they do bear. Unlike the prosecutor's statement in <u>Caldwell</u>, the jury instruction in this case is an accurate statement of Ohio law that was not misleading to the jury.

For the foregoing reasons, **the Seventeenth Ground for Relief** does not merit relief in federal habeas corpus.

**Twenty-Third Ground for Relief – Jury Instructions in the Penalty Phase Were Constitutional.**

> Petitioner Clemons' sentence of death is unconstitutionally infirm because the trial court erroneously instructed the jury that they must unanimously find that the aggravating circumstances do not outweigh the mitigating circumstances in order to recommend a life sentence. Amended Petition, pgs. 64-65.

**I.    Procedural Posture**

Clemons excluded this claim from the Ohio courts. Respondent moved to dismiss the claims because it is procedurally defaulted. This Court did not dismiss the claim because it found that appellate counsel's failure to raise the claim on direct appeal was cause and prejudice to review the underlying merits of the Twenty-Third Ground for Relief. Doc. No. 52, Order, pgs. 37-47.

**II.    Merit Analysis**

Respondent respectfully disagrees with this Court's decision to address the merits of this claim. The instructional claim is defaulted for two reasons: (1) trial counsel did not object at trial and thus violated Ohio's contemporaneous objection rule; and (2) appellate counsel omitted the issue from direct appeal. Either way, the claim is barred from habeas review.

Appellate counsel cannot be faulted for choosing to omit a waived claim. There was no objection made at trial to the jury instruction, so the claim would have been reviewed solely under plain error. The Ohio Supreme Court denied similar claims based on this jury instruction, regardless if the instruction was objected to or not. State v. Goff, 82 Ohio St.3d 123, 129 (1998); State v. Taylor, 78 Ohio St.3d 15, 29 (1997). Appellate counsel cannot be deficient, and Clemons cannot show prejudice because appellate counsel did not raise a claim considered meritless by the Ohio Supreme Court.

This Court should be guided by the district court in <u>Williams v. Mitchell</u>, Case No. 1:99-CV-2399, which also was faced with a procedurally defaulted instructional claim.  Despite the decision in <u>Davis v. Mitchell</u>, 318 F.3d 682 (6th Cir. 2003) and the conflicting case law in the Sixth Circuit on the issue, the district court still did not excuse the procedural default of the instructional claim or address the constitutionality of the instruction.  <u>Id.</u>, slip opinion pgs. 88-93 ("…the Court declines to venture into the morass of Sixth Circuit opinions on this issue in the wake of finding this claim procedurally defaulted").  Similarly, the instructional claim here is procedurally defaulted and should not be excused and reviewed on the merits.

Even if this claim were considered, Clemons would not be entitled to habeas relief.  The instructions during the penalty phase were constitutional.  In <u>Jones v. United States</u>, 527 U.S. 373, 381(1999), the United States Supreme Court expressly held that "the Eighth Amendment does not require that the jurors be instructed as to the consequences of their failure to agree."  <u>Id.</u> 527 U.S. at 382.  The Supreme Court has also ruled that instructions requiring jurors to unanimously find and agree on mitigating factor is unconstitutional.  <u>Mills v. Maryland</u>, 486 U.S. 367 (1998); <u>McKoy v. North Carolina</u>, 494 U.S. 433 (1990).  Here, Clemons takes issue with verdict forms that were read and given to the jury:

> We, the jury, unanimously find by proof beyond a reasonable doubt that the aggravating circumstances the defendant was found guilty of committing in Count 1 (Count 2) (Count 3) do not outweigh the mitigating factors, and recommend that the defendant be sentenced to [one of life sentences].

J.A. Vol. III, pg. 1361-1364.  Clemons argues that the trial court erroneously instructed the jury that they must unanimously find that the aggravating circumstances do not outweigh the mitigation in order to recommend a life sentence.  Clemons' argument fails under <u>Jones</u>, <u>Mills</u>, and controlling authority in the Sixth Circuit.  None of the instructions, here, would lead the jury

astray, like the situation in <u>Mills</u>, where the jury was given verdict forms where they had to write

"yes" or "no" next to each mitigating factor.

> The importance of unanimity in the ultimate verdict was expressed to the jury:
>
> All twelve jurors must agree on a verdict. If all twelve members of the jury find, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing, outweigh the mitigating factors, then you must return such finding to the Court, and as a matter of law, you would have no choice but to recommend to the Court that the sentence of death be order.
>
> * * *
>
> On the other hand, if after considering all of the relevant evidence admitted at the two trials, and the arguments of counsel, **you find that the State failed to proved that the Aggravating Circumstances which the defendant was found guilty of committing outweigh the mitigating factors, then you will return a verdict reflecting this decision. In this event, your recommendation to the Court shall be one of the following [one of the life sentences].**

J.A. Vol. III, pgs. 1357-1360 (emphasis added).

The instructions here are similar to those given in cases where the Sixth Circuit ruled that

the instructions were constitutionally proper. <u>Coe v. Bell</u>, 161 F.3d 320, 339-340 (6th Cir. 1998);

<u>Scott v. Mitchell</u>, 209 F.3d 854, 873-877 (6th Cir. 2000); <u>Roe v. Baker</u>, 316 F.3d 557 (6th Cir.

2002). In <u>Coe</u>, <u>Scott</u> and <u>Roe</u>, the instructions were constitutional because they required

unanimity as to the overall weighing process, not as to the specific mitigating factor, which

would violate <u>Mills v. Maryland</u>, supra. However, the recent panel decision, in <u>Davis</u>, found

otherwise.

When faced with the dilemma of conflicting case law on this issue, district courts have

concluded that <u>Coe</u>, <u>Scott</u>, and <u>Roe</u> are controlling authority, and <u>Davis</u> did not overrule these

decisions. <u>Madrigal v. Bagley</u>, 276 F. Supp.2d 744, 783-785 (N.D. Ohio 2003); <u>Taylor v.

Bagley</u>, 2003 U.S. Dist. LEXIS 4383, *64-65 (N.D. Ohio 2003); <u>Williams v. Mitchell</u>, supra, n.

43. <u>Davis</u> is not controlling because three-judge panels, in the Sixth Circuit, have no power to

overrule a previous panel's decision.  Sixth Cir. Internal Operation Proc. 26(c).  The previous decision is controlling authority unless an inconsistent decision of the United States Supreme Court requires it to be modified or the Sixth Circuit sitting en banc overrules the prior decision. United States v. Smith, 73 F.3d 1414, 1418 (6th Cir. 1996); United States v. Riddle, 249 F.3d 529, 539 (6th Cir. 2001); Timmer v. Mich. Dep't of Corr., 104 F.3d 833, 839 (6th Cir. 1997); Salmi v. Sec'y of Health and Human Services, 774 F.2d 685, 689 (6th Cir. 1985).

The United States Supreme Court did not decide Davis v. Mitchell, supra, or any case that would modify or overrule prior decisions from the Sixth Circuit on this issue.  The en banc panel of the Sixth Circuit declined to hear Davis, so it remains a panel decision.  Therefore, Davis did not overrule or modify the prior decisions in Coe, Scott or Roe.  This claim is procedurally defaulted and not entitled to habeas review, which would not warrant relief, anyway, based on controlling Sixth Circuit case law.  Therefore, the **Twenty-Third Ground** for Relief should be denied.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests this Court to dismiss Clemons' application for writ of habeas corpus. Further, all of the issues presented before this Court can be decided upon the records of the state court proceedings. Therefore, discovery or an evidentiary hearing at the federal court level is not necessary, nor can a hearing resolve any issue that was not resolved at the State court level.

Respectfully submitted,

JIM PETRO
Attorney General

s/ Tara L. Berrien
TARA L. BERRIEN (0074314)

CHARLES L. WILLE (0056444)
Assistant Attorneys General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(6l4) 728-7055; (614) 728-8600 (fax)

**COUNSEL FOR RESPONDENT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing RETURN OF WRIT has been forwarded to Richard S. Ketcham, 755 South High Street, Columbus, Ohio 43206, and David J. Graeff, P.O. Box 1948, Westerville, Ohio 43086, this 17th day of November, 2003.

s/ Tara L. Berrien
TARA L. BERRIEN
Assistant Attorney General