Thus, what one trial judge believes is proper, another judge may not view as proper since no standards exist under which the particular death penalty specification should be dismissed.

In his concurring opinion in <u>Lockett v. Ohio</u> 438 U.S. 586, 98 S.Ct. 2954 (1978) and <u>Bell v. Ohio</u> 438 U.S. 637, 98 S.Ct. 2977 (1978), Justice Blackmun expressed concern about the provisions of Crim. R. 11(C)(3), which permits one, capitally indicted, to escape the death penalty by pleading guilty, under circumstances where the trial judge can dismiss the specifications "in the interest of justice".

Justice Blackmun's primary concern was the fact that such a provision needlessly encourages guilty pleas and the concomitant waivers of the right to trial by jury, confrontation, compulsory process and the presumption of innocence. <u>United States v. Jackson</u> 390 U.S. 570, 88 S.Ct. 1209 (1968). His concerns are not cured by the new statute, and we note here that Justice Blackmun was impressed by the Ohio Supreme Court's reasoning that there was nothing wrong with this scheme because both death and life were possible whether a guilty plea was entered (which was not the case in <u>Jackson</u>, where one could absolutely avoid the possibility of a death sentence by pleading guilty). <u>Jackson</u> is not limited to situations where absolute avoidance of the death penalty may be achieved by guilty pleas. <u>Corbitt v. New Jersey</u> 439 U.S. 212, 99 S.Ct. 492 (1979).

The Ohio scheme consequently permits and even encourages the

101

guilty plea and the concomitant waivers of constitutional rights, and thus is unconstitutional.

There is another, even more detrimental effect of Crim. R. 11(C)(3). As a capital defendant may avoid the death penalty by pleading guilty with the trial judge dismissing the specifications based only upon the judge's notions as to the "interests of justice", it is quite apparent that there are insufficient standards set forth in the statute to guide jurists in determining just what interests of justice would be served in such a case by dismissing the specifications, and in applying such standard even were the trial judge able to glean from the statutes what factors could and should be considered. Consequently, whether a pleading defendant lives or dies depends not upon some defined and reviewable standards, but upon judicial whimsy.

The fault, of course, is not with the trial judges, but with the statute itself. In a society which, ostensibly at least, prides itself upon its diversity and its tolerance of different views, differences of judicial philosophy are welcome; but when human lives depend upon the standardless <u>and essentially unreviewable</u> application of individual judge's beliefs as to the true nature of a concept as amorphous as "the interests of justice", the Eighth Amendment is offended. The mere possibility that one capital defendant may escape a deserved death sentence by pleading guilty renders every death sentence unconstitutional because under such a statutory scheme, there is no principled, meaningful way to

distinguish the few cases in which the death penalty is imposed from the many in which it is not.

The overall application of this directly prejudices Petitioner Clemons in that at the time of his trial he was directly under this particular statutory scheme.

The result is contra the Eighth Amendment and the <u>Lockett</u> decision, and accordingly Petitioner Clemons death sentence is flawed.

> <u>THIRTEENTH GROUND FOR RELIEF</u>: THE OHIO CAPITAL SENTENCING SCHEME IS UNCONSTITUTIONAL IN THAT IT PROVIDES NO STANDARD FOR SENTENCING OR REVIEW AT THE SIGNIFICANT STAGES OF THE APPELLATE PROCESS AND, AS A RESULT, THE DEATH SENTENCE OF GERALD CLEMONS WAS IMPOSED AND REVIEWED WITHOUT SUFFICIENT GUIDANCE TO JURIES, THE TRIAL-SENTENCING JUDGE AND OHIO REVIEW IN COURTS. THIS RESULTS IN THE ARBITRARY AND CAPRICIOUS INFLICTION OF THE DEATH PENALTY CONTRA THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

There are a specific lack of standards for the sentencing court and the reviewing courts in arriving at capital death sentences under Ohio's capital statutory sentencing scheme.

Since <u>Furman v. Georgia</u> 408 U.S. 238, 92 S.Ct. 2726 (1972), the Supreme Court has made it clear that any constitutional death penalty scheme must provide standards or guidelines to guide the sentencer in the exercise of the power to impose the ultimate sanction, so that the decision to impose the death penalty can be shown to be as reliable and correct as possible. Of course, the most recent Ohio experience is instructive, as the former statute,

which did purport to provide standards and guidelines in the form of aggravating and mitigating circumstances, was nonetheless found to be unconstitutional because consideration of relevant mitigating circumstances was foreclosed by that statute. <u>Lockett v. Ohio</u> 438 U.S. 586, 98 S.Ct. 2954 (1978). We now turn to the new statute here under attack, and shall demonstrate that, while the mitigating "list" has been expended to include whatever facts the offender offers to justify a sentence less than death, the alteration of the manner and method of sentencing, and the failure to supply statutory guidelines or standards for use of the sentencers, or the reviewers, has tainted the entire process and rendered it unconstitutional.

Ohio R.C. 2929.03 provides that the jury must weigh the aggravating factors of which the offender was convicted, against the mitigating factors whose existence was established, and to recommend death if it appears beyond a reasonable doubt that such aggravating factors "outweigh" such mitigating factors.

The statute also requires the trial court to perform the same "weighing" process, and to impose the death sentence if it also determines that aggravation outweighs mitigation; it further requires the Ohio Supreme Court to independently evaluate the evidence and to perform the same weighing process. The trial and Ohio Supreme Court judges, <u>but not the juries</u>, are required to write opinions stating (A) whether the aggravation outweighs mitigation; and (B) whether the sentence of death is appropriate

and not disproportionately severe, and to state the reason <u>why</u> the aggravating factors outweigh the mitigating factors.

The statute, however, does <u>not</u> do any of the following:

(1) Require the jury to set forth in writing those aggravating factors proved to them beyond a reasonable doubt [although as to these, their verdict at the guilt phase on the specifications is doubtless sufficient], those mitigating factors established, whether they weighed the aggravation against the mitigation, how they weighed the aggravation against the mitigation, how much weight to each factor, nor how they determined that aggravation outweighed mitigation.

(2) Require the trial judge, as a prerequisite to a death sentence, to find the aggravation outweighs mitigation <u>beyond a reasonable doubt</u>; the statute only requires him to find that aggravation outweighs mitigation, by an unspecified degree of proof.

(3) Provide any guidelines for the use of the Ohio Supreme Court for the determination of whether the sentence of death is appropriate and disproportionately severe.

Because of these deficiencies in the statutes, the arbitrary and capricious infliction of the death sentence is inevitable, and the statutes therefore offend the Eighth and Fourteenth Amendments of the United States Constitution and are unconstitutional. Petitioner Clemons' death sentence must therefore be set aside.

<u>FOURTEENTH GROUND FOR RELIEF</u>: WHERE THE RECORD REVEALS THAT THE SENTENCING JUDGE CONSIDERED AND WEIGHED IMPROPER AGGRAVATING CIRCUMSTANCES WHEN IMPOSING THE DEATH PENALTY, THE RESULTING SENTENCE IS CONTRA THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

The trial court permitted members of the victims' family to testify as to their opinions, before Petitioner Clemons was


sentenced to death by the judge, on November 1, 1996.

As a result, the record demonstrates a connection between the trial court's sentence and the testimony of these family individuals, focused on nothing but revenge.

Before the judge implemented his sentence, Petitioner Clemons was defined by the families of the victims as a "worthless individual" (J.A. Vol. III - 1410); "a coward, a perpetrator of evil" (J.A. Vol. III - 1413); one individual wished that Petitioner Clemons would receive the same pain as the victims did while they were bleeding to death (J.A. Vol. III - 1414-15). With respect to the defense-trial counsel, one family member said: "Our society is filled with confusion and with people who try to prevent Clemons' execution, these are people who need to experience the brutality of Clemons. They are so wrapped up in their own self-righteousness and totally ignore the pain experienced by the victims and their families. How could they justify in their lives the continual pain that they caused the victims and their families?" (J.A. Vol. III - 1410-11).

The trial court then noted that this is fine and that we always encourage this. The court then reminded everyone that the law does not permit this court in making the particular finding to consider the statements made by the families of the victims. It also informed Petitioner Clemons that "This court cannot forgive you for what you did". (J.A. Vol. III - 1417). The prejudice obviously was inherent in the trial court's decision to impose

death, and is contrary to settled United States Supreme Court precedent.

In <u>Payne v. Tennessee</u> (1991) 501 U.S. 808, the United States Supreme Court held "The Eighth Amendment erects no per se bar prohibiting a capital sentencing jury from considering 'victim impact' evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family, or precluding a prosecutor from arguing such evidence at a capital sentencing hearing. *** assessment of the harm caused by the defendant has long been an important factor in determining the appropriate punishment, and victim impact evidence is simply another method of informing the sentencing authority about such harm."

Importantly, at 809, the syllabus holds that "Such evidence is not generally offered to encourage comparative judgments of this kind, but is designed to show instead each victim's uniqueness as an individual human being. In the event that victim impact evidence is introduced that is unduly prejudicial that it renders the trial fundamentally unfair, the Fourteenth Amendment's Due Process Clause provides a mechanism for relief. See <u>Dardin v. Wainwright</u> 477 U.S. 168, 179-83. Thus, a State may properly conclude that, for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase victim impact evidence."

What occurred in Petitioner Clemons case is the trial judge

107

encouraged the opinions of the family of the victims before he sentenced Petitioner Clemons to death. His reliance on the opinions of the families of the victims skews the sentencing process, makes it arbitrary and capricious, and demonstrates once again that the trial judge used this information as a bases to his death sentence.

In the body of the Payne v. Tennessee decision, at 823, the Supreme Court states, "As a general matter, however, victim impact evidence is not offered to encourage comparative judgments of this kind – for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show, instead, each victim's 'uniqueness as an individual human being,' whatever the jury might think the loss to the community resulting from his death might be."

Again, in Petitioner Clemons' case, the families of the victims stressed how close they were to the victims, how significant their contributions were to both the community, and their individual families. This was done before the sentence of death was implemented, and was specifically brought forth to unduly prejudice the trial court. The fact that it was placed in the record just before the sentence was implemented, cannot be characterized as anything but an attempt to influence the trial court.

It is important to stress here that the trial court specifically allowed this type of testimony just before the sentencing, and states on the record that this type of testimony is

108

"fine", and we "encourage" it.

It is respectfully submitted that the result is precisely what the United States Supreme Court states the Eighth Amendment to the United States Constitution prohibits, is contrary to the Due Process Clause of the Fourteenth Amendment to the Constitution and specifically Darden, and resulted in an arbitrary and capricious death sentence to Petitioner Clemons.

> FIFTEENTH GROUND FOR RELIEF: THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO HAVE AN EXPERT TESTIFY ON THE AFFECTS OF PROZAC WHEN THE DEFENSE HAD NOT RAISED, DURING THE COURSE OF THE JURY TRIAL, AN INSANITY DEFENSE CONTRA THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

The record reveals that the prosecution was allowed by the trial court to have an expert testify in the mitigation phase regarding the effects of Prozac. (J.A. Vol. III - 1219-36).

There was no basis for this expert since, during the trial, Prozac was not an issue relative to insanity as a defense. Counsel simply introduced at the mitigation phase that Petitioner Clemons suffered from depression. This was a factor the jury was allowed to consider in mitigation. (J.A. Vol. III - 1158; 1163-64; 1168-70).

In response to this mitigation testimony, the prosecutor was allowed to introduce the testimony of a Dr. Paul Keck who, in his capacity as an expert, stated that individuals on Prozac, if anything, have decreased aggressive or violent behavior. (J.A. Vol. III - 1221-22).

This testimony was totally irrelevant and affected the jury's

109

decision. The Court committed constitutional error in allowing this type of testimony on rebuttal, and over objection. (J.A. Vol. III - 1214). Rebuttal evidence in mitigation, according to Ohio Supreme Court law, is only allowed in response to incomplete or false testimony raised by the defense. State v. Henness (1997) 79 Ohio St. 3d 53, at 67, 679 N.E.2d 686. Petitioner Clemons' Prozac usage was simply taken for depression.

In DePew v. Anderson (2003) 311 F.3d 472, the Sixth Circuit affirmed the District Court, which had reduced a death penalty sentence from Ohio.

The issue, precisely as it is in Petitioner Clemons' case was "whether an Ohio prosecutor's repeated inadmissible comments at sentencing effectively precluded the jury's consideration of the defendant's sole mitigating circumstance in violation of the Eighth Amendment and constituted an unconstitutional comment on the defendant's failure to testify", at 744.

Further on in the DePew decision, at 748, the decision states: "The Eighth Amendment mitigation requirement also applies to the actions of prosecutors. See Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). *** When a prosecutor's actions are so egregious that they effectively 'foreclose the jury's consideration of ... mitigating evidence,' the jury is unable to make a fair, individualized determination as required by the Eighth Amendment. Buchanan [v. Angelone, 522 U.S. 269, 118 S.Ct. 757] at 277, 118 S.Ct. 757."

110

Further on in the DePew decision, at 749-50, "While improper comments of a prosecutor do not generally warrant automatic reversal, the statements in the case at bar require it because they go to the heart of the defendant's sole mitigating theory. Allowing the prosecutor to make inadmissible, inflammatory - and in the words of the Ohio Supreme Court, 'misleading' - statements which directly undercut the defendant's sole theory of mitigation effectively undermines the defendant's right under the Eighth Amendment to receive the 'constitutionally indispensable' consideration of his proffered mitigating evidence."

In the present case, the prosecutors insistence on introducing Dr. Keck's testimony in the mitigation, completely undercut any mitigation that Mr. Clemons had presented.

In point of fact, Keck's testimony stressed the fact that Prozac, if anything, calms individuals upon taking the medicine.

The jury was thus left with basically no other choice but death after Keck's testimony, since it shut off the mitigation Petitioner Clemons presented. [This will be addressed in further detail in another claim, but the record will show that Keck's testimony was misleading and false].

In the Return of Writ, at page 114, the Respondent states that absent a Fourteenth Amendment due process violation, a federal habeas court must defer to the State court's interpretation of its own rules of evidence. They cite Allen v. Morris 845 F.2d 610, 614 (6th Cir. 1988), cert denied 488 U.S. 1011 (1989).

111

It is respectfully asserted in reply, that Petitioner Clemons has clearly demonstrated that the introduction of this type of testimony is a constitutional violation under the standard enunciated above.

With respect to this issue, it is respectfully asserted that the result precluded Petitioner Clemons from presenting effective mitigation, and the death sentence is arbitrary and capricious, and invalid.

<u>SIXTEENTH GROUND FOR RELIEF</u>: WHERE A CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE, ON THE AGGRAVATED MURDER COUNTS, THE RESULT IS CONTRA THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION AND THE SIXTH AND EIGHTH AMENDMENTS TO THE CONSTITUTION.

The United States Supreme Court, in <u>Jackson v. Virginia</u> (1979) 443 U.S. 307, 99 S.Ct. 2781, has ruled that the prosecution has to meet its burden of proof beyond a reasonable doubt as to each element of the offense. The question is whether any rational trier of facts could find the presence of each element beyond a reasonable doubt.

In the indictment, each of the three counts has as an element of the offense, prior calculation and design. The Ohio Supreme Court, in analyzing this element, has stated that it is not possible to form a bright-line test to distinguish between the presence or absence of prior calculation and design. Each case turns on its own particular facts presented at trial. <u>State v. Taylor</u> (1997) 78 Ohio St. 3d 15, at 20, 676 N.E.2d 82.

As noted previously, the evidence showed that Petitioner Clemons drove over to Trans-Continental to get work for that day and also to obtain his paycheck.

In his own testimony, Petitioner Clemons stated he blacked out when the killings occurred. On cross-examination, by the prosecutor, he not only confirmed he blacked out at the time of the killings, but he stated he experienced them in the past. His statement to the arresting law enforcement officials, shortly after the offense, confirmed that he had blacked out when he entered the building. (J.A. Vol. II - 947-48).

Thus, the evidence presented by the prosecution itself reveals a total lack with respect to implementing a scheme before he entered the Trans-Continental building. In addition, it demonstrates his complete lack of knowledge while inside the building due to these blackouts.

Although the issue in Enmund v. Florida (1982) 458 U.S. 782, 102 S.Ct. 3368 concerned an accomplice, the holding applies to Petitioner Clemons' situation.

In Enmund, the syllabus states that the imposition of the death penalty is inconsistent with the Eighth and Fourteenth Amendments where the individual "did not kill or intend to kill and thus his culpability is different from that of the robbers who killed, and it is impermissible for the State to treat them alike and attribute to petitioner the culpability of those who killed the victims."

113

Again, although <u>Enmund</u> dealt with an accomplice situation, if the evidence shows that the petitioner did not intend to kill, the imposition of the death penalty is contra the Eighth and Fourteenth Amendments.

This is precisely the situation here since the evidence established by the prosecution shows that before Petitioner Clemons entered the building, he had blacked out. He was incapable of forming any type of prior calculation and design founded on intent. Thus, his sentence of death is contra the established Supreme Court precedent, and must be reversed.

> <u>SEVENTEENTH GROUND FOR RELIEF</u>: THE TRIAL COURT ERRS TO THE PREJUDICE OF PETITIONER CLEMONS WHEN THE COURT REFERS TO THE JURY'S DECISION AS RECOMMENDATION, THEREBY DIMINISHING THE JURY'S SENSE OF RESPONSIBILITY FOR THE DECISION IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

It is constitutionally improper for the trial court to instruct that their verdict is merely a recommendation. This instruction severely reduces the jury's sense of responsibility with regard to its decision.

At pre-trial motions held in this case, the trial judge denied a motion to prohibit references to the jury verdict as a recommendation. (J.A. Vol. I - 75-77). The Court denied a further request at the mitigation hearing. (J.A. Vol. III - 1143). In their Return of Writ, at page 120, the Respondent states that Clemons did not object to any reference to the jury's decision at the penalty phase being a recommendation. This is incorrect, again as just

noted, where defense counsel objected both at the mitigation hearing, and even during the pre-trial motion proceedings.

The United States Supreme Court, in <u>Caldwell v. Mississippi</u> (1985) 472 U.S. 320, 105 S.Ct. 2633, condemned this practice as a violation of the Eighth Amendment.

Beginning in <u>State v. Buell</u> (1986) 22 Ohio St. 3d 124, 489 N.E. 2d 795, the Ohio Supreme Court noted its displeasure in this type of instruction. In <u>State v. Carter</u> (1995) 72 Ohio St. 3d 545, at 559, 651 N.E.2d 965, the Ohio Supreme Court ruled the correct instruction includes, "Simply put, you should recommend the appropriate sentence as though your recommendation will -- in fact be carried out".

Instead of following the law, the trial court in Petitioner Clemons' case, compounded this problem by giving the following instruction: "You must understand, however, that a jury recommendation to the court that the death penalty be imposed is just that, a recommendation and is not binding upon the court. The final decision as to whether the death penalty shall be imposed upon the defendant rests upon this court after the court follows certain additional procedures required by the laws of this state.

Therefore, even if you recommend the death penalty, the law requires the court to decide whether or not the defendant will actually be sentenced to death or to life imprisonment". (J.A. Vol. III - 1359).

Not only does this instruction take away the jury's sense of

115

responsibility, but the record reveals in this case that the jury deliberated at length before it came to its final decision. (J.A. Vol. III - 1368-87; 12:45 p.m.; 10/23/1996 - 11:33 a.m. 10/24/96).

In Caldwell, the Supreme Court made clear that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere. This Court has repeatedly said that under the Eighth Amendment 'the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.' California v. Ramos, 463 U.S., at 998-999, 103 S.Ct. at 3451", at 328-29.

The Caldwell decision further stresses at 330, "In the capital sentencing context there are specific reasons to fear substantial unreliability as well as bias in favor of death sentences when there are state-induced suggestions that the sentencing jury may shift its sense of responsibility to an appellate court."

The decision notes that "an appellate court, unlike a capital sentencing jury, is wholly ill-suited to evaluate the appropriateness of death in the first instance", at 330.

Finally, the Caldwell decision, at 331, says, "Even when a sentencing jury is unconvinced that death is the appropriate punishment, it might nevertheless wish to 'send a message' of extreme disapproval for the defendant's acts. This desire might

make the jury very receptive to the prosecutor's assurance that it can more freely 'err because the error may be corrected on appeal.'"

In previous cases, as noted earlier, the Ohio Supreme Court, in an effort to follow the Caldwell holding, has stated its clear displeasure at the precise type of instruction that the trial court in Petitioner Clemons' case gave to the jury.

Over specific objection of defense counsel, both at the outset of the trial, and before the sentencing-mitigation hearing commenced, the request was made to delete the word recommendation from the jury instruction, or to explain to the jury that they should deliberate as if their sentence would be carried out.

In direct contradiction to this, the trial court gave the instruction noted earlier.

It should also be noted here that Respondent, at page 122, states, " Because Ohio juries do not bear the entire burden of determining a defendant's fate, it is not unconstitutional to instruct them about what portion of that burden they do bear."

What Respondent is stating here is that the trial judge actually makes the final sentence regarding death, through findings of fact and conclusions of law reflected in his sentencing opinion.

In Ring v. Arizona (2000) 536 U.S. 584, the United States Supreme Court re-affirmed the law that in capital sentencing, the jury must make the final factual determination with respect to sentencing. This was not done in Petitioner Clemons' case, since

117

the trial court erroneously called the jury's decision a recommendation, he gave the instruction to the jury reflecting this, and his opinion subsequent to the mitigation hearing, confirms this.

The syllabus in Ring specifically holds that if a defendant can not reach a death sentence unless the judge makes the factual determination that a statutory aggravating factor exists, this result is contra the Sixth Amendment, and the Eighth Amendment to the Constitution, Ring at 584.

This is specifically contra the established United States Supreme Court precedent and is an unreasonable application of that decision, and as a result, Petitioner Clemons' sentence of death is flawed.

## CONCLUSION (DIRECT APPEAL PHASE)

This volume concerns those claims on direct appeal from the State Court.

For the above reasons, it is respectfully asserted that these claims have merit, and a new trial ordered or the death penalty be reduced.

/s/ Richard S. Ketcham
RICHARD S. KETCHAM (0023380)
755 South High Street
Columbus, Ohio 43206
(614) 444-3900

/s/ David J. Graeff
DAVID J. GRAEFF (0020647)
P.O. Box 1948
Westerville, Ohio 43086
(614) 226-5991
Counsel for Gerald Clemons

PROOF OF SERVICE

The undersigned hereby certifies that the foregoing was served upon Charles L. Wille, Assistant Attorney General, Capital Crimes Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215-3428 this 27th day of May, 2004, by electronic notification and regular U.S. mail service, postage pre-paid.

/s/ Richard S. Ketcham
RICHARD S. KETCHAM (0023380)
Counsel for Gerald Clemons