>[a] finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established.

18 U.S.C. §3593(d). Thus, under the Federal Death Penalty Act, not only is the burden of persuasion different for aggravating and mitigating facts, the unanimity requirement that exists for aggravating factors does not exist with respect to mitigating factors. Any one or more jurors may find the existence of a mitigating factor and may then consider that factor in weighing the aggravating and mitigating factors even though other jurors may not agree that the particular mitigating factor has been established. This weighing decision must be made by each juror giving individual consideration to the aggravating factors unanimously found by all of the jurors and such mitigating factors as may be found by each juror.", Davis at pages 686-87.

The Davis decision continues, at 687:

"We agree that this treatment of mitigating factors set out by Congress in §3593 of the Federal Death Penalty Act is required by the Eighth Amendment. In Mills v. Maryland 486 U.S. 367, 100 L.Ed. 2d 384, 108 S. Ct. 1860 (1988) and McKoy v. North Carolina 494 U.S. 433, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990), the Supreme Court held unconstitutional any requirement that 'prevents the jury from considering, in deciding whether to impose the death penalty, any mitigating factor that the jury does not unanimously find.' McKoy,

45

494 U.S. at 435.

Rather, Mills requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death. This requirement means that, in North Carolina's system, each juror must be allowed to consider all mitigating evidence ... whether aggravating circumstances outweigh mitigating circumstances, and whether the aggravating circumstances, when considered with any mitigating circumstance, are sufficiently substantial to justify a sentence of death. Under Mills, such consideration of mitigating evidence may not be foreclosed by one or more jurors' failure to find a mitigating circumstance.... Id. at 443.

The reason that aggravating factors must be found unanimously is that they are the elements of the murder offense that make the defendant death eligible. See Ring v. Arizona 536 U.S. 584, 122 S. Ct. 2428, 2443, 153 L. Ed. 2d 556 (2002) (holding that because Arizona's enumerated aggravating factors operate as the functional equivalent of elements of the offense, the Sixth Amendment requires that they be found by a jury). All of the elements of a criminal offense must be found by a jury unanimously as a matter of constitutional criminal procedure, see Richardson v. United States 526 U.S. 813, 119 S. Ct. 1707, 1710, 143 L. Ed. 2d 985 (1999), particularly all elements that make a defendant death eligible, see Ring, 122 S. Ct. at 2431.

Mitigating factors, on the other hand, are not viewed as

46

elements of the crime but rather as evidence relevant to a defendant's character or record or other circumstances of the offense that might lead a sentencer to decline to impose the death sentence. See McClesky v. Kemp 481 U.S. 279, 304, 95 L. Ed. 2d 262, 107 S. Ct. 1756 (1987). Accordingly, a state may not require unanimity in finding mitigating factors. Such a requirement 'impermissibly limits jurors' consideration of mitigating evidence.' McKoy 494 U.S. at 444. In fact, as Mills and McKoy hold, any requirement that mitigating factors must be found unanimously is incoherent. See Mills 486 U.S. at 400; McKoy 494 U.S. at 442-43. A unanimity requirement on mitigating factors would mean that, if aggravating factors have been found by the jury, one or more jurors who - in disagreement with other jurors - find no mitigating factor, or find different mitigating factors, or find that the aggravating factors do not outweigh mitigating factors found by some (but not all) of the jurors, or find that no mitigating factor outweighs aggravating factors, could still produce a death verdict or a hung jury, depending on how state law treats the disagreement. Thus, in order for Eighth Amendment law on mitigating factors to be coherent and capable of judicial administration without serious confusion, a capital jury must understand that, in the words of the Federal Death Penalty Act, 'a finding with respect to a mitigating factor may be made by one or more members of the jury.'" Davis at 687-88.

    Given the above detailed recitation and analysis, Judge

47

Merritt then goes to the heart of the issue with respect to the unconstitutional instructions given in the <u>Davis</u> case [and which was given in Petitioner Clemons' instructions], at 689:

"Given the requirement of unanimity as to the jury's ultimate recommendation of either death or life under Ohio law, it is not surprising that the unarticulated but constitutionally required non-unanimous mechanism that will prevent a recommendation of death is obscured to such an extent that it cannot even be said to be implied by the instructions in this case. Instead of instructing the jury that it need not be unanimous in rejecting the death penalty, the trial judge in this case told the jury that in order to return a verdict for life imprisonment, 'you must find that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant was found guilty of committing outweigh the mitigating factors.' *** This instruction, combined with the jury verdict form, not only "could" but by its plain language "would" lead a reasonable juror to conclude that the only way to get a life verdict is if the jury unanimously finds that the aggravating circumstances do not outweigh the mitigating circumstances, an entirely different instruction from one that clearly informs the jurors that a life verdict can be rendered by jury that has not first unani8mously rejected the death penalty. Further adding to the confusion, the jury was never told, either expressly or impliedly, that individual jurors may consider mitigating circumstances in the weighing process regardless of the

48

lack of agreement with other jurors as to the presence of that factor. In sum, the silence in these instructions on the lack of unanimity required for mitigating circumstances, the improper "acquittal-first" instruction, and the unqualified instruction, 'Now, as you know ... the law requires that in order for you to reach a decision all 12 of you must be in agreement' – would have led a reasonable jury to apply an unconstitutional standard of unanimity at all stages in the deliberative process." <u>Davis</u> at 689-90.

In <u>Davis</u>, for the first time the Sixth Circuit has blended and considered all the constitutional points regarding unanimity, and found the instructions to be defective. Put another way, as Judge Merritt again states, they include the acquittal first instructions; the <u>Mills</u> constitutional requirement of non-unanimity with respect to mitigating factors; and the trial judge instruction mandating unanimity for death or life.

Judge Merritt concludes his argument by noting that the effect of the improper instructions leave the jurors with the inescapable conclusion that, contrary to <u>Mills</u>, all of them have to find mitigation exists before they can consider life:

"*** the trial court's instructions are silent as to the different unanimity requirements for aggravating and mitigating circumstances, making no mention of the individual juror's power to prevent the death penalty by <u>giving effect to mitigating circumstances</u> absent the agreement of the other jurors regarding

49

the presence of those mitigating circumstances. Nor do they make clear that the jury need not be unanimous in rejecting death in order to render a verdict for life imprisonment. The inescapable likelihood in this case that the jury understood the instructions to require unanimity in both its ultimate and interim conclusions violates Mills." Davis at 690.

All of this was present to an even greater degree in Petitioner Clemons' case because of the verdict forms.

In Mills v. Maryland 486 U.S. 367, 108 S.Ct. 1860 (1988), the Supreme Court invalidated Maryland's jury instructions, concluding that there was a substantial probability that reasonable jurors, upon receiving the trial court's instructions, and in attempting to complete the verdict form as instructed, may have thought they were precluded from considering any mitigating evidence unless they all agreed on the existence of a particular circumstance.

Those instructions were susceptible of two plausible interpretations, and under one of those interpretations the instructions were unconstitutional.

Respondent argues that the instructions in this case are subject to an interpretation that is constitutional.

The court instructed the jury:

Remember, also, ladies and gentlemen, that words in the English language, whether used in this charge or in the evidence you are to weigh, are to be given their normal and customary meaning in the English language unless you are specifically instructed to give them some specialized or different meaning in this charge.

50

This instruction on interpretation should govern you throughout your deliberations. (J.A. Vol. III - 1357).

Giving the clarity of the words on the verdict form their "normal and customary meaning" it is clear that any one juror could feel that if only he felt that the aggravating circumstances did not outweigh the mitigating factors, a life sentence still is not possible.

In reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds. See e.g. <u>Lockett v. Ohio</u> 438 U.S. at 605 ("The risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty ... is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments"); <u>Andres v. United States</u> 333 U.S. 740, 752, 92 L. Ed. 1055, 68 S. Ct. 880 (1948) ("That reasonable men might derive a meaning from the instructions given other than the proper meaning of §567 is probable. In death cases doubts such as those presented here should be resolved in favor of the accused). <u>Mills</u> 486 U.S. at 395.

Note should also be briefly made of the relationship of the doctrine of lesser included offense as it relates to instructions on the unanimity.

With respect to the doctrine of lesser included offenses in constitutional law, the United States Supreme Court reviewed this issue in <u>Sattazahn v. Pennsylvania</u> 537 U.S. 101; 123 S.Ct. 732 (2003).

51

In <u>Sattazahn</u>, in reviewing a double jeopardy issue, the Court stated recent decisions on lesser included offenses, at 739: "Recent developments, however, have illuminated this part of our jurisprudence. Our decision in <u>Apprendi v. New Jersey</u> 530 U.S. 466 (2000), clarified what constitutes an "element" of an offense for purposes of the Sixth Amendment's jury trial guarantee. Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact - no matter how the State labels it - constitutes an element, and must be found by a jury beyond a reasonable doubt. <u>Id</u>. at 482-84, 490.

Just last Term, we recognized the import of <u>Apprendi</u> in the context of capital sentencing proceedings. In <u>Ring v. Arizona</u> 536 U.S. ___ (2002), we held that aggravating circumstances that make a defendant eligible for the death penalty 'operate as the functional equivalent of an element of a greater offense.' <u>Id</u>. at ___ (emphasis added). That is to say, for purposes of the Sixth Amendment's jury trial guarantee, the underlying offense of "murder" is a distinct lesser included offense of "murder plus one or more aggravating circumstances": whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death. Accordingly, we held that the Sixth Amendment requires that a jury, and not a judge, find the existence of any aggravating circumstances, and that they be found not by a mere preponderance of the evidence, but

beyond a reasonable doubt. Id. at ___-___," Sattazahn at 739.

The importance of the Sattazahn decision obviously reaffirms the constitutional doctrine that in capital sentencing litigation, aggravated murder is a lesser included offense of aggravated murder with a specification. The jury has to unanimously find, beyond a reasonable doubt, with respect to the aggravator. In this case, with improper defective instructions being given to the jury, Petitioner Clemons was prejudiced not only with respect to the improper unanimity instructions, but the failure on the jury to understand that they could properly consider life as a lesser included offense.

The instructions given in Petitioner Clemons' case are contrary to an unreasonable application of the law pursuant to Mills v. Maryland, supra and McKoy v. North Carolina, supra.

> TWENTY-FOURTH GROUND FOR RELIEF: TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO OBJECT TO THE IMPROPER INSTRUCTION THAT THE JURY MUST BE UNANIMOUS IN THEIR RECOMMENDATION OF A LIFE SENTENCE.

At the mitigation phase, counsel failed to object to the unconstitutional instructions discussed in the twenty-third claim for relief. In addition to the constitutional infirmity of the instructions, they ran afoul of the Ohio Supreme Court's decision in State v. Brooks (1996) 75 Ohio St. 3d 148.

In Brooks, the Court said, "In Ohio, a solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the

53

mitigating factors. Jurors from this point forward should be so instructed." Brooks at 162.

Brooks was decided on March 4, 1996. The court instructed Clemons' jury on the law on October 23, 1996, more than seven months after Brooks was decided.

Effective counsel need to know the applicable law when trying a case.

In Lockhart v. Fretwell 506 U.S. 364, 113 S.Ct. 838, the Supreme Court was faced with a situation in which the defendant's trial counsel did not make an objection to a jury instruction - an objection that would have been supported by a significant decision at the time, during the trial, which resulted in his receiving a sentence of death. The Supreme Court did deny his habeas on the grounds that he suffered no prejudice because the decision that supported his objection at the trial had since been overruled. In doing so, however, the court noted that counsel's failing to make the objection apparently because he was unaware of the decision was deficient performance. The government even conceded that counsel's performance was deficient. Id. at 369, footnote 1.

Justice Stevens penned a dissent in Lockhart in which Justice Blackmun joined in which they elaborated on the duties of trial counsel. It should be noted again that the majority agreed that trial counsel's performance was deficient.

Regarding the mitigation phase, Justice Stevens said:

> Respondent was convicted of committing murder in the course of a robbery. The Arkansas trial court then held a separate sentencing hearing, devoted exclusively to the question whether respondent was eligible for the death penalty, or would instead receive a life sentence without parole. The State relied on two aggravating circumstances to establish its right to execute respondent. The first - the alleged purpose of avoiding arrest - was found by the jury to be unsupported by the evidence. The second - that the felony was committed for purposes of pecuniary gain - was obviously supported by the evidence, as respondent had already been convicted of robbery in connection with the murder. Thus, the critical question on which respondent's death eligibility turned was whether it was permissible, as a matter of law, to "double count" by relying on pecuniary gain as an aggravating circumstance and also on robbery as an element of the crime.
>
> Counsel's duty at this stage of the proceedings was clear. In addition to general investigation and preparation for the penalty phase, counsel's primary obligation was to advise the trial judge about the correct answer to this crucial question of law. Had he handled this professional responsibility with anything approaching the "reasonableness" demanded by Strickland 466 U.S. at 687-691, he would have found an Eighth Circuit case directly in point, addressing the same Arkansas statute under which respondent was sentenced and holding such double counting unconstitutional. Collins v. Lockhart 754 F.2d 258, 261-265, cert. denied, 474 U.S. 1013, 88 L. Ed. 2d 475, 106 S. Ct. 546 (1985). The failure to find that critically important case constitutes irrefutable evidence of counsel's inadequate performance. The fact that Collins was later overruled does not minimize in the slightest the force of that evidence.

Id. at 383-84 (Stevens, dissenting).

Similarly, Petitioner Clemons' counsel, apparently unaware of Brooks, were deficient.

## CONCLUSION

This volume concerns those claims on direct appeal from the State Court.

55

For the above reasons, it is respectfully asserted that these claims have merit, and a new trial ordered or the death penalty be reduced.

/s/ Richard S. Ketcham
RICHARD S. KETCHAM (0023380)
755 South High Street
Columbus, Ohio 43206
(614) 444-3900

/s/ David J. Graeff
DAVID J. GRAEFF (0020647)
P.O. Box 1948
Westerville, Ohio 43086
(614) 226-5991

Counsel for Gerald Clemons

PROOF OF SERVICE

The undersigned hereby certifies that the foregoing was served upon Charles L. Wille, Assistant Attorney General, Capital Crimes Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215-3428 this 28th day of May, 2004, by electronic notification and regular U.S. mail service, postage pre-paid.

/s/ Richard S. Ketcham
RICHARD S. KETCHAM (0023380)

Counsel for Gerald Clemons