UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GERALD L. CLEMONS                          :

    Petitioner                          :        Case No.: C-1-00-722

    vs.                                 :        JUDGE SMITH

BETTY MITCHELL, Warden                     :        MAGISTRATE JUDGE KING

    Respondent                          :

_____

RESPONDENT MITCHELL'S BRIEF IN SUR-REPLY TO
CLEMONS' TRAVERSE (MERIT BRIEF)

_____

|  | Respectfully submitted, |
|---|---|
|  | JIM PETRO |
|  | ATTORNEY GENERAL |
| Richard S. Ketcham |  |
| Attorney at Law |  |
| 755 South High Street |  |
| Columbus, Ohio 43026 |  |
| (614) 444-3900 |  |
|  | CHARLES L. WILLE (0056444) |
| David J. Graeff | Senior Assistant Attorney General |
| Attorney at Law | Capital Crimes Section |
| P.O. Box 1948 | 30 East Broad Street, 23rd Floor |
| Westerville, Ohio 43086 | Columbus, Ohio 43215-3428 |
| (614) 226-5991 | (614) 728-7055; Fax (614) 728-8600 |
|  |  |
| COUNSEL FOR PETITIONER | COUNSEL FOR RESPONDENT |

## **TABLE OF CONTENTS**

STATEMENT OF THE CASE ............................................................................................. 1

STATEMENT OF THE FACTS ......................................................................................... 1

ARGUMENT IN SUR-REPLY .......................................................................................... 4

CONCLUSION ..................................................................................................................... 26

CERTIFICATE OF SERVICE ......................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

Ake v. Oklahoma,
  470 U.S. 68 (1985) ..................................................................................................7

Beard v. Banks,
  542 U.S. __ (2004) ................................................................................................23

Buchanan v. Angelone,
  522 U.S. 269 (1998) .............................................................................................16

Davis v. Mitchell,
  318 F.3d 682 (6th Cir. 2003) ..............................................................................23

Depew v. Anderson,
  311 F.3d 742 (6th Cir. 2003) ..............................................................................10

Dobbert v. Florida,
  432 U.S. 282 (1977) ...............................................................................................5

Dugger v. Adams,
  489 U.S. 401 (1989) .............................................................................................20

Elrod v. Sears, Roebuck and Co.,
  939 F.2d 1466 (11th Cir. 1991) ..........................................................................11

Enmund v. Florida,
  458 U.S. 782 (1982) .............................................................................................19

Granviel v. Lynaugh,
  881 F.2d 185 (5th Cir. 1989), cert. denied sub nom. Granviel v. Texas,
  495 U.S. 963 (1990) ...............................................................................................7

Jackson v. Virginia,
  443 U.S. 307 (1979) .........................................................................................19, 25

Kordenbrock v. Scroggy,
  919 F.2d 1091 (6th Cir. 1990) (en banc), cert. denied, 499 U.S. 970 (1991) ................20

## CASES

Madrigal v. Bagley,
    276 F. Supp.2d 744 (N.D. Ohio 2003) ..................................................................23

Mapes v. Coyle,
    171 F.3d 408 (6th Cir. 1999) ..........................................................................20

McKoy v. North Carolina,
    494 U.S. 433 (1990) ..........................................................................................23

Mills v. Maryland,
    486 U.S. 367 (1998) ..........................................................................................23

Mitchell v. Esparza,
    __ U.S. __, 124 S.Ct. 7 (2003) ....................................................................10, 15

Nguyen v. Reynolds,
    131 F.3d 1340 (10th Cir. 1997) ...........................................................................9

Powell v. Collins,
    332 F.3d 376 (6th Cir. 2003) ...........................................................................6, 7

Ring v. Arizona,
    536 U.S. 584 (2000) ..........................................................................................20

Roe v. Baker,
    316 F.3d 557 (6th Cir. 2002) ......................................................................23, 24

Romano v. Oklahoma,
    512 U.S. 1 (1994) ..............................................................................................18

Ross v. Oklahoma,
    487 U.S. 81 (1988) ............................................................................................12

Schriro v. Summerlin,
    Case No. 03-526, June 21, 2004 ........................................................................20

Scott v. Mitchell,
    209 F.3d 854 (6th Cir. 2000) ......................................................................23, 24

State v. Brooks,
    75 Ohio St.3d 148 (1996) ............................................................................24, 25

## CASES

State v. Carter,
    72 Ohio St.3d 545, 651 N.E.2d 965,  (1995)................................................................11

State v. Clemons,
    82 Ohio St.3d 438 (1998) ....................................................................... passim

State v. Greer,
    39 Ohio St.3d 236, 530 N.E.2d 382, (1988)................................................11, 12

State v. Jalowiec,
    91 Ohio St.3d 220 (2001) ...............................................................................25

State v. Lamar,
    95 Ohio St.3d 181 (2002) ...............................................................................25

State v. Smith,
    80 Ohio St.3d 89 (1997) .................................................................................13

Strickland v. Washington,
    466 U.S. 668 (1984) ..................................................................................9, 24

Swain v. Alabama,
    380 U.S. 202 (1965) .......................................................................................12

Taylor v. Bagley,
    2003 U.S. Dist. LEXIS 4383, 64 (N.D. Ohio 2003)................................................23

Teague v. Scott,
    60 F.3d 1167 (5th Cir.  1995) ......................................................................9, 23

Wainwright v. Goode,
    464 U.S. 78 (1983) .............................................................................11, 13, 15

Yarborough v. Alvarado,
    __ U.S. __, 124 S.Ct. 2140 (2004) .......................................................................10

## **OTHER AUTHORITIES**

The Antiterrorism and Effective Death Penalty Act....................................................................14

## **RULES**

Ohio Crim. R. 11(c)(3).............................................................................................................15

Ohio Crim. R. 24..............................................................................................................11, 12

## STATEMENT OF THE CASE

The Petitioner, Gerald L. Clemons (hereinafter "Clemons"), is under a sentence of death adjudged by an Ohio court.  On August 30, 2000, Clemons filed with this Court a petition for a writ of habeas corpus in which he asserted twenty-nine (29) grounds in support of relief.  On September 17, 2003, the Court granted in part a motion to dismiss by Respondent, Warden Betty Mitchell (hereinafter "the Warden'), dismissing as procedurally defaulted ground four (in part); ground eighteen, subpart (F); ground twenty-two; ground twenty-five; ground twenty-six; and ground twenty-eight.  Opinion and Order (Doc. 52), page 63.  On October 15, 2003, the Court granted the Warden's motion to dismiss ground twenty-seven.  Order (Doc. 58).   On November 14, 2003, per the scheduling order issued by the Court, the Warden filed her Return of Writ (Answer) to Clemons' petition.  On May 28, 2004, per the Court's order, Clemons filed a Traverse (Rely Brief) to the Warden's Return.

## STATEMENT OF THE FACTS

As found by the Supreme Court of Ohio, and adopted by this Court in its order of September 17, 2003, the facts and circumstances surrounding Clemons' indictment, trial, conviction, and sentence, are as follows:

> On the morning of December 15, 1995, defendant-appellant, Gerald L. Clemons, went to the main office of his employer, Trans-Continental Systems, Inc., in Evendale, and fatally shot three co-workers. Defendant was subsequently convicted of three counts of aggravated murder and sentenced to death.

> Defendant had worked at various jobs in both Florida and the Cincinnati area. After moving back to Cincinnati in 1988, defendant became an over-the-road truck driver and worked for several trucking companies. By November 1995, defendant had become a company driver for Trans-Continental. On the evening of December 13, 1995, a dispatcher for Trans-Continental phoned defendant at home and asked him to pick up a load in Ironton, which is a regular run for Trans-Continental. Defendant declined to make the pickup and John Stirsman, chief

dispatcher, told defendant that he was putting the company "in a bad spot." The company apparently then made other arrangements for the Ironton run.

   The next day, December 14, defendant phoned Stirsman several times hoping to secure a new run. During one conversation, defendant asked Stirsman why another dispatcher, Dave Kreamelmeyer, was "screwing him around." Stirsman replied that Kreamelmeyer was not doing that to him. Stirsman told defendant that he was saving the Ironton run for the defendant again that evening. While defendant thanked Stirsman for assigning him the Ironton run again, defendant never showed up to make the run. Defendant later testified that he did not make the Ironton run because "it wasn't a good run for the mere fact that there is no good roads going that way and all secondary roads instead of interstate highways and it burns up a lot of time."

   At 7:45 a.m. on the morning of December 15, 1995, defendant called Trans-Continental, according to an entry made by Kreamelmeyer on the company's telephone log sheet. Evelyn Dinkgrave, who works in accounts payable for Trans-Continental, testified that she overheard Kreamelmeyer have a loud conversation with a driver at 7:45 a.m. that morning, and she observed that Kreamelmeyer "was kind of angry." After Kreamelmeyer hung up the phone, Dinkgrave testified that "he got more vocal about how mad he was that this guy had not been on time to pick up a load" the night before. At trial, defendant testified that during their phone conversation, Kreamelmeyer appeared to be angry and informed defendant that he was not going to give defendant a load to deliver that day.

   At approximately 8:15 a.m. that morning, defendant entered the Trans-Continental garage and asked mechanic Elmer Begley whether defendant's truck was ready for work. Both Begley and driver Timothy Stone testified that defendant had a cream-colored bag attached to his waist at that time and he appeared to be in a "normal mood."

   Secretary Dana Wilson Jones observed defendant in the administrative offices of Trans-Continental that morning. Defendant waved and smiled at her, then walked away. Moments later, Jones heard Kreamelmeyer say, "I'm going to have this man arrested for felonious assault." Then, Jones heard gunshots and heard Kreamelmeyer say, "What did I do, I didn't do anything." Jones testified that she heard more gunshots and heard someone say, "Oh, my God."

   Tonya Hinkle shared an office with Christine Teetzel in the Trans-Continental administrative offices, and both worked on payroll. Hinkle testified that she heard Kreamelmeyer arguing with someone around 8:15 that morning and heard "a punch, like a bang." Both she and Teetzel stood up and heard Kreamelmeyer say, "Assault, call 911." As Hinkle and Teetzel tried to phone for help, they heard shots and both women hid under their desks. Teetzel pulled her chair underneath her desk in an attempt to hide herself. Hinkle testified that as

they hid under their desks, she saw defendant walk up to Teetzel's desk, move her chair out of the way, look under the desk, and shoot her. As defendant turned around, Hinkle thought she was next, but defendant proceeded upstairs.

Laurie McGuire works in accounts receivable for Trans-Continental on the second floor of the administrative office building. On the morning of December 15, she heard some commotion on the first floor around 8:15 a.m. and began walking downstairs. Before she made it to the first floor, she saw defendant shoot Kreamelmeyer in the back. She ran back upstairs, panic- stricken, and could hear defendant climbing the staircase. McGuire then fled into an office and stood up against a concrete wall. Defendant walked up to McGuire and told her that he was not going to hurt her, and that "he was only after the ones who screwed him over." Defendant left the room. McGuire was going downstairs when she heard dispatcher Bob Kinney scream for help from his office. McGuire found Kinney in the dispatcher's office, shot twice, holding his chest, and asking for help. McGuire saw Kreamelmeyer lying on the floor, too, so she ran back upstairs to call 911.

Sandra K. Sears, a Glendale police officer, was working off-duty near the Trans-Continental office at the time of the shootings. Upon hearing a radio dispatch, she responded to the scene and followed an Evendale police officer into the Trans-Continental parking lot. Sears found Teetzel lying wounded on the front lawn of the premises. She heard Teetzel name Gerald Clemons as her assailant. As Sears approached the office building with the Evendale officer, she noticed defendant smiling and walking steadily towards her. At that point, Sears heard Teetzel exclaim again, "That's the bastard that shot me." Sears testified that defendant told her, "I'm the guy you are looking for. I just shot the people," and he motioned his head toward the office building. Sears handcuffed Clemons and turned him over to Evendale police officers.

All three shooting victims, Kreamelmeyer, Kinney, and Teetzel, died of gunshot wounds.

Bullets recovered during the autopsies and casings found at the crime scene were determined to have been fired from defendant's gun, which was found lying on top of his car trunk in the Trans-Continental parking lot that morning.

The grand jury indicted defendant on three counts of aggravated murder, with prior calculation and design. Each count included a firearms specification, and a death penalty specification that murder was committed as a course of conduct involving the killing of two or more persons. (R.C. 2929.04[A][5].)

Defense counsel conceded at the outset of trial that defendant killed the three murder victims, but disputed that they were murdered with prior calculation and design. Defendant testified on his own behalf, and acknowledged having a discussion with Kreamelmeyer on the morning in question, in which defendant was told he was not getting a load to deliver. Defendant claimed that

Kreamelmeyer started "charging at me like a rhino," but defendant testified that he then went "into a fog," and did not recall shooting anyone or his gun going off. Defendant testified that he believed that his taking of Prozac caused him to black out. The next thing defendant claims to remember was walking out to his car and seeing a crowd and police gathered outside the building. Defendant testified that he "went to that woman cop because I didn't think she would slam me [to the ground]." Defendant also expressed regret and remorse for his actions.

After deliberation, the jury found defendant guilty as charged.

At the mitigation hearing, defendant's physician testified that he treated defendant's depression by prescribing Prozac. Defendant's mother, Alice McMichen, also testified and recounted his life story. She described defendant as a caring and helpful son, and asked the jury to spare his life.

Defendant gave an unsworn statement expressing his sorrow and shame for what he had done.

On rebuttal, the prosecution called a professor of psychiatry who testified that studies of Prozac indicate that it decreases aggressive or violent behavior in both humans and animals. The expert opined that Prozac reduces suicidal thoughts in those who take the drug.

The jury recommended death on all three counts, and the trial court imposed the death sentence on defendant. The court also imposed consecutive prison sentences on the three firearms specifications.

State v. Clemons, 82 Ohio St. 3d 438, 438-441 (1998).

## ARGUMENT IN SUR-REPLY

None of Cowens' alleged grounds warrant relief in federal habeas corpus.

First Ground

Clemons argued before the Supreme Court of Ohio that the trial court abused its discretion by denying his motion for a change of venue, despite adverse pre-trial publicity. The Supreme Court of Ohio essentially found, in denying relief, that the trial court did not abuse its discretion because a showing of pretrial publicity in and of itself is insufficient to warrant a change of venue. State v. Clemons, 696 N.E.2d at 1014; J.A. Vol. VI, pgs. 203-204.

As pointed out in the Warden's Return of Writ, the Supreme Court of Ohio's decision is completely consistent with decisions by the Supreme Court of the United States to the effect that absent "utter corruption" of the trial process, a community's prior knowledge of the crime or the suspected criminal -- via extensive media coverage -- is not sufficient to render a trial constitutionally unfair.  See Dobbert v. Florida, 432 U.S. 282, 302-303 (1977).  Clemons now argues in reply that the trial court and defense counsel "did next to nothing" to ascertain potential bias on the part of the jurors.    He also suggests that the trial judge's alleged failure to explore juror bias was the result of "political pressure," and that newspaper accounts of statements supposedly made by several jurors after the trial should be accepted as conclusive proof of juror bias.  Merit Brief, Vol. I, at 12, 22.

Contrary to Clemon's assertions, the Supreme Court of Ohio found that "the court and counsel questioned the members of the venire extensively to detect bias or anything that would prevent them from acting as fair and impartial jurors;" that "[a]t the outset, the prosecution quizzed prospective jurors as to whether they had heard or seen news reports of this case;" and that, "[a]fter several prospective jurors indicated they had seen such reports, these same jurors were adequately interrogated about their ability to be fair to the defendant."  State v. Clemons, 696 N.E.2d at 1014.  The Supreme Court of Ohio's findings are fully supported by the record, as the transcript citations set forth in the Warden's Return demonstrate.  Further, there is absolutely no evidence whatsoever to support Clemons' suggestion that due to "political pressure" the trial judge deliberately neglected to safeguard Clemons' constitutional right to a fair trial.  Finally, newspaper accounts of statements allegedly made by some members of the jury post-trial can hardly be deemed the "clear and convincing evidence" requisite to overturn the binding factual findings of the Ohio Supreme Court.

Clemons' first ground does not warrant relief in federal habeas corpus.


Second Ground

Clemons argued specifically before the Supreme Court of Ohio that the trial court should have provided funds to enable him to hire a private independent investigator, an expert on Prozac, and an independent firearms or ballistics expert.  In denying relief, the Supreme Court of Ohio essentially held that Clemons did not request funding for such experts; that the trial court indicated on several occasions prior to trial that it was willing to consider appointing an expert witness on Prozac, but the defense never made such a request; that the defense accepted the Court's appointment of Dr. Schmidtgoessling as a mitigation expert for the defense; and that Clemons had failed to show a particularized need for the funding of the experts in question. State v. Clemons, 82 Ohio St.3d at 442-443.

Clemons now cites the decision of the Sixth Circuit Court of Appeals in Powell v. Collins, 332 F.3d 376 (6th Cir. 2003), which, he argues, compels the conclusion that the trial judge in his case deprived him of a fair trial by not providing him with an "independent" expert on Prozac.  For a number of obvious reasons, Clemons' reliance on Powell is misplaced.  First, Powell's trial counsel twice moved for appointment of a psychologist to assist them, the trial court denied their motions, and, instead, appointed Dr. Schmidtgoessling as a "friend of the court" to evaluate Powell.  Powell v. Collins, 332 F.3d at 382.   Here, as found by the Supreme Court of Ohio, Clemons' trial counsel did *not* request an "independent" expert, and, in fact, accepted Dr. Schmidtgoessling's appointment as a mitigation specialist to assist them. Accordingly, the constitutional issue presented in Powell -- whether appointment of an

"independent" expert complies with <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985) -- is not squarely presented in Clemons' case.

Second, unlike <u>Powell</u>, the instant case is governed by the AEDPA's deferential standard of review. Thus, Clemons cannot obtain relief unless the Ohio Supreme Court's holding contravened or unreasonably applied federal law as clearly established by a decision of the Supreme Court of the United States. In <u>Powell,</u> the Sixth Circuit recognized that the Supreme Court has not as yet resolved the question whether appointment of a "neutral" expert is consistent with due process as mandated by <u>Ake</u>. <u>Powell v. Collins</u>, 332 F. 3d at 390-392, citing <u>Granviel v. Lynaugh</u>, 881 F.2d 185 (5th Cir. 1989), <u>cert.</u> <u>denied</u> sub nom. <u>Granviel v.</u> <u>Texas</u>, 495 U.S. 963 (1990) (Marshall, J., dissenting). Accordingly, assuming that Clemons appropriately presented the "neutral" expert issue to the state courts, <u>Powell v Collins</u> does not require this Court to grant the writ. As a matter of fact, the lack of a controlling decision by the Supreme Court of the United States, as recognized in <u>Powell,</u> militates against a determination by this Court that the Supreme Court of Ohio's decision contravened or unreasonably applied clearly established federal law.

Third and finally, unlike <u>Powell</u>, there is no basis in this record for a finding of a reasonable probability that the testimony of an "independent" expert on Prozac would have altered the jury's verdicts. <u>Compare</u> <u>Powell v. Collins</u>, 332 F.3d at 400-401. As noted by the Warden in her Return of Writ, Clemons admitted that he last took a Prozac pill two days before the murders, and, Clemons does not dispute that the trace amount of Prozac in his blood had dropped to "almost nothing." As observed by the Supreme Court of Ohio in its independent sentencing review, Clemons was convicted and sentenced to death for the deliberate and unprovoked murder of three people. Given the strength of the state's case -- the defense could

not dispute that Clemons killed the victims -- and the magnitude of the crimes, there is no reasonable probability that a "Prozac" defense would have altered the outcome.

Clemons' second ground does not warrant relief in federal habeas corpus.


Third Ground

Clemons argued on direct appeal before the Supreme Court of Ohio that his trial counsel were constitutionally ineffective in permitting him to be examined by the court psychiatric center, and in failing to obtain a change of venue.  Denying relief, the Supreme Court of Ohio held that counsel acted reasonably, given that counsel could not reasonably foresee that the mitigation report would produce information so damaging to Clemons that they would have little choice but to forgo presenting the mitigation expert's report to the jury; that counsel's election to obtain a mental evaluation of Clemons via a not guilty by reason of insanity plea allowed counsel to keep from the jury potentially damaging information in the report of the evaluation; that Clemons was not prejudiced by any information in the report, because it was not presented to the jury, and, to the extent that its contents were ascertained by the trial judge, there was no evidence that the trial judge improperly considered such information in sentencing Clemons; and that counsel could not be deemed ineffective merely because the trial judge did not grant their motion for a change of venue.  State v. Clemons, 82 Ohio St.3d at 450-451.

Clemons now argues in his Traverse that counsel acted unreasonably in not recognizing a potential "conflict of interest" between Dr. Schmidtgoessling's examination of Clemons for the purpose of the insanity plea and her later service as a mitigation expert for the defense.  He suggests that this allowed Dr. Schmidtgoessling to communicate privileged information to the prosecution or, conversely, inhibited the defense from fully using Dr. Schmidtgoessling as a

mitigation witness, for fear of divulging confidential information to the prosecution. There is no evidence in the record to support Clemons' speculations. Rather, the record fully supports the Supreme Court of Ohio's finding that counsel elected not to present Dr. Schmidtgoessling's report because it contained information damaging to Clemons' case.

With respect to counsel's alleged failure to adequately support the change of venue motion, Clemons now specifically critiques the voir dire questions asked by counsel. Merit Brief, Vol. I, 38-41. The Warden respectfully submits that Clemons' arguments smack of the kind of second-guessing foreclosed by the Strickland standard. It has been held that the conduct of voir dire generally is a matter of pure strategy, and that counsel's decision in the latter regard cannot be a basis for a claim of ineffective counsel, under Strickland, unless "shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997), citing Teague v. Scott, 60 F.3d 1167 (5th Cir. 1995). As noted previously, the record fully supports the basic finding of the Supreme Court of Ohio that the jurors were fully and fairly questioned on their capacity to render unbiased judgment.

Clemons' third ground does not warrant relief in federal habeas corpus.

Fourth Ground

Before the Supreme Court of Ohio on direct appeal, Clemons claimed that he was denied a fair trial due to prosecutorial misconduct during the opening and closing arguments at the guilt phase, and during closing argument at the penalty phase. The Supreme Court of Ohio held that several of Clemons' claims were waived owing to the lack of objection at trial; as previously held by this Court, the Supreme Court of Ohio's waiver holding bars review of such claims in federal habeas corpus. Opinion and Order (Doc. 52), page 21. In denying relief, the Supreme

9

Court of Ohio essentially held that the arguments in question -- to the extent that they were erroneous and properly objected to at trial -- did not deprive Clemons of a fundamental due process.  State v. Clemons, 82 Ohio St.3d at 451-454.

In his Traverse, Clemons basically argues that the Supreme Court of Ohio erroneously found "harmless error."  Merit Brief, Vol. I, at 60.  In the later regard, Clemons relies primarily on Depew v. Anderson, 311 F.3d 742 (6th Cir. 2003).  However, unlike Depew, which is a pre-AEDPA case, this Court may not grant habeas corpus relief simply because it disagrees with the Supreme Court of Ohio's decision.    Rather, the question here is whether the Supreme Court of Ohio's denial of Clemons' claims is objectively unreasonable.  Mitchell v. Esparza, __ U.S. __, 124 S.Ct. 7, 12 (2003).  The magnitude of the alleged improprieties in this case is not so great as to remove from the range of reasonableness the Ohio Supreme Court's basic determination that Clemons received a fair trial and sentencing hearing.  Yarborough v. Alvarado, __ U.S. __, 124 S.Ct. 2140 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.").

Clemons' fourth ground does not warrant relief in federal habeas corpus.


Fifth Ground

On direct appeal before the Ohio Supreme Court, Clemons argued that the trial judge improperly considered the nature and circumstances of the offense as an aggravating circumstance in sentencing him to death.  Denying relief, the Supreme Court of Ohio found that the trial court's opinion clearly indicated that the trial court understood the difference between statutory aggravating circumstances and facts describing the nature and circumstances of the

offense.  State v. Clemons, 82 Ohio St.3d at 446-447.  For the reasons stated in the Warden's Return of Writ, the Supreme Court of Ohio's finding is fully supported by the record.

In his Traverse, Clemons essentially maintains that the trial court and the Supreme Court of Ohio misapplied the governing Ohio statute.  "That dog won't hunt." Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471, n.3 (11th Cir. 1991).   If the Ohio Supreme Court's interpretation of the trial court's sentencing opinion is deemed a legal issue, it is surely an issue of state law, and therefore, this Court must accept it, "since the views of the State's highest court with respect to state law are binding on the federal courts."  Wainwright v. Goode, 464 U.S. 78, 84 (1983). If, on the other hand, the issue of whether the trial court erroneously considered the nature and circumstances of the offense in sentencing Clemons is characterized as an issue of fact, this Court must defer to the Ohio Supreme Court's conclusion that the trial court did not do so, as it finds more than fair support in the record.  Id, at 84-85.

Clemons' fifth ground does not warrant relief in federal habeas corpus.


Sixth Ground

On direct appeal before the Supreme Court of Ohio, Clemons alleged that the trial court erred in overruling his motion for twelve peremptory challenges. The Supreme Court of Ohio summarily denied relief based on its previous decisions in State v. Greer, 39 Ohio St.3d 236, 530 N.E.2d 382, (1988) paragraph two of the syllabus; and State v. Carter, 72 Ohio St.3d 545, 555-556, 651 N.E.2d 965, 975, (1995).  State v. Clemons, 82 Ohio St.3d at 443-444.  In Greer, the Supreme Court of Ohio ruled that defendants in capital cases are entitled to six peremptory challenges according to Ohio Criminal Rule 24, the governing procedural rule promulgated by

the Supreme Court of Ohio.  The Ohio Supreme Court reasoned that Rule 24 superceded an Ohio statute which provided for 12 challenges.  State v. Greer, 39 Ohio St.3d at 246.

In his Traverse, Clemons argues that State v. Greer is unconstitutional because he "is constitutionally entitled to twelve peremptory challenges at voir dire."  Also according to Clemons, Greer conflicts with Swain v. Alabama, 380 U.S. 202 (1965), because Greer supposedly is based on the erroneous determination that peremptory challenges are "procedural" and not a "substantive" right.  Merit Brief, Vol. I, at 67, 68-69.  Clemons' arguments are specious.  Clemons cites *no* authority for his claim that the constitution requires 12 peremptory challenges.  Indeed, *the Supreme Court of the United States has held precisely the opposite.* "Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise."  Ross v. Oklahoma, 487 U.S. 81, 89 (1988) (internal citations omitted). Moreover, contrary to Clemons' arguments, the Supreme Court of Ohio in Greer expressly and correctly recognized that peremptory challenges are a substantive right, whereas, the *number* of challenges is a procedural question governed by Ohio Criminal Rule 24.  In other words, Clemons' argument is based on a gross distortion of Greer.

Clemons' sixth ground does not warrant relief in federal habeas corpus.


Seventh Ground

On direct appeal, Clemons argued that Ohio's death penalty is unconstitutional because it permits a death sentence absent a showing of a specific intent to kill.  The Supreme Court of Ohio summarily rejected Clemons' argument.  State v. Clemons, 82 Ohio St.3d at 454.  Clemons now argues in his Traverse that the Supreme Court of Ohio erred, because the jury in his case

"made no finding" that he specifically intended to kill the victims.  Merit Brief, Vol. I, at 74. The jury was specifically instructed on all counts that in order to find Clemons guilty of aggravated murder, "it must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to kill …" Appendix, Vol. III, pages 1092, 1100, 1106.  The jury convicted Clemons on all counts.  Accordingly, Clemons argument is frivolous.

Clemons' seventh ground does not warrant relief in federal habeas corpus.

Eighth Ground

On direct appeal, Clemons argued that Ohio's beyond a reasonable doubt standard in the mitigation phase is unconstitutional.   The Supreme Court of Ohio summarily denied relief. State v. Clemons, 82 Ohio St.3d at 454.  Clemons now offers in his Traverse a convoluted and confusing argument that the reasonable doubt instructions actually given in his case -- both at the trial and sentencing phases -- failed to conform to Ohio law at the time of his trial.   For the reasons stated in the Warden's Return, the Ohio Supreme Court reasonably denied Clemons relief.   Moreover, insofar as Clemons now alleges a violation of state law, his claim is not cognizable in federal habeas corpus.    Wainwright v. Goode, supra.

Clemons' eighth ground does not warrant relief in federal habeas corpus.

Ninth Ground

On direct appeal, Clemons claimed that Ohio violated his constitutional rights by eliminating direct appeal to the Ohio Court of Appeals in capital cases.  The Supreme Court of Ohio summarily denied relief, based on its previous decision in State v. Smith, 80 Ohio St.3d 89 (1997).  State v. Clemons, 82 Ohio St.3d at 454.  In his Traverse, Clemons essentially contends

that Ohio's change in the appellate process must be deemed arbitrary and unfair. For the reasons stated in the Warden's Return of Writ, the Supreme Court of Ohio's rejection of this claim is neither contrary to nor an unreasonable application of federal law as clearly established by the Supreme Court of the United States. The United States Supreme Court has never held that multiple appellate reviews by the state courts are constitutionally mandated. Moreover, contrary to Clemons' arguments, that Ohio's removal of intermediate appellate review may have been motivated in part by public concern with delay in capital cases is not indicative of fundamental unfairness. See The Antiterrorism and Effective Death Penalty Act.

Clemons' ninth ground does not warrant relief in federal habeas corpus.

Tenth Ground

On direct appeal, Clemons challenged for various reasons the facial validity of Ohio's death penalty statutes. The Supreme Court of Ohio summarily rejected all of Clemons' arguments, based on its previous decisions. State v. Clemons, 82 Ohio St.3d at 454. In his Traverse, Clemons now offers a specific claim that the trial court erroneously failed to instruct the jury to consider life without parole as a possible sentence -- a punishment that was not authorized at the time of Clemons' crime. Merit Brief, Vol. I, at 95. For the reasons stated by the Warden in her Return of Writ, the Supreme Court of Ohio's rejection of Clemons' constitutional challenges is consistent with clearly established federal-constitutional law as given by the Supreme Court of the United States. Clemons' transmuted claim of instructional error is procedurally defaulted and patently meritless.

Clemons' tenth ground does not warrant relief in federal habeas corpus.

Eleventh Ground

On direct appeal, Clemons claimed that Ohio's death penalty scheme impermissibly mandates death based on the jury's finding that the aggravating circumstances outweigh the mitigating factors. The Supreme Court of Ohio summarily rejected the claim, based on its previous decisions. State v. Clemons, 82 Ohio St.3d at 454. In his Traverse, Clemons seeks to alter his facial challenge into a claim that the trial court in his case erroneously determined that death was a "mandatory" punishment. For the reasons stated by the Warden in her Return of Writ, the Supreme Court of Ohio's rejection of Clemons' constitutional challenges is consistent with clearly established federal-constitutional law as given by the Supreme Court of the United States. Clemons' newly minted claim of trial court error in the application of state law is procedurally defaulted and in any event meritless. Wainwright v. Goode, supra.

Clemons' eleventh ground does not warrant relief in federal habeas corpus.

Twelfth Ground

On direct appeal, Clemons claimed that Ohio Crim. R. 11(c)(3) unconstitutionally permits the trial court to dismiss specifications upon a guilty plea "in the interest of justice." The Supreme Court of Ohio summarily denied relief, based on its previous decisions. State v. Clemons, 82 Ohio St.3d at 454. In his Traverse, Clemons cites no case in which the Supreme Court of the United States has invalidated a rule comparable to Ohio Crim. R. 11(c)(3). He essentially asks this Court to rule for the first time that Ohio's rule is unconstitutional and that, accordingly, he is entitled to habeas corpus relief. The Warden respectfully submits that the Court is without authority to do so. Mitchell v. Esparza, 124 S.Ct at 11 ("A federal court may

not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous.").

Clemons' twelfth ground does not warrant relief in federal habeas corpus.

Thirteenth Ground

On direct appeal, Clemons argued that Ohio's capital sentencing scheme is unconstitutional because it provides no "weighing" standards at the trial and appellate levels. The Supreme Court of Ohio summarily denied relief, based on its previous decisions. State v. Clemons, 82 Ohio St.3d at 454. In his Traverse, Clemons argues, as he did in support of his petition, that Ohio's death penalty scheme is constitutionally deficient because it does not require the jury to render specific written findings, or the trial court to specifically find that the aggravating circumstances outweigh mitigating factors beyond a reasonable doubt. He also avers that the statute erroneously fails to set forth standards to be used by the Supreme Court of Ohio in conducting its appellate review. Clemons cites no decisions of the Supreme Court of the United States that specifically require these procedures, and, indeed, there are none. See Buchanan v. Angelone, 522 U.S. 269, 276 (1998) (noting that Court has never held "that the state must affirmatively structure in a particular way the manner in which juries consider mitigating evidence.").

Clemons' thirteenth ground does not warrant relief in federal habeas corpus.

Fourteenth Ground

On direct appeal before the Supreme Court of Ohio, Clemons claimed that the trial court considered and weighed victim impact testimony at the sentencing hearing as an improper

aggravating circumstance.  Clemons alleged specifically that the trial court erroneously permitted the brothers of victims Kinney and Kreamelmeyer to testify, and then improperly considered their testimony in sentencing him to death.  In denying relief, the Ohio Supreme Court found that the trial judge stated on the record that he could not consider the testimony as evidence; that there was no reference to the testimony in the transcript and the trial court's sentencing opinion; and that, accordingly, the trial judge did not consider the testimony in sentencing Clemons to death.  State v. Clemons, 82 Ohio St.3d at 448.

In his Traverse, Clemons concedes the trial judge's disclaimer regarding the disputed testimony, and does not contend that the Ohio Supreme Court misconstrued the record.  In other words, Clemons does not dispute the underlying findings of the Ohio Supreme Court.  Rather, he argues that prejudice is "obvious," in light of the trial judge's statements that he "encouraged" the families to testify and that the court "could not forgive" Clemons.  Merit Brief, Vol. I, at 106. The Warden respectfully submits that the latter statements do not constitute the clear and convincing evidence necessary to overcome the binding factual findings of the Supreme Court of Ohio.

Clemons' fourteenth ground does not warrant relief in federal habeas corpus.


Fifteenth Ground

On direct appeal before the Supreme Court of Ohio, Clemons claimed that the trial court erred in permitting the state to present expert rebuttal evidence on the effects of Prozac. During his trial phase testimony, Clemons maintained that his taking of Prozac caused him to black out before the murders.  Per the motion of Clemons' counsel, all evidence presented by the defense during the guilt phase was readmitted in the sentencing hearing.    The defense also presented the

testimony of Clemons' mother, to the effect that there was a difference in Clemons' behavior after he started taking Prozac, and the testimony of a physician that he had treated Clemons' depression with Prozac.  In rejecting Clemons' claim of error, the Supreme Court of Ohio held that the expert rebuttal testimony offered by the prosecution on the effects of Prozac was properly introduced to rebut Clemons' testimony.  State v. Clemons, 82 Ohio St.3d at 448-449.

In his Traverse, Clemons now argues that admission of the testimony violated his rights under the Eighth Amendment.  Merit Brief, Vol. I at 109-112.  "The Eighth Amendment does not establish a federal code of evidence to supercede state evidentiary rules."  Romano v. Oklahoma, 512 U.S. 1, 12 (1994).  Accordingly, Clemons cannot boost his claim simply by casting it in an Eighth Amendment mold.  As found by the Supreme Court of Ohio, the defense raised the "Prozac issue;" therefore, Clemons can hardly complain that the state's presentation of evidence on the question was fundamentally unfair.  Further, it was the province of the jury to determine the validity of the rebuttal testimony offered by the prosecution.  In short, for the reasons stated by the Warden in her Return of Writ, Clemons simply fails to set forth a cognizable federal claim.

Clemons' fifteenth ground does not warrant relief in federal habeas corpus.


Sixtieth Ground

On direct appeal, Clemons claimed that the evidence was insufficient to sustain his convictions and, further, that his convictions were against the manifest weight of the evidence. In denying relief, the Ohio Supreme Court found specifically that defense counsel conceded during opening statement that Clemons killed all three victims; that the only disputed issue was whether prior calculation and design was proven; and that the evidence was more than sufficient

to satisfy the constitutional standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), i.e., that based on the evidence of Clemons' actions before and during the murders, a reasonable juror could find that Clemons murdered the victims with prior calculation and design.   <u>State v. Clemons</u>, 82 Ohio St.3d at 444-446.

In his Traverse, Clemons basically asks this Court to review his claim <u>de novo</u> as a "thirteenth juror," ignore the evidence presented by the prosecution, and grant him relief, based on his trial testimony that he "blacked out" during the murders.  He also attempts once again to bolster his arguments by postulating an Eighth Amendment claim.  Merit Brief, Vol. at 113.   As noted in the Warden's Return of Writ, the Supreme Court of Ohio reasonably and correctly applied the <u>Jackson</u> standard in rejecting this approach.    Further, for the reasons noted previously by the Warden, Clemons' Eighth Amendment arguments are largely superfluous. There is no "Eighth Amendment" requirement that the state appellate courts determine anew a capital defendant's guilt, and, there is ample evidence in this record that the jury made findings necessary to satisfy <u>Enmund v. Florida</u>, 458 U.S. 782 (1982).

Clemons' sixteenth ground does not warrant relief in federal habeas corpus.


<u>Seventeenth Ground</u>

On direct appeal, Clemons argued that that the court and prosecutors erred during voir dire examination by advising jurors that a death verdict will be treated as a "recommendation" to the court.  The Ohio Supreme Court held that the claim was waived owing to trial counsel's failure to object, and that in any event the trial court did not plainly err.  <u>State v. Clemons</u>, 82 Ohio St.3d at 444.  In his Traverse, Clemons repeats the arguments set forth previously in support of his petition, and claims for the first time that the disputed instruction resulted in a

violation of <u>Ring v. Arizona</u>, 536 U.S. 584 (2000).  As noted in the Return of Writ, Clemons'

Eighth Amendment Claim is precluded by well-established precedent.  <u>Dugger v. Adams</u>, 489

U.S. 401, 407 (1989); <u>Mapes v. Coyle</u>, 171 F.3d 408 (6th Cir. 1999); <u>Kordenbrock v. Scroggy</u>, 919

F.2d 1091, 1101 (6th Cir. 1990) (en banc), <u>cert.</u> <u>denied</u>, 499 U.S. 970 (1991) Clemons' newly-

minted <u>Ring</u> claim is procedurally defaulted and patently without merit.  <u>See</u> <u>Schriro v. Summerlin</u>,

Case No. 03-526, June 21, 2004 (<u>Ring</u> does not apply retroactively in federal habeas corpus).

Clemons' seventeenth ground does not warrant relief in federal habeas corpus.


<u>Eighteenth Ground</u>

In state post-conviction proceedings, Clemons claimed that his trial counsel were

ineffective for failing to reasonably investigate a "Prozac defense" or obtain an expert to present

testimony on Prozac in each phase of the trial.  The trial judge denied relief and upon Clemons'

appeal, the Ohio Court of Appeals held that counsel reasonably deferred to the professional

judgment of a psychologist that Clemons' use of Prozac did not give rise to an issue of insanity;

that counsel could not in any event be deemed ineffective, because Ohio law does not permit

expert psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked

the mental capacity to form the specific mental state required for the crime; and that Clemons

could not possibly have been prejudiced, in view of the overwhelming evidence of Clemons's

murderous intent with prior calculation and design.  <u>State v. Clemons</u>, 1999 WL 252655 at *3-4

(Ohio App. 1 Dist. 1999).

In his Traverse, Clemons basically ignores the decision of the Ohio Court of Appeals and

argues anew that his counsels were ineffective in handling the guilt phase of the trial.  For the

reasons stated by the Warden in her Return of Writ, the Ohio Court of Appeals' denial of relief is

based on an objectively reasonable application of the governing constitutional standard. The Warden again notes particularly the steps taken by Clemons' counsel to investigate Clemons' use of Prozac as a possible defense, as evidenced by the statements of Clemons' trial counsel during discovery depositions. The latter statements support the finding of the Ohio Court of Appeals that trial counsel reasonably decided to forego an insanity defense. The Warden further notes the Ohio Court of Appeals' finding that as a matter of Ohio law counsel were precluded from presenting expert testimony in furtherance of a "diminished capacity." Clemons does not address this critical finding in his Traverse.

Clemons' eighteenth ground does not warrant relief in federal habeas corpus.

Nineteenth Ground

Clemons claimed in state post-conviction proceedings that his counsel were constitutionally ineffective in their handling of the mitigation phase of the case. As noted above, the Ohio Court of Appeals found that counsel reasonably considered and rejected the presentation of expert testimony on Prozac, in view of Dr. Schmidtgoessling's opinion that Clemons' use of Prozac did not give rise to an issue of insanity. Also, in denying relief, the Ohio Court of Appeals found that Clemons' trial counsel performed reasonably in presenting evidence of Clemon's background through the testimony of his mother and Clemons' own testimony. State v. Clemons, 1999 WL 252655 at *4 (Ohio App. 1 Dist. 1999).

In his Traverse, Clemons again largely ignores the decision of the Ohio Court of Appeals. For the reasons stated by the Warden in her Return of Writ, the Ohio Court of Appeals' denial of relief is based on an objectively reasonable application of the governing constitutional standard. The Warden again notes the following salient facts which Clemons does not dispute: that at least four months before trial, counsel made a diligent effort to obtain Clemons' military records; that

counsel considered and investigated the possibility of presenting expert testimony on the effects of Prozac, including research of other cases in which the use of Prozac had been asserted as a defense; that counsel presented testimony from Clemons' mother to the effect that Prozac may have altered his behavior; and that counsel elicited testimony and presented evidence about Clemons' lack of criminal history, his service in the Army as a code man in Korea, his honorable discharge, his familial relationships particularly the absence of a father figure, his bouts with depression and his strong work ethic.

Clemons' nineteenth ground does not warrant relief in federal habeas corpus.

Twenty-Third Ground

Clemons argues that the trial court erroneously instructed the jury that they must unanimously find that the aggravating circumstances do not outweigh the mitigating circumstances in order to recommend a life sentence. Amended Petition, pgs. 64-65. Clemons never presented this claim to the Ohio courts. This Court did not dismiss the claim because it found that Clemons' failure to raise the claim before the Ohio courts was caused by the professional dereliction of Clemons' trial and appellate counsel, and that Clemons was thereby prejudiced, because at the time in question, the instruction in question conflicted with *Ohio* law. However, in so holding, the Court pointedly noted that it was not ruling on the merits of the constitutional claim asserted in the twenty-third ground. Opinion and Order (Doc. 52), at page 45.

In his Traverse, Clemons basically argues that relief on the merits is dictated by the Court's previous holding. Merit Brief, Vol. II, at 40. As noted in the Warden's Return of Writ, it is far from settled whether an instruction which requires a unanimous "final" verdict violates

the Eighth Amendment as construed in <u>Mills v. Maryland</u>, 486 U.S. 367 (1998) and <u>McKoy v. North Carolina</u>, 494 U.S. 433 (1990). Clemons relies primarily on <u>Davis v. Mitchell</u>, 318 F.3d 682 (6th Cir. 2003). However, in <u>Scott v. Mitchell</u>, 209 F.3d 854, 873-877 (6th Cir. 2000) and <u>Roe v. Baker</u>, 316 F.3d 557 (6th Cir. 2002), the Sixth Circuit rejected constitutional challenges to virtually identical instructions. The district courts have recognized that the Sixth Circuit's decisions are in conflict. <u>See</u> <u>Madrigal v. Bagley</u>, 276 F. Supp.2d 744, 783-785 (N.D. Ohio 2003); <u>Taylor v. Bagley</u>, 2003 U.S. Dist. LEXIS 4383, *64-65 (N.D. Ohio 2003).

Moreover, the constitutional underpinnings for <u>Mills</u> and <u>McKoy</u> are a subject of continuing dispute. Most recently, in <u>Beard v. Banks</u>, 542 U.S. __ (2004), Case No. 02-1603, the Supreme Court concluded that its decision in <u>Mills</u> was not dictated by prior precedent, that <u>Mills</u> and <u>McKoy</u> concerned "troubling circumstances" that under the facts presented created the possibility of arbitrary infliction of the death penalty, and that "the <u>Mills</u> rule applies fairly narrowly and works no fundamental shift in our understanding of the bedrock procedural elements essential to fundamental fairness." Slip Opinion at 13 (internal quotation marks and citations omitted). Accordingly, the Supreme Court held that retroactive application of <u>Mills</u> and <u>McKoy</u> in federal habeas corpus is barred by <u>Teague v. Lane</u>, 489 U.S. 288 (1989).

To obtain habeas corpus relief, Clemons must show that the challenged instruction violated his constitutional rights. The Supreme Court of the United States has never extended <u>Mills</u> and <u>McKoy</u> beyond the particular facts presented in those cases, and, in <u>Beard v. Banks</u>, has now expressly held that the <u>Mills</u> rule, whatever its parameters, may not be applied retroactively. The Warden submits that its extension to include the instruction challenged in the instant case would result in a new rule of constitutional law, and, therefore, Clemons' claim is also barred under <u>Teague v. Lane</u>. Assuming that this Court is not barred by <u>Teague</u> from

addressing the claim, the Warden submits, for the reasons set forth in the Return of Writ, that the challenged instruction is constitutionally correct.  Scott v. Mitchell, 209 F.3d at 873-877;  Roe v. Baker, 316 F.3d 557 (6th Cir. 2002).

Clemons' twenty-third ground does not warrant relief in federal habeas corpus.

Twenty-fourth Ground

Clemons did not allege in state court that his trial counsel were ineffective in failing to object to the so-called "unanimity" instruction.  Consistent with its treatment of the twenty-third ground, the Court reasoned that the failure of appellate counsel to present trial counsel's alleged dereliction excused the procedural default, e.g. a reasonable appellate counsel would have challenged the validity of the instruction under Ohio law and trial counsel's failure to object to the instruction as erroneous.  However, again the Court expressed no opinion as to merit of the underlying claim, i.e., whether trial counsel were constitutionally ineffective.    Opinion and Order (R.52), page 48.

In his Traverse, Clemons argues that trial counsel were constitutionally ineffective because the challenged instruction violated state law as construed by the Ohio Supreme Court in State v. Brooks, 75 Ohio St. 3d 148 (1996).  However, to obtain relief based on the ineffective assistance of trial counsel, Clemons must demonstrate more than the impropriety of the instruction under state law.  Rather, he must show that at the time of trial counsel were professionally deficient in failing to recognize the alleged impropriety, and, if they were, that counsel's objection to the instruction would have altered the outcome of the sentencing hearing.  Strickland v. Washington, 466 U.S. 668, 690, 700 (1984).

The Warden respectfully submits that Clemons cannot make either showing.  As noted previously by the Warden, the propriety of the instruction challenged here remains a matter of dispute.   Accordingly, even through the lens of hindsight, trial counsel cannot be deemed professionally deficient in not objecting to the instruction.   Moreover, had trial counsel lodged an objection, it is far from reasonably probable that the trial judge would have sustained the objection, or, had an objection been denied, appellate counsel could have successfully raised the issue on appeal.   The Supreme Court of Ohio has subsequently construed State v. Brooks as requiring reversal only where the jury is instructed specifically that it must unanimously reject a life sentence before it considers the life-sentencing options.    See State v. Lamar, 95 Ohio St. 3d 181, 206 (2002); State v. Jackson, 92 Ohio St.3d 436, 445 (2001); State v. Jalowiec, 91 Ohio St.3d 220, 234 (2001).  Indeed, Clemons has cited no case in which the Supreme Court of Ohio has vacated a sentence of death based on a violation of Brooks.

Clemons' twenty-fourth ground does not warrant relief in federal habeas corpus.

## CONCLUSION

For the foregoing reasons, the Warden respectfully requests this Court to deny Clemons'

petition for writ of habeas corpus.

Respectfully submitted,

JIM PETRO
Attorney General

s/ Charles L. Wille
CHARLES L. WILLE (0056444)
Senior Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(6l4) 728-7055; (614) 728-8600 (fax)

COUNSEL FOR THE WARDEN

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sur-Reply Brief has been forwarded to

Richard S. Ketcham, Esq., 755 South High Street, Columbus, Ohio 43206, **and** David J. Graeff,

Esq., P.O. Box 1948, Westerville, Ohio 43086; electronically and by First-Class U.S. mail, this

28th day of June, 2004.

s/ Charles L. Wille
CHARLES L. WILLE
Senior Assistant Attorney General